ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Case No. 05-CV-74253-DT
Hon. Gerald E. Rosen
Magistrate Judge Steven R. Whalen

ERNEST FLAGG, AS NEXT OF FRIEND OF JONATHAN BOND,
**Plaintiff**

-vs-

CITY OF DETROIT, A MUNICIPAL CORPORATION, DETROIT POLICE CHIEF, ELLA BULLY CUMMINGS, DEPUTY POLICE CHIEF CARA BEST, JOHN DOE POLICE OFFICERS, ATTORNEY GENERAL MIKE COX-STATE OF MICHIGAN, FORMER CHIEF OF POLICE OF DETROIT JERRY OLIVER, MAYOR OF CITY OF DETROIT KWAME KILPATRICK, FORMER CHIEF OF STAFF FOR MAYOR OF CITY OF DETROIT, CHRISTINE BEATTY
**Defendants, jointly and severally**

_____/

PLAINTIFF'S ANSWER TO DEFENDANT MIKE COX'S MOTION TO DISMISS
PURSUANT TO FED R CIV P 12(B)(2) & 6

NOW COMES PLAINTIFF, ERNEST FLAGG, AS NEXT OF FRIEND OF JONATHAN BOND, and states for his answer:

1. As to the corresponding paragraph plaintiff admits that he seeks money damages against Michael Cox in his individual capacity and denies that he seeks money damages against the State of Michigan.

2. As to the corresponding paragraph, plaintiff admits but further avers that the Eleventh Amendment does not bar claims for money damages against officials in their individual capacities.

3. As to the corresponding paragraph, plaintiff denies.

4. As to the corresponding paragraph, plaintiff denies.

WHEREFORE, PLAINTIFF PRAYS THIS HONORABLE COURT DENY DEFENDANT MIKE COX'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12 (B)(2) and (6)

BY: *(signature)*
Delicia Coleman P-56278
Attorney for Plaintiffs
23300 Greenfield Road, Suite 111
Oak Park, Michigan 48237
(248) 967-6293

Dated: January 18, 2006

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Case No. 05-CV-74253-DT
Hon. Gerald E. Rosen
Magistrate Judge Steven R. Whalen

ERNEST FLAGG, AS NEXT OF FRIEND OF JONATHAN BOND
**Plaintiff**

-vs-

CITY OF DETROIT, A MUNICIPAL CORPORATION, DETROIT POLICE CHIEF, ELLA BULLY CUMMINGS, DEPUTY POLICE CHIEF CARA BEST, JOHN DOE POLICE OFFICERS, ATTORNEY GENERAL MIKE COX-STATE OF MICHIGAN, FORMER CHIEF OF POLICE OF DETROIT JERRY OLIVER, MAYOR OF CITY OF DETROIT KWAME KILPATRICK, FORMER CHIEF OF STAFF FOR MAYOR OF CITY OF DETROIT, CHRISTINE BEATTY
**Defendants, jointly and severally**

_____/

PLAINTIFF'S BRIEF IN SUPPORT OF ANSWER TO DEFENDANT MIKE COX'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(2) & (6)

## FACTS

Plaintiff filed this lawsuit on November 7, 2005 alleging that defendants have violated his constitutional right to access to courts. The complaint is based on allegations that the defendants through their conduct engaged in a police cover up of the investigation of the homicide of Tamara Greene, the mother of the plaintiff. The complaint specifically alleges that defendants suppressed material facts from the family and public; removed police precinct activity logs which contained information on the police run to the Mayor's official residence where the alleged party and assault allegedly

3

occurred; engaged in laxity in investigation and active concealment of evidence; failed to interview key witnesses; and destroyed the 911 tapes which contained the emergency calls made by neighbors of the Mayor (complaining of disturbance and fight on lawn) the night of the alleged party and assault. It also alleges that, on the night of the alleged party and assault, Greene was escorted from the Manoogian to Detroit Receiving Hospital (by government officials) and forced to use an alias name to acquire treatment; that an officer locked Greene's homicide file in a personal office for a period of time preventing it from being worked on by any officer; that Greene's homicide was ordered to be placed in the **cold case files** within one year of her death; that the initial investigation of Greene's death by the main *Homicide Investigator* Marion Stevens established that there may have been a link between the alleged party and assault at the Mayor's official resident and Greene's homicide which occurred approximately six months later; that one or more of Greene's friends who routinely danced with her and was allegedly at the Manoogian party were also murdered with similar caliber weapon as Greene was killed; that the Mayor and his Chief of Staff terminated (Gary Brown) the head of Internal Affairs who was investigating allegations of wrongdoings on the part of the Mayor of Detroit which included allegations of a party and an assault upon a female dancer by a family member of the Mayor; that the Chief of Police demoted and transferred the lead investigator (Lt. Alvin Bowman) of Greene's homicide (who maintained 31 years on the force and possessed an 80 percent homicide solution rate) to the 2nd precinct midnight shift; and that one or more government officials involved in the investigation possessed a conflict of interest. The complaint also alleges that Defendant Mike Cox, the Attorney General of Michigan, was asked to investigate the allegations about a "party" at the Mayor's

residence after the Mayor fired Deputy Police Chief, Gary Brown, when he began investigating through the internal affairs department allegations about a party at the Manoogian Mansion and misconduct by the Mayor's executive protection force. The complaint alleges that Mike Cox deprived and conspired with the other defendants to cover up the murder of Tamara Greene by failing to formally interrogate Mayor Kwame Kilpatrick or Carlita Kilpatrick specifically about the occurrence of the party. It is also alleged that Cox refused to allow the State Police lead investigator of the alleged party to be present during the interview of the Mayor. The complaint alleges that Cox refused to issue subpoenas to the Michigan State Police in support of the investigation into the alleged party at the Mayor's official residence. The complaint alleges that Cox publicly announced after five weeks of investigation that the "party" at the Manoogian Mansion never occurred. It is further alleged that governmental misconduct has prevented the plaintiff from having an effective or meaningful state court remedy and, thusly, have violated plaintiff's constitutional right of access to state court. Defendant Cox has filed a motion to dismiss December 22, 2005 pursuant to F.R.C.P. 12(b)(2) and (6) for lack of jurisdiction based on the Eleventh Amendment of the United States Constitution's sovereign immunity and failure to state a claim to which relief could be granted. The motion is presently before the court for a decision.

# I
## PLAINTIFF'S ACTION AGAINST DEFENDANT, MIKE COX, SHOULD NOT BE DISMISSED FOR LACK OF JURISDICTION PURSUANT TO F.R.C.P. 12(b)(2) BECAUSE THE ELEVENTH AMENDMENT IS NOT A BAR TO TITLE 42 USC §1983 ACTION AGAINST A STATE OFFICIAL IN HIS INDIVIDUAL CAPACITY

Counsel for Defendant Mike Cox, Attorney General of the State of Michigan, argues that this case should be dismissed for lack of jurisdiction because the Eleventh Amendment of the United States Constitution prohibits the state or its officials from being sued in federal court for money damages. While this concededly is an accurate statement of the law, Plaintiff asserts that a proper reading of the complaint against Mike Cox must be interpreted by the court as Plaintiff suing Mike Cox in his individual capacity for money damages rather than in his official capacity as Attorney General and the State of Michigan. This honorable court has held that the Eleventh Amendment was not a bar to 42 USC §1983 action against a state official in his individual capacity. Whitney v. New Mexico, 113 F3d 1170. The Sixth Court of Appeals in *Shepherd v. Wellman, 313 F.3d 963 (6th Cir. 2002)* where state officials of the Michigan State Police asserted a defense of lack of jurisdiction pursuant to the Eleventh Amendment sovereign immunity in making its decision had to determine if the plaintiff was suing the defendants in their official capacities or individual capacities. The Court of Appeals **defined** the test for the court to apply to determine if a civil rights plaintiff is suing a defendant acting under color of state law in his individual or official capacity under §1983. The Court of Appeals requires §1983 plaintiffs to set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply their capacity as state officials in order to avoid dismissal under the Eleventh

Amendment. *Shepherd v. Wellman, supra,. 967.* The court in delineating the test to be used to determine in what capacity the state defendant is being sued in under §1983, stated:

> Where no explicit statement appears in the pleadings, this Circuit uses a "course of proceedings" test to determine whether the §1983 defendants have received notice of the plaintiff's intent to hold them personally liable. *See Moore v. City of Harriman, 272 Fed. 2nd 769, 772 (6th Cir.2001)*... Under this test, we consider the nature of the plaintiff's claims, requests for **compensatory** or **punitive** damages and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability. Id. at 772 n. 1. We also consider whether **subsequent** pleadings put the defendant on notice of the capacity in which he or she is being sued. (*Shepherd v. Welllman, supra., 967-977*)

In the instant case at bar, the plaintiff does not designate in the case caption that the defendant Cox is being sued in his official capacity. Although the caption in the complaint regarding Cox does state that he is the Attorney General of the State of Michigan, this, however, was done to reflect the title of Cox. The complaint seeks monetard punitive damages in the relief sought in the complaint. The court in *Moore v. City of Harriman, supra.* stated that the request for monetary damages is one factor that might place an individual on notice that he is being sued in his individual capacity. Further, the State of Michigan was not named as a separate party as the City of Detroit, a Municipal Corporation was. The plaintiff asserts claims that Defendant Cox conspired with top level officials of the City of Detroit to engage in a police cover up of the homicide of Tamara Greene who allegedly had danced at the Manoogian Mansion, the residence of the Mayor of the City of Detroit, prior to her murder by a drive-by shooting.

This conduct deprived plaintiff of his constitutional right to access of the courts under the 14th amendment. The complaint, through its factual allegations in paragraphs 45-51 of Count II of the complaint, alleges conduct of Mike Cox as an individual not in his capacity as Attorney General of the State of Michigan. The court in *Moore v. City of Harriman, 272 F.3d 769, 772(6th Cir. 2001)* stated that an additional factor of the "course of proceedings" test is whether the plaintiff in any responsive pleading "clarified any remaining ambiguity" as to whether the defendant is being sued in his individual or official capacity. The plaintiff through **this** responsive pleading to Defendant's Motion to Dismiss **alleges** and **puts** defendant on notice that the allegations of constitutional violation are alleged against him in his individual capacity rather than his official capacity. Defendant, Mike Cox, in the present lawsuit was put on notice by the complaint itself and the responsive pleading that he was being sued in his individual capacity for the violation of plaintiff's constitutional rights under §1983. If the court concludes, however, that the complaint and responsive pleadings of plaintiff do not put Defendant Cox on notice that he is being sued in his individual capacity in this lawsuit, plaintiff requests the court to allow him leave to amend its complaint pursuant to F.R.C.P 15(a).

## II
**DEFENDANT MOTION TO DISMISS PURSANT TO F.R.C.P. 12(b)(6) SHOULD BE DENIED BECAUSE PLAINTIFF'S COMPLAINT SUFFICIENTLY PLEADS ALLEGATIONS AND FACTS THAT WHEN TAKEN COLLECTIVELY THE COURT MAY INFER THAT PLAINTIFF ALLEGES A POLICE COVER UP IN THE INVESTIGATION OF THE HOMICIDE OF GREENE AND, THEREFORE, THE COMPLAINT STATES A COGNIZABLE CAUSE OF ACTION UNDER U.S.C. TITLE 42 §1983 ON THE BASIS OF THE DENIAL OF HIS CONSTITUTIONAL RIGHT TO ACCESS TO COURTS**

A Rule 12(b)(6) motion to dismiss **REQUIRES** the Court to determine whether a cognizable claim has been pled in the complaint. In scrutinizing the complaint, the court must construe all well-pled facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1687, 40 L. ed. 2d 90 (1974). The basic federal pleading requirement contained in F.R.C.P. 8(a) states that a pleading "shall contain...a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir. 1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. Windsor v. the Tennessee, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826, 83 L.Ed. 2d 50, 105 S. Ct. 105 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. Id. At 158; Conely v. Gibson, 355 U.S. 41, 2 L.Ed. 2d 80, 78 S.Ct.99 (1957).

The plaintiff in his complaint alleges that high City officials demoted and transferred Lt. Al Bowman, a homicide detective, out of the homicide section who was vigorously investigating the Greene homicide which could have placed Greene at the alleged party at the Manoogian Mansion. In addition, it also alleges that Gary Brown, head of Internal Affairs, who was looking into allegations of wrongdoings of the Mayor of Detroit, which included a party and assault at the Manoogian Mansion, was fired because of his investigation into the murder of Greene. (¶s 32 & 61 of Complaint). The complaint also alleges that Lt. Bowman was told in a meeting with Police Chief Ella Bully-Cummings, Asst. Chief of Police, and other policy makers to cease investigating the Greene homicide

and to put the file away (¶ 23 of Complaint). The complaint also alleges that the homicide file was put in the cold case file after less than one year, contrary to custom of at least two years before a case is assigned to the cold case file (¶ 24 of Complaint). The complaint also alleges (¶ 26 of Complaint) that defendants deliberately avoided sending the .40-caliber bullet casing which remained at victim's murder scene the appropriate agency to determine if the gun belonged to a police officer or a registered weapon. The complaint also alleges (¶ 27 of Complaint) that defendants deliberately avoided interviewing key witnesses who could have offered valuable information in the murder investigation. The complaint also alleges that defendants refused to subpoena critical documents (¶ 28 of Complaint) which could have offered valuable information in the murder investigation. The complaint also alleges (¶ 35 of Complaint) that the actions of defendants, Detroit Police Department and City of Detroit, resulted in a delay of decedent's murder investigation, thereby, causing evidence to grow stale and the fading of materials facts in the minds of witnesses and potential witnesses. The complaint also alleges that a myriad of other deliberate and malicious acts occurred through the Mayor of the City of Detroit, other executive leadership and throughout the official decision-making channel which included policy makers (¶ 37 of Complaint). The complaint also alleges that a policy of cover-up was established which resulted in customs that adversely impacted the murder investigation (see ¶ 17, 24, 26, 27, 31, 32, and 34 of Complaint). The complaint also alleges that the conspiracy and cover up rose to Attorney General's Office (see ¶ 47-55 of Complaint). These alleged facts lead to an inference that the defendants were engaged in a police cover up through a series of actions of active concealment of evidence to thwart an investigation that could have potentially implicated

the Mayor and his wife and that, while occurring, the plaintiff's constitutional rights of access of court was rendered meaningless and ineffective.

The court in a series of cases has recognized that an allegation of a police cover-up in a homicide case states a cause of action under U.S.C. Title 42 § 1983. Kammeyer v. City of Sharonville, 311 F. Supp.2d 653 (S.D. Ohio 2003). In Kammeyer, relatives of murder victims brought civil rights action against municipality and police officers after alleged cover-up alleging violation of their constitutional rights and state law. The plaintiffs alleged in the complaint that the lead detective in the murder investigation had a conflict of interest, deliberately removed evidence from murder scene and automobile of victim, repeatedly misled relatives, and acted in concert with other police officers and that the police chief allowed for custom of permitting his officers to make loan shark collections, fostered detective's conflict of interest, and allowed for detective to conduct the investigation as lead detective despite such conflict. The plaintiffs alleged that the cover-up resulted in the constitutional violation of their right to access to courts, equal protection and substantive due process. The court denied defendant's motion to dismiss and held that relatives adequately pled that municipality and police officers in their official capacities deprived them of constitutional rights and did so pursuant to custom that amounted to illegal policy of cover-up. The fact that allegations of a police cover-up have been recognized by this honorable court as a recognizable cause of action under U.S.C. Title 42 § 1983 is supported by the following cases: Swekel v. City of River Rouge et. al., 118 F.3d 1259 (6th Cir. 1997); Bell v. City of Milwaukee, 746 F.2d 1205 (7th Cir. 1984), Ryland v. Shapiro, et al., 708 F.2d 967 (5th Cir. 1983). In Ryland v. Shaipiro, supra, plaintiffs brought a civil rights action under U.S.C. Title 42 § 1983

against a prosecutor and a District Attorney for violation of their constitutional right to access to the courts where the prosecutor and District Attorney had covered up the murder of their daughter, Lavonna, by engaging in conduct in the investigation that had the cause of death listed as a suicide on the death certificate. The defendants while acting under color of state law as Asst. District Attorney prevented a full investigation into the causes of Lavonna's death by canceling an autopsy previously scheduled to be performed by the local coroner and by having the coroner sign the death certificate stating that the cause of death was suicide even though he had not performed an autopsy. The district court dismissed plaintiffs' complaint concluding that the Rylands did not have standing to bring a 1983 action against Roberts and Ware because the conduct of the defendants did not invade any legally protected right of the parents. Rather, the court viewed the complaint as nothing more than one for failure to enforce the criminal laws of Louisiana. As a result, the court determined that the Rylands had only a generalized grievance against the defendants, common to all citizens of Louisiana, namely, the enforcement of the criminal laws. The district court next held that the defendants enjoyed absolute prosecutorial immunity. The 5th Circuit Court of Appeals reversed the District Court dismissal. The Court of Appeals held that plaintiffs' complaint sufficiently pled facts that stated a claim for a violation of their constitutional right to access of courts and were entitled to maintain an action under U.S.C. Title 42 § 1983. The court in reversing the District Court observed:

> Our determination that the Rylands have a substantive constitutional right of access to the courts as well as a property right in the wrongful death action leads us to conclude that the district court erred when it held that the Rylands lacked standing to maintain their suit. In reaching this conclusion, the district court viewed the Rylands' claim merely as a suit by citizens to

> compel state prosecutors to initiate a criminal action against an alleged murderer. In so limiting its analysis, the district court failed to entertain the legal theory upon which the Rylands based their case. Their complaint alleged that agents of the state intentionally engaged in conduct that interfered with their exercise of their constitutionally protected right to institute a wrongful death suit in the Louisiana courts. As we have already shown, their theory of recovery is a valid one. Ryland v. Shapiro, supra, 973.

The Court of Appeals reversed the District Court's dismissal of plaintiffs' complaint because it concluded that the lower court did not correctly interpret plaintiffs' legal theory. The District Court misinterpreted plaintiffs' complaint as merely claiming that the Louisiana officials merely refused to enforce the criminal laws of the state which in itself does not state a claim under 1983.

The defense counsel for the case at bar suffers from the same problem as the District Court in Ryland did. He misinterprets the legal theory of plaintiff's complaint by concluding that it, in essence, is alleging that defendants have failed to investigate the crime involving the homicide of Greene. However, the legal theory of plaintiff's complaint is that the defendants have engaged in conduct to cover up the investigation of the Greene homicide by active concealment, not conducting a thorough and diligent investigation and thwarting the wheels of justice.

In conclusion, the trial court should deny defendants' motion to dismiss for failure to state a claim for which relief can be granted pursuant to F.R.C.P. 12 (b)(6) because plaintiff's complaint sufficiently states a claim for relief under U.S.C. Title 42 § 1983 for violation of his constitutional right to access to courts and deprivation based on the legal theory of a police cover-up of the homicide investigation of Greene by active concealment of evidence, suppression of information, termination and demotion of

personnel investigating the crime, spoliation of evidence, and pursuit of a policy of cover-up. The court must reject defendant's argument that plaintiff has no standing to maintain this lawsuit because defendant owed "no duty" to plaintiff to investigate the homicide because the issue of "duty" is not relevant and applicable to a claim of a constitutional violation of access to courts based on theory of a police cover-up. The court in deciding the Motion To Dismiss must construe the facts of the complaint as true, viewing the facts in favor of the opposing party, and must deny the motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. Applying this standard, the court must conclude that the factual allegations of the complaint sufficiently state a claim for relief under U.S.C. Title 42 § 1983 for a violation of a constitutional right of access to courts and a conspiracy to violate that right.

WHEREFORE PLAINTIFF PRAYS THAT THIS HONORABLE COURT DENY DEFENDANT'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) &(2) OR IN THE ALTERNATIVE GRANT LEAVE TO ALLOW PLAITNIFF TO AMEND HIS COMPLAINT PURSUANT TO F.R.C.P. 15(A).

BY: _____
Delicia Coleman P-56278
Attorney for Plaintiffs
23300 Greenfield Road, Suite 111
Oak Park, Michigan 48237
(248) 967-6293

Dated: January 18, 2006

## CERTIFICATE OF SERVICE

I hereby certify on January 18, 2006, I served a copy of the Plaintiff's Answer to Defendant's Motion to Dismiss on Defendant's counsel by placing a copy in the United States Mail first class in a pre-addressed stamped envelope

BY: _____
Delicia Coleman P-56278
Attorney for Plaintiff
23300 Greenfield Road, Suite 111
Oak Park, Michigan 48237
(248) 967-6293

Dated: January 18, 2006