UNITED STATES OF AMERICA
IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND, a minor,

    Plaintiff,

Case No.: 05-CV-74253
Hon. Gerald Rosen

-vs-

CITY OF DETROIT, a municipal corporation;
DETROIT POLICE CHIEF ELLA BULLY-CUMMINGS;
DEPUTY DETROIT POLICE CHIEF CARA BEST;
JOHN DOE POLICE OFFICERS 1 - 20;
ASST. DEPUTY POLICE CHIEF HAROLD CURETON;
COMMANDER CRAIG SCHWARTZ;
POLICE LT. BILLY JACKSON;
MAYOR KWAME M. KILPATRICK,
CHRISTINE BEATTY, jointly and severally

    Defendants.

_____/

| **Norman Yatooma & Associates, P.C.** | City of Detroit Law Department |
|---|---|
| By: Norman A. Yatooma (P54746) | By: John A. Schapka (P36731) |
| By: Robert S. Zawideh (P43787) | Attorneys for Defendants |
| Attorneys for Plaintiffs | 1650 First National Building |
| 219 Elm Street | Detroit, Michigan 48226 |
| Birmingham, Michigan 48009 | (313) 224-4550 |
| (248) 642-3600 | |

_____/

**PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT**

PLAINTIFF ERNEST FLAGG, as Next Friend of JONATHAN BOND, a minor, by his undersigned counsel, NORMAN YATOOMA & ASSOCIATES, P.C., moves under Federal Rule of Civil Procedure 15(a) to amend his First Amended Complaint entered with this court

September 22, 2006, to reinstate as Defendants certain parties who were named in the original Complaint, and to otherwise clarify his claims as follows:

1. On December 19, 2007 counsel for Plaintiff and Defendant conferred via telephone, wherein Plaintiff's counsel requested Defendants' counsel's assent to the relief requested herein. Plaintiff's counsel explained the nature of the relief requested; however, concurrence was not obtained.

2. This Court should grant the motion, because the principles of justice strongly support the amendment, and the exceptions justifying denial of the motion are absent.

3. Plaintiff Jonathan Bond, through his next friend Ernest Flagg, commenced this suit in this Court on November 7, 2005, alleging that the Defendant City of Detroit and several individuals -- including Detroit Mayor Kwame Kilpatrick, his former chief of staff Christine Beatty, the current and former Detroit police chiefs, certain unknown Detroit police officers, and Michigan attorney general Mike Cox -- violated Plaintiff's federal constitutional right of access to the courts and conspired among themselves to commit this constitutional violation by inadequately investigating the April 30, 2003 death of Plaintiff's mother, Tamara Greene, and concealing material evidence concerning this incident. Ms. Greene died from gunshot wounds after several shots were fired into her vehicle.

4. In accordance with an order of this Court entered on or about August 31, 2006, granting in part and denying in part a Motion to Dismiss brought by several defendants, Plaintiff filed a First Amended Complaint in this Court on or about September 21, 2006.

5. Ms. Greene purportedly performed as an exotic dancer at a widely-rumored party at the Detroit mayor's official residence, the Manoogian Mansion, about six months before she was

murdered in a drive-by shooting that occurred in front of her home on Roselawn in the City of Detroit.

6. Tamara Bond-Greene was the mother of plaintiff JONATHAN BOND, a 14-year-old minor child.

7. Tamara Bond-Greene was a licensed exotic dancer and employed in various clubs in the City of Detroit and by private parties. Ms. Greene performed under the stage name of "Strawberry".

8. It has been widely reported in the local media that, sometime in the fall of 2002, a wild party occurred at the Manoogian Mansion.[1] It was rumored that Defendant Kilpatrick attended this party,[2] as well as several of his close friends, certain Detroit Police Officers, and nude exotic dancers, including Tamara Bond Greene. According to various accounts, it is alleged that Defendant Kilpatrick's wife, Carlita Kilpatrick arrived at the party unexpectedly, and assaulted one or more of the dancers.

9. On information and belief, that night, following the alleged attack by Mrs. Kilpatrick, Defendant Kwame Kilpatrick's security detail, known as the Executive Protection Unit, or "EPU", escorted, transported, or otherwise accompanied the injured dancer to the emergency room of a local hospital.

10. On information and belief, at least one Emergency Medical Technician ("EMT") reported to the media that, on or about the time of the alleged Manoogian party, individuals who appeared to be members of the EPU brought in an injured woman for treatment and arranged for all EMT's to be removed from the emergency room.

---

[1] The Manoogian Mansion is the traditional residence of the Mayor of the City of Detroit and his or her family.
[2] On information and belief, Defendant Kilpatrick and his family had not as yet moved into the Manoogian Mansion, as it was undergoing renovations at the time.

11. On or about the time of the alleged party, and at all relevant times thereafter, Harold Nelthrope ("Nelthrope") was a detective in the EPU before he was transferred.

12. Beginning in March of 2003, Nelthrope reported allegations of illegal conduct and misconduct by fellow EPU officers and by Detroit Mayor Kwame Kilpatrick and his wife to the police department's Professional Accountability Bureau. These allegations included claims that close friends of Defendant Kwame Kilpatrick on EPU were claiming overtime pay to which they were not entitled, and drinking on the job; there were also allegations that Carlita Kilpatrick assaulted one or more of the dancers at the alleged party at the Manoogian Mansion in the fall of 2002, and that there were efforts to cover up these crimes.

13. Gary Brown, the deputy chief of the Professional Accountability Bureau, summarized these allegations in a 5-page memorandum dated April 24 and April 30, 2003, (attached hereto as Exhibit A) and authorized a preliminary investigation into these allegations.

14. According to Brown, "[t]he most serious allegation made by Officer Nelthrope is that Mrs. Carlita Kilpatrick was involved in a physical altercation with a female dancer, causing bodily injury requiring medical attention. If this allegation is proven to be fact, the potential for assault charges to be filed against Mrs. Carlita Kilpatrick as well as potential obstruction of justice charges and or misconduct in office charges against anyone found to have collected and destroyed activity logs will warrant national headlines and severely damage the political future of Mayor Kilpatrick."

15. Brown prepared another memorandum regarding Nelthrope's allegations. See Memorandum dated May 6, 2003, attached hereto as Exhibit B. In that memorandum, Brown stated that Nelthrope made a point of saying that he was wearing a bulletproof vest because "he didn't trust many police officers."

16. These memoranda were given to then police chief, Jerry Oliver, and then passed along to Defendant Christine Beatty, the mayor's Chief of Staff or to others in Defendant Kilpatrick's office.

17. On information and belief, on or about this time Defendant Christine Beatty, the Mayor's Chief of Staff, without having conducted any investigation to support the claim, reported to Defendant Kilpatrick that Brown was conducting an unauthorized investigation, and that he needed to be removed from his department.

18. Former Police Chief Oliver, Defendant Mayor Kilpatrick, Defendant Beatty and other City officials had a meeting regarding Brown's investigation. Following that meeting, Defendant Kilpatrick decided to terminate Brown, a decorated, well-respected twenty-year member of the Detroit Police Department.

19. Approximately two days after the May 6, 2003 memorandum was submitted to former Chief Oliver, Brown was discharged from his position as deputy chief of the Professional Accountability Bureau.

20. On information and belief, Defendant Mayor Kwame Kilpatrick fired Deputy Police Chief Gary Brown shortly after he submitted the May 6, 2003 memorandum to former Chief Oliver to avoid further investigation into the allegations of the "wild party," or that his wife, Carlita Kilpatrick, assaulted an exotic dancer at that party.

21. Further, members of Defendant Kwame Kilpatrick's office then identified Nelthrope as being the source of the allegations of misconduct to the media, and the mayor publicly called Nelthrope a liar. See Deposition of Defendant Kwame Kilpatrick, pp. 60-62, attached hereto in its entirety as Exhibit C. Nelthrope was likewise terminated from his employment.

22. Approximately one month after Det. Nelthrope first began reporting allegations of misconduct to internal affairs, and around the time that Deputy Chief Brown was authoring his two memos to former chief Oliver, on April 30, 2003, at approximately 3:40 a.m., Tamara Greene was murdered in a drive-by shooting that occurred in front of her home on Roselawn in the City of Detroit, while she sat behind the wheel of her automobile with a friend who sat in the front passenger seat. The passenger survived the shooting.

23. On information and belief, twelve .40 caliber shell casings were found at Ms. Green's murder scene. Witnesses reported that the shooter left the scene in a "white trailblazer."

24. On information and belief, .40 caliber Glocks, Model 22, are standard issue weapons for members of the Detroit Police Department.

25. On information and belief, the Detroit Police Department, Homicide Section, was assigned to investigate the murder of Tamara Greene.

26. On information and belief, Lt. Al Bowman of the Detroit Homicide section of the Detroit Police Department was a detective investigating Greene's homicide assigned to 'Squad 8.'

27. Sgt. Marian Stevenson, a former homicide investigator who worked under Lt. Bowman, was also assigned to the Tamara Greene murder investigation. Sgt. Stevenson concluded that someone ordered Greene's murder. The basis for her belief was that (1) Greene was shot first, and (2) that Greene's passenger was able to exit the vehicle, and (3) an eyewitness reported that the shooter's vehicle turned around after shooting Greene and had the opportunity to shoot the passenger as well, but did not.

28. According to Sgt. Stevenson, someone erased her case notes on the Tamara Greene murder investigation from her police department computer hard drive, and her zip storage files disappeared from a locked cabinet inside the police department.

29. Sgt. Stevenson did not report the theft to her superiors out of fear for her safety.

30. According to Sgt. Stevenson, she and her colleagues in the Homicide Section were concerned that they may lose their jobs if they continued to investigate the case.

31. On information and belief, in the course of his investigation, regarding the identity of the shooter, Lt. Al Bowman concluded that "given the number of rounds fired with that one individual with that one gun, it was presumed it could have been someone in law enforcement."

32. On information and belief, Lt. Bowman gave the information directly to Defendant Police Chief Ella Bully-Cummings.

33. On information and belief, Lt. Bowman was called into a meeting with Defendants, Police Chief Ella Bully-Cummings, Assistant Chief of Police Harold Cureton, Commander Craig Schwartz, and Lt. Billy Jackson, and was directed by them to cease investigating Greene's homicide and to "put the file away".

34. On information and belief, Lt. Bowman did not cease the investigation as ordered by Police Chief Bully Cummings, Assistant Chief of Police Harold Cureton, Commander Craig Schwartz, and Lt. Billy Jackson

35. On information and belief, Defendant Cara Best, Bowman's supervisor ordered Bowman to be transferred out of homicide ultimately because of his investigating of Greene's homicide. He was then transferred to the 2nd Precinct, to a different position and placed on the midnight shift.

36. The Greene homicide file was seized from the homicide section and locked away in the office of Lieutenant Billy Jackson immediately after Lt. Al Bowman was transferred out of the Homicide Section. See page 7 of 15 of transcript of telephone call between Michigan State Police D. Sgt Mark Krebs and Lt. Al Bowman, attached hereto as Exhibit D.

37. On information and belief, when Lt. Bowman asked his immediate supervisor why he was moved to the overnight shift, Bowman was told, "I guess you've been asking too many questions about the Strawberry case."

38. On information and belief, these Defendants either directly or indirectly through their agents erased the case notes of the Greene investigation that Lt. Al Bowman and Sgt. Stevenson collected and maintained on their computers at the Detroit Police Department.

39. That Defendant, Ella Bully-Cummings ordered the Greene homicide file to be placed in the Cold Case file after only one year, contrary to the Detroit Police Department standard policy and/or practice of waiting two years before designating a homicide file as a "cold case". See page 8 of 15 of transcript of telephone call between Michigan State Police D. Sgt Mark Krebs and Lt. Al Bowman, attached hereto as Exhibit D.

40. At all relevant times, once Tamara Greene's murder file was transferred to Cold Case, it would have been under the control of Sgt. Godbow of the Detroit Police Department.

41. On information and belief, Sgt. Godbow as head of the Cold Case section of the Homicide division, has control over this investigation despite the rumors that a family member of Sgt. Godbow was once romantically involved with the decedent, Tamara Greene.

42. Lt. Alvin Bowman, and more recently former Detective Harold Nelthrope and former Deputy Chief Gary Brown of the Detroit Police Department were successful in convincing two different Wayne County juries that several of these defendants retaliated against them for investigations that involved or were related to Ms. Greene's death

43. The amendment is not futile, since it asserts its claims with greater specificity and reasserts claims against Defendant Mayor Kwame Kilpatrick and former Chief of Staff Christine

Beatty for their role in retaliating against those that investigated the allegations that related to wrongdoing that may involved Ms. Greene.

44. Dilatory motive and bad faith are absent, because discovery is ongoing and the court has only recently scheduled a Rule 26(f) conference for the purpose of addressing, among other things, the need for additional amendment of the pleadings.

**WHEREFORE, PLAINTIFF** respectfully requests this Court to grant his motion and permit him to file and serve his Second Amended Complaint.

Respectfully Submitted,

Dated: December 18, 2007
/s/ **Robert S. Zawideh**
Norman Yatooma & Associates, P.C.
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600
zawideh@normanyatooma.com

# BRIEF IN SUPPORT OF MOTION TO AMEND COMPLAINT

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ 10

ISSUES PRESENTED .................................................................................................................. 11

CONTROLLING AUTHORITIES .................................................................................................. 12

ARGUMENT ................................................................................................................................. 13

   **UNDER FEDERAL RULE OF CIVIL PROCEDURE 15 AND *FOMAN V. DAVIS*, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT TO ADD MAYOR KWAME KILPATRICK AND HIS FORMER CHIEF OF STAFF CHRISTINE BEATTY AS DEFENDANTS FOR THEIR PARTICIPATION IN THE RETALIATION AND INTIMIDATION OF FORMER DET. HAROLD NELTHROPE AND FORMER DEPUTY CHIEF GARY BROWN BECAUSE THEY WERE INCLUDED IN THE ORIGINAL PLEADING, PLAINTIFF IS ASSERTING THE SAME COUNTS AS IN THE FIRST AMENDED COMPLAINT, AND IS ESSENTIALLY SUBMITTING THE SAME CLAIMS AGAINST ALL OF THE APPROPRIATE DEFENDANTS WITH GREATER SPECIFICITY.** ............................ 13

## ISSUES PRESENTED

WHETHER, UNDER FEDERAL RULE OF CIVIL PROCEDURE 15 AND *FOMAN V. DAVIS*, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT TO ADD MAYOR KWAME KILPATRICK AND HIS FORMER CHIEF OF STAFF CHRISTINE BEATTY AS DEFENDANTS FOR THEIR PARTICIPATION IN THE RETALIATION AND INTIMIDATION OF FORMER DET. HAROLD NELTHROPE AND FORMER DEPUTY CHIEF GARY BROWN BECAUSE THEY WERE INCLUDED IN THE ORIGINAL PLEADING, PLAINTIFF IS ASSERTING THE SAME COUNTS AS IN THE FIRST AMENDED COMPLAINT, AND IS ESSENTIALLY SUBMITTING THE SAME CLAIMS AGAINST ALL OF THE APPROPRIATE DEFENDANTS WITH GREATER SPECIFICITY.

## CONTROLLING AUTHORITIES

**Federal Cases**

*Adams v. Gould*, 739 F.2d 858, 863 (3rd Cir. 1984) .................................................................. 14

*Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 571 n.1 (6th Cir. 2001) .................................................................. 13

*Duggins v. Steak 'Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) .................................................................. 13

*Inge v. Rock Financial Corp*, 388 F.3d 930, 937 (6th Cir. 2004) .................................................................. 13

*Tefft v. Seward*, 689 F.2d 637, 640 n.2 (6th Cir. 1982) .................................................................. 13

**Rules**

Fed. R. Civ. P. 15(a) .................................................................. 13

# ARGUMENT

**UNDER FEDERAL RULE OF CIVIL PROCEDURE 15 AND *FOMAN V. DAVIS*, THE COURT SHOULD GRANT PLAINTIFF LEAVE TO FILE A SECOND AMENDED COMPLAINT TO ADD MAYOR KWAME KILPATRICK AND HIS FORMER CHIEF OF STAFF CHRISTINE BEATTY AS DEFENDANTS FOR THEIR PARTICIPATION IN THE RETALIATION AND INTIMIDATION OF FORMER DET. HAROLD NELTHROPE AND FORMER DEPUTY CHIEF GARY BROWN BECAUSE THEY WERE INCLUDED IN THE ORIGINAL PLEADING, PLAINTIFF IS ASSERTING THE SAME COUNTS AS IN THE FIRST AMENDED COMPLAINT, AND IS ESSENTIALLY SUBMITTING THE SAME CLAIMS AGAINST ALL OF THE APPROPRIATE DEFENDANTS WITH GREATER SPECIFICITY.**

When a party requests leave to amend his pleading, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *accord, Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962); *Inge v. Rock Financial Corp*, 388 F.3d 930, 937 (6th Cir. 2004). Only certain specific reasons, like bad faith, dilatory motive, undue delay, futility, or repeated failure to cure deficiencies by earlier permitted amendments can justify denial of leave to amend. *Foman*, 371 U.S. 178, 182, *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 571 n.1 (6th Cir. 2001); *Duggins v. Steak 'n Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999).

The Sixth Circuit has read and evaluated the dilatory motive, undue delay, and prejudice factors together: "[D]elay by itself is not [a] sufficient reason to deny a motion to amend. **Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted**." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458-459 (6th Cir. 2001); *accord, Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002); *Tefft v. Seward*, 689 F.2d 637, 640 n.2 (6th Cir. 1982) (emphasis added). "At some point, however, delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party.'" *Morse*, 290 F.3d 795, 800, quoting *Adams v. Gould*, 739

F.2d 858, 863 (3rd Cir. 1984). Thus, a party cannot ordinarily "wait until the discovery date has passed(,) and a motion for summary disposition has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amendment." *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989). **Nonetheless, "where 'the amended claim was obviously one of the objects of discovery and related closely to the original claim,'" the Rule 15 and *Foman* liberal amendment standards are controlling.** *Tokio Marine & Fire Ins. Co., Ltd. v. Employers Ins. of Wasau*, 786 F.2d 101, 103 (2d Cir. 1986); *see also, Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 249 (6th Cir. 2000) (Where amendment "amplifies," clarifies, adds, or specifies facts, if not "entirely different 'operative facts,'" the preceding standards are controlling.)

Application of the above principles strongly supports granting leave to amend. Because purposeful delay and procedural "fencing" and "gamesmanship" are absent, dilatory motive and bad faith are nonexistent. Indeed the proposed Second Amended Complaint relates closely to the Original and First Amended Complaint and merely amplifies, clarifies, adds, and specific facts that support the claims that have previously been plead; it also reasserts claims against Mayor Kwame Kilpatrick and his former Chief of Staff Christine Beatty, who were named as Defendants in the original complaint, for their role in retaliating against those that investigated the allegations that related to wrongdoing that may involved Ms. Greene. In light of the recent verdict by a Wayne County jury finding that Brown and Nelthrope were retaliated against for their investigation of events that may have involved Ms. Greene, it is especially important to include them in this action in order to grant complete relief to the Plaintiff.

Prejudice is also nonexistent in this action. The Rule 26(f) conference has not even been held as of the date of this motion, and is currently scheduled for the first week in January, 2008.

One of the issues to be addressed at the conference is the need for additional amendments to the pleadings and the amount of discovery that remains to be done. There is much discovery that remains to be done, as to date, none of the parties have exchanged discovery or conducted depositions in this matter. Indeed, *to avoid* prejudice to the Defendants, it would be to everyone's advantage should the court grant this motion at the start of this discovery process.

Futility is also absent from this situation as the proposed Second Amended Complaint adheres to this court's Order of August 31, 2006, which required Plaintiff's amended complaint to include allegations which, if proven, would establish the unavailability of an effective and meaningful state-court remedy. The Second Amended Complaint outlines in great detail the unavailability of any effective or meaningful state-court remedy. Further, as required by the court's August 31, 2006 order, the Second Amended Complaint identifies relief that is recoverable here but is not otherwise available in some other suit that may yet be brought; it specifically states that as a result of the Defendant's actions, individually or in concert or conspiracy with one another; any state court action became time-barred and that the claims alleged in the Second Amended Complaint are the only remaining vehicle Plaintiff has to vindicate his trampled on civil rights.

**WHEREFORE, PLAINTIFF** respectfully requests this Court to grant his motion and permit him to file and serve his Second Amended Complaint.

Respectfully Submitted,

Dated: December 19, 2007
/s/ **Robert S. Zawideh**
Norman Yatooma & Associates, P.C.
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009

(248) 642-3600
zawideh@normanyatooma.com

## CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of:

    Plaintiff's Motion For Leave to File Second Amended Complaint, Brief in Support of Motion, Exhibits, List of Exhibits, and this Certificate of Service to be served upon::

    **City of Detroit Law Department**
    By: John A. Schapka (P36731)
    Attorneys for Defendants
    1650 First National Building
    Detroit, Michigan 48226
    (313) 224-4550
    schaj@law.ci.detroit.mi.us

by ECF filing on December 19, 2007.

    **/s/ Ryan D. Bobel**
    Norman Yatooma & Associates, P.C.
    By: Norman A. Yatooma (P54746)
    By: Robert S. Zawideh (P43787)
    Attorneys for Plaintiff
    219 Elm Street
    Birmingham, Michigan 48009
    (248) 642-3600
    bobel@normanyatooma.com