# UNITED STATES OF AMERICA
## IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND, a minor,

       Plaintiff,

                              Case No.: 05-CV-74253
                              Hon. Gerald Rosen
                              Magistrate Judge R. Steven Whalen

-vs-

CITY OF DETROIT, a municipal corporation;        **PLAINTIFF'S MOTION**
DETROIT POLICE CHIEF ELLA BULLY-             **TO PRESERVE EVIDENCE**
CUMMINGS; DEPUTY DETROIT POLICE
CHIEF CARA BEST; JOHN DOE POLICE
OFFICERS 1 - 20; ASST. DEPUTY POLICE
CHIEF HAROLD CURETON;
COMMANDER CRAIG SCHWARTZ;
POLICE LT. BILLY JACKSON;
MAYOR KWAME M. KILPATRICK,
CHRISTINE BEATTY, jointly and severally

       Defendants.
_____/

**Norman Yatooma & Associates, P.C.**      **Morganroth & Morganroth, PLLC**
By: Norman A. Yatooma (P54746)            By: Mayer Morganroth (P17966)
By: Robert S. Zawideh (P43787)             By: Jeffrey B. Morganroth (P41670)
Attorneys for Plaintiffs                         Attorneys for Defendants
219 Elm Street                                  3000 Town Center, Ste. 1500
Birmingham, Michigan 48009               Southfield, Michigan 48075
(248) 642-3600                                  (248) 355-3084

**City of Detroit Law Department**
By: John A. Schapka (P36731)
Attorneys for Defendants
1650 First National Building
Detroit, Michigan 48226
(313) 224-4550

_____/

NOW COMES THE PLAINTIFF, JONATHAN BOND, through his Next Friend ERNEST FLAGG, and by and through their attorneys, Norman Yatooma & Associates, P.C., and for his Motion to Preserve Evidence states the following:

1. Plaintiff Jonathan Bond, through his next friend Ernest Flagg, commenced this suit in this Court on November 7, 2005, alleging that the Defendant City of Detroit and several individuals — including Detroit Mayor Kwame Kilpatrick, his former Chief of Staff, the current and former Detroit Police Chiefs, certain unknown Detroit police officers, and Michigan Attorney General Mike Cox — violated Plaintiff's federal constitutional right of access to the courts and conspired among themselves to commit this constitutional violation by deliberately refusing to investigate, and otherwise obstructing the investigation of the April 30, 2003 death of Plaintiff's mother, Tamara Greene (a licensed exotic dancer who went under the stage name of "Strawberry"), and concealing material evidence concerning this incident. Ms. Greene died from gunshot wounds after several shots were fired into her vehicle. Plaintiff believes there is a connection between Defendants' subsequent investigation and alleged acts of concealment, and Ms. Greene's purported appearance as an exotic dancer at a widely-rumored party at the Detroit Mayor's official residence, the Manoogian Mansion, about six months before her death. These rumors include allegations that Defendant Kilpatrick's wife, Carlita, arrived unexpectedly at the party, and in a fit of rage over the alleged activities taking place, attacked and severely injured Ms. Greene to the point that she was taken by the Mayor's Executive Protection Unit ("EPU") to a local hospital for treatment.

2. On September 21, 2006, following Defendants' unsuccessful Motion to Dismiss brought under FRCP 12(b)(6), Plaintiff filed a First Amended Complaint. This amended pleading omitted several parties who were named as Defendants in Plaintiff's initial complaint

— specifically, Michigan Attorney General Mike Cox, Detroit Mayor Kwame Kilpatrick, former Detroit police Chief Jerry Oliver, and Mayor Kilpatrick's former Chief of Staff, Christine Beatty — but named three additional Defendants who were not identified in this initial pleading — specifically, Detroit assistant police Chief Harold Cureton and two other Detroit police officers, Craig Schartz and Billy Jackson.

3. On November 14, 2007, this Court dismissed Plaintiff's claims against Defendants Cara Best, Harold Cureton, and Billy Jackson without prejudice for lack of prosecution, and further dismissed Plaintiff's claims against Defendants Mike Cox, Kwame Kilpatrick, Jerry Oliver, and Christine Beatty without prejudice, in light of Plaintiff's evident election to voluntarily relinquish these claims by failing to name these individuals as parties in his first amended complaint.

4. On November 28, 2007, the Court ordered the substitution of Plaintiff's current Counsel in place and instead of his prior counsel.

5. Approximately three weeks later, on December 18, 2007, Plaintiff filed a Motion for Leave to File a Second Amended Complaint in this action. Significantly, the amended pleading sought to re-include Cara Best, Harold Cureton, Billy Jackson, Mayor Kwame Kilpatrick, and Christine Beatty as Defendants in this action.

6. On January 8, 2008, this Court granted Plaintiff's Motion for Leave to File Second Amended Complaint, which was then filed with the Court on January 14, 2008.

7. The Complaint alleges that Defendants, either individually or in concert or conspiracy with one another deliberately and with all intent thwarted, obstructed, chilled, interfered with and unlawfully terminated the investigation into Ms. Greene's murder.

8. The investigation into Ms. Greene's murder was one of two investigations involving Ms. Greene. Beginning in March of 2003, former Detroit Police and EPU officer Harold Nelthrope reported allegations of illegal conduct and misconduct by fellow EPU officers and by Detroit Mayor Kwame Kilpatrick and his wife to the Police Department's Professional Accountability Bureau. Specifically, Nelthrope's numerous claims included the allegations that Carlita Kilpatrick assaulted one or more of the dancers at the alleged party at the Manoogian Mansion in the fall of 2002, and that there were efforts to cover up these crimes.

9. According to a memorandum ordered by Gary Brown, the Deputy Chief of the Professional Accountability Bureau, "[t]he most serious allegation made by Officer Nelthrope is that Mrs. Carlita Kilpatrick was involved in a physical altercation with a female dancer, causing bodily injury requiring medical attention. If this allegation is proven to be fact, the potential for assault charges to be filed against Mrs. Carlita Kilpatrick as well as potential obstruction of justice charges and or misconduct in office charges against anyone found to have collected and destroyed activity logs will warrant national headlines and severely damage the political future of Mayor Kilpatrick." **Exhibit 1.**

10. The memo, dated April 24 and April 30, 2003, was being drafted as of April 24, 2003, and completed April 30, 2003, the same day as Ms. Greene's murder.

11. On information and belief, former Police Chief Oliver, Defendant Mayor Kilpatrick, Defendant Beatty and other City officials had a meeting regarding Brown's investigation. Following that meeting, less than ten days after Ms. Greene's murder, Defendants Kilpatrick and Beatty decided to terminate Brown, a decorated, well-respected twenty-year member of the Detroit Police Department, contrary to their subsequent sworn testimony, disclosed in more detail below.

12. Further, members of Defendant Kwame Kilpatrick's office then identified Nelthrope as being the source of the allegations of misconduct to the media, and Defendant Kilpatrick publicly called Nelthrope a liar on local television,[1] adding that he hoped his wife and children were watching that broadcast.

13. On information and belief, the Detroit Police Department, Homicide Section, was assigned to investigate the murder of Tamara Greene.

14. On information and belief, Lt. Al Bowman of the Detroit Homicide section of the Detroit Police Department was a detective assigned to investigating Greene's homicide.

15. Sgt. Marian Stevenson, a former homicide investigator who worked under Lt. Bowman, was also assigned to the Tamara Greene murder investigation. Sgt. Stevenson concluded that someone ordered Greene's murder. The basis for her belief was that (1) Greene was shot first, and (2) that Greene's passenger was able to exit the vehicle, and (3) an eyewitness reported that the shooter's vehicle turned around after shooting Greene and had the opportunity to shoot the passenger as well, but did not.

16. **According to Sgt. Stevenson, someone erased her case notes on the Tamara Greene murder investigation from her police department computer hard drive, and her zip storage files disappeared from a locked cabinet inside the police department.** Sgt. Stevenson further stated that she and her colleagues in the Homicide Section feared not only for their jobs, but for their safety if they continued to investigate the case.[2]

17. On information and belief, in the course of his investigation, regarding the identity of the shooter, Lt. Al Bowman concluded that "given the number of rounds fired with that one individual with that one gun, it was presumed it could have been someone in law enforcement."

---

[1] See *Brown v. Mayor of Detroit*, 478 Mich. 589; 734 N.W.2d 514 (2007).
[2] Sgt. Stevenson's allegations were part of her sworn testimony in the whistleblower action brought by Lt. Bowman against the City of Detroit and Defendants Ella Bully-Cummings.

18. On information and belief, Lt. Bowman gave the information directly to Defendant Police Chief Ella Bully-Cummings.

19. On information and belief, Lt. Bowman was called into a meeting with Defendants, Police Chief Ella Bully-Cummings, Assistant Chief of Police Harold Cureton, Commander Craig Schwartz, and Lt. Billy Jackson, and was directed by them to cease investigating Greene's homicide and to "put the file away".

20. On information and belief, Defendant Cara Best, Bowman's supervisor ordered Bowman to be transferred out of homicide ultimately because of his investigating of Greene's homicide. He was then transferred to the 2nd Precinct, to a different position and placed on the midnight shift. When Lt. Bowman asked his immediate supervisor why he was moved to the overnight shift, Bowman was told, "I guess you've been asking too many questions about the Strawberry case."

21. On information and belief, Defendant Kilpatrick and Defendant Beatty fired Gary Brown, and Defendant Kilpatrick publicly outed and slandered Nelthrope to stop any investigation into the allegations that his wife, Carlita Kilpatrick, assaulted Ms. Greene at the Manoogian Mansion party in order to shield Mrs. Kilpatrick and otherwise protect Defendant Kilpatrick's political career.

22. Likewise, and for the same purpose, Plaintiff believes that the Defendants, individually or in concert or conspiracy with one another deliberately obstructed, chilled, terminated or otherwise interfered with the investigation of Ms. Greene's death in order to avoid putting the Mayor's wife in a position of responding to questions as to whether or not she was involved in an altercation with Ms. Greene some six months prior to her murder.

23. During the litigation and trial of Gary Brown and Harold Nelthrope's whistleblower and retaliation claims against Defendants Kilpatrick and the City of Detroit, Defendants Kilpatrick and Beatty gave sworn testimony adamantly denying that they fired Gary Brown. At trial, Defendant Kilpatrick went so far as to say that he thought Brown had "retired."

24. Last week, the Detroit Free Press reported that it obtained text messaging logs purportedly containing text messages of Defendants Kilpatrick and Beatty, wherein it appears that Beatty and Kilpatrick admitted that they did indeed fire Brown, contrary to their sworn testimony that they did not.

25. The next day, Plaintiff issued a subpoena to the Free Press for the Production of these text messaging records, and served a copy of the Subpoena on Defendants. **See Free Press Subpoena attached hereto as Exhibit 2.**

26. Shortly thereafter, Defendant Beatty announced her resignation and that her last day as Chief of Staff was to be Friday, February 8, 2008.

27. On January 29, 2008, the Free Press reported that Defendant Kilpatrick's criminal defense attorney, William Mitchell III, traveled to the headquarters of SkyTel, the apparent custodian of these records, in Jackson, Mississippi **to learn why the messages had not been erased. See Free Press Article, attached hereto as Exhibit 3.**

28. Defendants responded by filing a Motion to Quash on January 31, 2008, on the basis of overly hypertechnical technical or baseless arguments that the subpoenas either seek irrelevant information or are otherwise "premature".

29. As of the date of the filing of this Motion, Plaintiffs will have issued subpoenas and discovery requests to SkyTel and the City of Detroit seeking the following information:

    A.    Copies of any and all contracts or agreements between Skytel, Inc. and/or Bell Industries, Inc. (SkyTel's parent corporation or owner) for the provision of

communication services by Skytel, Inc. and/or Bell Industries, Inc. to the City of Detroit and any of its agencies or departments from January 1, 2002 to the present;

B. Copies of any and all records of incoming and outgoing text messages, telephone calls, and message logs, including the actual text messages originating from or received by any City of Detroit Skytel, Inc. messaging device issued to the following persons, for the periods of time set forth in Subsection D, below:

  (1) Defendant Mayor Kwame M. Kilpatrick;
  (2) Carlita Kilaptrick;
  (3) Defendant Christine Beatty;
  (4) Defendant Billy Jackson, DPD
  (5) Defendant Detroit Police Chief Ella Bully Cummings;
  (6) Defendant Harold Cureton, DPD;
  (7) Defendant Dep. Chief Cara Best, DPD;
  (8) Defendant Craig Schwartz, DPD
  (9) Asst. Chief Robert Dunlap, DPD;
  (10) Derrick Miller;
  (11) Dadan Milton;
  (12) Former Detroit Police Chief Jerry Oliver;
  (13) Paytra Williams, DPD;
  (14) Harold Nelthorpe (EPU officer);
  (15) Ofc. Lorenzo Jones, DPD (EPU officer);
  (16) Ofc. Mike Martin, DPD (EPU officer);
  (17) Walter Harris, DPD (EPU officer);
  (18) Lt. Alvin Bowman, DPD;
  (19) Sgt. Marian Stevenson, DPD
  (20) All current and former Executive Protection Unit officers of DPD
  (21) Janice Butler, Chief of Staff to Chief Ella Bully Cummings
  (22) Dep. Chief Charise Fleming-Freeman, DPD
  (23) Asst. Chief George Hall, DPD
  (24) Todd Bettison
  (25) Dep. Chief Walter Martin, DPD
  (26) Claudia Barton
  (27) Vivian Talbert
  (28) Gerard Simon
  (29) Walter Long
  (30) Ron Fleming
  (31) Brian Stair, DPD
  (32) Fred McClure, DPD
  (33) Roosevelt Lawrence, DPD
  (34) Sgt. Odell Godbold, DPD

C. Copies of any and all records of incoming and outgoing emails, including the actual emails, and instant messaging logs, including the actual instant messages, originating

from or received by any persons named above during the time periods set forth in Subsection D, below.

D. REQUESTS DESCRIBED IN SUBSECTIONS B AND C ARE LIMITED IN SCOPE TO THE FOLLOWING TIME PERIODS:
   i) September 1, 2002 to May 10, 2003;
   ii) May 11, 2003 through the date of which the Tamara Greene murder investigation was designated a Cold Case, and for a period of two weeks thereafter;
   iii) The period of time beginning two weeks before Gary Brown and Harold Nelthrope filed their lawsuit against Defendant Kilpatrick and the City of Detroit, and ending two weeks after the last Defendant was served with the Summons and Complaint in that case;
   iv) The period of time beginning two weeks before Alvin Bowman filed his lawsuit against the City of Detroit, and ending two weeks after the last Defendant was served with the Summons and Complaint in that case;
   v) October 1, 2007 to October 31, 2007; and
   vi) All other time periods not otherwise identified herein beginning May 11, 2003 and ending September 30, 2007.

E. The complete homicide investigation file concerning Ms. Tamara Greene, including the actual file folder(s) that contain the file;

F. The complete file concerning the so-called "unauthorized investigations" (as testified to by Defendant Kilpatrick in his deposition in the Brown/Nelthrope litigation) that were conducted by former Deputy Chief Gary Brown, per the 5 page memo dated April 24, 2003 and April 30, 2003, including, without limitation, those investigations related to the alleged wild party at the Manoogian Mansion, overtime abuses by EPU officers, drinking on the job, and crashing of police cars and repairing them at unauthorized facilities;

G. All activity logs, duty logs and run sheets for the Detroit Police Department, 7th Precinct, from September 1, 2002, to May 1, 2003;

H. Forensics Testing Unit regarding any evidence from the Greene murder investigation;

I. Evidence Technician Unit logs regarding any evidence from the Greene murder investigation;

J. Evidence Room logs regarding any evidence from the Greene murder investigation;

K. Ballistics and any other scientific reports regarding any evidence from the Greene murder investigation;

L.  All video and audio recordings taken or otherwise created at the Manoogian Mansion, from September 1, 2002, to the first day Defendant's family moved into the Manoogian Mansion; and

M.  All video and audio recordings that are in anyway related to Tamara Greene, or to any investigation related in the 5 page memo dated April 24, 2003 and April 30, 2003; including any and all witness interviews taken in connection with the Tamara Gree.

30. The email, instant messaging and text messaging records will likely memorialize communications by and between the Defendants and their agents regarding the two investigations. Indeed, Defendant Kilpatrick and Beatty's text messages clearly showed they lied. They not only lied and committed perjury; they did so regarding the very issues that are related to this case.

31. The remaining document requests seek information and records that are clearly relevant to the claims asserted by Plaintiff in this action because they deal with or come from sources that were directly instrumental in either the investigation or the cover-up, again, as already illustrated by the modest release of text messages already received.

32. In light of (a) Sgt. Stevenson's testimony at the trial of Lt. Bowman's civil retaliation case that her computer drive was erased and the back up drive was stolen; (b) Kilpatrick and Beatty's apparent false testimony regarding the termination of Gary Brown; (c) jury verdicts that Bowman, Brown and Nelthrope were retaliated against by some of these Defendants for conducting the investigations described herein; (d) the fact that Defendant Beatty has continuing access to city files and records until February 8, 2008; (e) Bowman and Stevenson's trial testimony that they felt their careers and physical safety were jeopardized while conducting this investigation; and (f) reports that Defendant Kilpatrick's attorney, Mr. Mitchell, has recently traveled to Mississippi apparently to persuade SkyTel to have the text records erased, Plaintiff

has significant concerns that Defendants will act to conceal, alter or otherwise destroy crucial evidence in this case unless they are specifically ordered to refrain from doing so by this Court.

33. Accordingly, Plaintiff respectfully requests that this Court issue an order enjoining Defendants, Skytel and all of their agents, attorneys, employees and any other person acting on their behalf from destroying, damaging, altering, concealing, disposing of, or otherwise interfering with the production of (a) all of the evidence and records identified in this Motion and brief in support; and (b) any unique, relevant evidence, whether identified here or not that might be useful to Plaintiff, including any document likely to have discoverable information that the disclosing party may use to support its claim or otherwise oppose Defendants' defenses.

34. There was a conference between the undersigned counsel and defense counsel Mayer Morganroth pursuant to L.R. 7.1(a)(1), (2) in which the movant explained the nature of the Motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant this Motion, and tax costs against Defendants for unreasonably withholding of consent to the relief sought herein.

Respectfully Submitted,

Dated: February 1, 2008

/s/ **Robert S. Zawideh**
Norman Yatooma & Associates, P.C.
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600
zawideh@normanyatooma.com

# BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO PRESERVE EVIDENCE

TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

QUESTION PRESENTED ........................................................................................... iii

I.   ARGUMENT ......................................................................................................... 1

    *a.*  *Defendants have a duty to preserve all evidence they know or should know is relevant to the pending litigation.* ............................................................................................. 1

    *b.*  *This Court should enter an Order preserving the requested evidence because such evidence is relevant, material and discoverable.* ................................................................ 2

CERTIFICATE OF SERVICE ................................................... **Error! Bookmark not defined.**

TABLE OF AUTHORITIES

**Federal Cases**

*Clark Constr. Group v. City of Memphis*, 229 F.R.D. 131 (2005) .................................................. 1

*Nation-Wide Check Corp. v. Forest Hills Distributors*, 692 F.2d 214 (1st Cir. 1982) ................... 1

*Silvestri v. General Motors, Corp.*, 271 F.3d 583 (4th Cir. 2001) .................................................. 1

*Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68 (S.D.N.Y. 1991) .......................................... 1

**Rules**

Fed. R. Civ. P. 26(a)(1)(A) ................................................................................................................ 2

**Treatises**

2 John Henry Wigmore, *Evidence in Trials at Common Law* § 291 (James H. Chadbourn rev. 1979) .................................................................................................................................................. 1

## QUESTION PRESENTED

WHETHER THIS COURT SHOULD ENTER AN ORDER REQUIRING DEFENDANTS AND SKYTEL TO PRESERVE ALL EVIDENCE REQUESTED BY PLAINTIFF IN HIS MOTION, INCLUDING ANY EVIDENCE REGARDING TEXT MESSAGES, TEXT MESSAGE LOGS, EMAILS, AND INSTANT MESSAGES FROM DEFENDANTS' SKYTEL-ISSUED PAGING DEVICES.

I. ARGUMENT

   *a. Defendants have a duty to preserve all evidence they know or should know is relevant to the pending litigation.*

It is a well-established and long-standing principle of law that a party's intentional destruction of evidence relevant to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. See, e.g., *Nation-Wide Check Corp. v. Forest Hills Distributors*, 692 F.2d 214, 217-18 (1st Cir. 1982); 2 John Henry Wigmore, *Evidence in Trials at Common Law* §291 (James H. Chadbourn rev. 1979). In order for an adverse inference to arise from the destruction of evidence, the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed. This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation--most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation. See *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72-73 (S.D.N.Y. 1991).

"A party has a duty to preserve all evidence that it knows or should know is relevant to any present or future litigation." *Clark Constr. Group v. City of Memphis*, 229 F.R.D. 131 (2005) (emphasis added); see also *Silvestri v. General Motors, Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). Before determining if sanctions are appropriate, the Court must first determine the trigger date when a party is on notice to safeguard evidence. The trigger date is the date a party is put on notice that it has a duty to preserve evidence. After determining the trigger date, the Court must also determine the scope of the duty to preserve. Although a party is under no duty to "preserve every shred of paper, every e-mail or electronic document" and the like, nevertheless, a party

1

"**<u>must not destroy unique, relevant evidence that might be useful to an adversary.</u>**" *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). This includes any document made by an individual "likely to have discoverable information that the disclosing party may use to support its claim or defenses." FED. R. CIV. P. 26(a)(1)(A). The duty to preserve extends to all relevant documents from the time the trigger date passes and continues thereafter. See *Zubulake*, 220 F.R.D. at 218.

> *b. This Court should enter an Order preserving the evidence requested by Plaintiff because such evidence is relevant, material and discoverable.*

Several of these Defendants were on notice of their duty to preserve evidence as early as 2003, as a result of the Whistleblower lawsuits filed by Brown, Nelthrope and Bowman, and certainly no later than the filing of this lawsuit in November of 2005.

Further, the Defendants' conduct and the facts of this case strongly support the necessity of an order protecting the evidence and preserving the status quo. As stated in the accompanying Motion, Sgt. Stevenson testified at the trial of Lt. Bowman's civil retaliation case that her computer drive was erased and the back up zip drive was stolen. The text messages obtained by the Detroit Free Press make clear that Defendants Kilpatrick and Beatty committed perjury in denying under oath that they fired Gary Brown (notably, Defendant Kilpatrick's recent public apology contained no denial of the perjury allegations swirling around he and Defendant Beatty in the press. Two Wayne County juries rendered verdicts that Bowman, Brown and Nelthrope were retaliated against by some of these Defendants for the investigation of Ms. Greene's murder and the alleged party at which she was allegedly assaulted by Mrs. Kilpatrick. Defendant Beatty, who committed perjury during one of those trials, and who is romantically linked to Defendant Kilpatrick, has continuing access to city files and records until she formally steps down as the Mayor's Chief of Staff on February 8, 2008. Sgt. Stevenson testified that she felt her career and

physical safety were jeopardized while conducting this investigation. Finally, Defendant Kilpatrick's attorney, Mr. Mitchell, is apparently on a mission to persuade SkyTel to have the text records erased, despite the fact that he, as an attorney, is presumed to be fully aware of a party's duty and obligation not to destroy evidence that may be relevant to pending litigation.

In order to ensure the integrity of this process, this Court issue an order enjoining Defendants, Skytel and all of their agents, attorneys, employees and any other person acting on their behalf from destroying, damaging, altering, concealing, disposing of, or otherwise interfering with the production of (a) all of the evidence and records identified in this Motion and brief in support; and (b) any unique, relevant evidence, whether identified here or not that might be useful to Plaintiff, including any document likely to have discoverable information that the disclosing party may use to support its claim or otherwise oppose Defendants' defenses.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant this Motion, and tax costs against Defendants for unreasonably withholding of consent to the relief sought herein.

Respectfully Submitted,

Dated: February 1, 2008

/s/ **Robert S. Zawideh**
Norman Yatooma & Associates, P.C.
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600
zawideh@normanyatooma.com

3

# CERTIFICATE OF SERVICE

I certify that I caused a true and correct copy of:

Plaintiff's Emergency Motion to Preserve Evidence and this Certificate of Service to be served upon:

**City of Detroit Law Department**
By: John A. Schapka (P36731)
Attorneys for Defendants
1650 First National Building
Detroit, Michigan 48226
(313) 224-4550
schaj@law.ci.detroit.mi.us

**Morganroth & Morganroth, PLLC**
By: Mayer Morganroth (P17966)
By: Jeffrey Morganroth (P41670)
Attorneys for Defendants
3000 Town Center, Ste. 1500
Southfield, Michigan 48075
(248) 355-3084

by ECF filing on February 1, 2008.

**/s/ Robert S. Zawideh**
Norman Yatooma & Associates, P.C.
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600
bobel@normanyatooma.com