**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ERNEST FLAGG, as Next Friend
of JONATHAN BOND,

        Plaintiff,

v.

        Case No. 05-74253
        Hon. Gerald E. Rosen

CITY OF DETROIT, *et al.,*

        Defendants.

_____/

**OPINION AND ORDER REGARDING
DEFENDANTS' MOTIONS TO QUASH SUBPOENAS
AND OTHER DISCOVERY-RELATED MATTERS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    March 20, 2008

PRESENT: Honorable Gerald E. Rosen
                 United States District Judge

Presently before the Court are four motions filed by Defendants seeking to quash subpoenas served by Plaintiff upon (i) the City of Detroit's text messaging service provider, Bell Industries, Inc. (d/b/a SkyTel), (ii) the City of Detroit's chief information officer, Derrick Miller, and (iii) Kym Worthy and Elizabeth Walker of the Wayne County Prosecutor's Office. The Court addressed these motions, along with a number of other matters, at a March 14, 2008 status conference attended by counsel for the parties. Having reviewed the parties' submissions in support of and opposition to Defendants'

motions, and having considered the statements of counsel at the status conference, the Court now is prepared to rule on these motions.[1] This opinion sets forth the Court's rulings on Defendants' motions to quash, as well as the Court's rulings on other discovery-related matters addressed at the March 14 status conference.[2]

I.      Issues Common to Each of Defendants' Motions

While certain of the arguments advanced in Defendants' four pending motions to quash are specific to a particular subpoena, Defendants have raised the same three general challenges to each of Plaintiff's subpoenas. As discussed below, the Court finds no basis in these general objections to quash any of the subpoenas.

First, Defendants assert that Plaintiff has repeatedly violated a requirement in Fed. R. Civ. P. 45 that parties be given prior notice before documents are sought via a subpoena. Specifically, where, as here, a subpoena "command[s] production of documents and things," the party issuing the subpoena must give "[p]rior notice" to "each party." Fed. R. Civ. P. 45(b)(1). Here, Defendants complain that Plaintiff's counsel has consistently issued non-party subpoenas either before or, at best, simultaneously with

---

[1] Apart from the above-cited motions, Defendants also have filed a motion to quash a subpoena evidently issued to the Detroit Free Press, through which Plaintiff sought the production of the text messages obtained by the newspaper and referenced in its recent stories regarding text messages exchanged back in 2002-03 between Detroit mayor Kwame Kilpatrick and the mayor's former chief of staff, Christine Beatty. Plaintiff's counsel indicated at the status conference, however, that the Free Press subpoena has been withdrawn. Accordingly, Defendants' motion to quash this subpoena is now moot.

[2] In addition to discovery-related topics, the Court and counsel also discussed Defendants' pending motion to dismiss. The Court's ruling on this motion will be set forth in a separate order.

service of a copy of the subpoena upon Defendants. As Defendants note, this frustrates one of the purposes of Rule 45's prior notice provision as recognized in the Advisory Committee notes — namely, to give parties an opportunity to raise objections before the subject of the subpoena turns over the requested documents. See Fed. R. Civ. P. 45, advisory committee's notes to 1991 amendments.

In response, Plaintiff acknowledges that the subpoenas in question might have been *issued* on or before the dates that notice was given to Defendants, and that copies of these subpoenas might have been provided to the non-party subjects through informal means (*e.g.,* by fax). Yet, he insists that no subpoenas were actually *served* upon these non-parties until after Defendants were given notice of them. Plaintiff also notes that, as a practical matter, Defendants plainly have had an opportunity to timely object, where they successfully filed the present motions to quash before any documents were actually produced under the subpoenas.

While the Court shares Defendants' concern about the practice employed by Plaintiff's counsel, it nonetheless declines to quash Plaintiff's subpoenas on this ground. It is true, as Defendants observe, that the time frames for compliance with the subpoenas were quite short, sometimes calling for the production of documents before Plaintiff actually claims to have served the subpoena in question.[3] This raises the concern, as

---

[3]Plaintiff's initial subpoena to SkyTel, for example, evidently was faxed to SkyTel and Defendants alike on February 1, 2008, and called for the production of documents on February 8, 2008, but was not formally served upon SkyTel until February 14, 2008.

Defendants point out, that the subpoenas were faxed in an effort to induce the subjects to quickly produce the requested documents despite the lack of formal service — an effort which, if successful, plainly would defeat the intended purpose of the Rule 45 requirement of prior notice. Nevertheless, because no such production actually occurred prior to Defendants' opportunity to object, the Court finds it unnecessary to quash the subpoenas. Rather, the Court instructs Plaintiff's counsel to abandon the practice of informally providing copies of subpoenas to their subjects prior to serving notice on each party, and to instead adhere strictly to both the letter and spirit of Rule 45's command of prior notice when serving any further subpoenas in this case.

Defendants next object that Plaintiff's subpoenas are premature where, at the time Defendants filed their motions, the parties had not yet met and conferred in accordance with Fed. R. Civ. P. 26(f) and had not made their initial disclosures.[4] As Plaintiff observes in response, however, this Court issued initial and amended notices of scheduling conferences in December of 2007, each of which expressly stated that "counsel are instructed to commence significant discovery prior to the conference." While Defendants argue that this is not a "court order" within the meaning of Rule 26(d) that would permit discovery prior to a Rule 26(f) conference, this Court has consistently

---

[4]Defendants indicate that this delay is due, at least in part, to the fact that two co-defendants, deputy police chief Cara Best and police lieutenant Billy Jackson, apparently have yet to be served with the second amended complaint, while a third co-defendant, deputy police chief Harold Cureton, was only recently served with the complaint. Defendants also note that at least some of Plaintiff's subpoenas were issued before they responded to the second amended complaint by filing their February 8, 2008 motion to dismiss.

4

construed its notices as constituting such an "order." In any event, now that a scheduling conference has been held and a scheduling order issued (both on January 4, 2008), any failure by the parties to convene a Rule 26(f) conference cannot possibly excuse them from going forward with discovery.[5] Thus, whether or not one or more of Plaintiff's subpoenas might have been premature when issued, this is no longer the case, and Defendants' objection on this score provides no basis to quash the subpoenas.

Finally, Defendants broadly contend that any discovery would be unnecessary and an undue burden in light of their pending motion to dismiss. Through this motion, Defendants seek the dismissal of Plaintiff's complaint in its entirety on the pleadings alone, and it follows, in their view, that the disposition of this motion will not be affected by anything Plaintiff might learn in discovery. In response, Plaintiff argues that any stay of discovery should turn largely upon (i) the likelihood that Defendants' motion will be granted, and (ii) the prospect that discovery might shed light on the issues raised in this motion. As to these issues, Plaintiff observes that Defendants rely largely on their conclusory assertion that their motion is likely to succeed, and he argues that this self-serving statement is insufficient to warrant a stay of discovery.

The Court need not assess the likelihood that Defendants might ultimately succeed in their legal challenge to the claim asserted by Plaintiff in this case, because it finds that there is a reasonable prospect that the evidence unearthed by Plaintiff in discovery might

---

[5]The Court also was informed at the March 14 status conference that the parties' counsel had met and conferred in accordance with Rule 26(f) prior to appearing at the status conference.

prove relevant to the outcome of this challenge. In the Court's view, perhaps the central issue raised in Defendants' motion is the legal effect of Plaintiff's failure to pursue a state-court wrongful death action before bringing this suit. As the parties recognize, the resolution of this issue turns largely upon the Court's reading of the Sixth Circuit's decision in <u>Swekel v. City of River Rouge</u>, 119 F.3d 1259 (6th Cir. 1997). In that case, the court endorsed the general rule that "[b]efore filing an 'access to courts' claim, a plaintiff must make some attempt to gain access to the courts; otherwise, how is this court to assess whether such access was in fact 'effective' and 'meaningful'?" <u>Swekel</u>, 119 F.3d at 1264. Yet, in an accompanying footnote, the court acknowledged, without elaboration or further explanation, that "in some instances it would be completely futile for a plaintiff to attempt to access the state court system." 119 F.3d at 1264 n.2. The court then stated that this "futility" exception was inapplicable to the case before it, where the plaintiff had not "presented evidence" that resort to the state courts would have been futile in that case. 119 F.3d at 1264 n.2.

In his response to Defendants' motion here, Plaintiff points to evidence uncovered in his limited discovery efforts to date that, in his view, illustrates the futility of any wrongful death suit he might have brought in state court. With its reference to a lack of "evidence" of futility in that case, <u>Swekel</u> seemingly invites the sort of fact-based distinction that Plaintiff seeks to make here. Certainly, the case law addressing <u>Swekel</u>'s "futility" exception — or, more accurately, the dearth of such case law — provides little

or no guidance as to what evidence would or would not suffice to invoke this exception. Against this backdrop, the Court is reluctant to predict that Plaintiff's discovery efforts can have no impact upon the proper disposition of this key issue.[6]

Beyond this case-specific consideration, it is this Court's usual practice to instruct the parties to proceed with discovery despite a pending motion to dismiss — as least so long as the motion does not raise issues of qualified immunity (which Defendants' motion does not). Upon reviewing Defendants' motion and the record as a whole, the Court is not persuaded that it should deviate from its usual practice in this case. Rather, the Court finds that Plaintiff may proceed with discovery, including the subpoenas now under consideration — provided, of course, that these subpoenas survive the additional challenges raised by Defendants. The Court now turns to these remaining objections.

## II.    Defendants' Motions to Quash the SkyTel Subpoenas

Two of Defendants' four motions to quash concern subpoenas issued by Plaintiff to the Defendant City of Detroit's text messaging service provider, SkyTel. The first, dated February 1, 2008, seeks (i) copies of all contracts or agreements between SkyTel and the City of Detroit from 2002 to the present for the provision of communications services to the City or any of its departments or agencies, and (ii) copies of any incoming or outgoing text messages, e-mails, or telephone calls, together with any corresponding

---

[6]Indeed, at the March 14 status conference, the Court indicated that Defendants' motion to dismiss would likely be denied on precisely this ground. As noted earlier, the Court will address its disposition of Defendants' motion to dismiss in a separate order to be issued soon.

message logs, that originated from or were received by the text message devices issued to any of 34 named individuals — including Detroit Mayor Kwame Kilpatrick, his wife Carlita Kilpatrick, the other individual defendants named in Plaintiff's complaint, and a number of current and former Detroit police officials or employees — during a number of different time periods — which, combined, encompass essentially the entire period from September 1, 2002 through October 31, 2007. The second subpoena, dated February 11, 2008, seeks any and all text messages, e-mails, or telephone calls sent or received by *any* City of Detroit employee between 1:30 a.m. and 5:30 a.m. on the morning of April 30, 2003 (the date Plaintiff Jonathan Bond's mother, Tamara Greene, was killed), along with any records or data relating to such communications.

In their motions to quash these two subpoenas, Defendants argue that Plaintiff's requests are overbroad, unduly burdensome, and harassing, and that the materials they encompass are irrelevant. Defendants contend, as a threshold matter, that any communications that pre-date Ms. Greene's death could not possibly be relevant to Defendants' alleged concealment of evidence relating to her death. More generally, Defendants point out that Plaintiff cannot possibly claim that each and every text message sent by dozens of individuals over a several-year period is relevant to the claims and allegations in this case. Defendants further maintain that the documents responsive to Plaintiff's subpoenas surely will number in the millions.[7] Finally, Defendants argue

---

[7]Defendants apparently have derived this estimate by extrapolating from a Detroit Free Press report that Defendant Christine Beatty sent or received roughly 14,000 text messages —

that Plaintiff's requests surely encompass materials that are protected by one or more privileges — *e.g.,* the attorney/client or deliberative process privileges — or that unduly infringe upon privacy interests, both of the named defendants and of non-parties.

In response, Plaintiff first notes that the target of his subpoenas, SkyTel, has yet to complain of any undue burden, but instead has indicated in a February 8, 2008 e-mail to counsel that it "stands ready to comply" with this Court's ruling on Defendants' motion to quash. Accordingly, Plaintiff argues, and the Court agrees, that Defendants' claim of undue burden is unsupported and wholly speculative, at least at the present juncture.[8] While SkyTel certainly is entitled, if it wishes, to present arguments as to the burden or expense it will incur in complying with Plaintiff's subpoenas, and while the Court agrees with Defendants, as discussed below, that Plaintiff's requests are overbroad in certain respects, the Court finds no basis to conclude, at present, that compliance with

---

for an average of approximately 3,500 per month — during a pair of two-month periods in the fall of 2002 and the spring of 2003. There is no way of knowing, of course, whether Ms. Beatty's use of text messaging was typical, or whether she was unusually prolific in this regard.

[8]Plaintiff also contends that Defendants should have filed their motion to quash in the Southern District of Mississippi, which issued the SkyTel subpoenas, and that Defendants lack standing to lodge objections to the SkyTel subpoenas absent a showing of a "personal right or privilege" that is implicated by the subpoenas. As Defendants point out, however, Fed. R. Civ. P. 45(c), with its reference to the court that issued the subpoena, does not supersede the authority of the court in which a case is pending to exercise control over the parties' discovery efforts in that case. Moreover, Defendants contend, and the Court agrees, that they surely do have standing to challenge the subpoenas, where they have expressly asserted that these subpoenas encompass materials that are protected by privileges belonging to one or more of them, and where the overbreadth of Plaintiff's requests threatens to unduly invade the privacy and other rights of one or more defendants. Consequently, the Court finds that Defendants have properly challenged the SkyTel subpoenas before this Court.

appropriately tailored subpoenas would be impracticable.

Neither can the Court accept Defendants' blanket assertion that *none* of the communications sought in Plaintiff's subpoenas meet the relatively low threshold for discovery as set forth in Fed. R. Civ. P. 26(b)(1). First, with regard to Defendants' specific claim that communications pre-dating Ms. Greene's death cannot possibly meet this standard, Plaintiff points to the alleged Manoogian Mansion party in the fall of 2002 as one particularly significant event that allegedly occurred during this time period. According to the complaint, this party (and the incidents that allegedly transpired there) provided the motive, in whole or in part, for Defendants' alleged cover-up of the circumstances surrounding Ms. Greene's death a few months later. There is no basis, then, for a blanket prohibition against discovery of communications made prior to April 30, 2003. Similarly, it cannot seriously be contended that each and every communication made after this date is irrelevant, no matter what its content.

Yet, it surely is also true, as Defendants observe, that a significant number of the communications encompassed within Plaintiff's two subpoenas *are* wholly irrelevant to the claims and allegations made in this case. Just as the Court has rejected Defendants' blanket objection that the communications in question are *not* discoverable regardless of their subject matter, the Court cannot accept Plaintiff's contention that these communications *are* discoverable without regard to their content. The truth plainly lies between the two extremes advocated by the parties — each communication is

discoverable insofar as it is "not privileged" and is "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1).

Upon addressing this point with counsel at the March 14 status conference, the Court has decided upon, and counsel indicated their consent to, a mechanism and set of parameters for the discovery of text messages held by SkyTel. As a general matter, this will entail (i) the designation of two Magistrate Judges to review these text messages, which SkyTel will provide to the Court under seal, and make the initial determination as to which of them are discoverable under the standard of Rule 26(b)(1), (ii) an opportunity for Defendants to present objections to the Magistrate Judges' determination, whether as to discoverability or as to any privileges that they believe are applicable, and (iii) an opportunity for Plaintiff to respond to Defendants' objections. At the conclusion of this process, the Court will determine which of the text messages identified by the Magistrate Judges as discoverable should be disclosed to Plaintiff, subject to a protective order that the parties are negotiating. The precise details of this procedure are set forth in a separate order accompanying this opinion.

As a first step toward implementing this process, Defendants have begun gathering certain information needed by SkyTel to identify the text messages that fit within the time and other parameters established by the Court. Specifically, the Court was informed at the March 14 conference that SkyTel cannot, at least as a general matter, retrieve text messages by reference to the names of the individuals who sent or received

11

the messages in question. Rather, SkyTel must be supplied with identification numbers — referred to by counsel at the March 14 conference as "PIN" numbers — corresponding to the text messaging devices used by the individuals whose messages will be subject to the Magistrate Judges' review. Accordingly, defense counsel has begun to gather these "PIN" numbers for each SkyTel text messaging device issued to a City of Detroit official or employee during the relevant time periods encompassed by Plaintiff's subpoenas. These identification numbers, along with the names of the individuals associated with each such number and the time periods during which these individuals were assigned a particular number, shall be provided by Defendants to Plaintiff's counsel on or before **Friday, March 28, 2008,** absent further order of the Court. As explained in the accompanying order, Plaintiff's and Defendants' counsel will then meet with the Magistrate Judges to establish a process for obtaining and commencing the review of text messages maintained by SkyTel.

**III. Defendants' Motion to Quash the Subpoena Served Upon the City of Detroit's Chief Information Officer.**

In a subpoena dated February 11, 2008, Plaintiff requests that non-party Derrick Miller, the City of Detroit's chief information officer, produce copies of any communications between him and Defendants Kilpatrick and/or Beatty at any time during 2003. Beyond the various general objections discussed earlier, and beyond a claim of overbreadth, where the subpoena includes no limitations upon the subject matter of the communications, Defendants argue that it is inappropriate for Plaintiff to issue

subpoenas to individuals, such as Mr. Miller, who are agents and representatives of a party, the City of Detroit. Rather, Defendants contend that Plaintiff's document request should properly be made under Rule 34. In response, Plaintiff observes that Rule 45 refers only to "persons" upon whom subpoenas may be served, and that nothing in the express language of the Rule prohibits the issuance of subpoenas to parties.

As is evident from the parties' submissions, there is a split of authority as to whether a Rule 45 subpoena is a proper device for obtaining documents from parties or their agents or representatives. Compare <u>Mortgage Information Services, Inc. v. Kitchens</u>, 210 F.R.D. 562, 565-66 (W.D.N.C. 2002) (allowing such use), with <u>Hasbro, Inc. v. Serafino</u>, 168 F.R.D. 99, 100 (D. Mass. 1996) (holding that Rule 45 subpoenas should be limited to non-parties). This Court is of the view that a Rule 34 document request, rather than a Rule 45 subpoena, is the preferred mechanism for seeking documents from parties or their agents. Rule 34(c) seemingly suggests as much, at least by negative implication, stating that "[a] person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." Moreover, as one treatise observes, "[t]he only apparent reason for proceeding under Rule 45 would be to obtain the documents in less than the 30 days required by Rule 34." William W. Schwarzer *et al.,* <u>Federal Civil Procedure Before Trial</u>, ¶ 11:1809.6.

Plaintiff has not identified any such need for expedited production here, nor has he

otherwise suggested why he could not obtain the desired materials through a Rule 34 document request. Under these circumstances, the Court grants Defendants' motion to quash the subpoena served upon Derrick Miller. Plaintiff remains free to seek the production of the same or similar materials under Rule 34, and Defendants, in turn, remain free to raise any available objections to such a document request. The Court declines to decide, at this juncture, whether such a request would comport with the discovery standard set forth in Rule 26(b)(1).[9]

## IV. Defendants' Motion to Quash the Subpoenas Served Upon Officials of the Wayne County Prosecutor's Office.

In the final two subpoenas presently under consideration, each dated February 11, 2008, Plaintiff requests that Wayne County Prosecutor Kym Worthy and Assistant Prosecutor Elizabeth Walker produce, generally speaking, four categories of documents, to the extent that they are within Ms. Worthy's or Ms. Walker's possession or control: (i) all documents relating to any investigation by the Wayne County Prosecutor's Office or the Michigan State Police into the alleged Manoogian Mansion party or the alleged assault of Ms. Greene at the party; (ii) all documents relating to the investigations by the Detroit Police Department and the Michigan State Police into Ms. Greene's death; (iii) any communications sent or received by Ms. Worthy or Ms. Walker relating to the alleged Manoogian Mansion party, the alleged assault of Ms. Greene at the party, the

---

[9]As should be evident from the Court's discussion of the SkyTel subpoenas, however, it would be difficult to justify a broad request for all communications within a given time period, without regard to their subject matter.

Michigan State Police investigation of the alleged party, or Ms. Greene's death; and (iv) all records, monthly statements, and invoices for 2003 relating to any mobile phones, Blackberries, or other communications devices belonging to Ms. Worthy or Ms. Walker. Defendants once again have moved to quash these subpoenas on a number of grounds. In addition, Ms. Worthy has sent Plaintiff's counsel a letter stating that she objects to the subpoena served upon the Wayne County Prosecutor's Office as seeking materials that concern an ongoing criminal investigation.[10]

The federal courts have recognized a qualified law enforcement privilege that protects against the disclosure of investigative files in an ongoing criminal investigation. See, e.g., In re United States Dep't of Homeland Security, 459 F.3d 565, 568-69 (5th Cir. 2006). In determining whether this privilege applies in a particular case, the courts have considered a variety of factors, including:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or an evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10)

---

[10]Despite this objection, Plaintiff has not moved to compel the production of the documents sought in his subpoena to Ms. Worthy. See Fed. R. Civ. P. 45(c)(2)(B).

15

the importance of the information sought to the plaintiff's case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

The Court finds it unnecessary at this juncture to engage in an exhaustive consideration of these factors, particularly where this matter has not been briefed by the parties or the subjects of the subpoenas, and where the materials encompassed by these subpoenas have not been made available for *in camera* review. At this point, it is enough to note (i) that the materials in question are being sought from a non-party, (ii) that at least some of these materials may be available through ordinary discovery requests served upon one or more defendants, (iii) that the Wayne County Prosecutor's Office is actively pursuing an investigation that appears to bear at least some relation to the subject matter of the present suit, and (iv) that this investigation is not complete, but rather is at a point where compliance with the subpoenas at issue seems particularly likely to interfere with the operations and internal deliberations of the Wayne County Prosecutor's Office.

In light of these considerations, the Court finds that Plaintiff's effort to obtain documents from the Wayne County Prosecutor's Office is premature. With discovery only recently underway, and with many avenues of party discovery that Plaintiff has yet to explore, the Court believes that Plaintiff should pursue these avenues before seeking materials from non-parties who are engaged in an ongoing criminal investigation. Indeed, it is possible, if not likely, that the information learned in party discovery might enable Plaintiff to formulate more focused and better-informed requests for materials in

the Wayne County Prosecutor's possession. Thus, the Court will grant Defendants' motion to quash the subpoenas served upon Ms. Worthy and Ms. Walker, but without prejudice to Plaintiff's opportunity at a later point in discovery to renew his effort to obtain materials from the Wayne County Prosecutor's Office.[11]

## V. Other Discovery-Related Matters Addressed at the March 14 Status Conference

Apart from Defendants' motions to quash, the Court addressed other discovery-related matters at the March 14 status conference. First, the Court and counsel discussed Plaintiff's request for production of the Detroit Police Department's homicide file for the murder of Ms. Greene. In accordance with this discussion, Defendants are ordered to provide a copy of this file to Plaintiff on or before **Friday, March 28, 2008,** with this production subject to the protective order being negotiated by the parties. This deadline shall remain in effect absent further order of the Court, in the event that Defendants identify any obstacles to the production of this file and the Court agrees that an extension is warranted to address any such issues that may arise.[12]

Finally, the Court and the parties agreed that the January 4, 2008 scheduling order

---

[11]Again, the Court declines to decide at this juncture whether the materials sought in Plaintiff's subpoenas are subject to disclosure under the standards governing non-party subpoenas. It is worth noting, however, that in his response to Defendants' motion to quash, Plaintiff has utterly failed to suggest how certain of the materials sought in these subpoenas — most notably, the materials falling within the fourth category identified above — might possibly be viewed as relevant here.

[12]Defense counsel stated at the March 14 conference that the Court would be advised of any such issues on or before Friday, March 21, 2008.

in this case should be amended to extend all relevant deadlines and dates by ninety (90) days, in light of the complexities encountered by the parties in their discovery efforts to date. The newly-extended dates are set forth at the conclusion of this opinion.

## VI.  Conclusion

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' February 8, 2008 motion to quash subpoena to Bell Industries is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order. IT IS FURTHER ORDERED that Defendants' February 20, 2008 motion to quash subpoena to Bell Industries is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order. As indicated above, the Court will issue an order setting forth the parameters for the materials that must be produced under Plaintiff's two subpoenas to SkyTel, along with the procedures that will govern this production.[13]

Next, IT IS FURTHER ORDERED that Defendants' February 22, 2008 motion to quash subpoena to Derrick Miller is GRANTED, without prejudice to Plaintiff's opportunity to pursue comparable discovery under Fed. R. Civ. P. 34. IT IS FURTHER ORDERED that Defendants' February 22, 2008 motion to quash subpoenas to Kym L. Worthy and Elizabeth J. Walker also is GRANTED, but without prejudice to Plaintiff's

---

[13]Because SkyTel is not a party to this action, it will not be served with a copy of this opinion or the accompanying order in the ordinary course of issuing or docketing these rulings. Accordingly, Plaintiff's counsel is directed to promptly serve a copy of this opinion and the accompanying order on SkyTel.

opportunity later in the discovery period to again pursue the production of documents from one or both of these two non-parties. IT IS FURTHER ORDERED that Defendants' January 31, 2008 motion to quash subpoena to the Detroit Free Press is DENIED AS MOOT.

Next, and as set forth above, IT IS FURTHER ORDERED that, on or before **Friday, March 28, 2008,** Defendants shall provide to Plaintiff's counsel the identification ("PIN") numbers and corresponding names necessary to commence the process of obtaining text messages from SkyTel in accordance with the protocol to be established by the Court in a separate order. IT IS FURTHER ORDERED that, on or before **Friday, March 28, 2008,** Defendants shall produce to Plaintiff a copy of the Detroit Police Department's homicide file for the murder of Tamara Greene, subject to a protective order being negotiated by the parties, and subject to further order of the Court determining that there is cause for extending this deadline.

Finally, IT IS FURTHER ORDERED that the relevant dates and deadlines set forth in the Court's January 4, 2008 scheduling order are extended by **ninety (90) days**, as follows:

| | |
|---|---|
| Preliminary Witness Lists: | 10/17/2008 |
| Discovery Cut-Off: | 10/31/2008 |
| Non-Expert Final Witness Lists: | 11/14/2008 |
| Dispositive Motions: | 12/1/2008 |
| Proposed Joint Final Pretrial Order: | 3/20/2009 |
| Final Pretrial Settlement Conference: | Thursday, 3/26/2009 at 10:00 a.m. |
| Trial: | April 2009 |

In all other respects, the January 4, 2008 scheduling order remains in full force and effect.

SO ORDERED.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: March 20, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 20, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager