# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**Ernest Flagg,** RT†C2ngg

Dockets.Justia.com

**NOW COMES** Defendant, **CITY OF DETROIT**, by and through its attorney, KRYSTAL

A. CRITTENDON, and for its *Amended Emergency* **Motion to Stay Civil Proceedings and**

**Motion for Issuance of "Gag Order**," submits the following:

1.     Defendant has sought concurrence in this Motion pursuant to Local Rule 7.1(a) and

such concurrence was denied;

2.     This matter is on record before this Honorable Court;

3.     Plaintiff sues as Next Friend of the son of Tamara Bond Greene, who was shot and

killed in 2003 by an unknown assailant;

4.     Plaintiff's Complaint alleges that "(I)t has been widely reported in the local media

that, sometime in the fall of 2002, a wild party occurred at the Manoogian Mansion (the official home

of the Mayor of the City of Detroit).  It was rumored that Defendant Kilpatrick attended this party,

as well as several of his close friends, certain Detroit Police Offices, and nude exotic dancers,

including Tamara Bond Greene.  According to various accounts, it is alleged that Defendant

Kilpatrick's wife, Carlita Kilpatrick arrived at the party unexpectedly, and assaulted one or more of

the dancers." (Plaintiff's Complaint, paragraph 13);

5.     Plaintiff premises his claims upon an alleged failure of the City of Detroit Police

Department to conduct an investigation into the murder of Ms. Greene and complains that the

individually-named Defendants prevented an investigation from occurring;

6.     Since the initiation of the instant lawsuit, the following events have occurred:

      a.     Two of the named defendants in the instant matter, Mayor Kwame Kilpatrick
and Christine Beatty, have been charged criminally by the Wayne County
Prosecutor, Kym L. Worthy, with crimes related to a civil matter brought by
two former City of Detroit Police Department employees, Gary Brown and
Harold Nelthrope.  Brown and Nelthrope claim that they were terminated for,

among other things, investigating an alleged party which occurred at the Manoogian Mansion;

b.    Prosecutor Worthy has announced that she is continuing to investigate other City of Detroit employees and contractors who have worked with and for the City of Detroit to determine whether other criminal charges will be filed;

c.    The State Bar of Michigan has initiated an investigation into the conduct of several attorneys who testified in the employment matter involving the discharged Police Department employees, including Mayor Kilpatrick;

d.    The Detroit City Council, the legislative body for the City of Detroit, has initiated an investigation into the propriety of a settlement which followed the Brown/Nelthrope civil trial;

e.    The Attorney General for the State of Michigan, Mike Cox, has announced that he is reopening a criminal investigation he previously conducted into whether a party occurred at the Manoogian Mansion. This investigation will be conducted by the Michigan State Police;

f.    The Detroit Free Press has instituted a civil action against the City of Detroit, seeking production of text messages exchanged between certain City of Detroit employees and officials, including Mayor Kilpatrick and Christine Beatty, two defendants in the instant matter;

g.    Attorneys for Mayor Kilpatrick and Christine Beatty successfully intervened in the matter brought by the Detroit Free Press and argued that the subject text messages are prohibited from dissemination by the federal Stored Communications Act;

h.    Judge Robert Colombo, Jr., the Wayne County Circuit Court Judge before whom the Detroit Free Press civil matter is pending, decided that the subject text messages are, indeed, prohibited from dissemination by the federal Stored Communications Act;

i.    The Police Chief of the Detroit Police Department, Ella Bully-Cummings, held a press conference earlier this year, requesting information from the public relative to any information which might lead to the arrest(s) of the person(s) who murdered Tamara Greene;

j.    Since that press conference, members of the City of Detroit Police Department have been actively talking to persons who have come forth to provide information, some confidentially and have vigorously attempted to

locate witnesses. They are aggressively seeking information from Sources of Information ("SOI's"), who, if their identities are disclosed, could be caused to suffer harm and/or cease their cooperation with the Detroit Police Department;

7.  Given the fact that disclosure of the facts and information gathered by the Detroit Police Department to date concerning the Greene matter could seriously compromise the ongoing police investigation into Ms. Greene's death, Defendant City of Detroit respectfully requests that this Honorable Court stay the instant civil proceedings until the Detroit Police Department has had an opportunity to attempt to develop leads which have only recently been given to the Department;

8.  Moreover, given the ongoing investigations being conducted by the Wayne County Prosecutor's Office, Michigan State Police, Detroit City Council and State Bar of Michigan, various employees, appointees and elected officials of the City of Detroit may also have to invoke the Fifth Amendment's self-incrimination provision, if called to testify in the instant matter;

9.  The Fifth Amendment to the United States Constitution provides, in pertinent part, that no person "shall be compelled an any criminal case to be a witness, against himself, . . .";

10.  Federal Rule of Evidence 804(a)(1) provides that a witness may be declared unavailable to testify if the witness "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement";

11.  Federal Rule of Evidence 804(b)(1) provides that former testimony given by a party may be used in lieu of the party's testimony at trial under certain circumstances;

12.  As two of the individually-named Defendants have been charged criminally in a matter which is tangentially-related to the instant matter, it would not be unexpected if counsel for those Defendants advise them that they must invoke the Fifth Amendment to the United States

Constitution's protection against self-incrimination, if called to testify in the instant matter;

13.     Given the foregoing, Defendant City of Detroit respectfully requests that this Court enter an Order, staying the civil proceedings in the instant case until after the conclusion of the investigations being undertaken by the Wayne County Prosecutor's Office, Michigan State Police, Detroit City Council and State Bar of Michigan, all of which should be completed within months of the date of the filing of this Motion, and until after the criminal proceedings in the action against Mayor Kilpatrick and Christine Beatty have concluded;

14.     Defendants also submit that tendering the Homicide File involving the death of Tamara Greene to the Court in this matter will deprive the Detroit Police Department of an active Homicide File at a crucial time of the investigation;

15.     Moreover, due to the fact that the internal investigation by the Police Department has not yet been conducted, many of the records which Plaintiff may seek through discovery in this case are not yet available to defense counsel in this civil action and could not, therefore, be produced during discovery;

16.     In addition to a *Motion to Stay Civil Proceedings*, Defendant City of Detroit also submits that this Honorable Court should issue a "Gag Order" upon the parties, their counsel and any party working with or on behalf of the parties and their counsel for the following reasons:

    I.    Since the initiation of the instant matter, counsel for the parties, especially Plaintiff's counsel, have made several statements in the press, concerning the alleged misfeasance and malfeasance of the Defendants;

    II.    When counsel attended a Status Conference before this Honorable Court on March 14, 2008, the Court made it abundantly clear that it did not want this matter to be "tried in the press" and was unhappy with the number of media interviews given by the Attorneys;

III.  Since the time of the Status Conference, Plaintiff's Counsel has conducted almost daily interviews with the media and has made statements in the press which will severely hinder the Defendants ability to receive a fair trial in the instant matter.  More importantly, this type of negative media campaign will surely hinder the now criminally-charged Defendants' (Kilpatrick and Beatty's) right to receive a fair trial, as guaranteed by the United States Constitution.  (Examples: In one recent radio interview, Plaintiff's counsel stated that the City of Detroit would not "give him his client's autopsy report."  As the Court is aware, Ms. Greene is *not* Plaintiff's counsel's client and it is the Wayne County Medical Examiner's Office, not the City of Detroit, from whom Plaintiff's counsel must secure Ms. Greene's autopsy report.  Also, during that same radio program, a listener called in and stated that Ms. Greene had become pregnant on the night of the alleged party and was she was killed to cover up her pregnancy.  Rather than dispel this conspiracy theory, Plaintiff's counsel intimated something to the effect that "this would be a reason why someone would want her killed."  These type of statements are reckless and indefensible, given the fact that Plaintiff's counsel would surely know by now whether Tamara Greene was pregnant at the time of her death);

17.  Defendant City of Detroit submits that it can not act on its own, but rather, it acts through its employees, appointees and elected officials.  If the parties continue to engage in communication in and with the media concerning how "the City" has allegedly acted in this matter, then the City of Detroit and other Defendants will not be able to receive a fair trial in the instant matter;

18.  Moreover, as criminal charges have now been filed against two of the named Defendants in this case, their right to a fair criminal trial could be significantly jeopardized if the parties and/or their counsel continue to make reckless and highly prejudicial statements in and to the media;

19.  Fed.R.Civ.P. 26(c) provides that the court before whom an action is pending "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or under burden or expense, including one or more of the following: (A) forbidding the

disclosure or discovery; (B) specifying terms, including time and place, for the disclosure or discovery";

20.     Plaintiff will not be prejudiced in any manner if this Honorable Court issues a Stay of the Civil Proceedings or  a "Gag Order"; however, Defendants will be severely prejudiced if such Orders are not issued.

**WHEREFORE** Defendant, **CITY OF DETROIT**, respectfully requests that this Honorable Court issue an Order, granting its *Amended Emergency* **Motion to Stay Civil Proceedings and Motion for Issuance of "Gag Order."**

Respectfully submitted,

 s/ Krystal A. Crittendon
Assistant Corporation Counsel
CITY   OF   DETROIT   LAW   DEPARTMENT
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018
critk@law.ci.detroit.mi.us.
(P49981)

DATED:        April 7, 2008

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES ............................................................................................ ii

STATEMENT OF MATERIAL FACTS ........................................................................ 1

ARGUMENT ................................................................................................................. 1

    I.      STANDARD OF REVIEW ..................................................... 1

    II.     The Court Should Issue a Stay of Proceedings in this Matter..................... 2

          A.      The subject homicide file is currently protected from discovery by the law-enforcement privilege and Defendant City of Detroit is, therefore, entitled to a brief Stay of Proceedings so that its Police Department can investigate leads; Moreover, some of the requested information may be protected from dissemination by the Stored Communications Act...................................................... 2

          B.      Two of the individually–named Defendants in the instant matter and, potentially, other City of Detroit employees, appointees and elected officials, are entitled to invoke the Fifth Amendment's protection against self-incrimination in this matter; the civil matters should, therefore, be stayed until after proceedings in recently-filed criminal charges and recently- announced criminal investigations have concluded................................................................................ 6

    III.          The Court should issue a "Gag Order", precluding the parties, their attorneys and representatives of both from speaking publicly about the instant civil matter to allow Defendants an opportunity to receive a fair trial ...................................................... 9

CONCLUSION ............................................................................................................. 11

CERTIFICATE OF SERVICE ..................................................................................... 12

# INDEX OF AUTHORITIES

**Page(s)**

Bridges v California, 314 U.S. 252 (1941)........................................................... 11

Brown  v Thompson, 430 F.2d 1214 (5th Cir. 1970).......................................... 2

Frankhauser v Rizzo, 59 F.R.D. 399 (E.D. Pa. 1973).......................................... 3

Gentile v State Bar of Nev., 501 U.S. 1030 (1991)............................................. 11

Hamilton v Verdow, 287 M.D. 565 (1980)......................................................... 4

Landis v No. Am. Co., 299 U.S. 248 (1936)........................................................ 7

Pennekamp v Florida, 328 U.S. 331 (1946)......................................................... 10

People  v Ellerhorst,  163  N.W.2d  465  (1968).......................................................
        3, 4

Trustees of the Plumbers & Pipefitters Nat'l Pension Fund, 886 F.Supp 1134
        (S.D.N.Y. 1995).......................................................................................... 7

United States v Koubriti, 307 F. Supp.2d 891 (E.D. Mich., 2004)...................... 10


**Constitutional Amendments**

Fifth   Amendment   .................................................................................................
        6, 7


**Statutes and Court Rules**

42 U.S.C. § 1983................................................................................................ 2

Fed. R. Civ. P. 26(c) ......................................................................................... 2

Federal Rule of Evidence 804(a)(1)..................................................................... 7

Federal Rule of Evidence 804(b)(1)........................................................................   7

**DEFENDANT CITY OF DETROIT's**
**BRIEF IN SUPPORT OF ITS *AMENDED EMERGENCY***
**MOTION TO STAY CIVIL PROCEEDINGS and**
**MOTION FOR ISSUANCE OF "GAG ORDER"**

**NOW COMES** Defendant, **CITY OF DETROIT**, by and through its attorney, KRYSTAL

A. CRITTENDON, and for its **Brief in Support of its *Amended Emergency* Motion to Stay Civil**

**Proceedings and Motion for Issuance of "Gag Order"**, submit the following:

## STATEMENT OF RELEVANT FACTS

Plaintiff Ernest Flagg files the instant action as Next Friend of Jonathan Bond, the son of

Tamara Bond Greene, who was shot and killed on April 30, 2002. Plaintiff's Complaint alleges that

"(I)t has been widely reported in the local media that, sometime in the fall of 2002, a wild party

occurred at the Manoogian Mansion (the official home of the Mayor of the City of Detroit). It was

rumored that Defendant Kilpatrick attended this party, as well as several of his close friends, certain

Detroit Police Offices, and nude exotic dancers, including Tamara Bond Greene. According to

various accounts, it is alleged that Defendant Kilpatrick's wife, Carlita Kilpatrick arrived at the party

unexpectedly, and assaulted one or more of the dancers." (Plaintiff's Complaint, paragraph 13).

Plaintiff premises his claims upon an alleged failure of the City of Detroit Police Department

to conduct an investigation into the murder of Ms. Greene and complains that the individually-named

Defendants prevented an investigation from occurring. For the following reasons, Defendant City of

Detroit submits that this Honorable Court should stay the civil proceedings in the instant matter and

impose a "Gag Order" upon the parties, their counsel and representatives of both.

## ARGUMENT

## II.      STANDARD OF REVIEW

Fed. R. Civ. P. 26(c) provides, in pertinent part, that the court before whom an action is pending "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or under burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place.

## II.     The Court Should Issue a Stay of Proceedings in this Matter.

### A.     The subject homicide file is currently protected from discovery by the law-enforcement privilege and Defendant City of Detroit is, therefore, entitled to a brief Stay of Proceedings so that its Police Department can investigate leads; Moreover, some of the requested information may be protected from dissemination by the Stored Communications Act.

It must be stated, initially, that the parties are attempting to agree to the terms of a Protective Order which adequately protects the City of Detroit's interest in preventing the disclosure of information contained within the subject homicide file.  In the event such an Order, however, cannot be agreed upon, Defendant submits that this Honorable Court should issue an Order, precluding the content of the homicide file from being discovered at this time.

It is well settled that in an action pending in federal court, a qualified law enforcement privilege exists.  This privilege protects from discovery the disclosure of investigative material contained in files wherein there is an ongoing criminal investigation.  Brown  v Thompson, 430 F.2d 1214 (5th Cir. 1970).  In Brown, Plaintiffs, mother and widow of an individual shot and killed by law enforcement officers, filed a wrongful death action pursuant to 42 U.S.C. § 1983. During the course of civil discovery, Plaintiffs sought production of certain police files.  The Court ordered that some of the files be produced, but ordered that other files in the homicide file were protected from

discovery by the law enforcement privileged because the homicide investigation was still open and the content of the file were highly confidential. Id. at 1215. In determining whether a law enforcement privilege exists in a particular case, federal courts have looked to a numbers of factor articulated by Frankhauser v Rizzo, 59 F.R.D. 399, 344 (E.D. Pa. 1973). Of the factors that have been considered important in the cases just cited, the following are applicable in this case:

1. The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

2. The impact upon persons who have given information of having their identities disclosed;

3. The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure;

4. Whether the police investigation has been completed

5. Whether the plaintiff's suit is non-frivolous and brought in good faith;

6. Whether the information sought is available through other discovery or from other sources;

7. The importance of the information sought to Plaintiff's case.

Id. at 344. With respect to production of any reports, memoranda, notes, summaries, etc., produced, collected or generated as a result of any investigation, Defendant City of Detroit objects to their disclosure. When executive privilege or official information privilege is raised in opposition to a request for production of documents, there must be an independent determination of the extent to which the privilege applies to the material sought to be discovered. People v Ellerhorst, 163 N.W.2d 465 (1968). This determination is the result of the ad hoc balancing of: (a) the discoverant's interest in disclosure of the material; and (b) the government's interest in its confidentiality. Martinelli v Breier, 54 F.R.D. 7, 11 (N.D. Ohio, 1964).

In order to appropriately apply this balancing test, an <u>in camera</u> examination of the materials for which the executive privilege is claimed may be appropriate. <u>People</u> v <u>Ellerhorst, supra,</u> at 666, f. 4. However, an <u>in camera</u> inspection is not justified in all circumstances, because it is itself an intrusion on the privilege. <u>Hamilton</u> v <u>Verdow,</u> 287 M.D. 565; 414 A.2d 914, 926 (1980). Consequently, it is the burden of the moving party to make a preliminary showing that the documents may not be privileged, or there is some necessity for the production of the documents as was explained in <u>Hamilton, supra,</u> at 926-927.

> The certified question in this case also encompasses the role of <u>in camera</u> inspection by a court when faced with a formal executive privilege claim. It has repeatedly been stated that <u>in camera</u> inspection by the trial judge does not automatically follow whenever a claim of executive privilege is made. <u>United States</u> v <u>Nixon,</u> supra, 418 U.S. at 713; <u>United States</u> v <u>Reynolds,</u> supra, 345 U.S.Z.L. at 10; <u>Zeiss,</u> supra 40 FRD at 331; <u>Kaiser Aluminum,</u> supra, 359 NYS2d at 5-6 316. As pointed out by some of these courts, the <u>in camera</u> inspection itself is an intrusion upon the privilege. Thus, when a formal claim of executive privilege is made, with an affidavit stating that the demanded materials are of a type that fall within the scope of the privilege, they are presumptively privileged even from <u>in camera</u> inspection. The burden is on the party seeking production to make a preliminary showing that the communications or documents may not be privileged or, in those cases where a weighing approach is appropriate, that there is some necessity for production. [Citations omitted]. Mr. Justice Reed explained for the Court in the <u>Kaiser Aluminum</u> case, supra, 157 F. Supp. at 947:

> > It seems equally obvious that the very purpose of the privilege, the encouragement of open expression of opinion as to governmental policy is somewhat impaired by the requirement to submit the evidence even unilaterally. When the head of an agency claims privilege from discovery on the ground of public interest, which is recognized as a basis for the claim, it seems to us a judicial examination of the sought-for evidence itself should not be required without a much more definite showing of necessity than appears here.

> Consequently, absent such a preliminary showing by the party demanding the disclosure, the claim of executive privilege should be honored without requiring an <u>in camera</u> inspection.

> On the other hand, where a sufficient showing is made to overcome the presumption,

the court should order an <u>in camera</u> inspection. Depending upon the issues and circumstances, the <u>in camera</u> inspection may be utilized to determine whether the material is privileged, to sever privileged from non-privileged material if severability is feasible, and to weigh the government's need for confidentiality against the litigant's need for production.

In the case at hand, since the initiation of the instant lawsuit, a number of events have occurred. The Police Chief of the Detroit Police Department, Ella Bully-Cummings, held a press conference earlier this year, requesting information from the public relative to any information which might lead to the arrest(s) of the person(s) who murdered Tamara Greene. Since that press conference, members of the City of Detroit Police Department have been actively talking to persons who have come forth to provide information, some confidentially, and have vigorously attempted to locate witnesses. They are aggressively seeking information from Sources of Information ("SOI's"), who, if their identities are disclosed, could be caused to suffer harm and/or cease their cooperation with the Detroit Police Department.

Given the fact that disclosure of the facts and information gathered by the Detroit Police Department to date concerning the Greene matter could seriously compromise the ongoing police investigation into Ms. Greene's death, Defendant City of Detroit respectfully requests that this Honorable Court stay the instant civil proceedings until the Detroit Police Department has had an opportunity to attempt to develop leads which have only recently been given to the Department. Tendering the homicide file involving the death of Tamara Bond Greene to the Court in this matter will deprive the Detroit Police Department of an active homicide file at a crucial time of the investigation. Moreover, due to the fact that the internal investigation by the Police Department has not yet been conducted, many of the records which Plaintiff may seek through discovery in this case are not yet available to defense counsel in this civil action and could not, therefore, be produced

during discovery. Defendant City of Detroit, therefore, respectfully requests that this Court stay the proceedings until after the Detroit Police Department has had an adequate time to conduct an investigation.

There is another compelling reason which dictates that the civil proceedings be stayed. As the Court is surely aware, the Detroit Free Press has instituted a civil action against the City of Detroit, seeking production of text messages exchanged between certain City of Detroit employees and officials, including Mayor Kilpatrick and Christine Beatty, two defendants in the instant matter. In this matter, Wayne County Circuit Court Case Number 08-100214 CZ, Attorneys for Mayor Kilpatrick and Christine Beatty sought to intervene in the matter brought by the Detroit Free Press. Mayor Kilpatrick and Christine Beatty successfully argued to Judge Robert Colombo, Jr. that the subject text messages are prohibited from dissemination by the federal Stored Communications Act. This same argument has been presented to this Honorable Court by former counsel for Defendant City of Detroit, Mayer Morganroth. This Court, however, has not yet decided this issue. Defendant City of Detroit requests that this matter be stayed until the parties have had an opportunity to fully brief whether the requested text messages are prohibited from dissemination by the federal Stored Communications Act and this Court issues an Opinion and Order.

**B.** **Two of the individually–named Defendants in the instant matter and, potentially, other City of Detroit employees, appointees and elected officials, are entitled to invoke the Fifth Amendment's protection against self-incrimination in this matter; the civil matters should, therefore, be stayed until after proceedings in recently-filed criminal charges and recently- announced criminal investigations have concluded.**

The United States Constitution guarantees individuals the right to be compelled to incriminate themselves in criminal proceedings. The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; ***nor shall be compelled in any criminal case to be a witness, against himself***, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. (Emphasis added).

Federal Rule of Evidence 804(a)(1) provides that a witness may be declared unavailable to testify if the witness "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement." Federal Rule of Evidence 804(b)(1) provides that former testimony given by a party may be used in lieu of the party's testimony at trial under certain circumstances.

"While nothing in the Constitution requires a civil action to be stayed in the face of pending or impending criminal indictment, a court still has broad discretion in determining whether to stay a civil action while a criminal action is pending or impending." Landis v No. Am. Co., 299 U.S. 248, 254-55 (1936). Some of the factors that a court should consider and balance in determining whether to grant a stay include:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 20 the status of the case, including whether the defendants have been indicted; 3) the private interest of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

Trustees of the Plumbers & Pipefitters Nat'l Pension Fund, 886 F.Supp 1134, 1139 (S.D.N.Y. 1995).

Since filing of the case at hand, two of the named defendants, Mayor Kwame Kilpatrick and Christine Beatty, have been charged criminally by the Wayne County Prosecutor, Kym L. Worthy, with crimes related to a civil matter brought by two former City of Detroit Police Department

employees, Gary Brown and Harold Nelthrope. This matter is tangentially-related to the instant matter, in that Brown and Nelthrope claim that they were terminated for, among other things, investigating an alleged party which occurred at the Manoogian Mansion. It would not be unexpected if counsel for those Defendants advise them that they must invoke the Fifth Amendment to the United States Constitution's protection against self-incrimination, if called to testify in the instant matter.

Prosecutor Worthy has announced that she is continuing to investigate other City of Detroit employees and contractors who have worked with and for the City of Detroit to determine whether other criminal charges will be filed. Additionally, the State Bar of Michigan has initiated an investigation into the conduct of several attorneys who testified in the employment matter involving the discharged Police Department employees, including Mayor Kilpatrick. Moreover, the Detroit City Council, the legislative body for the City of Detroit, has initiated an investigation into the propriety of a settlement which followed the Brown/Nelthrope civil trial. Also, the Attorney General for the State of Michigan, Mike Cox, has announced that he is reopening a criminal investigation he previously conducted into whether a party occurred at the Manoogian Mansion. This investigation will be conducted by the Michigan State Police.

It is clear that Defendants cannot be compelled to testify in the criminal action currently pending against her in the Wayne County Circuit Court, Criminal Division, due to the protection afforded by the Fifth Amendment to the United States Constitution. However, should Defendants be required to testify or respond to discovery requests in the instant civil matter, such testimony and evidence could be used against them in the criminal action, which would violate the defendants' right to invoke the Fifth Amendment's protection against self-incrimination. Due to the pending criminal

charges against Defendants, it would be oppressive and violate the Fifth Amendment to require the defendants to give testimony and/or otherwise participate in defense of the civil action until after the criminal case has been prosecuted or aborted by the Wayne County Prosecutor.  Moreover, given the ongoing investigations being conducted by the Wayne County Prosecutor's Office, Michigan State Police, Detroit City Council and State Bar of Michigan, various employees, appointees and elected officials of the City of Detroit may also have to invoke the Fifth Amendment's self-incrimination provision, if called to testify in the instant matter.

III.     **The Court should issue a "Gag Order", precluding the parties, their attorneys and representatives of both from speaking publicly about the instant civil matter to allow Defendants an opportunity to receive a fair trial.**

Since initiation of the instant matter, counsel for the parties, especially Plaintiff's counsel, have made several statements in the press, concerning the alleged misfeasance and malfeasance of the Defendants. When counsel attended a Status Conference before this Honorable Court on March 14, 2008, the Court made it abundantly clear that it did not want this matter to be "tried in the press" and was unhappy with the number of media interviews given by the Attorneys.  Since the time of the Status Conference, Plaintiff's Counsel has conducted almost daily interviews with the media and has made statements in the press which will severely hinder the Defendants ability to receive a fair trial in the instant matter.  More importantly, this type of negative media campaign  will surely hinder the now criminally-charged Defendants' (Kilpatrick and Beatty's) right to receive a fair trial, as guaranteed by the United States Constitution. Some examples of Plaintiff's counsel recent statements in the media are as follows: in one recent radio interview, Plaintiff's counsel stated that the City of Detroit would not "give him his client's autopsy report."  As the Court is aware, Ms. Greene is *not* Plaintiff's counsel's client and it is the Wayne County Medical Examiner's Office, not the City of

Detroit, from whom Plaintiff's counsel must secure Ms. Greene's autopsy report. Also, during that same radio program, a listener called in and stated that Ms. Greene had become pregnant on the night of the alleged party and was she was killed to cover up her pregnancy. Rather than dispel this conspiracy theory, Plaintiff's counsel intimated something to the effect that "this would be a reason why someone would want her killed." These type of statements are reckless and indefensible, given the fact that Plaintiff's counsel would surely know by now whether Tamara Greene was pregnant at the time of her death.

Intense publicity surrounding a criminal proceedings poses significant dangers to a defendant's right to receive a fair trial. The right to a fair trial by "impartial" jurors is generally regarded by the Court to be one of the more fundamental rights afforded by the Constitution. United States v Koubriti, 307 F. Supp.2d 891 (E.D. Mich., 2004). Accordingly, federal courts have held that courts have an affirmative constitutional duty to minimize the potential for prejudicial pretrial publicity. Id. The beneficiaries of this duty include not only the defendant in a given trial, but other defendants as well, such as co-defendants in the same case, whose fair trial rights might be prejudiced by the extrajudicial statements of other trial participants. Id.

In Koubriti, a case involving a search for suspected terrorists after the attacks on the World Trade Center on September 11, 2001, the court issued a pre-trial "gag order" or "Order Concerning Public Communications by Parties or Lawyers." Defendants objected to the imposition of a "Gag Order" imposed upon non-classified information, claiming that it ran afoul of the First Amendment. The Court rejected Defendants' arguments, citing that the Supreme Court has repeatedly observed that "intense publicity surrounding a criminal trial proceeding poses significant dangers to a fair trial." See, e.g., Pennekamp v Florida, 328 U.S. 331 (1946); Bridges v California, 314 U.S. 252 (1941);

<u>Gentile</u> v <u>State Bar of Nev.</u>, 501 U.S. 1030 (1991).    "The vigilance of trial courts against the prejudicial effects of pretrial publicity also protects the interest of the public and the Government in the fair administration of criminal justice."  <u>Id.</u> at 897.

In the case at hand, Defendant City of Detroit submits that it can not act on its own, but rather, it acts through its employees, appointees and elected officials.  If the parties continue to engage in communication in and with the media concerning how "the City" has allegedly acted in this matter, then the City of Detroit and other Defendants will not be able to receive a fair trial in the instant matter.  In addition to a *Motion to Stay Civil Proceedings*, Defendant City of Detroit also submits that this Honorable Court should issue a "Gag" Order upon the parties, their counsel and any party working with or on behalf of the parties and their counsel.  As criminal charges have now been filed against two of the named Defendants in this case, their right to a fair criminal trial could be significantly jeopardized if the parties and/or their counsel continue to make reckless and highly prejudicial statements in and to the media.  Plaintiff will not be prejudiced in any manner if this Honorable Court issues a Stay of the Civil Proceedings or a "Gag" Order; however, Defendants will be severely prejudiced if such Orders are not issued.

## CONCLUSION

Given the foregoing, Defendant City of Detroit respectfully requests that this Court enter an Order, staying the civil proceedings in the instant case until after the conclusion of the investigations being undertaken by the Wayne County Prosecutor's Office, Michigan State Police, Detroit City Council and State Bar of Michigan, all of which should be completed within months of the date of the filing of this Motion, and until after the criminal proceedings in the action against Mayor Kilpatrick and Christine Beatty have concluded.  In addition to a *Motion to Stay Civil Proceedings*,

Defendant City of Detroit also submits that this Honorable Court should issue a "Gag" Order upon the parties, their counsel and any party working with or on behalf of the parties and their counsel.

**WHEREFORE** Defendant, **CITY OF DETROIT**, respectfully requests that this Honorable Court issue an Order, granting its *Amended Emergency* **Motion to Stay Civil Proceedings and Motion for Issuance of "Gag" Order**.

Respectfully submitted,

 s/ Krystal A. Crittendon
Assistant Corporation Counsel
CITY OF DETROIT LAW DEPARTMENT
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018
critk@law.ci.detroit.mi.us.
(P49981)

DATED:     April 7, 2008

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2008, after unsuccessfully seeking concurrence in the foregoing *Motion* and *Brief in Support*, I electronically filed the foregoing paper with the Clerk of the Court using the ECT system, which will send notification of such filing to the following:

| | |
|---|---|
| **NORMAN A. YATOOMA (P54746)** | **MAYER MORGANROTH (P17966)** |
| **ROBERT S. ZAWIDEH (P43787)** | **JEFFREY B. MORGANROTH (P41670)** |
| 219 Elm Street | 3000 Town Center, Suite 1500 |
| Birmingham, MI   48009 | Southfield, MI   48075 |
| (248) 642-3600 | (2480 355-3084 |
| nya@normanyatooma.com | jmorganroth@morganrothlaw.com |

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: N/A.

Respectfully submitted,

 s/ Krystal A. Crittendon
Assistant Corporation Counsel
CITY   OF   DETROIT   LAW   DEPARTMENT
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018
critk@law.ci.detroit.mi.us.
(P49981)

DATED:       April 7, 2008