# UNITED STATES OF AMERICA
## IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of  
JONATHAN BOND, a minor,

Case No.: 05-CV-74253  
Hon. Gerald Rosen

      Plaintiff,

-vs-

CITY OF DETROIT, a municipal corporation;  
DETROIT POLICE CHIEF ELLA BULLY-CUMMINGS;  
DEPUTY DETROIT POLICE CHIEF CARA BEST;  
JOHN DOE POLICE OFFICERS 1 - 20;  
ASST. DEPUTY POLICE CHIEF HAROLD CURETON;  
COMMANDER CRAIG SCHWARTZ;  
POLICE LT. BILLY JACKSON;  
MAYOR KWAME M. KILPATRICK,  
CHRISTINE BEATTY, jointly and severally

      Defendants.

_____/

**Norman Yatooma & Associates, P.C.**  
By: Norman A. Yatooma (P54746)  
By: Robert S. Zawideh (P43787)  
Attorneys for Plaintiff  
219 Elm Street  
Birmingham, Michigan 48009  
(248) 642-3600

**JAMES C. THOMAS**  
By: James C. Thomas (P23801)  
Attorneys for Defendant Mayor Kwame Kilpatrick  
535 Griswold Street  
Suite 2632  
Detroit, Michigan 48226  
(313) 963-2420

**Plunkett Cooney**  
By: Kenneth L. Lewis (P26071)  
By: Randal M. Brown (P70031)  
Attorneys for Defendant Ella Bully-Cummings  
535 Griswold, Suite 2400  
Detroit, MI 48226  
(313) 983-4790

**City of Detroit Law Department**  
By: Krystal A. Crittendon (P49981)  
Attorney for Defendants City of Detroit, Commander Craig Schwartz, Cara Best and Harold Cureton  
1650 First National Building  
Detroit, Michigan 48226  
(313) 237-3018

1

|---|---|
| By: John A. Schapka (P36731) | By: Mayer Morganroth (P17966) |
| Co-Counsel for Defendants City of Detroit, Mayor Kwame M. Kilpatrick, Detroit Police Chief Ella Bully-Cummings, Commander Craig Schwartz and Christine Beatty. | By: Jeffrey B. Morganroth (P41670) Attorney for Defendants City of Detroit, Mayor Kwame Kilpatrick, Craig Schwartz, Ella Bully-Cummings, and Christine Beatty |
| 1650 First National Building | 3000 Town Center, Ste. 1500 |
| Detroit, Michigan 48226 | Southfield, Michigan 48075 |
| (313) 224-4550 | (248) 355-3084 |

_____/

## PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT CITY OF DETROIT OR WHY THE CITY OF DETROIT SHOULD NOT BE HELD IN CONTEMPT.

NOW COMES THE PLAINTIFF, by and through his counsel of record, and in support of PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT CITY OF DETROIT OR WHY THE CITY OF DETROIT SHOULD NOT BE HELD IN CONTEMPT, states as follows:

1. Pursuant to FRCP 37(a)(1) and Local Rule 7.1(a)(1), counsel for Defendant City of Detroit and for Plaintiff herein conferred via telephone, wherein Plaintiff's counsel indicated his intent to seek the relief herein and requested Defendants concurrence. Concurrence in the relief requested herein was not granted.

2. On March 20, 2008, this Court issued an *OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO QUASH SUBPOENAS AND OTHER DISCOVERY-RELATED MATTERS* ("Order Re Motions to Quash") in addition to an *"ORDER ESTABLISHING PROTOCOL FOR REVIEW AND PRODUCTION OF TEXT MESSAGES AND DESIGNATING*

*MAGISTRATE JUDGES WHALEN AND HLUCHANIUK TO CONDUCT THIS REVIEW"*

("Order Re Discovery Protocol").[1] The Order Re Motions to Quash stated in pertinent part:

> IT IS FURTHER ORDERED that, on or before **Friday, March 28, 2008,** Defendants shall provide to Plaintiff's counsel the identification ("PIN") numbers and corresponding names necessary to commence the process of obtaining text messages from SkyTel in accordance with the protocol to be established by the Court in a separate order.
>
> IT IS FURTHER ORDERED that, on or before **Friday, March 28, 2008,** Defendants shall produce to Plaintiff a copy of the Detroit Police Department's homicide file for the murder of Tamara Greene, subject to a protective order being negotiated by the parties, and subject to further order of the Court determining that there is cause for extending this deadline.

3. The production of SkyTel PIN Numbers and the corresponding names associated with each number is critical to streamlining the process of obtaining key records from SkyTel. These records are essential to this case, as Plaintiff believes that they likely contain information that, at the very least, will lead to the discovery of admissible evidence regarding, without limitation:

    a) The time and date of the Manoogian Mansion party;

    b) The identity of persons who attended the Manoogian Mansion party;

    c) The events that occurred at the Manoogian Mansion party;

    d) The presence of Tamara Greene at the Manoogian Mansion party, her activities there, her colleagues present, and any assault against her;

    e) The existence of any communications directing the suppression of evidence or the intimidation of witnesses relative to the Manoogian Mansion party;

    f) The reasons behind the retaliation against Gary Brown, Harold Nelthrope, Walter Harris and Alvin Bowman;

    g) The reasons behind the transfer of the investigation of Tamara Greene's murder to Cold Case;

    h) Whether City of Detroit employees or officials had advance knowledge of the eventual murder of Tamara Greene; or

---

[1] Both Orders were issued following a Status Conference attended by counsel for Plaintiffs and Defendants (with the exception of Defendant Billy Jackson, whom Plaintiff has agreed to dismiss, and Defendant Cara Best, currently represented by Attorney Crittendon, but who at that time had not been served.)

i) Whether City of Detroit employees or officials had knowledge of or participated in any effort to interfere with the investigation into the murder of Tamara Greene.

4. The production of the homicide investigation file is extremely critical because the central issue of this case is whether Defendants, either individually or acting in conspiracy and concert with one another or with others not named herein, deliberately and with evil intent, obstructed, interfered with, or terminated the investigation into the murder of Tamara Greene. This is especially true where Lt. Bowman filed an Affidavit in this matter where he attests that the file has been tampered with and that every time the file returned from former Chief Oliver's office, reports and other file materials were missing. **(See Exhibit 12 of docket entry number 56.)**

5. On Friday, March 28, 2008 counsel for the City of Detroit sent an email to Plaintiff's Counsel stating that:

> Please be advised that the City of Detroit Law Department is still attempting to gather the information requested relative to the Pin Numbers assigned to City of Detroit employees for Skytel pagers. The preliminary information I have is that a list of Pin Numbers may no longer be available. I am attempting to secure an Affidavit which sets forth whether such a list exists.

**See Exhibit A (emphasis added).**

6. On Monday, March 31, 2008 counsel for the City of Detroit sent an email to Plaintiff's Counsel with an attached correspondence stating that:

> Relative to the list of Pin Numbers for the Skytel pagers which the City of Detroit was supposed to tender to Plaintiff's counsel, please be advised that I inquired as to whether such a list exists. I have been informed that **in view of the need to protect the privacy of appointees**, the itemized statement listing incoming and outgoing telephone numbers relative to test [sic] message equipment **was shredded** upon receipt by the City of Detroit. I will be providing an Affidavit which attests to this.
>
> With respect to the Homicide File concerning the murder of Tamara Bond Greene, please be advised that the City of Detroit has e-filed a *Motion to Stay the Civil Proceedings* which sets forth concerns which were brought to my attention upon request for the file. I have also requested a Status Conference so that the parties can advise the Court of recent developments which have occurred in this litigation.

**See Exhibit B (emphasis added).**

7. Plaintiff's Counsel notified Defendants on March 31, 2008 of its intent to move for sanctions or for an Order to Show Cause against Defendants. **See Exhibit C.**

8. On April 2, 2008 counsel for the parties exchanged emails with one another concerning the production of the homicide file and to, for the first time, begin negotiations regarding a protective order in connection with that production. Plaintiff's counsel recommended a protocol for the production of that file; however, there has been no workable response from the City of Detroit. **See Exhibit D.**[2]

9. On April 2, 2008 Counsel for the City of Detroit proffered the Affidavit of Bobbie Tyler, which asserts that since at least June 16, 2006 the "Mayor's office" (as opposed to any of the other City Departments likely to maintain these records) has not maintained a list of "PIN Numbers". **See Exhibit E.**

10. There are several departments that counsel could have gone to in order to retrieve the documents ordered to be produced by the Court. For example, Counsel for the City could have gone to the City's administrative offices from where she once received her own SkyTel pager to inquire how those pagers were tracked by the City. She could also have contacted the billing department for the City that undoubtedly tracked invoices for each SkyTel pager for which billing information would likely have been generated.

---

[2] This proposed order was received by Plaintiff's counsel on April 7, 2008, nine days after the Court ordered deadline. Further, in their proposed order, the City refuses to provide any information regarding witnesses, and imposes such severe restrictions on what information is produced, that Plaintiff cannot effectively use the minimal information that is provided. For example, if the Detroit Police Department states that it promised anonymity to a source of information, that information cannot be used. Likewise, no biographical information can be used or provided, robbing Plaintiff of any ability to corroborate Defendant's allegations. Further, Defendants also included "gag" language to eliminate Plaintiff's ability to use the only mechanism that has provided him any information at all in this case: a free press.

11. The City of Detroit has clearly defied this Court's Orders concerning the necessary production of the homicide file, PIN numbers, and pager assignments that will obviously aide in the production of the relevant text messages.

12. When a party fails to comply with a Court Order concerning discovery, that party is subject to sanctions. According to FRCP 37(b):

> (b) FAILURE TO COMPLY WITH A COURT ORDER.
> (2) *Sanctions in the District Where the Action Is Pending.*
> (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent — or a witness designated under Rule 30(b)(6) or 31(a)(4) — fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> . . . . .
>
> (vi) rendering a default judgment against the disobedient party"

13. Furthermore, 18 U.S.C. § 401 states that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as…(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice…(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

14. Defendant City of Detroit has failed to provide discovery as ordered, and has indicated that it has shredded records in order to protect the "privacy" of its appointees during the pendency of this action, **despite the fact that Defendant Kilpatrick himself, in his capacity of**

<u>**Mayor of the Defendant City, has issued a directive in 2000 that such records are to be considered public records**</u>:

> "It is the policy of the City of that any electronic communication created, received, transmitted, or stored through use of any part of the City's electronic communications system including, but not limited to, all hardware and software, is the property of the City. <u>Accordingly, any electronic communication created, received, transmitted, or stored in the City's electronic communications system is not considered, in whole or in part, as private in nature regardless of the level of security on the communication.</u>"

**See Exhibit F (emphasis added).**

WHEREFORE, Plaintiff respectfully requests that this Court (1) Order Defendant City of Detroit to Show Cause why a Default Judgment or other sanctions allowable under FRCP Rule 37(b) should not be granted to Plaintiff; (2) Order Defendant City of Detroit to Show Cause why it should not be held in contempt for defying this Court's orders; and (3) Grant Plaintiff any other relief the Court determines to be just and equitable under the circumstance.

Respectfully Submitted,

Dated: April 10, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates, P.C.**
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiffs
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT CITY OF DETROIT OR WHY THE CITY OF DETROIT SHOULD NOT BE HELD IN CONTEMPT

STATEMENT OF ISSUES PRESENTED

I. WHETHER THIS COURT SHOULD ORDER DEFENDANT CITY OF DETROIT TO SHOW CAUSE WHY A DEFAULT JUDGMENT OR OTHER SANCTIONS ALLOWABLE UNDER FRCP RULE 37 SHOULD NOT BE GRANTED TO PLAINTIFF AND WHY IT SHOULD NOT BE HELD IN CONTEMPT FOR DEFYING THIS COURT'S ORDERS.

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED................................................................................. i

TABLE OF CONTENTS............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT..................................................................................................................... 1

    a. Federal Rule of Civil Procedure 37 and 18 U.S.C. § 401 provide the authority for this Motion.......................................................................................................................... 1

III. CONCLUSION.................................................................................................................. 8

# TABLE OF AUTHORITIES

## Federal Cases

*Bergman v. United States of America*, 565 F. Supp. 1353 (E.D. Mich. 1983) ............................... 4

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ....................................................... 6

*Kahn v Secretary of HEW,* 53 FRD 241 (D Mass 1971) ............................................................... 2

*Reynolds v United States*, 192 F 2d 987 (3rd Cir. 1951). ............................................................. 2

*United States v Sumitomo Marine & Fire Insurance Company*, 617 F 2d 1365 (9th Cir. 1980) ... 3

*United States v. Baker*, 641 F.2d 1311 (9th Cir. 1981) .................................................................. 5

*United States v. Thoreen*, 653 F.2d 1332 (9th Cir. 1981) .............................................................. 5

## Rules

FED. R. CIV. P. 37(b) ........................................................................................................................ 2

I.  INTRODUCTION

Central to this case is a cover-up that rises to the highest levels of City government. The cover-up begins with a party at the Manoogian Mansion. It is a cover-up that cloaks the gravesite of Tamara Greene with deceit, and one that continues to this day. This cover-up has now transformed into an effort on the part of the City of Detroit to invent reasons why it cannot produce records, previously ordered by the Court that will reveal its complicity in one of the most disturbing tales of corruption in the history of the City of Detroit. Records that by the Mayor's own directive, are public records that Defendants are under a duty and a court order to preserve. Records that have apparently been hidden or destroyed.

For the sake of brevity, Plaintiff will not repeat the facts set forth in the accompanying Motion, and on which he relies and expressly incorporates herein. Suffice it to say that, having been caught in a web of text messages typed by its Mayor, Defendant Kilpatrick, and its former Chief of Staff, Christine Beatty, the City now claims that it cannot provide a list of individuals to whom SkyTel pagers were issued, nor can it produce PIN numbers to whom those individuals are associated.

I.  ARGUMENT

   a. Federal Rule of Civil Procedure 37 and 18 U.S.C. § 401 provide the authority for this Motion

According to FRCP 37(b):

(b) FAILURE TO COMPLY WITH A COURT ORDER.
    (2) *Sanctions in the District Where the Action Is Pending.*
        (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent — or a witness designated under Rule 30(b)(6) or 31(a)(4) — fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> \*\*\*
> (vi) rendering a default judgment against the disobedient party

FED. R. CIV. P. 37(b).

The imposition of severe sanctions against the government for failure to turn over crucial documents in civil litigation is well precedented. In *Reynolds v United States*, 192 F.2d 987 (3rd Cir. 1951), *rev'd on other grounds*, 345 U.S. 1, 97 L. Ed. 727, 73 S. Ct. 528 (1953), the government refused to turn over records from the Air Force's official investigation of an air crash in which plaintiffs' civilian decedents had been killed, claiming that the documents contained military secrets. Those records, however, were critical to plaintiffs' negligence claim under the Federal Tort Claims Act. When compliance with the court's *in camera* production order was not forthcoming, the court ordered sanctions under Rule 37. Invoking what is now 37(b)(2)(A) and (b)(2)(B), **the court ordered that the negligence of the government would be taken as established** and that the government would not be allowed to controvert that fact. A hearing was then held on the issue of damages and a judgment entered in favor of the plaintiffs. These sanctions were upheld by the Third Circuit on appeal.

Similar sanctions were invoked in *Kahn v Secretary of HEW*, 53 FRD 241 (D Mass 1971). In that case, brought under 42 U.S.C. § 1983, plaintiff claimed that the government discriminated against him regarding a position with the Public Health Service. Plaintiff was advised by letter that he was rejected because he was not fully qualified. The government later conceded plaintiff's qualifications in its answer to plaintiff's complaint, but still refused to

disclose the basis for its decision. Specifically, the government refused to produce its loyalty and security evaluation of plaintiff *in camera*, claiming the documents were "classified." The court imposed Rule 37(b)(2) sanctions, on the grounds that defendant was in bad faith trying to deny plaintiff a fair determination of his claim, and that the documents were critical to plaintiff's case. Based on some evidence available to the court from the record, the court made findings that a security investigation of plaintiff had disclosed a publicly asserted opposition to the Vietnam War. On plaintiff's motion for summary judgment after sanctions were imposed, the court held that such activity was protected by the *First Amendment* and that judgment should be entered for plaintiff.

The government was likewise sanctioned in *United States v Sumitomo Marine & Fire Insurance Company*, 617 F 2d 1365 (9th Cir. 1980). In that case, the government as is the case here, avoided compliance with the court's discovery orders. Upholding the trial court's imposition of sanctions, the Court of Appeals stated "the effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government," in light of the goal of general deterrence and notions of public interest. *Id.* at 1370.

Likewise, the City of Detroit must be severely sanctioned. The information sought is critical to Plaintiff's claims; Defendant knows it, and has offered no legitimate reason for why it refuses to comply with the Court's discovery orders. Indeed, a statement in its Amended Motion to Stay Proceedings and for Gag Order is particularly insightful:

> The Police Chief of the Detroit Police Department, Ella Bully-Cummings, held a press conference earlier this year, requesting information from the public relative to any information which might lead to the arrest(s) of the person(s) who murdered Tamara Greene. Since that press conference, members of the City of Detroit Police Department have been actively talking to persons who have come forth to provide information, some confidentially, and have vigorously attempted to locate witnesses.

3

Put aside for one moment the pretzel logic employed by the Defendant that a gag order is appropriate when press coverage has generated the only leads that investigators have (purportedly) chased in almost five years. What is painfully obvious is that, but for this litigation and the accompanying press coverage, the Detroit Police Department has not been actively talking to ANYONE, at least not until the time that Defendant Ella Bully-Cummings held her press conference in February of this year. Interestingly, the most well known of these persons who have "come forth" is Joyce Rogers, who specifically attested in her Affidavit that she recalls reviewing a police report where Tamara Greene charged Defendant Kilpatrick's wife with an assault and battery that occurred at the Manoogian Mansion. Despite her notoriety and recollection of relevant information, members of the City of Detroit Police Department have not been "actively talking" to Ms. Rogers.

Plaintiffs have asserted a conspiracy on the part of the City of Detroit and a breach of constitutional duties owing by the Defendants to the Plaintiff. Necessary to a resolution of those claims is a determination of whether and to what extent employees and agents of the City of Detroit and these Defendants had relevant knowledge of the alleged interference of any investigation involving Tamara Greene. Plaintiff's review of the complete file is imperative to this case. Plaintiff alleges interference with his mother's murder investigation. Lt. Bowman attested in his affidavit that materials were removed from the homicide file every time it returned from Chief Oliver's office. Lt. Bowman and other investigators from Squad 8 need to see the complete file and be questioned on it to determine the truth and extent of those statements. Sources of information must be revealed to determine when they were contacted, and by whom. The very investigation, or lack thereof, is the heart of this case. Plaintiff must be free to review

the complete file of the investigation that is so central to this action and compare information therein with experts and lay witnesses.

In *Hampton v. Hanrahan*, 600 F 2d 600, 637 n. 40 (CA 7 1979), the Seventh Circuit stated "the proposition that all civil cases are less significant -- and therefore require a higher level of justification for the disclosure of the identity of the informer -- than all criminal cases is a dubious one. It would seem impossible to conclude absolutely that every criminal misdemeanor case is 'more significant' than civil actions to redress, for example, egregious violations of an individual's rights." Relying on *Hanrahan,* the court in *Bergman v. United States*, 565 F. Supp. 1353, 1361 (1983) stated:

> "What may escape analysis, however, is the interest of the Plaintiffs in a full and fair determination of their cause. In that regard, the case of *Hampton v. Hanrahan, supra,* is particularly relevant and helpful to the Court. Hampton was a civil rights action for monetary damages brought by members of the Black Panther Party and the mothers of two deceased party members against federal and state law enforcement officers. The suit arose from a gun battle which occurred in Chicago during the early morning hours of December 4, 1969. Two Black Panthers were killed and four others were injured by the gunfire. The plaintiffs alleged a conspiracy to deprive the occupants of the apartment where the gunfire and injuries occurred of the equal protection of the laws in violation of several sections of the Civil Rights Act. A critical question in that case concerned the government's claim of privilege for an informant, whose representations led to the issuance of a search warrant for the apartment. 600 F 2d at 638-639. In remanding the case to the district court for a new trial, the Seventh Circuit Court of Appeals determined that a just adjudication of plaintiffs' claims required that the informant's identity be disclosed, subject to a restrictive protective order. After considering all possible alternatives, I can find no reason to reach a different result in the case at bar. **As in *Hampton*, the instant Plaintiffs have asserted a conspiracy on the part of the government and breach of duty owing by the government to the Plaintiffs. Necessary to a resolution of those claims is a determination of whether and to what extent the FBI had prior knowledge of the planned violence in Alabama. Any information which the FBI possessed was gained through**

> **confidential informants and documentation generated through the use of those informants. After carefully scrutinizing the interests of the parties, I concluded that, on balance, the government's interest in encouraging the free flow of information and in protecting past informants must yield to Plaintiffs' rights."**

Likewise, the Plaintiff at bar has asserted a conspiracy on the part of the City government and breach of duty owing by the Defendants to the Plaintiff. Necessary to a resolution of those claims is a determination of whether and to what extent the City of Detroit and its agents had knowledge of the planned cover-up of his mother's murder investigation. Likewise, the Defendants' interest in encouraging the free flow of information and in protecting informants must yield to Jonathan Bond's rights.

The City of Detroit's actions also subject them to contempt of court. According to 18 U.S.C. § 401 "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as - - (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.".

Contumacious misbehavior punishable under § 401(1) must be willful, and must actually obstruct the district judge in the performance of judicial duties. *United States v. Thoreen*, 653 F.2d 1332 (9th Cir. 1981), *cert. denied*, 455 U.S. 938, 102 S. Ct. 1428, 71 L. Ed. 2d 648 (1982). Under § 401(3), a party may be found in contempt for disobeying an order "only if the order is clear and definite, and the contemnor has knowledge of it." *Id*. at 1339, citing *United States v. Baker*, 641 F.2d 1311 (9th Cir. 1981). Misbehavior punishable under § 401(1) is limited to conduct which occurs in the presence of the court "or so near thereto as to obstruct the administration of justice." Since part of the misbehavior at issue here is the City of Detroit's failure to produce records and information ordered by the Court, it cannot be said that this

misbehavior was in the presence of the court. Clearly, SOMEONE at the City of Detroit MUST have kept track of these SkyTel pagers when they were being distributed and when the monthly bills for their usage were being paid. SOMEONE ASSIGNED THESE PAGERS TO CITY EMPLOYEES. IT WAS NOT FIRST COME FIRST SERVED. The City's refusal to exert even the smallest effort to determine who that is and how they tracked that information demonstrates willful defiance of this Court's Orders. The City's refusal to provide the records ordered to be produced, it's correspondence, through counsel, that the City shredded public records to protect the privacy of public appointees, and the proffer of an Affidavit which on it's face is clearly designed to give the impression that the City (as opposed to the Mayor) does not maintain the records ordered by the Court to be produced, combine to constitute misbehavior "so near" to the presence of this Court as to fall within § 401(1). The standard for obstructive misconduct is "whether the obstruction or disruption is material." *Thoreen, supra* at 1340. Here, the City has refused to produce information that is either directly material to the case ("the homicide file") or will lead to crucial information (the list of PIN numbers and corresponding names).

There can be no doubt that the City of Detroit's misbehavior obstructed and continues to obstruct the administration of justice, that it clearly violates the Orders entered by the Court, which in turn violates 18 U.S.C. §§ 401(1) and (3). Had the City produced the records ordered by the Court as required by March 28, 2008, the discovery protocol implemented by the Court would be well underway. Instead, the City has chosen to embark on a dilatory charade intended to project to the Court the appearance of some activity toward compliance with the Court's Orders, while these meaningless excuses quite clearly have the opposite purpose and effect. More alarming is the apparent admission that public records containing relevant information was willfully destroyed in order to protect the privacy of City appointees.

## II. CONCLUSION

The implications for this case go far beyond the Defendants' cover-up of the murder investigation of Tamara Greene. This case is about all of us who live in Michigan - who have a right to expect that those charged with running our government work for us, not against us. For our system of government to work, we must require transparency and accountability in government. Instead of transparency, the City would rather try this case behind closed doors. That is contrary to what we must expect and demand. As our own Judge Damon Keith stated: "Democracies die behind closed doors. The First Amendment, through a free press, protects the people's right to know that their government acts fairly, lawfully, and accurately . . . . ." Judge Keith went on to say "[w]hen government begins closing doors, it selectively controls information rightfully belonging to the people." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002).

WHEREFORE, Plaintiff respectfully requests that this Court (1) Order Defendant City of Detroit to Show Cause why a Default Judgment or other sanctions allowable under FRCP Rule 37(b) should not be granted to Plaintiff; (2) Order Defendant City of Detroit to Show Cause why it should not be held in contempt for defying this Court's orders; and (3) Grant Plaintiff any other relief the Court determines to be just and equitable under the circumstance.

Respectfully Submitted,

Dated: April 10, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates, P.C.**
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiffs
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

# CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2008 I electronically filed the foregoing papers with the Clerk of the Court using the CM/ECF system:

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED AGAINST DEFENDANT CITY OF DETROIT OR WHY THE CITY OF DETROIT SHOULD NOT BE HELD IN CONTEMPT.

On the following:

**Morganroth & Morganroth, PLLC**
By: Mayer Morganroth (P17966)
By: Jeffrey B. Morganroth (P41670)
Attorney for Defendants City of Detroit, Mayor Kwame Kilpatrick, Commander Craig Schwartz, Harold Cureton, and Christine Beatty
3000 Town Center, Ste. 1500
Southfield, Michigan 48075
(248) 355-3084

**City of Detroit Law Department**
By: John A. Schapka (P36731)
Co-Counsel for Defendants City of Detroit, Mayor Kwame M. Kilpatrick, Detroit Police Chief Ella Bully-Cummings, Commander Craig Schwartz and Christine Beatty.
1650 First National Building
Detroit, Michigan 48226
(313) 224-4550

**JAMES C. THOMAS**
By: James C. Thomas (P23801)
Attorneys for Defendant Mayor Kwame Kilpatrick
535 Griswold Street
Suite 2632
Detroit, Michigan 48226
(313) 963-2420

**City of Detroit Law Department**
By: Krystal A. Crittendon (P49981)
Attorney for Defendants City of Detroit, Mayor Kwame Kilpatrick, Ella Bully-Cummings, Commander Craig Schwartz, Cara Best and Harold Cureton
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018

**Plunkett Cooney**
By: Kenneth L. Lewis (P26071)
By: Randal M. Brown (P70031)
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790

April 10, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates, P.C.**
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600
nya@normanyatooma.com