# UNITED STATES OF AMERICA
## IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND, a minor,

Case No.: 05-CV-74253
Hon. Gerald Rosen

        Plaintiff,

-vs-

CITY OF DETROIT, a municipal corporation;
DETROIT POLICE CHIEF ELLA BULLY-CUMMINGS;
DEPUTY DETROIT POLICE CHIEF CARA BEST;
JOHN DOE POLICE OFFICERS 1 - 20;
ASST. DEPUTY POLICE CHIEF HAROLD CURETON;
COMMANDER CRAIG SCHWARTZ;
POLICE LT. BILLY JACKSON;
MAYOR KWAME M. KILPATRICK,
CHRISTINE BEATTY, jointly and severally

        Defendants.

_____/

**Norman Yatooma & Associates, P.C.**
By:  Norman A. Yatooma (P54746)
By:  Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

**JAMES C. THOMAS**
By:  James C. Thomas (P23801)
Attorneys for Defendant Mayor Kwame Kilpatrick
535 Griswold Street
Suite 2632
Detroit, Michigan 48226
(313) 963-2420

**Plunkett Cooney**
By:  Kenneth L. Lewis (P26071)
By:  Randal M. Brown (P70031)
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790

**City of Detroit Law Department**
By:  Krystal A. Crittendon (P49981)
Attorney for Defendants City of Detroit, Commander Craig Schwartz, Cara Best and Harold Cureton
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018

*NORMAN YATOOMA & ASSOCIATES, P.C.*

1

**City of Detroit Law Department**
By: John A. Schapka (P36731)
Co-Counsel for Defendants City of Detroit, Mayor Kwame M. Kilpatrick, Detroit Police Chief Ella Bully-Cummings, Commander Craig Schwartz and Christine Beatty.
1650 First National Building
Detroit, Michigan 48226
(313) 224-4550

**Morganroth & Morganroth, PLLC**
By: Mayer Morganroth (P17966)
By: Jeffrey B. Morganroth (P41670)
Attorney for Defendants City of Detroit, Mayor Kwame Kilpatrick, Craig Schwartz, Ella Bully-Cummings, and Christine Beatty
3000 Town Center, Ste. 1500
Southfield, Michigan 48075
(248) 355-3084

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION FOR STAY OF PROCEEDINGS AND FOR ISSUANCE OF A 'GAG' ORDER

NOW COMES the Plaintiff, by and through his counsel of record, and for his Response to Defendant City of Detroit's Motion for Stay of Proceedings and for Issuance of a 'Gag' Order, states:

1. Denied prior to the filing of this motion.

2. Neither admitted nor denied as record speaks for itself.

3. Denied. The Plaintiff is Jonathan Bond, suing Defendants through his father, Ernest Flagg, acting as his Next Friend.

4. Neither admitted nor denied for the reason that Plaintiff's Second Amended Complaint is currently the operative pleading in this action.

5. Denied as untrue.

6. No response to this paragraph is necessary.

   I.  Admitted.

   II.  Neither admitted nor denied for the reason that Plaintiff lacks sufficient information to form an opinion as to the truth or veracity of this statement.

   III.  Neither admitted nor denied for the reason that Plaintiff lacks sufficient information to form an opinion as to the truth or veracity of this statement.

NORMAN YATOOMA & ASSOCIATES, P.C.

    IV.    Admitted.

    V.    Neither admitted nor denied for the reason that Plaintiff lacks sufficient information to form an opinion as to the truth or veracity of this statement.

    VI.    Admitted

    VII.    Admitted only that, on information and belief, Judge Columbo granted those Defendants' motion to intervene in that case.

    VIII.    Neither admitted nor denied for the reason that Plaintiff lacks sufficient information to form an opinion as to the truth or veracity of this statement.

    IX.    Admitted.

    X.    Neither admitted nor denied for the reason that Plaintiff lacks sufficient information to form an opinion as to the truth or veracity of this statement.

7. Denied.

8. Neither admitted nor denied for the reason that Plaintiff lacks sufficient information to form an opinion as to the truth or veracity of this statement.

9. No response to this paragraph is necessary, as Defendant has alleged a statement of law.

10. No response to this paragraph is necessary, as Defendant has alleged a statement of law.

11. No response to this paragraph is necessary, as Defendant has alleged a statement of law.

12. Neither admitted nor denied for the reason that Plaintiff lacks sufficient information to form an opinion as to the truth or veracity of this statement.

13. Denied for the reason that the allegation is untrue.

14. Denied for the reason that the allegation is untrue. This is hardly a new development and was already ordered to be produced by the Court to Plaintiff.

15. Denied for the reason that the allegation is untrue. Further, this statement is incredibly self-serving since this matter languished in Cold Case for years until the issues in this case began to generate significant public interest.

16. Denied that a gag order is required or permitted under the circumstances;

I. Admitted. However, Plaintiff further states that Defendants and their counsel, have far outmatched Plaintiff's statements to the media. Attorney Mayer Morganroth has generated significant press coverage on behalf of his clients, held at least one press conference, publicly declared that this case would be dismissed, and recently called these proceedings a "circus." Opposing counsel has publicly chided Plaintiff's counsel, Plaintiff's case and Plaintiff's discovery efforts. Indeed, new counsel for Kwame Kilpatrick even suggested that Plaintiff's counsel is in contempt of court for speaking to the press, although a gag order has never been issued. Defendant Bully-Cummings used the press herself to call a press conference purportedly for the purpose of pleading for anyone with information to call in with tips.

II. Admitted, but further state that this Court specifically stated that it would not issue a gag order; rather, he instructed counsel to abide by the Michigan Rules of Professional Conduct. It is also noteworthy that Attorney Jeffrey Morganroth likewise stepped up to the microphones immediately following that status conference to declare that the Court's ruling denying their Motion to Dismiss and ordering the production of text messages was somehow a victory for his client. **Plaintiff's counsel has only RESPONDED to media inquiries, having NEVER issued a press release or called a press conference. Defendants and their attorneys cannot make the same statement.**

III. Denied for the reason that the allegation is untrue. Further, it is unclear how the City of Detroit, has standing to assert Defendant Beatty and Kilpatrick's

NORMAN YATOOMA & ASSOCIATES, P.C.

constitutional right to a fair trial.[1]  It is also worth pointing out that this case is only one of several court and administrative proceedings taking place or that have taken place involving these parties.  To Plaintiff's acknowledge they are:

 a)  The criminal prosecution of Kilpatrick and Beatty;

 b)  The Brown and Nelthrope whistleblower action;

 c)  The Walter Harris Whistleblower action;

 d)  The Alvin Bowman Whistleblower action;

 e)  The Freedom of Information Act case brought by The Detroit Free Press; and

 f)  The Detroit City Council proceedings into the secret deal that led to the settlement of the Brown, Nelthrope and Harris cases.[2]

17. Denied for the reason that the allegation is untrue.

18. Denied for the reason that the allegation is untrue. Again, it is unclear how the City of Detroit has standing to assert Defendant Beatty and Kilpatrick's constitutional right to a fair trial.

19. No response to this paragraph is necessary, as Defendant has alleged a statement of law.

20. Denied for the reason that the allegation is untrue.

---

[1]  Plaintiff hopes that the irony of the City fighting for Kilpatrick and Beatty's right to a fair a trial while denying and continuing the fight to deny Jonathan Bond his right to his day in court is not lost on the Court.

[2]  To the best of Plaintiff's knowledge, despite extensive press coverage, none of the parties in those cases sought, or in the pending cases are seeking a gag order to prevent coverage of those proceedings.  Plaintiff is unaware of any efforts to "gag" Wayne County Prosecutor Kym Worthy, despite her press conferences and appearances in the media in connection with the criminal charges pending against Defendants Beatty and Kilpatrick.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant City of Detroit's requested relief in its entirety.

Respectfully Submitted,

Dated: April 11, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates, P.C.**
By:  Norman A. Yatooma (P54746)
By:  Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION FOR STAY OF PROCEEDINGS AND FOR ISSUANCE OF A 'GAG' ORDER.**

STATEMENT OF QUESTIONS PRESENTED.

1. IS THE TAMARA GREENE HOMICIDE FILE SUBJECT TO QUALIFIED INVESTIGATORY PRIVILEGE WHERE THE COURT ALREADY ORDERED ITS DISCLOSURE; WHERE THE FILE WAS MOVED TO "COLD CASE" WITHIN 1 YEAR OF MS. GREENE'S MURDER AND AT LEAST FOUR YEARS HAVE PASSED SINCE ANY ACTIVITY HAS OCCURRED; WHERE THE RECENT 'LEADS' WERE DEVELOPED SOLELY THROUGH PLAINTIFF'S COUNSEL'S EFFORTS; AND WHERE THE CITY OF DETROIT HAS FAILED TO PROPERLY INVOKE THE PRIVILEGE?

2. CAN THE CITY OF DETROIT MOVE THIS COURT FOR A STAY OF THE INSTANT PROCEEDINGS BASED ON OTHER INDIVIDUAL DEFENDANTS' CONCERNS FOR THEIR OWN 5TH AMENDMENT RIGHTS AND WHERE THE CITY ITSELF HAS NO CONSTITUTIONALLY PROTECTED RIGHT AGAINST SELF-INCRIMINATION?

3. SHOULD THIS COURT ISSUE A "GAG" ORDER WHERE THE MATTER AT ISSUE INVOLVES QUESTIONS OF GREAT PUBLIC INTEREST AND IMPORTANCE, DEFENDANTS HAVE NOT IDENTIFIED ANY STATEMENT BY PLAINTIFF'S COUNSEL THAT WOULD TRIGGER THE CONCERNS OF *GENTILE* AND IT'S PROGENY, WHERE DEFENDANTS, TO A FAR GREATER EXTENT HAVE REACHED OUT AND EXPLOITED MEDIA COVERAGE, AND WHERE THE ABSENCE OF A GAG ORDER IS REQUIRED TO LEVEL THE PLAYING FIELD BETWEEN A 15-YEAR OLD BOY AND THE MEDIA MACHINE AT THE DISPOSAL OF THE DEFENDANTS?

NORMAN YATOOMA & ASSOCIATES, P.C.

# TABLE OF CONTENTS

STATEMENT OF QUESTIONS PRESENTED. .......................................................................... i

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.      INTRODUCTION ...................................................................................................... 1

II.     ARGUMENT .............................................................................................................. 3

    a.  The Tamara Greene homicide file is not protected by the qualified investigatory privilege because such a privilege is not absolute; the file has been inactive for over four years; the City of Detroit has failed to properly invoke the privilege; and, finally, failed to allege that the results of its current "investigations" are likely to result in a criminal prosecution. ...................................................................................................................................... 3

    b.  The City is not entitled to request a stay of the instant proceedings because the City lacks a 5th Amendment right against self-incrimination. Moreover, this matter should not be stayed in its entirety in the event this Court finds that Defendant Beatty's constitutional rights are implicated by the maintenance of parallel prosecution for civil and criminal violations. ............................................................................................................................ 9

    c.  The City's request for a "gag" order should be denied because Defendants failed to carry their burden of proving that one is required in this case, and for the reasons set forth in Intervenor's Brief. ................................................................................................................ 111

III.    CONCLUSION ........................................................................................................ 16

NORMAN YATOOMA & ASSOCIATES, P.C.

**Cases**

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ........................................................ 2

*Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989) ...................... 10

*Flagg v. City of Detroit*, 2008 U.S. Dist. LEXIS 21923 (ED Mich. 2008) ............................... 3, 5

*Frankenhauser v. Rizzo*, 59 F.R.D. 339 (ED Pa. 1973) .......................................................... 5, 7, 8

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991) ...................................................................... 11

*Hamilton v. Verdow*, 414 A.2d 914; 287 Md. 565 (1980) .............................................................. 3

*Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992) ..................................................................... 6

*In Re United States Dep't of Homeland Security*, 495 F.3d 565 (5th Cir. 2006) ........................... 3

*Jabara v. Kelley*, 75 F.R.D. 475 (ED Mich. 1977) ................................................................ 3, 6, 7

*Olson Rug Co. v. N.L.R.B.*, 291 F.Supp. 57 (MD Ala. 1967) ........................................................ 8

*People v. Ellerhorst*, 163 N.W.2d 465 (1968) .............................................................................. 5

*Securities and Exchange Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368 (DC Cir. 1980) ......... 10

*Securities and Exchange Comm'n v. First Jersey Sec., Inc.*, Fed. Sec. L. Rep. (CCH) P93,204
(S.D.N.Y. 1987) ......................................................................................................................... 9

*United States v. Fieger*, 2008 U.S. Dist. LEXIS 18473 (E.D. Mich. Mar. 11, 2008)............. 12, 13

*United States v. Kordel*, 391 U.S. 1 (1970)................................................................................... 9

*United States v. Koubriti*, 307 F. Supp. 2d 891 (E.D. Mich. 2004), .................................... 12, 13

*United States v. Leggett & Platt*, 542 F.2d 655 (6th Cir. 1976)..................................................... 5

*United States v. Reynolds*, et al., 345 U.S. 1; 73 S. Ct. 528; 97 L. Ed. 727 (1953) ...................... 3

*Wood v. Breier*, 54 F.R.D. 7 (ED Wisc. 1972) ...................................................................... 3, 5, 8

**Rules**

FED. R. EVID. 501 ........................................................................................................................ 5

M.R.C.P. 3.6                                                                                                                11

**Constitution**

U.S. CONST. amend. I ................................................................................................................. 11

NORMAN YATOOMA & ASSOCIATES, P.C.

## I.  INTRODUCTION

Since the Mayor and Beatty have been criminally charged, and since there are indications that more criminal charges against others related to the Kilpatrick Administration may be filed, Attorney Crittendon now seeks a complete stay of these proceedings and a "Gag" Order because Defendant Kilpatrick and Defendant Beatty - who are not her clients - *might* take the 5th when asked to testify, and other city employees *might* also take the 5th when asked to testify truthfully about the cover-up of and interference with Ms. Greene's murder investigation.

Not only has the City denied Jonathan Bond his constitutionally guaranteed access to the courts, but it also wants to deny him his constitutionally guaranteed right to free speech.  His Mom has been taken away. His day in court has been taken away. Now they want to take his voice away.

The City's motion has been brought AFTER Judge Rosen specifically told the parties on March 14, 2008, that he was NOT going to issue a gag order.   At that status conference Plaintiff's counsel specifically explained to Judge Rosen and the parties that it was the coverage by the Press that encouraged courageous witnesses like Joyce Rogers[3] and Pastor Ken Hampton[4] to come forward, and that has provided hundreds of tips that have driven this case farther in four months than in the prior two years when it languished in anonymity.  Judge Rosen responded by reminding counsel to abide by the Michigan Rules of Professional Conduct.[5]

---

[3]   Joyce Rogers, a former City of Detroit employee, is to date is the ONLY witness to offer evidence that a party actually occurred at the Manoogian Mansion in the fall of 2002, that Ms. Greene appeared at that party, and that she was assaulted by Carlita Kilpatrick.

[4]   Tamara Greene's Pastor, has given an affidavit stating that approximately *six months before her murder* on April 30, 2003, Tamara Greene came to him and stated "some people are out to kill me."

[5]   According to MRPC 3.6, a "lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have substantial likelihood of materially prejudicing an adjudicative proceeding."  **There is absolutely nothing attributable to Plaintiff's counsel that comes closed to violating this, or any other ethical obligation imposed on counsel by the Rules of Professional Conduct.**

NORMAN YATOOMA & ASSOCIATES, P.C.

This case is about all of us who live in Michigan - who have a right to expect that those charged with running our government work for us, not against us. For our system of government to work, we must require transparency and accountability in government. Instead of transparency, the City would rather try this case behind closed doors. That is contrary to what we must expect and demand.

As our own Judge Damon Keith stated: "Democracies die behind closed doors. The First Amendment, through a free press, protects the people's right to know that their government acts fairly, lawfully, and accurately...." Judge Keith went on to say "When government begins closing doors, it selectively controls information rightfully belonging to the people." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002).

As this Court is well aware, it ordered the production of certain discoverable information requested by the Plaintiff, specifically, the Tamara Greene homicide file and identification numbers concerning the City's Skytel paging devices. The Court ordered that these materials be produced on or before March 28, 2008 and rendered such rulings to the effect on March 20, 2008. (Docket entries 68 and 69). However, rather than comply with these Orders, Defendants instead raised additional issues they allege prevent them from complying with this Court's standing orders.

Both the City of Detroit and Defendant Beatty request that this Court stay proceedings in whole or in part due to the pending criminal charges against Defendants Beatty and Kilpatrick. The City of Detroit, however, now argues that the Greene Homicide file is protected by a heretofore unmentioned qualified investigatory privilege. Further, the City of Detroit requests that this Court issue a "gag" order preventing any discourse regarding this matter, contrary to the

constitutionally protected rights of the parties, their attorneys and of the press. For the reasons stated herein, the City of Detroit's requested relief should be completely denied.

## II. ARGUMENT

a. The Tamara Greene homicide file is not protected by the qualified investigatory privilege because such a privilege is not absolute; the file has been inactive for over four years; the City of Detroit has failed to properly invoke the privilege; and, finally, failed to allege that the results of its current "investigations" are likely to result in a criminal prosecution.

First, the City of Detroit has failed to properly invoke its claim that the Tamara Greene Homicide file (the "Greene file") is cloaked with Executive Privilege[6] and hence protect it from disclosure. "The [Executive] privilege belongs to the Government and must be asserted by it; it can be neither claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *United States v. Reynolds*, et al., 345 U.S. 1, 7; 73 S. Ct. 528; 97 L. Ed. 727 (1953) (internal citations omitted); *see also Hamilton v. Verdow*, 414 A.2d 914, 926; 287 Md. 565 (1980) (stating that a formal claim of executive privilege be accompanied with an affidavit stating "that the demanded materials are of a type that fall within the scope of the privilege....") (City of Detroit Brief in Support at p.4); *Jabara v. Kelley*, 75 F.R.D. 475, 484 (ED Mich. 1977).[7]

At no point has the City of Detroit, either through its previous counsel or through its current counsel, provided an official determination or affidavit substantiating the claim that the

---

[6] The City of Detroit uses the term 'qualified law enforcement privilege' but it appears that the moniker 'Executive Privilege' is functionally identical and that both terms evolved from the same concept. *See In Re United States Dep't of Homeland Security*, 495 F.3d 565, 569, n.2 (5th Cir. 2006), *cited by Flagg v. City of Detroit*, 2008 U.S. Dist. LEXIS 21923, *23 (ED Mich. 2008) (discussing the 'qualified law enforcement privilege' and the *Frankenhauser* factors regarding Plaintiff's subpoena to the Wayne County Prosecutor).

[7] In *Wood v. Breier*, 54 F.R.D. 7, 11 (ED Wisc. 1972) the Court assumed that the claim of Executive Privilege was properly invoked via an affidavit submitted by an assistant city attorney representing the Defendant. *Id.* at p. 11, n.14. The Court, however, cited numerous cases indicating the requirement that a *formal* claim of privilege must be made in order for the privilege to properly be invoked and intimated that the affidavit was insufficient in the usual course.

NORMAN YATOOMA & ASSOCIATES, P.C.

Greene File is an active file that, as a consequence, it is protected from disclosure pursuant to Executive Privilege.[8] In fact, the City of Detroit claimed Executive Privilege only *after* the Court ordered that the Greene File be produced on or before March 28, 2008. (See Docket Entry 68, 3/20/2008 Order, p.17). The Court's March 20, 2008 Order contemplates the surrender of the Greene File assuming the parties could agree on the terms and conditions of a protective order. The Court did not consider, nor was it raised at the time the demand was made, that the Greene File was cloaked with Executive Privilege. Therefore, this Court should disregard the City of Detroit's untimely and defective assertion of the privilege.

Alternatively, the City of Detroit appears to argue, absent a favorable outcome of a "balancing test" in favor of disclosure, that the Greene File is absolutely protected from disclosure because (1) it is an active investigatory file, and, therefore (2) the file should remain protected unless and until the City complete its "investigation." First, the privilege is not absolute regarding *the entire contents* of the Greene File. Second, balancing the relative equities mitigates in favor of surrendering the entire file pursuant to the Court's March 20, 2008 Order. Accordingly, the City's request should be denied.

The City of Detroit succinctly excises a pertinent quote from *Brown v. Thompson*, 430 F.2d 1214 (5th Cir. 1970) regarding the generally-applicable discoverability principles surrounding materials contained in investigatory files, but fails to be completely forthcoming in its quotation. (City of Detroit Brief in Support at p.2) The *Brown* court stated, in full:

> [g]overnment documents are the outstanding examples of matter which is privileged and which is not subject to disclosure. *It will expire upon the lapse of an unreasonable length of time.* Whether there should be a disclosure is within

---

[8] Former City of Detroit Counsel Morganroth & Morganroth, PLC raised a claim of attorney-client and work-product privilege to Plaintiff's First Document Requests to Defendants, Request Number 4, requesting "[t]he complete homicide investigation file concerning Ms. Tamara Greene, including the actual file folder(s) that contain the file." Defendants did not invoke the qualified Executive or Investigatory Privilege as a basis for refusing to produce the Greene File until the instant Motion. Nor did they provide a discovery log.

NORMAN YATOOMA & ASSOCIATES, P.C.

the discretion of the trial court and, like other discretionary matters, the determination of the court should be made by a balancing of interests.

*Brown v. Thompson*, 430 F.2d 1214, 1215 (5ht Cir. 1970) (internal citations omitted) (emphasis added)

Just as the privilege generally surrounding investigatory materials is not temporally absolute, it is likewise not absolute in scope:

[g]iven that the privilege is designed to encourage candid suggestions, advice, recommendations, and opinions, the privilege protects only suggestions, advice, recommendations, and opinions, rather than factual and investigatory reports, data, and surveys in government files.

*United States v. Leggett & Platt*, 542 F.2d 655, 659, n.4 (6th Cir. 1976) (citations omitted).

Finally, and as stated by the City of Detroit, whether the privilege will otherwise apply to those investigatory materials not otherwise exempt will turn on the court's consideration of various factors enunciated by *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (ED Pa. 1973), quoted with approval by *Flagg v. City of Detroit*, 2008 U.S. Dist. LEXIS 21923, *23 (ED Mich. 2008). Those factors include:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or an evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Flagg*, 2008 U.S. Dist. LEXIS at * 23 (ED Mich. 2008).[9]

NORMAN YATOOMA & ASSOCIATES, P.C.

---

[9] Factor 4 clearly references *United States v. Leggett & Platt*, 542 F.2d 655, 659, n.4 (6th Cir. 1976), which states that the qualified privilege is not a blanket privilege that applies absolutely. Factor 5 is important because where, as

An evaluation of these various factors leads inextricably to the conclusion that the Greene File is not subject to any qualified investigatory privilege and should be surrendered to Plaintiff per this Court's March 20, 2008 Order.[10]

With regard to factor (1), on which the City of Detroit primarily relies in its opposition to surrender of the Greene File, the history of this case clearly demonstrates that surrendering the demanded materials will *not* have any deleterious effect on the City's 'investigation.' The City alleges that certain "events" have occurred which should persuade this Court that the Greene File should remain free of disclosure; however, other than the City's statement that Defendant Bully-Cummings has requested information from the general public regarding the Greene murder, the City has utterly failed to show an "active" investigation.

Any "active" investigation currently being undertaken by the Defendant City or the Detroit Police Department is the direct result of Plaintiff's lawsuit, which sheds light on the complete refusal to investigate and intentional cover-up of the Greene murder. The Greene investigation, after being transferred to "Cold Case" within one year of its institution, has sat dormant for over four additional years – until Plaintiff's current counsel assumed control of the litigation.[11] Then and only then did numerous individuals with pertinent and relevant

---

here, the objecting party has made no allegation or claim that the investigation is likely to lead to criminal prosecution the government's interest in maintaining the confidentiality of the demanded materials substantially weaker. *See Wood v. Breier*, 54 F.R.D. 7, 12 (ED Wisc. 1972).

[10] The City of Detroit further argues, with reference to state common law, that an independent determination must be made when the privilege at issue here is raised in response to a demand for the production of documents. (City of Detroit Brief in Support at p.3, *citing People v. Ellerhorst*, 163 N.W.2d 465 (1968)). However, when considering the existence and application of any claimed privilege in a federal matter, the Court must look to federal common law, not the forum state's common law of privilege. FED. R. EVID. 501; *Hancock v. Dodson*, 958 F.2d 1367, 1372 (6th Cir. 1992). However, the *Ellerhorst* factors were noted with approval in *Jabara v. Kelley*, 75 F.R.D. 475, 481 (ED Mich. 1977).

[11] The fact that the Greene File sat dormant for such a long period of time (over four years) and was transferred to 'Cold Case' within one year of Ms. Greene's murder satisfies the exception to the limited investigatory privilege; that the privilege will not apply if an unreasonably long period of time has passed since the inception of the investigation and the claim of privilege. See *Brown v. Thompson*, 430 F.2d 1214, 1215 (5ht Cir. 1970). Whatever concerns the Defendant City may have with regard to the Greene File's contents have surely diminished as the result

information regarding the allegations in Plaintiff's Second Amended Complaint come forward with any information. The "SOIs" that the DPD are investigating are likely the very "SOIs" that Plaintiff's counsel identified and have surrendered affidavits in support of various pleadings filed in this Court. What should be abundantly clear is that until the time Defendant Bully-Cummings' public request for assistance, the City and the Detroit Police Department were fully content to *not* investigate the Greene murder. Rather, as alleged in Plaintiff's Second Amended Complaint, Defendant in fact engaged in individual and collective misconduct intended to thwart any further investigation in the murder of Ms. Greene.[12]

Further, that the Chief of Police herself held a press conference requesting information to assist in the investigation of this case speaks volumes. On the one hand, it suggests that Defendants had no leads, the investigation had grown stale and they needed the press coverage to advance the investigation.[13] On the other hand, it may mean that Defendant Bully-Cummings was simply posturing for the press to create the false impression that the homicide file was actually under investigation. Only a review of the complete file can resolve that question.

Therefore, it cannot be gainsaid that surrender of the Greene File per this Court's standing Order to do so will somehow "chill" the public's willingness to give the government information. In fact, the complete opposite has been demonstrated by objective evidence, and their own arguments. They received leads after Defendant Cummings press Conference. Such a

---

of the passage of such a long period of time. Therefore the concerns implicated by the privilege (the City's current 'investigation' notwithstanding) no longer apply.

[12] The City's self-serving tacit conclusion that Defendant Bully-Cummings' public request for leads into Ms. Greene's murder is tantamount to demonstrating that the Greene File is 'active' should not be countenanced. Under the Detroit Police Department's policies and procedures, even a Cold Case is 'active;' however, the Detroit Police Department has demonstrated that since Ms. Greene's murder that it had absolutely no intention to fully investigate the incident and, rather, actively concealed facts and circumstances surrounding the murder. Merely making a public plea for assistance does not *ipso facto* entail the conclusion that the murder is *now*, finally, being actively investigated. *See Jabara v. Kelley*, 75 F.R.D. 475, 494 (ED Mich. 1977) (stating that "[t]o invoke the privilege, it must be established that the materials at issue relate to a *bona fide*, ongoing, law enforcement investigation.") (emphasis in original) (citations omitted).

[13] **This begs the question: If the Detroit Police Department, with all of its resources, cannot gather information related to this case without going to the press, how can Plaintiff be expected to do so?**

NORMAN YATOOMA & ASSOCIATES, P.C.

conclusion simply does not naturally follow from the "events" that have occurred since the initiation of the instant lawsuit.

These same points are equally germane to the second *Frankenhauser* factor. Given the passage of time since the inception of the Greene investigation (and the Detroit Police Department's intentional failure and overt frustration of that investigation), the concerns about disseminating investigatory papers containing the identities of persons who have given information to the government have sufficiently waned. Moreover, in this instance this particular factor weighs heavily in *Plaintiff's* favor (and hence closely related to factors 9 and 10) as Plaintiff alleges a complete frustration and cover-up of the Greene murder investigation. Surrender of the Greene File will allow Plaintiff access to direct evidence to establish his case and determine the extent of the investigation and witnesses identified. Further, the information contained in the Greene file is not available from other sources as the information is unique to the investigatory efforts of the Detroit Police Department, which of course are at the heart of this lawsuit. Certainly, other discovery tools are available, but none so precise as the investigatory file itself.[14]

Finally, none of the other *Frankenhauser* factors apply to prevent full disclosure of the Greene File. On information and belief, there is no ongoing governmental self-evaluation and improvement program in place, the efficacy of which would be frustrated by surrender of the Greene File (factor 3). The party requesting the file is not likely to become the target of a criminal prosecution likely to follow from the incident in question (factor 5). For all intents and purposes (save for Defendant Bully-Cummings' plea for public assistance) the case is not being

---

[14] Actually, it should not be assumed that other discovery tools are available given Defendants history of blocking discovery and shredding documentary evidence. Indeed, at least two of these Defendants are, after all, criminally charged with committing perjury in a civil trial and civil depositions.

NORMAN YATOOMA & ASSOCIATES, P.C.

"actively investigated" (factor 6).[15] Defendants have not cited any interdepartmental disciplinary proceedings ongoing arising from the investigation (factor 7). Finally, Plaintiff's claims are brought in good-faith and are non-frivolous (factor 8).[16] In short, there is absolutely no reason why the Greene File should not be surrendered immediately and in full to Plaintiff's counsel per the Court's *OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO QUASH SUBPOENAS AND OTHER DISCOVERY-RELATED MATTERS* issued on March 20, 2008.

> b. The City is not entitled to a stay of the instant proceedings because the City lacks a 5th Amendment right against self-incrimination. Moreover, this matter should not be stayed in its entirety in the event this Court finds that Defendant Beatty's Constitutional rights are implicated by the maintenance of parallel prosecution for civil and criminal violations.

The City of Detroit, not possessing a Constitutional right against self-incrimination, cannot directly request that a civil matter be stayed in light of a parallel prosecution of a criminal matter regarding the same or similar issues in the civil matter. *See Securities and Exchange Comm'n v. First Jersey Sec., Inc.*, Fed. Sec. L. Rep. (CCH) P93,204 (S.D.N.Y. 1987); *United States v. Kordel*, 391 U.S. 1, 8, n.9 (1970). Alternatively, the City argues that this Court should stay the instant proceedings completely because "two of the named defendants, Mayor Kwame Kilpatrick and Christine Beatty, have been charged criminally...." (City of Detroit's Brief in Support at p.7) First, only Defendant Beatty has formally moved this Court for a stay of the instant proceedings; Mayor Kilpatrick, fully aware of the pending motions and the Court's request to appear on April 14, 2008 for a hearing on this issue, has to date filed no such motion. The City, therefore, argues that because Defendants Kilpatrick and Beatty *may* invoke their

---

[15] In light of the substantial period of time since Ms. Greene's and Plaintiff's efforts in securing numerous witnesses with relevant information regarding Ms. Greene's murder, the City's assertion that this is a 'crucial time' in an 'active investigation' is belied by the facts and should be ignored.

[16] "[E]ven if executive privilege would normally be applicable, when the basis of a particular suit arises from the alleged misconduct or perversion of power by a government official, as is claimed here, discovery may well be proper." *Wood v. Breier*, 54 F.R.D. 7, 12 (ED Wisc. 1972), *citing Olson Rug Co. v. N.L.R.B.*, 291 F.Supp. 57 (MD Ala. 1967).

NORMAN YATOOMA & ASSOCIATES, P.C.

Constitutional protection against self-incrimination that the *entire* matter should be stayed. The City fails to identify any authority or facts sufficient to establish that, assuming a stay is granted to Beatty only, why it cannot continue to defend its interests in this matter. The City merely states that it would be "oppressive" to require defendants to participate further in this matter.[17]

The City alludes to the fact that the basis for its request for a blanket stay lies in the *potential* that, in light of the numerous other investigations being maintained by the state bar and the attorney general, that "various employees, appointees and elected officials of the City of Detroit *may also have to* invoke the Fifth Amendment's self-incrimination provision, if called to testify." (City of Detroit's Brief in Support at p.7; emphasis added). However, where the defendants have not been formally charged, a request that a parallel civil proceeding be stayed in the face of a concurrent criminal proceeding will almost always be denied. *See Federal Savings and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989) (stating that "[t]he case for staying civil proceedings is a far weaker one when no indictment has been returned and no Fifth Amendment privilege is threatened.") (internal citations omitted); *Securities and Exchange Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (DC Cir. 1980). The City's hypothetical threat that, in the absence of a stay, some of its employees or officials *may* be required to assert their 5th Amendment rights is simply insufficient to warrant a stay of the instant proceeding. Therefore, the City's request must be denied.[18]

---

[17] The City inartfully refers to Beatty and Kilpatrick as being the individuals charged by Prosecutor Worthy but then refers to 'defendants' as being the class of persons who would be 'oppressed' if the civil matter progresses. As stated above, the City has no Constitutional protection against self-incrimination and, to date, no other charges have been lodged against any other individual besides Defendants Kilpatrick and Beatty.

[18] The City of Detroit further requests that the Court stay the entire proceedings because of the hypothetical application of the Stored Communications Act to the text messages. (City of Detroit Brief in Support at p.6). This particular issue has been raised by Defendant Beatty's attorneys in response to Plaintiff's Demands for Production, however, the Court has yet to request that the parties brief the issue. Therefore, this particular basis for a stay should be disregarded.

c. The City's request for a "gag" order should be denied because Defendants failed to carry their burden of proving that one is required in this case, and for the reasons set forth in Intervenor's Brief.

The First Amendment to the U.S. Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; **or abridging the freedom of speech**, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I.   According to MRPC 3.6, Michigan's ethical rule governing attorneys' conduct in the face of trial publicity, a "lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication <u>if the lawyer knows or reasonably should know that it will have substantial likelihood of materially prejudicing an adjudicative proceeding</u>."

The United States Supreme Court, in upholding the constitutionality of the State of Nevada's counterpart to MRPC 3.6 in *Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991), stated "[b]ecause attorneys participate in the criminal justice system and are trained in its complexities, they hold unique qualifications as a source of information about pending cases.  Since lawyers are considered credible in regard to pending litigation in which they are engaged and are in one of the most knowledgeable positions, they are a crucial source of information and opinion.  To the extent the press and public rely upon attorneys for information because attorneys are well informed, this may prove the value to the public of speech by members of the bar. **If the dangers of their speech arise from its persuasiveness, from their ability to explain judicial proceedings, or from the likelihood the speech will be believed, these are not the sort of dangers that can validate restrictions. The First Amendment does not permit suppression of speech because of its power to command assent**. *Gentile*, at 1056-1057 (emphasis added, citations omitted). Nonetheless, the court went on to state

When a state regulation implicates First Amendment rights, the Court must balance those interests against the State's legitimate interest in regulating the activity in question. The "substantial likelihood" test embodied in Rule 177 is constitutional under this analysis, for it is designed to protect the integrity and fairness of a State's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech. The limitations are aimed at two principal evils: (1) comments that are **likely** to influence the actual outcome of the trial, and (2) comments that are **likely** to prejudice the jury venire, even if an untainted panel can ultimately be found.

. . .

The restraint on speech is narrowly tailored to achieve those objectives. The regulation of attorneys' speech is limited -- **it applies only to speech that is substantially likely to have a materially prejudicial effect**; it is neutral as to points of view, applying equally to all attorneys participating in a pending case; and it merely postpones the attorneys' comments until after the trial. While supported by the substantial state interest in preventing prejudice to an adjudicative proceeding by those who have a duty to protect its integrity, **the Rule is limited on its face to preventing only speech having a substantial likelihood of materially prejudicing that proceeding**.

*Id.*, at 1074-1075 (emphasis added, citations omitted).

In *United States v. Koubriti,* 307 F. Supp. 2d 891 (E.D. Mich. 2004*)*, in imposing a limited gag order, this Court was "concerned that a substantial amount of information which has been disseminated to the media is what it would characterize as non-public or confidential information, and this raises a serious concern that the classified intelligence information which the Court has been receiving from the Government pursuant to its order for a full review of its files concerning this case may also be disseminated to the media and, thereby, undermine not only the efficacy of the Court's review, but also the due process and fair trial rights of Defendants and Mr. Hmimssa in future proceedings." In *United States v. Fieger,* 2008 U.S. Dist. LEXIS 18473 (E.D. Mich. Mar. 11, 2008), the Court issued a gag order, finding that the commercials produced and broadcast by attorney Fieger were intended to pollute the jury pool, creating the danger of those jurors coming to the courthouse with prejudice against the Government.

The instant case differs from *Koubriti* and *Fieger* fundamentally. First, unlike the instant case, *Koubriti* concerned the dissemination to the media of non-public or confidential information, possibly classified information, the release of which may prejudice the Defendants in that case. Contrary to *Fieger,* counsel in the instant case has not sought out press attention (let alone broadcast commercials); rather, counsel has merely responded to press inquiries into matters of great public interest to the City of Detroit and the State of Michigan. Further, Defendants move to gag comments in a case because they may potentially affect a currently pending criminal proceeding in which they have NOT sought a gag order.

The Court should also note that Defendants and their counsel have far outmatched Plaintiff's statements to the media. Attorney Mayer Morganroth has generated significant press coverage on behalf of his clients, held at least one press conference, publicly declared that this case would be dismissed, and recently called these proceedings a "circus." Opposing counsel has publicly chided Plaintiff's counsel, Plaintiff's case and Plaintiff's discovery efforts. Indeed, new counsel for Defendant Kilpatrick even suggested that Plaintiff's counsel is in contempt of court for speaking to the press, although a gag order has never been issued. Defendant Bully-Cummings used the press herself to call a press conference purportedly for the purpose of pleading for anyone with information to call in with tips. Attorney Jeffrey Morganroth likewise stepped up to the microphones immediately following the last status conference to declare that the Court's ruling denying their Motion to Dismiss and ordering the production of text messages was somehow a victory for his client. Unlike Defendants, **Plaintiff's counsel has only RESPONDED to media inquiries, has NEVER issued a press release, nor called a press conference. Defendants and their attorneys cannot make the same statement.**

NORMAN YATOOMA & ASSOCIATES, P.C.

Defendants' proffered evidence of the necessity of a "gag" order in this matter is baseless, conclusory and belied by Defendant Kilpatrick's own conduct. Plaintiff's counsel has violated no court order. When called upon to respond to inquiries from the press regarding this matter, the response from the general public offering useful and relevant information increases drastically after each response. Plaintiff counsel's involvement with the press has been purposeful. Public response increases to such an extent that a separate "tip" line has been arranged to handle the influx of telephone calls. To date press coverage of this matter has led to approximately one thousand anonymous tips – including the affidavits of Joyce Rogers and Pastor Ken Hampton which directly undermine the Detroit Police Department's theories regarding the Greene murder. Surprisingly, Defendant Bully-Cummings, in response to Plaintiff's efforts to secure information and witnesses, made a public plea for assistance with the Greene "investigation" – a plea that would not have been made but for the very conduct Defendants now ask this Court to stop.

It is also worth pointing out that this case is only one of several court and administrative proceedings taking place or that have taken place involving these parties:

a)    The criminal prosecution of Kilpatrick and Beatty;

b)    The Brown and Nelthrope whistleblower action;

c)    The Walter Harris Whistleblower action;

d)    The Alvin Bowman Whistleblower action;

e)    The Freedom of Information Act case brought by The Detroit Free Press; and

f)    The Detroit City Council proceedings into the secret deal that led to the settlement of the Brown, Nelthrope and Harris cases.

To the best of Plaintiff's knowledge, despite extensive press coverage, none of the parties in those cases sought a gag order to prevent coverage of those proceedings. In fact, AFTER being

charged criminally, DEFENDANT'S BEATTY AND KILPATRICK SOUGHT TO INTERVENE PERSONALLY in the Freedom of Information Act case pending before Judge Columbo in the Wayne County Circuit Court by asserting that they are the owners of certain text messages sent to and from Defendant Beatty's City-issued Skytel pager; text messages that likely contain discoverable information relevant to this case. Kilpatrick and Beatty are not seeking to stay that litigation; rather they are seeking to participate in it. Certainly, if they are not shy about joining other high-profile litigation that will garner significant press coverage, the Court should not now allow the City to pick and choose which proceedings to stay, which ones to gag, and which ones to proceed unfettered.

Defendant Kilpatrick's conduct, consisting of "pep" rallies and "spin" generated by his high-dollar Public Relations firm, is far more likely to have a substantial deleterious effect on the potential jury pool such that *Plaintiff* will find it difficult to secure a fair trial. The Mayor has the bully pulpit at his disposal and uses the powers flowing therefrom with ease and skill - and with the direct goal of influencing his constituency (and hence potential jurors). Whether he is talking about this case or not, the mere fact that he is the Mayor of the City of Detroit, and addresses the public everyday places Plaintiff at a severe disadvantage if Plaintiff is silenced. With Plaintiff and his counsel gagged, the Mayor will be out there everyday, currying favor with the public and promoting his message. Defendant Kilpatrick has demonstrated no hesitancy in using the powers of his office to sway his constituents and, effectively, try *his* case in the court of public opinion. Denying Defendants' Motion cannot level the playing level the playing field but but will not further bias it toward Defendants.

To the extent, not otherwise addressed herein, Plaintiff herein incorporates and adopts the cited authority and argument presented by the Detroit Free Press in its Brief in Opposition to the City of Detroit's Request for a 'Gag' Order.

III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the City of Detroit's request relief.

Respectfully Submitted,

Dated: April 11, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates, P.C.**
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

# CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2008 I electronically filed the foregoing papers with the Clerk of the Court using the CM/ECF system:

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION FOR STAY OF PROCEEDINGS AND FOR ISSUANCE OF A 'GAG' ORDER

On the following:

**Morganroth & Morganroth, PLLC**
By: Mayer Morganroth (P17966)
By: Jeffrey B. Morganroth (P41670)
Attorney for Defendants City of Detroit, Mayor Kwame Kilpatrick, Commander Craig Schwartz, Harold Cureton, and Christine Beatty
3000 Town Center, Ste. 1500
Southfield, Michigan 48075
(248) 355-3084

**JAMES C. THOMAS**
By: James C. Thomas (P23801)
Attorneys for Defendant Mayor Kwame Kilpatrick
535 Griswold Street
Suite 2632
Detroit, Michigan 48226
(313) 963-2420

**Plunkett Cooney**
By: Kenneth L. Lewis (P26071)
By: Randal M. Brown (P70031)
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790
April 11, 2008

**City of Detroit Law Department**
By: John A. Schapka (P36731)
Co-Counsel for Defendants City of Detroit, Mayor Kwame M. Kilpatrick, Detroit Police Chief Ella Bully-Cummings, Commander Craig Schwartz and Christine Beatty.
1650 First National Building
Detroit, Michigan 48226
(313) 224-4550

**City of Detroit Law Department**
By: Krystal A. Crittendon (P49981)
Attorney for Defendants City of Detroit, Mayor Kwame Kilpatrick, Ella Bully-Cummings, Commander Craig Schwartz, Cara Best and Harold Cureton
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018

/s/ Norman A. Yatooma
**Norman Yatooma & Associates, P.C.**
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600
nya@normanyatooma.com

NORMAN YATOOMA & ASSOCIATES, P.C.