# UNITED STATES OF AMERICA
## IN THE DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND, a minor,

Case No.: 05-CV-74253
Hon. Gerald Rosen
Mag. R. Steven Whalen

                    Plaintiff,

-vs-

CITY OF DETROIT, a municipal corporation;
DETROIT POLICE CHIEF ELLA BULLY-CUMMINGS;
DEPUTY DETROIT POLICE CHIEF CARA BEST;
JOHN DOE POLICE OFFICERS 1 - 20;
ASST. DEPUTY POLICE CHIEF HAROLD CURETON;
COMMANDER CRAIG SCHWARTZ;
POLICE LT. BILLY JACKSON;
MAYOR KWAME M. KILPATRICK,
CHRISTINE BEATTY, jointly and severally

                    Defendants.

_____/

**NORMAN YATOOMA & ASSOCIATES, P.C.**
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

**JAMES C. THOMAS**
By: James C. Thomas (P23801)
Attorney for Defendant Kwame Kilpatrick
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 963-2420

**PLUNKETT COONEY**
By: Kenneth L. Lewis (P26071)
By: Said A. Taleb (P66030)
By: Randal M. Brown (P70031)
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790

**CITY OF DETROIT LAW DEPARTMENT**
By: Krystal A. Crittendon (P49981)
Attorney for Defendants City of Detroit, Commander Craig Schwartz, Cara Best and Harold Cureton
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018

NORMAN YATOOMA & ASSOCIATES, P.C.

1

NORMAN YATOOMA & ASSOCIATES, P.C.

**CITY OF DETROIT LAW DEPARTMENT**
By: John A. Schapka (P36731)
Co-Counsel for Defendants City of Detroit,
Ella Bully-Cummings, Kwame Kilpatrick
and Commander Craig Schwartz
1650 First National Building
Detroit, Michigan 48226
(313) 224-4550

**MORGANROTH & MORGANROTH, PLLC**
By: Mayer Morganroth (P17966)
By: Jeffrey B. Morganroth (P41670)
Attorney for Defendant Christine Beatty
3000 Town Center, Suite 1500
Southfield, Michigan 48075
(248) 355-3084

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION TO PRECLUDE DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT AND DEMAND FOR SANCTIONS

NOW COMES THE PLAINTIFF, Jonathan Bond, through his Next Friend, Ernest Flagg, by and through his counsel of record, and in support of *PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION TO PRECLUDE DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT AND DEMAND FOR SANCTIONS*, responds to said Motion as follows:

1.     Admitted, except to further state that the Court has already ruled on those subpoenas, and that those rulings are embodied in this Court's *OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO QUASH SUBPOENAS AND OTHER DISCOVERY-RELATED MATTERS* ("ORDER REGARDING SUBPOENAS") and *ORDER ESTABLISHING PROTOCOL FOR REVIEW AND PRODUCTION OF TEXT MESSAGES AND DESIGNATING MAGISTRATE JUDGES WHALEN AND HLUCHANIUK TO CONDUCT THIS REVIEW* ("DISCOVERY PROTOCOL ORDER"), both of which were entered on March 20, 2008.

2. Neither admitted nor denied for the reason that Defendant has opposed discovery and has failed and refused to produce copies of said contract (or contracts) despite being requested to do so.[1]

3. Neither admitted nor denied for the reason that Defendant has opposed discovery and has failed and refused to produce copies of said contract (or contracts) despite being requested to do so.

4. Neither admitted nor denied for the reason that Defendant has opposed discovery and has failed and refused to produce copies of the very text messages the City alleges were created, sent and/or received by various employees, appointees, elected officials and agents of Defendant City of Detroit. When the parties appeared before the Court on April 14, 2008, Attorney Crittendon informed the Court that after the City of Detroit ceased doing business with SkyTel in 2004, it shredded the very documents that are required to verify the truth or accuracy of this statement.

5. Denied as untrue.

6. Denied as untrue. The City of Detroit has authorized and consented to the disclosure of these text messages on at least three (3) different occasions: (i) via Defendant Kilpatrick's 2000 Directive notifying all City employees that such communications were public record and that they had no privacy expectation in those records; (ii) at the March 14, 2008, Status Conference when "**counsel indicated their CONSENT to a mechanism and set of parameters for the discovery of text messages held by SkyTel**" (see ORDER REGARDING SUBPOENAS of March 20, 2008); and (iii) in the form of the Detroit City Council's Resolution seeking the disclosure of these very same text messages. Furthermore, even if Defendant City of

---

[1] Pursuant to its Order of May 6, 2008, Defendant City of Detroit is required to produce said contracts on or before May 20, 2008.

NORMAN YATOOMA & ASSOCIATES, P.C.

Detroit does not voluntarily consent, Defendant City of Detroit, as a party to this litigation, can be compelled to consent to such disclosure under pain of discovery sanctions.

7. Denied as untrue.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Deny Defendants' Motion;

(b) Grant Plaintiff his reasonable costs and attorney fees for having to wrongfully defend this Motion;

(c) Order Defendant City of Detroit to show cause why it's Motion and Supporting Brief do not violate FRCP 11(b), in accordance with FRCP 11(c)(3); and

(d) Grant Plaintiff any other relief the Court determines to be just and equitable under the circumstance.

Respectfully Submitted,

Dated: May 16, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates**
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiffs
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION TO PRECLUDE DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT, AND DEMAND FOR SANCTIONS.</u>**

## STATEMENT OF ISSUES PRESENTED

I.     WHETHER SKYTEL, A PROVIDER OF REMOTE COMPUTING SERVICES TO THE DEFENDANT CITY OF DETROIT, MAY DIVULGE TO THIS COURT THE CONTENTS OF TEXT MESSAGES OF CITY EMPLOYEES SENT FROM AND RECEIVED ON CITY-ISSUED SKYTEL PAGERS PURSUANT TO LAWFULLY ISSUED COURT ORDERS, WHERE THE CITY HAS PREVIOUSLY DECLARED ALL OF SUCH RECORDS TO BE PUBLIC RECORDS, AND WHERE THESE DEFENDANTS HAVE CONSENTED TO THE RELEASE AND DISCLOSURE OF THESE COMMUNICATIONS?

Plaintiff says "Yes".

Defendant City of Detroit says "No."

This Court should say "Yes."

II.     WHETHER THIS COURT CAN REQUIRE DEFENDANT CITY OF DETROIT, ON PAIN OF DISCOVERY SANCTIONS, TO AUTHORIZE SKYTEL TO DIVULGE TO THIS COURT THE CONTENTS OF TEXT MESSAGES OF CITY EMPLOYEES SENT FROM AND RECEIVED ON CITY-ISSUED SKYTEL PAGERS PURSUANT TO LAWFULLY ISSUED COURT ORDERS?

Plaintiff says "Yes".

Defendant City of Detroit will likely say "No."

This Court should say "Yes."

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ........................................................................... i

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 4

    a.  The Court has already ordered the production of the SkyTel text messages as set forth in its *OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO QUASH SUBPOENAS AND OTHER DISCOVERY-RELATED MATTERS* and *ORDER ESTABLISHING PROTOCOL FOR REVIEW AND PRODUCTION OF TEXT MESSAGES AND DESIGNATING MAGISTRATE JUDGES WHALEN AND HLUCHANIUK TO CONDUCT THIS REVIEW*, both of which were issued March 20, 2008.  Defendant cannot circumvent the requirements of Local Rule 7.1 by asking this Court to reconsider those orders more than ten days after their entry, and without carrying their burden of proving (1) a "palpable defect by which the Court and the parties have been misled", and (2) that correcting the defect, assuming there is a defect will "result in a different disposition of the case." .................................................................................. 5

    b.  Assuming this Court allows Defendant to seek relief from its Orders of March 20, 2008 without timely filing a Motion for Reconsideration, Defendant's motion must be denied because Skytel, as a provider of "remote computing services" to the City of Detroit under the Stored Communications Act, may disclose such communications since the City of Detroit, which is the subscriber under the SCA, has already consented to the disclosure of all such communications. .......................................................................... 8

    c.  Assuming this Court allows Defendant to seek relief from its Orders of March 20, 2008 without timely filing a Motion for Reconsideration, the SCA does not apply to text messages received by and in the possession of the Defendants. ...................................... 11

    d.  Assuming Defendant is not required to file a Motion for Reconsideration, and assuming the SCA applies to block the subpoenas that have been issued to SkyTel, this Court has the power and authority to require Defendant's consent to the release of the text messages from SkyTel on pain of discovery sanctions. ........................................... 12

    e.  The City of Detroit's blind invocation of the Executive, Deliberative Process privilege or any other privilege is baseless in light of the fact that Defendant failed to provide Plaintiff or this Court with sufficient information to test the veracity of the claimed privileges. ................................................................................................. 13

III.  CONCLUSION .................................................................................................... 15

*NORMAN YATOOMA & ASSOCIATES, P.C.*

# TABLE OF AUTHORITIES

## Federal Cases

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99; 1983 U.S. Dist. LEXIS 14139 (E.D. Va. 1983) ................................................................................................ 6

*Fox v. Kitch*, 2008 U.S. Dist. LEXIS 34397 (ED Mich. 2008) ........................................... 6

*In re Search Warrant Executed at Law Office of Stephen Garea, Suite 422, City Centre One, 100 Federal Plaza East, Youngstown, Ohio*, 1999 U.S. App. LEXIS 3861 (1999) ........................ 15

*Marketing Displays, Inc. v. TrafFix Devices*, Inc., 971 F.Supp. 262 (E.D. Mich. 1997) .............. 6

*O'Grady v. Superior Court*, 139 Cal. App. 4th 1423 (2006) ............................................. 8, 12, 13

*Quon v. Arch Wireless Operating Co., (Quon II)* 445 F. Supp. 2d 1116 (C.D. Cal. 2006) ...... 8, 12

*SPX Corp. v. Bartec USA, LLC*, 2008 U.S. Dist. LEXIS 26282 (E.D. Mich. 2008) .................. 15

*United States v. Construction Products Research, Inc.*, 73 F.3d 464 (2d Cir. 1996) ............ 14, 15

*United States v. Dakota*, 197 F.3d 821 (6th Cir. 2000) ..................................................... 14

*United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) ...................... 15

*United States v. Parker*, 586 F.2d 422 (5th Cir. 1978) ...................................................... 15

*United States v. Zolin*, 491 U.S. 554, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) ...................... 15

## Statutes

18 U.S.C. §2702(a) .......................................................................................................... 8, 9

18 U.S.C. § 2702(a)(1) ..................................................................................................... 7

18 U.S.C. § 2702(a)(2) ..................................................................................................... 7

18 U.S.C. §2702(b)(3) ...................................................................................................... 9

## Rules

FED. R. CIV. P. 26(b)(5) ..................................................................................................... 14

L.R. 7.1(g)(1) ................................................................................................................. 6

L.R. 7.1(g)(3) ................................................................................................................. 6

NORMAN YATOOMA & ASSOCIATES, P.C.

**State Cases**

*Detroit Free Press, Inc., vs. City of Detroit*, Case No. 08-100214-CZ ......................................... 4

NORMAN YATOOMA & ASSOCIATES, P.C.

## I. INTRODUCTION

Prime Minister Winston Churchill famously proclaimed that "[i]n wartime, truth is so precious that she should always be attended by a bodyguard of lies." The City of Detroit appears to have taken Prime Minister Churchill's comments to heart as it surrounds what it describes as "frank" communications contained in the subpoenaed text messages with a security detail of half-truths and outright falsehoods. The City of Detroit continues to unreasonably and unjustifiably shirk its twin obligations of accountability and transparency to the Plaintiff, the Court and the people of this City and the State of Michigan. Defendant not only continues to defy Court Orders and Court Rules in an ongoing effort to continue its cover up of Tamara Greene's murder investigation, but along the way, the City defies logic and reason as well. Essentially, Defendant seeks to prevent disclosure of "frank" communications exchanged by employees it claims to have no means of identifying, and that were exchanged among defendants who disavow ownership of those very same records. Quite a formidable bodyguard, indeed.

This action was instituted on November 7, 2005, against the City of Detroit, Mayor Kwame M. Kilpatrick, Christine Beatty, Detroit Police Chief Ella Bully-Cummings, Cara Best, Craig Schwartz, Billy Jackson, Harold Cureton, several "John Doe" Defendants and other individuals. On January 14, 2008, Plaintiff, through his current counsel, filed his Second Amended Complaint pursuant to leave granted by this Court. In that Complaint, Plaintiff alleges that the Defendants actively concealed and deliberately obstructed the investigation of the April 30, 2003, murder of his mother, Ms. Tamara Greene. A related investigation concerning an alleged assault some six months earlier on Tamara Greene by Defendant Kilpatrick's wife, Carlita Kilpatrick, was likewise terminated, as evidenced by (1) the firing of former Deputy Chief Gary Brown, (2) the retaliation against Harold Nelthrope by publicly accusing him of

being a liar on local television, and (3) the testimony of Commander Parshall and Inspector Dolunt, who were both told to stop investigating the Mayor by then Chief of Police Jerry Oliver. **See Parshall deposition and Dolunt deposition, Exhibits 8 and 9 to Plaintiff's Response to Motion to Dismiss, docket entry 56.** Thereafter, Lt. Alvin Bowman, the head of the Squad that investigated the murder was transferred to another precinct and assigned to the midnight shift for "asking too many questions" about this case. Another investigator, Sgt. Marion Stevenson had case notes regarding the investigation erased from her computer hard drive and had her back up zip drives removed from a locked cabinet. Then, despite an active investigation, this case was designated a "cold case" and transferred to the Cold Case Squad after less than one year, despite departmental policies or practices which allowed for such a transfer only after at least two years. This obstruction of the investigation into his mother's murder actively terminated Plaintiff's ability to obtain meaningful relief from the Courts, thus giving rise to the instant constitutional claim of denial of access to the Courts.

On December 5, 2007 and December 19, 2007, this Court ordered that the parties appear before it for a Rule 16(b) Conference. **(Ex. 1, December 5, 2007 Order; Ex. 2, December 19, 2007 Order).** In *both* Notices, the Court ordered that "counsel are instructed to commence significant discovery prior to the conference." *Id.* In response, and after Plaintiff's Second Amended Complaint was filed, Plaintiff served on the Defendants his First Demand for the Production of Documents and Things pursuant to Federal Rule of Civil Procedure 34. **(Ex. 3, 2/1/2008 Requests to Produce with Proof of Service).** Subsequently, on February 11, 2008, Plaintiff served his Second Demand for the Production of Documents and Things on the Defendants; however, Defendants have failed to produce any of the requested information and instead lodged numerous specious objections, thus actively frustrating this Court's direction that

the parties conduct "substantial discovery." Further, Plaintiff delivered two subpoenas under Rule 45 to Bell Industries, Inc. f/k/a Skytel, Inc., which has access to certain text messages and other relevant evidence that support Plaintiff's claims that the Defendants actively frustrated and unlawfully terminated the investigation into the murder of Plaintiff's mother. Defendants moved to quash those SkyTel subpoenas, and Plaintiff filed responses to those motions. Following a Status Conference held on March 14, 2008, this Court issued two Orders: an *OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO QUASH SUBPOENAS AND OTHER DISCOVERY-RELATED MATTERS* ("ORDER REGARDING SUBPOENAS") and an *ORDER ESTABLISHING PROTOCOL FOR REVIEW AND PRODUCTION OF TEXT MESSAGES AND DESIGNATING MAGISTRATE JUDGES WHALEN AND HLUCHANIUK TO CONDUCT THIS REVIEW* ("DISCOVERY PROTOCOL ORDER").

According to the ORDER REGARDING SUBPOENAS,

Upon addressing this point with counsel at the March 14 status conference, the Court has decided upon, **and counsel indicated their CONSENT to, a mechanism and set of parameters for the discovery of text messages held by SkyTel**. As a general matter, this will entail (i) the designation of two Magistrate Judges to review these text messages, which SkyTel will provide to the Court under seal, and make the initial determination as to which of them are discoverable under the standard of Rule 26(b)(1), (ii) an opportunity for Defendants to present objections to the Magistrate Judges' determination, whether as to discoverability or as to any privileges that they believe are applicable, and (iii) an opportunity for Plaintiff to respond to Defendants' objections. At the conclusion of this process, the Court will determine which of the text messages identified by the Magistrate Judges as discoverable should be disclosed to Plaintiff, subject to a protective order that the parties are negotiating. The precise details of this procedure are set forth in a separate order accompanying this opinion.

**See ORDER REGARDING SUBPOENAS attached hereto as Exhibit 4 (emphasis added).**

Furthermore the DISCOVERY PROTOCOL ORDER states the following:

In an opinion issued this same date, the Court held that **Plaintiff is entitled to pursue the production of some, but not all, text messages sent or received by**

NORMAN YATOOMA & ASSOCIATES, P.C.

**certain officials or employees of the Defendant City of Detroit — some of whom are also named as defendants in this suit — during certain specified time frames, using text messaging devices supplied by an outside vendor, Bell Industries, Inc. (d/b/a SkyTel)**. The Court further stated that it would establish a mechanism and set of parameters for the review and production of these text messages. The present order implements these rulings.

> See **DISCOVERY PROTOCOL ORDER attached hereto as Exhibit 5 (emphasis added).**

Since the entry of these orders on March 20th, none of these Defendants moved for reconsideration pursuant to Local Rule 7.1. Furthermore, on March 28, 2008, Defendants City of Detroit, Beatty and Kilpatrick participated in a Motion Hearing before Wayne County Circuit Court Judge Robert Colombo in the case of *Detroit Free Press, Inc., vs. City of Detroit*, Case No. 08-100214-CZ. **See the transcript of that hearing attached hereto as Exhibit 6.** At that hearing, Attorney William Goodman, appearing on behalf of the Detroit City Council, the legislative arm and fiscal agent of the City of Detroit, **presented to Judge Colombo a resolution passed by the Council that requested the release of these text messages**. See **Exhibit 6, pp. 18-21.** At that same hearing, Attorney James Thomas, appearing in that matter for Defendant Kilpatrick, while arguing against disclosure of the actual text messages, nonetheless conceded that "subscriber information can be disclosed. Pin [sic] numbers can be disclosed. Billings can be disclosed."[2]

II. ARGUMENT

THIS COURT SHOULD ORDER SKYTEL, A PROVIDER OF REMOTE COMPUTING SERVICES TO THE DEFENDANT CITY OF DETROIT, TO DIVULGE TO THIS COURT THE CONTENTS OF TEXT MESSAGES OF CITY EMPLOYEES SENT FROM AND RECEIVED ON CITY-ISSUED SKYTEL PAGERS PURSUANT TO THIS COURT'S LAWFULLY ISSUED COURT ORDERS, OR ALTERNATIVELY, SHOULD ORDER

---

[2] **See Exhibit 6, pp. 28.** Despite this concession, Defendant Kilpatrick joined in Defendant Beatty's motion which argued that information pertaining to SkyTel's customers and/or subscribers could not be produced without violating the SCA. See Beatty's Motion, at p. 4. Although this Court already ruled that there is nothing that prohibits SkyTel from complying with Plaintiff's April 21, 2008, subpoena, Defendant Kilpatrick joined in that motion **knowing full well** that Defendant Beatty's arguments as they related to that subpoena were, as this Court stated, "utterly lacking in merit."

NORMAN YATOOMA & ASSOCIATES, P.C.

DEFENDANT CITY OF DETROIT, AS THE SUBSCRIBER OF SKYTEL'S SERVICES, TO CONSENT TO SKYTEL'S RELEASE OF THOSE MESSAGES UNDER PAIN OF DISCOVERY SANCTIONS.

a. The Court has already ordered the production of the SkyTel text messages as set forth in its *OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO QUASH SUBPOENAS AND OTHER DISCOVERY-RELATED MATTERS* and *ORDER ESTABLISHING PROTOCOL FOR REVIEW AND PRODUCTION OF TEXT MESSAGES AND DESIGNATING MAGISTRATE JUDGES WHALEN AND HLUCHANIUK TO CONDUCT THIS REVIEW*, both of which were issued March 20, 2008. Defendant cannot circumvent the requirements of Local Rule 7.1 by asking this Court to reconsider those orders more than ten days after their entry, and without carrying their burden of proving (1) a "palpable defect by which the Court and the parties have been misled", and (2) that correcting the defect, assuming there is a defect will "result in a different disposition of the case."

Without actually filing a motion for this Court to reconsider the ORDER REGARDING SUBPOENAS or the DISCOVERY PROTOCOL ORDER, both of which were entered on March 20, 2008, <u>with the consent of the parties</u>, the City of Detroit is clearly asking the Court to do just that: reconsider the Orders entered on March 20, 2008. Motions for Reconsideration are governed by Eastern District of Michigan Local Rule 7.1(g) which provides, in relevant part:

**(g) Motions for Rehearing or Reconsideration**.

(1) *Time*. A motion for rehearing or reconsideration must be filed within 10 days after entry of the judgment or order.

* * *

(3) *Grounds*. Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues already ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable error by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

Defendant's motion was not timely filed in accordance with the Local Rule. As indicated, the ORDER REGARDING SUBPOENAS or the DISCOVERY PROTOCOL ORDER, were both entered on March 20, 2008. Therefore, to have been timely filed, not counting intervening

weekends and holidays, Defendant's Motion to Reconsider those orders would have had to have been filed no later than April 3, 2008. Defendant, however, did not file its motion until May 2, 2008, **despite being fully apprised of the issues pertaining to the Stored Communications Act no later than March 28, 2008, when the City of Detroit, along with Defendants Kilpatrick and Beatty appeared before Judge Colombo and argued the exact same issues**. **See the transcript of that hearing attached hereto as Exhibit 6.** While there are numerous reasons to deny Defendant's motion, this Court can and must at the outset dispense with this motion because it is **untimely** under L.R. 7.1(g)(1).

Additionally, Defendant City of Detroit failed to satisfy the grounds set forth in L.R. 7.1(g)(3) for granting a Motion for Reconsideration. To be successful, the moving party "must not only demonstrate a palpable error by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." *Id.* "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest or plain." See *Fox v. Kitch*, 2008 U.S. Dist. LEXIS 34397 (E.D. Mich. 2008), *citing Marketing Displays, Inc. v. TrafFix Devices*, Inc., 971 F.Supp. 262, 278 (E.D. Mich. 1997). A Motion to Reconsider cannot be used "to ask the Court to rethink what the Court had already thought through -- rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101; 1983 U.S. Dist. LEXIS 14139 (E.D. Va. 1983). "The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare." *Id.*

No such situation presents itself here. Defendant has not set forth before this Court a defect which is "obvious, clear, unmistakable, manifest or plain." Defendants Kilpatrick and Beatty have not even claimed ownership of the text messages, and Defendant Kilpatrick has publicly challenged their authenticity.[3] Additionally, according to Attorney Crittendon, the City of Detroit shredded its records after it ceased doing business with SkyTel in 2004. Further, Defendant has not established any of the following facts which, assuming the Stored Communications Act even applies to this case, are crucial to an SCA analysis:

1) Whether for purposes of this case, SkyTel is a provider of electronic communications under 18 U.S.C. § 2702(a)(1);

2) Whether for purposes of this case, SkyTel is a provider of remote computing services under 18 U.S.C. § 2702(a)(2);

3) The terms and conditions by which SkyTel was to provide text messaging services to the City of Detroit;[4] and

4) Whether the messages are stored with the City or at a remote location.[5]

---

[3] See the transcript of the March 28, 2008, hearing, Exhibit 6.

[4] Recognizing the significance of this issue, in its May 6, 2008, Order, the Court ordered the City to produce the relevant contracts within 14 days of that order. This is particularly important since SkyTel offers its customers two different options in archiving text messages. Option 1 is **"Customer-hosted"**, whereby Skytel's customer can choose to store the messages themselves. If this option applies, then "each morning, the previous day's messages will be uploaded to an FTP address (provided by the customer), and the customer can download to their own servers. This will allow the customer to store the data for as long as needed by their organization." The second option, and the one apparently chosen by the City of Detroit, is the SkyTel-hosted option, whereby SkyTel hosts "the customer's archive for an annual recurring fee of $999. If the customer needs to access the records, the authorized customer contact will simply fax their request to the Message Retrieval fax line, and the data will be pulled and shipped to the customer on CD." See SkyTel's website at http://help.skytel.com/display/2/index.asp?c=&cpc=&cid=&cat=&catURL=&r=0.2469141. **A copy of the relevant web page is also attached hereto as Exhibit 8.**

[5] **The significance here, of course, is if the text messages are held in the City of Detroit's own servers, then even though they can be** *accessed* **by SkyTel, they are not in the** *possession* **of SkyTel. Thus, even assuming the SCA applies to bar disclosure by SkyTel, it does not apply to bar disclosure by the City.** At least one Court found the distinction significant. "Certain aspects of Arch Wireless' service -- . . . the retrieval of the contents of those text messages kept in *long*-term storage on its computer network *after* they had been received -- were that of a remote computing service. Given that it is the latter service that is at issue in this case, the Court finds that *section 2702(b)(3)'s* subscriber exception applies." *Quon v. Arch Wireless Operating Co., (Quon II)* 445 F. Supp. 2d 1116, 1137 (C.D. Cal. 2006). Another Court concluded that regardless of the distinction, a court could require a party to the lawsuit to give consent to the disclosure on pain of discovery sanctions. *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1446 (2006).

NORMAN YATOOMA & ASSOCIATES, P.C.

The burden is on the Defendant to establish that there has been a palpable error justifying relief from this Court's orders. They have failed to do so. They have not even succeeded in identifying whether SkyTel is a provider of "electronic communications" or "remote computing services" for purposes of this motion. Further, there has been no intervening change in the law that would require this Court to revisit it's ruling. Accordingly, as this Court stated, "Plaintiff is entitled to pursue the production of some, but not all, text messages sent or received by certain officials or employees of the Defendant City of Detroit" in accordance with the provisions of this Court's DISCOVERY PROTOCOL ORDER of March 20, 2008.

b. Assuming this Court allows Defendant to seek relief from its Orders of March 20, 2008 without timely filing a Motion for Reconsideration, Defendant's motion must be denied because Skytel, as a provider of "remote computing services" to the City of Detroit under the Stored Communications Act, may disclose such communications since the City of Detroit, which is the subscriber under the SCA, has already consented to the disclosure of all such communications.

18 U.S.C. §2702(a) provides in pertinent part:

**(a) Prohibitions.** — Except as provided in subsection (b)—

(1) a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and

(2) a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service—

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service;

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing;

NORMAN YATOOMA & ASSOCIATES, P.C.

According to 18 U.S.C. §2702(b)(3), however, a "provider described in subsection (a) may divulge the contents of a communication — (3) with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service."

For purposes of this Motion, and considering that SkyTel is standing ready to produce text messages from its remote location in Clinton, Mississippi, and despite the fact that Defendant has not indicated whether the text messages are being held on the City's computer servers, Plaintiff will assume that the archiving services in question place SkyTel under the provisions of 18 U.S.C. §2702(a)(2). Accordingly, SkyTel may divulge the contents of a communication with the lawful consent of the originator or an addressee or intended recipient of such communication, or the *subscriber in the case of remote computing service*.

In this case, the subscriber, as conceded by Defendant in its brief, is the City of Detroit. The City of Detroit has consented to the publication of these messages on not less than three different occasions; through the Mayor, through counsel and through the City Council:

1) Shortly after taking office, Defendant Kilpatrick signed a "DIRECTIVE FOR THE USE OF THE CITY OF DETROIT'S ELECTRONIC COMMUNICATIONS SYSTEM." **See Exhibit 9, attached hereto.**

This directive puts City employees on notice that use of that system can create public records that are subject to disclosure. That document expressly notifies employees that

> It is the policy of the City of that any electronic communication created, received, transmitted, or stored through use of any part of the City's electronic communications system including, but not limited to, all hardware and software, is the property of the City. <u>Accordingly, any electronic communication created, received, transmitted, or stored in the City's electronic communications system is not considered, in whole or in part, as private in nature regardless of the level of security on the communication.</u>

**See Exhibit 9 (emphasis added).**

Section 4 of the Directive specifically goes on to say that "authorized users of the City's electronic communications system must bear in mind that, whenever creating and sending electronic communication, they are almost always creating a public record which is subject to disclosure whether the communication is routine or intended to be confidential." Section 8 of the Directive instructs authorized users that "any electronic communication created, received, transmitted or stored on the City's electronic communications system is public information, and may be read by anyone," and that such communications are not "considered to be a personal or a private communication of any authorized user." **See Exhibit 9.**

With such a policy in place during the relevant time periods, it is completely unreasonable to argue that ANY City employee had ANY expectation of privacy in these text messages. It is also unreasonable to argue that the City, by virtue of its policy of making such communications a public record, did not give blanket consent to the disclosure of these text messages.

2) On March 14, 2008, at the Status Conference held before this Court, and as confirmed by the ORDER REGARDING SUBPOENAS, counsel for the parties consented to disclosure of the SkyTel text messages pursuant to the protocol established by this Court.

Without reiterating the parties' briefs concerning the previously ruled on motions to quash, the Court met with counsel to discuss the proposed discovery protocol. During the Status Conference, the substance and parameters of the discovery protocol were analyzed, negotiated and agreed on by the parties. The Court issued Orders on March 20, 2008, memorializing the discussions and confirming the parties' "**CONSENT to a mechanism and set of parameters for the discovery of text messages held by SkyTel**." See ORDER REGARDING SUBPOENAS, attached as Exhibit 4 (emphasis added, comma removed). If this was inaccurate,

Defendant City should have filed a Motion for Reconsideration within ten days. To date, none of the parties have challenged this Court's finding of consent by filing such a motion.

    3) On or about March 28, 2008, the Detroit City Council, through Attorney William Goodman, appeared before Judge Colombo at the Wayne County Circuit Court and stated that the Council passed a resolution calling for the disclosure of those text messages. **See Exhibit 6, pp. 18-21.** As the legislative body and fiscal agent that approved the contracts and authorized the payments for SkyTel's services, the City Council has full power and authority to consent to such disclosure.

As the legislative body and fiscal agent that approved the contracts and authorized the payments for the SkyTel's services, the City Council has full power and authority to consent to such disclosure. Accordingly, since consent to disclosure of these text messages has been voiced by the executive and legislative branches of the City's government, and since the parties, through their counsel in this case, consented to discovery of the SkyTel text messages, the Court must deny Defendants motion.

    c. Assuming this Court allows Defendant to seek relief from its Orders of March 20, 2008, without timely filing a Motion for Reconsideration, the SCA does not apply to text messages received by and in the possession of the Defendant.

By its express terms, the SCA only governs the disclosure of certain communications by providers of electronic communications or remote computing services. *Quon II*, at 1128-1129. It is clear that to the extent that the City of Detroit selected SkyTel's first option, namely storing these communications on the City's own servers, then the SCA does not apply at all and the Court can order the City to access its own computers and serve on the Magistrates the required information. **Also, it appears that Defendant Kilpatrick is in possession or control of approximately 14,000 of these text messages**. **See Report of Special Counsel to the City Council, p. 4, attached hereto as Exhibit 10.** Since neither the City nor Defendant Kilpatrick are providers of electronic communications or remote computing services, there is no question

that the SCA has no relevance as to whether this Court has the power to compel Defendant Kilpatrick or Defendant City of Detroit to produce those text messages in their possession.

> d. Assuming Defendant is not required to file a Motion for Reconsideration, and assuming the SCA applies to block the subpoenas that have been issued to SkyTel, this Court has the power and authority to require Defendant's consent to the release of the text messages from SkyTel on pain of discovery sanctions.

In *O'Grady v. Superior Court*, 139 Cal. App. 4th 1423 (2006), Apple Computer, Inc., sued a number of "Doe" defendants for misappropriation of trade secrets after they communicated information about a new Apple product that had not yet been released. O'Grady and another individual were the publishers of "online news magazine" Web sites on which they posted articles about the new product. *Id*. at p. 1432. The trial court permitted Apple to serve subpoenas on the host of one publisher's e-mail account and the other's Web site to produce documents relating to the identities of the defendants who had provided the information from which the articles were derived. The subpoenas further required the e-mail service hosts to produce all communications relating to Apple's new product. The trial court denied the publishers' motion for a protective order, but the appellate court overturned the order by granting publishers petition for a writ of mandate, holding that the SCA prohibited disclosure of the information. Despite this ruling, that Court went on to say "[w]here a party to the communication is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions." *Id*., at 1446. That Court went further, stating:

> In other words, Congress could quite reasonably decide that an e-mail service provider is a kind of data bailee to whom e-mail is entrusted for delivery and secure storage, and who should be legally disabled from disclosing such data in response to a civil subpoena without the subscriber's consent. **This does not render the data wholly unavailable; it only means that the discovery must be directed to the owner of the data,** not the bailee to whom it was entrusted.

*O'Grady*, at 1447 (emphasis added).

Judge Colombo found this language persuasive and specifically asked Attorneys Morganroth and Thomas if they disagreed with the *O'Grady* Court's proposition. Defendants provided no meaningful response to Judge Colombo's challenge.

There is no disputing either the *O'Grady* Court or Judge Colombo on this point. This entire SCA argument is a red herring because the Defendant can be ordered to consent to the disclosure of the text messages in question, and Defendant knows it. Assuming they have not already consented (which they have, as discussed above), they can only refuse to consent on pain of discovery sanctions.

> e. The City of Detroit's blind invocation of the Executive, Deliberative Process privilege or any other privilege is baseless in light of the fact that Defendant failed to provide Plaintiff or this Court with sufficient information to test the veracity of the claimed privileges.

Defendant's invocation of the Executive, Deliberative Process and/or Evaluative Process privileges is ineffective because Defendant failed to comply with FRCP 26(b)(5). That rule states in pertinent part:

> (5) *Claiming Privilege or Protecting Trial-Preparation Materials*.

> (A) Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5).

The burden of establishing the existence of a privilege rests with the party asserting it.

*United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2000). To satisfy Rule 26(b)(5), a privilege

log is customarily provided. See *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). At a minimum, the privilege log should

> identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between . . . individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. **Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected**.

> *SPX Corp. v. Bartec USA, LLC*, 2008 U.S. Dist. LEXIS 26282 (E.D. Mich. 2008) (emphasis added) [citing *United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)].

Furthermore, Defendant's argument that an *in camera* review of the text messages itself is an abrogation of its alleged privileges is specious and self-serving. Numerous courts have reached the opposite conclusion, requiring *in camera* submission of allegedly privileged materials for a variety of reasons, <u>chief among them determining whether a privilege even exists</u>. See, e.g., *United States v. Zolin*, 491 U.S. 554, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) (*in camera* review required to determine if crime-fraud exception applies; *United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974) (*in camera* inspection required to determine if executive privilege applies); *United States v. Parker*, 586 F.2d 422 (5th Cir. 1978) (*in camera* review to determine existence of attorney-client privilege).

At no time did Defendant produce a privilege log to allow either the Court or the Plaintiff to determine whether the materials claimed to be cloaked with either privilege were truly protected from disclosure. *See In re Search Warrant Executed at Law Office of Stephen Garea, Suite 422, City Centre One, 100 Federal Plaza East, Youngstown, Ohio*, 1999 U.S. App. LEXIS 3861 (1999) (unpublished) (stating that "those seeking to invoke the privilege must provide the

reviewing court with enough information for it to make a determination that the document in question was, in fact, a confidential communication involving legal advice."). Because Defendant failed to provide Plaintiff and the Court with sufficient information to test their claims of privilege, they have not carried their burden that any such privilege exists, and the City's Motion should be denied.

## III. CONCLUSION

Defendant has not articulated a single viable reason why this Court should disregard its prior Orders, and bar discovery into the text messages. The SCA is unavailing to the City of Detroit for the reasons stated above and Defendant has not even made a good faith effort to demonstrate the existence of a privilege. Accordingly, Plaintiff respectfully requests that this Court:

(a) Deny Defendant's Motion;

(b) Grant Plaintiff his reasonable costs and attorney fees for having to wrongfully defend this Motion;

(c) Order Defendant City of Detroit to show cause why it's Motion and Supporting Brief do not violate FRCP 11(b), as provided for in FRCP 11(c)(3); and

(d) Grant Plaintiff any other relief the Court determines to be just and equitable under the circumstance.

Respectfully Submitted,

Dated: May 16, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates**
By: Norman A. Yatooma (P54746)
By: Robert S. Zawideh (P43787)
Attorneys for Plaintiffs
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600

NORMAN YATOOMA & ASSOCIATES, P.C.

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2008 I electronically filed the following papers with the Clerk of the Court using the CM/ECF system:

**PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DETROIT'S MOTION TO PRECLUDE DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT AND DEMAND FOR SANCTIONS**

On the following:

**JAMES C. THOMAS**
By: James C. Thomas (P23801)
Attorney for Defendant Mayor Kwame Kilpatrick
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 963-2420

**PLUNKETT COONEY**
By: Said A. Taleb (P66030)
By: Kenneth L. Lewis (P26071)
By: Randal M. Brown (P70031)
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790

**CITY OF DETROIT LAW DEPARTMENT**
By: Krystal A. Crittendon (P49981)
Attorney for Defendants City of Detroit, Commander Craig Schwartz, Cara Best and Harold Cureton
1650 First National Building
Detroit, Michigan 48226
(313) 237-3018

**CITY OF DETROIT LAW DEPARTMENT**
By: John A. Schapka (P36731)
Co-Counsel for Defendants City of Detroit, Detroit Police Chief Ella Bully-Cummings, and Commander Craig Schwartz
1650 First National Building
Detroit, Michigan 48226
(313) 224-4550

**MORGANROTH & MORGANROTH, PLLC**
By: Mayer Morganroth (P17966)
By: Jeffrey B. Morganroth (P41670)
Attorney for Defendant Christine Beatty
3000 Town Center
Suite 1500
Southfield, Michigan 48075
(248) 355-3084

Dated: May 16, 2008

/s/ Norman A. Yatooma
**Norman Yatooma & Associates, P.C.**
Attorneys for Plaintiff
219 Elm Street
Birmingham, Michigan 48009
(248) 642-3600
nya@normanyatooma.com

16