UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHON BOND,
             Plaintiff,           Case No. 05-CV-74253-DT

v.                             Hon. Gerald E. Rosen
                               Magistrate Judge Steven R. Whalen

CITY OF DETROIT, a Municipal Corporation;
CITY OF DETROIT CHIEF OF POLICE
ELLA BULLY-CUMMINGS; DEPUTY CHIEF
OF POLICE CARA BEST; JOHN DOE OFFICERS 1-20;
ASSISTANT DEPUTY POLICE CHIEF HAROLD
CURETON; LIEUTENANT BILLY JACKSON;
MAYOR KWAME KILPATRICK; and CHRISTINE BEATTY,
jointly and severally,

             Defendants.

_____/

## MOTION OF DETROIT FREE PRESS, INC. FOR LEAVE TO FILE AMICUS CURIAE BRIEF IN OPPOSITION TO DEFENDANT CHRISTINE BEATTY'S MOTION TO PRECLUDE DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT

The Detroit Free Press, Inc. (the "Free Press"), respectfully submits this Motion for Leave to File Amicus Curiae Brief in Opposition to Defendant Christine Beatty's Motion to Preclude Discovery of Electronic Communications from SkyTel Based Upon the Federal Stored Communications Act ("Beatty's Motion"). This Court previously granted the Free Press' Motion to Intervene for "the purpose of opposing the City of Detroit's request for a 'gag' order." *See* April 15, 2008 Order [Docket No. 97]. As the order granting intervention was for a limited purpose only, the Free Press respectfully seeks leave to file an amicus brief to respond to Beatty's Motion. In support of its motion, the Free Press refers the Court to the attached Memorandum.

Pursuant to E. D. Mich. L.R. 7.1(a), counsel for the Free Press sought the concurrence of all parties prior to filing this motion. Counsel for Plaintiff Ernest Flagg, as Next Friend of Jonthan Bond, a minor, ("Plaintiff") consent to amicus participation by the Free Press. Counsel for defendants denied our request for concurrence. The proposed amicus curiae brief of the Free Press is being submitted along with this motion.

WHEREFORE, the Free Press requests that this Court grant its Motion for Leave to File Amicus Curiae Brief in Opposition to Defendant Christine Beatty's Motion to Preclude Discovery of Electronic Communications from SkyTel Based Upon the Federal Stored Communications Act.

Honigman Miller Schwartz and Cohn LLP

s/ Richard E. Zuckerman (P26521)
Herschel P. Fink (P13427)
Lara Fetsco Phillip (P67353)
Attorneys for Intervenor/Amicus Curiae
Detroit Free Press, Inc.
2290 First National Building
Detroit, MI 48226
(313) 465-7400
rez@honigman.com
hpf@honigman.com
lara.phillip@honigman.com

Dated: July 23, 2008

DETROIT.3216054.1

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND, a minor,

       Plaintiff,

v.

                                    Case No.: 05-CV-74253
                                    Hon. Gerald E. Rosen
                                    Magistrate Judge R. Steven Whalen

CITY OF DETROIT, a municipal corporation;
DETROIT POLICE CHIEF ELLA BULLY-CUMMINGS;
DEPUTY DETROIT POLICE CHIEF CARA BEST;
JOHN DOE POLICE OFFICERS 1-20; ASST.
DEPUTY POLICE CHIEF HAROLD CURETON;
COMMANDER CRAIG SCHWARTZ; POLICE LT.
CHRISTINE BEATTY, jointly and severally,

       Defendants.

---

## AMICUS CURIAE BRIEF ON BEHALF OF THE DETROIT FREE PRESS, INC. IN OPPOSITION TO BEATTY'S MOTION TO PRECLUDE DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................ii

INTRODUCTION...........................................................................................................1

ARGUMENT..................................................................................................................3

I.    UNDER THE STORED COMMUNICATIONS ACT, PROVIDERS OF REMOTE
COMPUTING SERVICES LIKE SKYTEL, CAN PROVIDE THE CONTENTS OF
TEXT MESSAGES IN CONNECTION WITH CIVIL LITIGATION WITH THE
CONSENT OF THE SUBSCRIBER ................................................................. 3

    A.    Key Provisions of the Stored Communications Act ........................................... 3

    B.    The Ninth Circuit's Holding in *Quon v. Arch Wireless Operating Co., Inc.* That a Text
Message Service Is Always an ECS Is Flawed.................................................... 4

    C.    The Court May Order SkyTel to Produce the Requested Text Messages Because the
Subscriber, the City of Detroit, Has Already Provided Its Consent to Their Disclosure .12

    D.    Alternatively, the Court Can Order the City of Detroit to Consent to SkyTel's  Production
of Text Messages ........................................................................................... 13

    E.    Even if the Court Were to Find That SkyTel Was Acting as an ECS, the Court Could
Order Kilpatrick and Beatty as Litigants to Consent to SkyTel's Production of Text
Messages of Which They Were the Sender or Recipient ................................. 13

II.    THE FOURTH AMENDMENT IS NOT APPLICABLE HERE ................................... 15

# TABLE OF AUTHORITIES

**CASES**

Barnhart v. Thomas,
 540 U.S. 20 (2003).................................................................................................14

Bowerman v. MacDonald,
 431 Mich. 1, 427 N.W.2d 477 (1988)..................................................................17

Columbia Pictures Industries v Bunnell,
 No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007) ............14

Doubleclick Inc. Privacy Litig.,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001)......................................................................9

Edwards v. C. I. R.,
 680 F.2d 1268 (9th Cir. 1982) .................................................................................17

Fraser v. Nationwide Mut. Ins. Co.,
 135 F. Supp. 2d 623 (E.D. Pa. 2001) .......................................................................9

Hale v. Henkel,
 201 U.S. 43 (1906)..................................................................................................16

In re Grand Jury Proceedings,
 558 F.2d 1177 (5th Cir.) ..........................................................................................17

New Jersey v. T. L. O.,
 469 U.S. 325 (1985)................................................................................................18

O'Connor v. Ortega,
 480 U.S. 709 (1987)................................................................................................17

O'Grady v. Superior Court,
 139 Cal. App. 4th 1423 (2006) ...............................................................13, 14, 15

Oklahoma Press Pub. Co. v. Walling,
 327 U.S. 186 (1946)................................................................................................16

Paine v. McCarthy,
 527 F.2d 173 (9th Cir. 1975) ..................................................................................16

Quon v. Arch Wireless Operating Co., Inc.,
 Case No. 07-055282 (9th Cir. 2008)............................................................ *passim*

Schlagenhauf v. Holder,
 379 U.S. 104 (1964)................................................................................................16

Steve Jackson Games, Inc. v. United States Secret Service,
   36 F.3d 457 (5th Cir. 1994) ...............................................................................................7, 9

Sun Valley Foods Co. v. Ward,
   460 Mich. 230 (1999) ............................................................................................................14

Theofel v. Farey Jones,
   359 F.3d 1066 (9th Cir. 2004) ........................................................................................7, 10

U.S. v. Martin,
   438 F.3d 621 (6th Cir. 2006) ...............................................................................................14

United States v. International Business Machines Corp.,
   83 F.R.D. 97 (S.D.N.Y. 1979) ......................................................................................16, 17

**STATUTES**

18 U.S.C. § 2510(15) ..................................................................................................................3

18 U.S.C. §2510(17) .............................................................................................................3, 8, 9

18 U.S.C. § 2702(a)(1).............................................................................................................3, 5

18 U.S.C. § 2702(a)(2)...........................................................................................................3, 11

18 U.S.C. § 2702(b) ....................................................................................................................3

18 U.S.C. § 2702(b)(3) ..............................................................................................3, 13, 14, 15

18 U.S.C. § 2704........................................................................................................................8

18 U.S.C. § 2711(2) ....................................................................................................................3

**LEGISLATIVE HISTORY**

H.R. Rep. 99-647 ..................................................................................................................11, 12

S. Rep. 99-541...........................................................................................................................10, 11

**OTHER AUTHORITIES**

CORPUS JURIS SECUNDUM, Searches § 123 ..................................................................................17

Orin S. Kerr, "A User's Guide to the Stored Communications Act, and a Legislator's
   Guide to Amending It," 72 Geo. Wash. L. Rev. 1208 2003-2004.....................................5, 6, 8

Bruce Boyden, *Proskauer on Privacy* § 6:3 ...............................................................................14

Singer, *Sutherland Statutory Construction* (5th ed.), Vol. 2A,........................................................14

U.S. Internet Service Provider Association, *Electronic Evidence Compliance – A Guide for Internet Service Providers*, 18 Berkeley Tech. L. J. 945 (2003)................................4, 5, 15

Wright & Miller, FED. PRAC. & PROC. § 2202 ..............................................................................17

## INTRODUCTION

On April 25, 2008, Defendant Christine Beatty filed a Motion to Preclude Discovery of Electronic Communications from SkyTel Based Upon the Federal Stored Communications Act [Docket No. 103] ("Beatty's Motion"). In her motion, Ms. Beatty argues that the discovery sought by Plaintiff from non-party, Bell Industries, Inc. f/k/a SkyTel ("SkyTel") of text messages sent to or from a SkyTel text message pager provided to her by the City of Detroit, is precluded by the federal Stored Communications Act, 18 U.S.C. § 2701 *et seq.* (the "SCA").[1]

On June 26, 2008, Ms. Beatty filed a Supplemental Brief in Further Support of Motion to Preclude Discovery of Electronic Communications Based Upon the Federal Stored Communications Act. [Docket 121] ("Beatty's Supplemental Brief"). In her Supplemental Brief, Ms. Beatty argued that under the Ninth Circuit's recent holding in *Quon v. Arch Wireless Operating Co.*, Inc., Case No. 07-055282 (9th Cir. 2008), as a matter of law a provider of a text message service, like SkyTel, is always an electronic communications service ("ECS") under the SCA regardless of what function the provider is performing, including the long-term storage of electronic communications. Therefore, according to Ms. Beatty, the provisions of the SCA that allow a provider of remote computing services ("RCS") to divulge the content of electronic communications with the consent of the subscriber do not apply. Ms. Beatty further argued that the aforementioned Ninth Circuit opinion in *Quon* establishes that her text messages are protected by the Fourth Amendment and accordingly can not be obtained without a search warrant.

---

[1] On July 1, 2008 counsel for SkyTel filed a notice that the name of Non-Party Bell Industries, Inc., d/b/a Skytel has been changed to Velocita Wireless, LLC, d/b/a Bell Industries, Inc., d/b/a Skytel [Docket No. 122]. For purposes of this brief, Velocita Wireless, LLC is referred as "SkyTel."

The Detroit Free Press, Inc. (the "Free Press") is currently a party to an action brought under the Michigan Freedom of Information Act ("FOIA"), pending in Wayne County Circuit Court before Judge Robert Columbo (Case No. 08-100214 CZ) (the "FOIA Action"). In the FOIA Action, the Free Press has requested the production of text messages sent or received by Christine Beatty and Mayor Kwame Kilpatrick on their City-provided SkyTel two-way pagers. Accordingly, the same issues raised by Ms. Beatty's Motion either have been or will likely be raised by Defendants in the FOIA Action. Accordingly, as this Court is likely to rule on these issues first and Judge Colombo may well be persuaded by this Court's rulings, the Free Press has an interest in the issues raised by Ms. Beatty's Motion that currently before the Court.

It is the Free Press' position that the Ninth Circuit holding in *Quon* that a text message provider can never be an RCS under the SCA goes against the statutory language itself, a wealth of scholarly writing, and traditional understanding, all of which find that a provider of electronic communications, such as a text message provider like SkyTel, can act as an ECS or an RCS depending upon what function it is performing at the time. It is further the Free Press' position that a court in a civil action can compel a party litigant that is either the subscriber of text message services (in the case of an RCS) or the originator, addressee or recipient of text messages (in the case of either an RCS or an ECS) to consent to the disclosure of their text messages. Lastly, it is the Free Press' position that the Fourth Amendment has no bearing on requests for the production of text messages in either this action or the Free Press' FOIA Action as those matters do not involve state action regulated by the Fourth Amendment.

**ARGUMENT**

I.    **UNDER THE STORED COMMUNICATIONS ACT, PROVIDERS OF REMOTE COMPUTING SERVICES LIKE SKYTEL, CAN PROVIDE THE CONTENTS OF TEXT MESSAGES IN CONNECTION WITH CIVIL LITIGATION WITH THE CONSENT OF THE SUBSCRIBER**

    A.    **Key Provisions of the Stored Communications Act**

The Stored Communications Act, (codified as amended at 18 U.S.C. § 2701 *et seq.*) (the

"SCA") regulates two types of providers: providers of electronic communication services

("ECS") and providers of remote computing services ("RCS"). The SCA defines an ECS as

"any service which provides to users thereof the ability to send or receive wire or electronic

communications." 18 § U.S.C. 2510(15). An RCS is defined as "the provision to the public of

computer storage or processing services by means of an electronic communications system." 18

U.S.C. § 2711(2).

Section 2702(a)(1) of the SCA prohibits an ECS from divulging contents of electronic

communications "while in electronic storage by that service" unless one of the exceptions set

forth in Section 2702(b) apply. "Electronic Storage" is defined in Section 2510(17) of the

Electronic Communications Privacy Act (codified as amended at 18 U.S.C. §§ 2510-2520), as

"(A) any temporary, intermediate storage of a wire or electronic communication incidental to the

electronic transmission thereof and (B) any storage of such communication by an [ECS] for

purposes of backup protection of such communication."

Similarly, Section 2702(a)(2) of the SCA prohibits an RCS from divulging the contents

of electronic communications "which is carried or maintained on that service" unless one of the

exceptions set forth in Section 2702(b) apply. One of these exceptions is relevant to the

production of text messages here. Specifically, Section 2702(b)(3) allows a provider to divulge

contents of communications "with the lawful consent of the originator or an addressee or intended recipient of such communication, **or the subscriber in the case of a remote computing service.**"

Defendants have already admitted that the City of Detroit was the subscriber of SkyTel's services.[2] Accordingly, if SkyTel was acting as an RCS, then SkyTel can produce the content of text messages sent or received by City employees with the consent of the City of Detroit.

### B. The Ninth Circuit's Holding in *Quon v. Arch Wireless Operating Co., Inc.* That a Text Message Service Is Always an ECS Is Flawed

In her supplemental brief, Defendant Beatty argues that under the Ninth Circuit's recent holding in *Quon v. Arch Wireless Operating Co.*, Inc., Case No. 07-055282 (9th Cir. 2008), a text message provider, like SkyTel, can only be an ECS. Beatty ignores the fact that, for one, an opinion by the Ninth Circuit is not binding precedent upon this Court. Further, for reasons explained in detail below, the Ninth Circuit's reasoning applied in *Quon* in reaching its conclusion that a text message provider can only be an ECS is flawed and goes against the statutory language itself, a wealth of scholarly writing, and traditional understanding, all of

---

[2] *See* Defendant, Christine Beatty's Brief in Support of Motion to Preclude Discovery of Electronic Communications from SkyTel Based Upon the Federal Stored Communications Act [Docket No. 103] ("Beatty's Brief") at 10, stating, "there can be no dispute that Defendant, City of Detroit, was a subscriber to the SkyTel service"; Defendant Kwame Kilpatrick's Joinder in Motion of Defendant Christine Beatty to Preclude Discovery of Electronic Communications Based Upon the Federal Stored Communications Act [Docket No. 105] (Kilpatrick's Joinder"); Defendant City of Detroit's Motion to Preclude Discovery of Electronic Communication from Skytel Based Upon the Federal Stored Communications Act [Docket No. 106] ("City's Motion") at ¶3, stating, "Pursuant to the contract, Bell Industries, Inc., f/k/a SkyTel, Inc. was the text message service provider and the City of Detroit was its customer or subscriber"; Defendant Christine Beatty's Supplemental Brief in Further Support of Motion to Preclude Discovery of Electronic Communications Based Upon the Federal Stored Communications Act [Docket 121] ("Beatty's Supplemental Brief") at 2, fn 1, stating, "[t]he fact that the City of Detroit was the subscriber has not been disputed, and the contract documents produced by the City of Detroit in their May 16, 2007 supplemental brief appear to confirm this fact as well."

which find that a provider of electronic communications, such as a text message provider like

SkyTel, can act as an ECS or an RCS depending upon what function it is performing at the time.

As Orin Kerr explains in, "*A User's Guide to the Stored Communications Act, and a Legislator's

Guide to Amending It*," 72 Geo. Wash. L. Rev. 1208 2003-2004) (an article cited and relied upon

on multiple issues by the Ninth Circuit in *Quon*) (attached hereto as Exhibit 1):

> The classification of ECS and RCS are context sensitive: the key is the provider's role with respect to a particular copy of a particular communication, rather than the provider's status in the abstract. The text of the statute makes this clear by limiting the scope of ECS protections to contents or backups of contents in temporary "electronic storage," *see* 18 U.S.C. §§ 2702(a)(1), 2703(a) (2000 & Supp. I 2001), and limiting the scope of RCS protections to files "held or maintained . . . solely for the purpose of providing storage or computer processing services," *id.* § 2703(b)(2). The only sensible explanation for these limitations is that the SCA allows both protected categories to apply to the same provider, covering different communications held by a provider at a given time in different ways. Files in temporary "electronic storage" are held by the provider acting as an ECS, and contents "held or maintained . . . solely for the purpose of providing storage or computer processing services" are held by the provider acting as an RCS.

Kerr at 1215.

An example cited by commentators of a provider serving as both an ECS and an RCS at

different points in time is that of e-mail provided by an internet service provider ("ISP").

> An ISP may qualify as either a provider of 'electronic communication service' or 'remote computing service' – or both. Take, for example, the case of a single e-mail received by an ISP for one of its customers. Before the recipient opens the e-mail, the ISP is providing 'electronic communication service' because it is providing the user 'the ability to….receive…electronic communications.' Once the e-mail has been opened, however, the electronic communication is complete. If the user does not immediately delete the e-mail, the ISP is now offering a 'remote computer service.' It is providing 'computer storage' of the opened e-mail for the user.

U.S. Internet Service Provider Association, *Electronic Evidence Compliance – A Guide for Internet Service Providers*, 18 Berkeley Tech. L. J. 945 (2003) at 950 (attached hereto as Exhibit 2).

Kerr also cites to the example of e-mail to demonstrate how a provider can act as both an ECS and an RCS, stating, "when an e-mail sits unopened on an ISP's server, the ISP is acting as a provider of ECS with respect to that e-mail." Kerr at 1216. However, as regards opened e-mail residing long-term on a provider's server:

> The traditional understanding has been that a copy of opened e-mail sitting on a server is protected by the RCS rules, not the ECS rules. The thinking is that when an e-mail customer leaves a copy of an already accessed e-mail stored on a server, that copy is no longer 'incident to transmission' nor a backup copy of a file that is incident to transmission: rather, it is just in remote storage like any other file held by an RCS.

*Id.* (citing *Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623, 635-38 (E.D. Pa. 2001) (concluding that e-mails taken from post-transmission storage are not in "electronic storage"); *aff'd on other grounds*, 352 F.3d 107 (3d Cir. 2003).

The Department of Justice, in its Computer Crime & Intellectual Property Section, Manual on Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigation (2002) ("DOJ Manual") (available at http://www.usdoj.gov/criminal/cybercrime/S&SManual2002.htm), also takes the view that, "[w]hether an entity is a provider of 'electronic communication service', a provider of 'remote computing service' or neither depends on the nature of the particular communication sought. *Id.* at Section III.B. For example, a single provider can simultaneously provide 'electronic communication service' with respect to one communication and 'remote computing service' with

respect to another communication." To illustrate this point, the DOJ also cite to the example of e-mail:

> An example can illustrate how these principles work in practice. Imagine that Joe sends an e-mail from his account at work ("joe@goodcompany.com") to the personal account of his friend Jane ("jane@localisp.com"). The e-mail will stream across the Internet until it reaches the servers of Jane's Internet service provider, here the fictional LocalISP. When the message first arrives at LocalISP, LocalISP is a provider of ECS with respect to that message. Before Jane accesses LocalISP and retrieves the message, Joe's e-mail is in "electronic storage." *See Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 461 (5th Cir. 1994). Once Jane retrieves Joe's e-mail, she can either delete the message from LocalISP's server, or else leave the message stored there. If Jane chooses to store the e-mail with LocalISP, LocalISP is now a provider of RCS (and not ECS) with respect to the e-mail sent by Joe. The role of LocalISP has changed from a transmitter of Joe's e-mail to a storage facility for a file stored remotely for Jane by a provider of RCS. *See* H.R. Rep. No. 99-647, at 64-65 (1986) (noting Congressional intent to treat opened e-mail stored on a server under provisions relating to remote computing services, rather than services holding communications in "electronic storage").

> *Id.*

Ignoring this traditional understanding and relying primarily on another flawed Ninth Circuit opinion, *Theofel v. Farey Jones*, 359 F.3d 1066, 1070 (9th Cir. 2004), the Ninth Circuit in *Quon* found that regardless of what role a text message provider plays, it is always an ECS for purposes of the SCA. In *Theofel*, the Ninth Circuit found that e-mail messages stored on NetGate's server after delivery to the recipient – were "stored 'for purposes of backup protection'…within the ordinary meaning of those terms." *Theofel*, 359 F.3d at 1075. The Ninth Circuit in *Quon* found that the service provided by e-mail provider NetGate was closely analogous to Arch Wireless' storage of text messages on behalf of the City of Ontario Police Department and thus Arch Wireless' long-term storage of the text messages was for purposes of "backup protection" only. *Quon* at 7015. While the Free Press agrees with the conclusion that text messages stored long-term are analogous to opened e-mails stored long-term on an ISP's

server, the Free Press disagrees with the reasoning and conclusion applied by the Ninth Circuit in *Quon* that opened e-mails and text messages stored long-term by providers are maintained for back-up protection only and therefore ISP and text message services providing long-term storage of such electronic communications must be treated as an ECS.

As Kerr explains in great detail, the term "backup protection" in the SCA was intended to have a very limited and technical definition meaning only copies of electronic communications made by service providers for administrative purposes. For the Court's convenience, Plaintiff repeats Kerr's thoughtful analysis below:

> An understanding of the structure of the SCA indicates that the backup provision of the definition of electronic storage, *see id.* § 2510(17)(B), exists only to ensure that the government cannot make an end-run around the privacy-protecting ECS rules by attempting to access backup copies of unopened e-mails made by the ISP for its administrative purposes. ISPs regularly generate backup copies of their servers in the event of a server crash or other problem, and they often store these copies for the long term. Section 2510(17)(B) provides that backup copies of unopened e-mails are protected by the ECS rules even though they are not themselves incident to transmission; without this provision, copies of unopened e-mails generated by this universal ISP practice would be unprotected by the SCA.

> There are many statutory signals that support this reading. Several were raised by the United States as amicus and rejected by the *Theofel* court, *see Theofel*, 359 F.3d at 1076-77, but a host of other arguments remain. I think the most obvious statutory signal is the text of 18 U.S.C. § 2704, entitled "Backup Preservation." *See* 18 U.S.C. § 2704 (2000). Section 2704 makes clear that the SCA uses the phrase "backup copy" in a very technical way to mean a copy made by the service provider for administrative purposes. *See id.* The statutory focus on backup copies in the SCA was likely inspired by the 1985 Office of Technology Assessment report, that had helped inspire the passage of the SCA. *See* OFFICE OF TECH. ASSESSMENT, FEDERAL GOVERNMENT INFORMATION TECHNOLOGY: ELECTRONIC SURVEILLANCE AND CIVIL LIBERTIES (1985). The report highlighted the special privacy threats raised by backup copies, which the report referred to as copies "[r]etained by the [e]lectronic [m]ail [c]ompany for [a]dministrative [p]urposes." *Id.* at 50.

> Kerr at 1217-18, fn 61.

The DOJ Manual similarly explains that the term "electronic storage" as it is used in the SCA "refers only to temporary storage, made in the course of transmission, by a provider of electronic communication service." DOJ Manual at III.B (citing *Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 511-12 (S.D.N.Y. 2001) (holding that cookies, which are information stored on a user's company by a web site and sent back to the web site when the user accesses the web site, fall outside the definition of "electronic storage" and hence outside of the ECPA because of their "long-term residence on plaintiffs' hard drive."))). Elaborating on the conclusion that opened e-mail is not a communication held in "electronic storage" by an ECS for purposes of the SCA, the DOJ Manual further explains:

> To determine whether a communication is in "electronic storage," it helps to identify the communication's final destination. A copy of a communication is in "electronic storage" only if it is a copy of a communication created at an intermediate point that is designed to be sent on to its final destination. For example, e-mail that has been received by a recipient's service provider but has not yet been accessed by the recipient is in "electronic storage." *See Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 461 (5th Cir. 1994). At that stage, the copy of the stored communication exists only as a temporary and intermediate measure, pending the recipient's retrieval of the communication from the service provider. Once the recipient retrieves the e-mail, however, the communication reaches its final destination. If a recipient then chooses to retain a copy of the accessed communication on the provider's system, the copy stored on the network is no longer in "electronic storage" because the retained copy is no longer in "temporary, intermediate storage . . . incidental to . . . electronic transmission." 18 U.S.C. § 2510(17). Rather, because the process of transmission to the intended recipient has been completed, the copy is simply a remotely stored file. *See Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623, 635-38 (E.D. Pa. 2001) (holding that because an e-mail was acquired from post-transmission storage, it was not in "electronic storage" and its acquisition was not prohibited under ECPA); H.R. Rep. No. 99-647, at 64-65 (1986) (noting Congressional intent that opened e-mail and voicemail left on a provider's system be covered by provisions relating to remote computing services, rather than provisions relating to services holding communications in "electronic storage").
>
> As a practical matter, whether a communication is held in "electronic storage" by a provider governs whether that service provides ECS with respect to the communication. The two concepts are coextensive: a service provides ECS with respect to a communication if and only if the service holds the communication in

electronic storage. Thus, it follows that if a communication is not in temporary, intermediate storage incidental to its electronic transmission, the service cannot provide ECS for that communication. Instead, the service must provide either "remote computing service" ... or else neither ECS nor RCS.

*Id.*

In addition to its misplaced reliance on *Theofel*, the Ninth Circuit in *Quon* also found that its reading of the SCA was supported by the act's legislative history, citing namely to introductory language in the Senate Report 99-541, which states:

> Today we have large-scale electronic mail operations, computer-to-computer data transmissions, cellular and cordless telephones, paging devices, and video teleconferencing.
>
> \*\*\*
>
> The Committee also recognizes that computers are used extensively today for the storage and processing of information. With the advent of computerized recordkeeping systems, Americans have lost the ability to lock away a great deal of personal and business information. For example, physicians and hospitals maintain medical files in offsite data banks, businesses of all sizes transmit their records to remote computers to obtain sophisticated data processing services. These services as well as the providers of electronic mail create electronic copies of private correspondence for later reference. This information is processed for the benefit of the user but often it is maintained for approximately 3 months to ensure system integrity.

S. Rep. 99-541 at 2-3; *Quon* at 7013. The Ninth Circuit additionally referred to a description of Remote Computer Services in S. Rep. 99-541 at 10-11, which states:

> In the age of rapid computerization, a basic choice has faced the users of computer technology. That is, whether to process data in-house on the user's own computer or on someone else's equipment. Over the years, remote computer service companies have developed to provide sophisticated and convenient computing services to subscribers and customers from remote facilities. Today businesses of all sizes--hospitals, banks and many others--use remote computing services for computer processing. This processing can be done with the customer or subscriber using the facilities of the remote computing service in essentially a time-sharing arrangement, or it can be accomplished by the service provider on the basis of information supplied by the subscriber or customer. Data is most

often transmitted between these services and their customers by means of electronic communications.

The above quoted section appears after introductory language in a "Glossary" stating that "some of the new telecommunications and computer technologies referred to in the Electronic Communications Privacy Act of 1986 are described below." *Id.* at 8. In addition to "Remote Computer Services," the "Glossary" in S. Rep. 99-541 also includes descriptions for "Electronic Mail" and "Electronic Pagers." Notably, the section on "Electronic Pagers" states, "the most sophisticated type of pager is the 'tone and voice' model. It can receive a spoken message that the paging company's computer has taken from the party seeking to contact the unit's user. After the beep tone is made, the device 'repeats' the recorded message. This requires that a radio signal containing voice communications be sent from the paging company's base to the mobile unit." *Id.* at 10. Thus, clearly at the time of the drafting of the SCA, it was not contemplated that two-way pagers would one day be able to transmit text messages akin to e-mail that could be stored long-term by the provider of the text message service, like SkyTel. S. Rep. 99-541 also refers to H.R. Rep. 99-647 for further description of the terms contained in the senate report's "Glossary."

The Ninth Circuit in *Quon* completely ignored H.R. Rep. 99-647 in its analysis of whether a text message service could be an RCS. This failure is significant as H.R. Rep. 99-647 makes clear that it was the intent of Congress in implementing the SCA that should a recipient choose to leave an e-mail or voice mail in storage for reaccess at a later time, then "such communication should continue to be covered by Section 2702(a)(2)," which governs remote computing services. H.R. Rep. 99-647 at 64-65. Thus, the mere fact that the S. Rep. 99-541 contains separate headings for "Electronic Mail" and "Electronic Pagers" from "Remote Computer Services" in its "Glossary" does not mean that Congress intended that providers of

electronic mail and text messages could never be an RCS for purposes of the SCA as the language from H.R. Rep. 99-647 quoted above clearly shows.

For all of the reasons discussed above, the reasoning applied by the Ninth Circuit in *Quon* is flawed and a closer analysis of the background, purpose, and legislative history of the SCA make clear that when a provider of text messaging service stores text messages on a long-term basis, like SkyTel, it is acting as an RCS for purposes of the SCA. Accordingly, SkyTel can divulge the content of text messages received on pagers belonging to employees of the City of Detroit with the consent of the subscriber, the City of Detroit.

### C. The Court May Order SkyTel to Produce the Requested Text Messages Because the Subscriber, the City of Detroit, Has Already Provided Its Consent to Their Disclosure

Defendants have already admitted that the City of Detroit was the subscriber of SkyTel's services, *See supra* at 3; Beatty's Brief at 10; Kilpatrick's Joinder; City's Motion at ¶3; Beatty's Supplemental Brief at 2, fn 1. As discussed in Plaintiff's Response to Defendant City of Detroit's Motion to Preclude Discovery of Electronic Communications from SkyTel Based Upon the Federal Stored Communications Act and Demand for Sanctions [Docket 110] ("Plaintiff's Response"), the City of Detroit has already provided its consent to the disclosure of the text messages in no less than three ways: (1) through the issuance of a "Directive for the Use of the City of Detroit's Electronic Communications System" that was executed by Defendant Mayor Kilpatrick; (2) by the City's consent to a mechanism and set of parameters for the discovery of text messages held by SkyTel in this case; and (3) by means of a resolution of the Detroit City Council (the legislative body that approved the contract with SkyTel and authorized the payments for SkyTel's services) specifically authorizing the release of the Sky Tel text messages. *See* Plaintiff's Response at 8-11. Because the City has already provided its consent,

the Court can order SkyTel to disclose the content of text messages sent on two-way pagers provided to employees of the City.

### D. Alternatively, the Court Can Order the City of Detroit to Consent to SkyTel's Production of Text Messages

Alternatively, as discussed in Plaintiffs' Response at 13, the Court could order the City to consent to SkyTel's disclosure of text messages sent or received on text message devices belonging to City employees upon threat of discovery sanctions. *See O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1446 (2006) (holding that "[w]here a party to the communication is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions").

### E. Even if the Court Were to Find That SkyTel Was Acting as an ECS, the Court Could Order Kilpatrick and Beatty as Litigants to Consent to SkyTel's Production of Text Messages of Which They Were the Sender or Recipient

Even if the Court were to find that SkyTel was acting as an ECS, the Court could still order the Mayor and Ms. Beatty to consent to SkyTel's disclosures of their text messages because the consent exceptions set forth in Section 2702(b)(3) for originators, addressees, and intended recipients applies to providers of both electronic communications services <u>and</u> providers of remote computing services.

Based upon the grammar and punctuation in Section 2702(b)(3), it is only the last type of person, a subscriber, for whom the consent exception applies only where the provider is a remote computing service as that section ends with ", or the subscriber in the case of remote computing service." *See O'Grady*, 139 Cal. App. 4th at 1441 (stating that "[a]mong the disclosures authorized [by the SCA] are those that are…made with the consent of a party to the

13

communication or, <u>in some cases</u>, the consent of the subscriber (see 18 U.S.C. 2702(b)(3))"). This interpretation is further mandated by the grammatical rule known as the "rule of the last antecedent." It is a general rule of grammar and of statutory construction that a modifying word or clause should ordinarily be read as modifying only the noun or phrases that it immediately follows. *See Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 237 (1999) (citations omitted); *U.S. v. Martin*, 438 F.3d 621, 631 (6th Cir. 2006) (citing *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (citing 2A Singer, *Sutherland Statutory Construction* (5th ed.), § 47.33, p.370) ("referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent")).

Accordingly, those courts and commentators that have considered the issue of whether a court can compel a party to litigation to obtain from a provider communications to which he was a sender or recipient under threat of sanctions for failure to comply with the court's order, have held that such an order is permitted under the SCA without regard to whether the provider is acting as an electronic communications service or a remote computing service. *See, e.g.,* *O'Grady*, 139 Cal. App. 4th at 1441, 1446-1447 (holding that, under the SCA, where a party to a communication is also a party to litigation, the court can compel the party to consent to disclosure of the communication); *Columbia Pictures Industries v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419 at *10 (C.D. Cal. May 29, 2007) (holding that where defendants are intended recipients of data and have the ability to consent to the disclosure thereof, the SCA does not provide a basis to withhold data that is within defendants' custody, possession, or control); Bruce Boyden, *Proskauer on Privacy* § 6:3 at *6-106 – 6-108.

The court in *O'Grady* held that while a civil subpoena for the content of electronic communications issued directly to the provider without prior consent is not allowed by the SCA, copies of electronic communications, such as text messages,

> may still be sought from the intermediary if the discovery can be brought within one of the statutory exceptions-most obviously, a disclosure with the consent of a party to the communication. (18 U.S.C. § 2702(b)(3)). Where **a party to the communication** is also a party to the litigation, it would seem within the power of a court to require his consent to disclosure on pain of discovery sanctions.

*O'Grady*, 139 Cal. App. 4th at 1446-1447. (citing U.S. Internet Service Providers Assn., *Electronic Evidence Compliance-A Guide for Internet Service Providers*, 18 Berkeley Tech. L.J. 945, 965).

## II. THE FOURTH AMENDMENT IS NOT APPLICABLE HERE

Defendant Beatty's claim that production of SkyTel documents would violate her Fourth Amendment right against unlawful searches and seizures is absurd. As this Court and Defendants' attorneys know, the Fourth Amendment only constrains the actions of state actors. Plaintiffs here, however, are private individuals.

The only possible basis on which Ms. Beatty could claim state action is if the Court issued a subpoena enforcing the Plaintiff's requests for the production of her text messages. But this fact alone has never been held to constitute state action for Fourth Amendment purposes. The United States Supreme Court has consistently drawn a bright line between court-ordered discovery in civil litigation and unconstitutional "seizures." Rejecting an argument materially identical to Ms. Beatty's, it held:

> The short answer to the Fourth Amendment objections is that the records in these cases present no question of actual search and seizure, but raise only the question

whether orders of court for the production of specified records have been validly made; and no sufficient showing appears to justify setting them aside. No officer or other person sought to enter petitioners' premises against their will, to search them, or to seize or examine their books, records or papers without their assent, otherwise than pursuant to orders of court authorized by law and made after adequate opportunity to present objections.

*Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 195 (1946); *see also Hale v. Henkel*, 201 U.S. 43, 73 (1906) ("We think it quite clear that the search and seizure clause of the 4th Amendment was not intended to interfere with the power of courts to compel, through a *subpoena duces tecum*, the production, upon a trial in court, of documentary evidence"); *cf. Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964) (making no mention of a possible Fourth Amendment constraint in holding that "Rule 35 . . . is free of constitutional difficulty."). One district court—rejecting the suggestion of state action even where the litigant requesting the subpoena was a governmental agency—explained the Pandora's Box that a contrary ruling would open:

> [I]f the fourth amendment applies to a subpoena issued by the government in civil litigation, there may be no escape from the conclusion that in all civil cases, even where the government is not a litigant, the fourth amendment applies to limit discovery requests. The requisite state action component of a fourth amendment claim in all civil cases, whether the government appears or not, would be the court's involvement in issuing and enforcing the subpoena. <u>It strains common sense and constitutional analysis to conclude that the fourth amendment was meant to protect against unreasonable discovery demands made by a private litigant in the course of civil litigation.</u>

*United States v. International Business Machines Corp.*, 83 F.R.D. 97, 102 (S.D.N.Y. 1979) (emphasis added); *Hale*, 201 U.S. at 73 ("it would be utterly impossible to carry on the administration of justice without [the subpoena *duces tecum*]" (internal citation omitted)). Across the country, courts presented with this argument have consistently followed suit. *See, e.g., Paine v. McCarthy*, 527 F.2d 173 (9th Cir. 1975) (finding a reasonable court order to produce evidence or testify to not be a search or seizure within the meaning of the Fourth

Amendment); *Edwards v. C. I. R.*, 680 F.2d 1268 (9th Cir. 1982) (requiring taxpayers, who institute civil proceedings protesting deficiency notices, to produce records or face dismissal constitutes no invasion of privacy or unlawful search or seizure); *Bowerman v. MacDonald*, 431 Mich. 1, 19, 427 N.W.2d 477 (1988) ("The defendant has not cited, nor has our research revealed, any cases in which otherwise properly constituted discovery in a civil action has been held to constitute a violation of the Fourth Amendment"); *cf. In re Grand Jury Proceedings*, 558 F.2d 1177 (5th Cir.) (holding that neither a grand jury's subpoena nor a directive to produce exemplars are a seizure within the meaning of the fourth amendment).

"In any event, . . . even if the Fourth Amendment somehow does apply[,] its protections are subsumed by the Federal Rules of Civil Procedure." Wright & Miller, FED. PRAC. & PROC. § 2202, at 359 (citing *IBM*, 83 F.R.D. at 101-02); CORPUS JURIS SECUNDUM, Searches § 123 ("The Fourth Amendment's requirement of reasonableness in the context of the compelled production of documents is satisfied when the documents sought are relevant to a properly authorized inquiry, the specification of the documents is adequate for the purposes of the relevant inquiry, and the request is not overbroad"). Therefore, an otherwise-legitimate discovery request in a civil case *ipso facto* passes Fourth Amendment scrutiny, rendering the Fourth Amendment irrelevant to this Court's analysis.

The Ninth Circuit's recent *Quon* decision is not to the contrary. There, the plaintiff was a police officer, and the defendant that "searched" his text messages was the police department that he worked for. As *Quon* noted, "[s]earches and seizures by government employers or supervisors of the private property of their employees . . . are subject to the restraints of the Fourth Amendment." *Quon, slip op* at 7017 (quoting *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987)); *see O'Connor*, 480 U.S. at 715 ("[because] the individual's interest in privacy and

personal security suffers whether the government's motivation is to investigate violations of criminal laws or breaches of other statutory or regulatory standards, it would be anomalous to say that . . . the Fourth Amendment [applies] only when the individual is suspected of criminal behavior" (quotations and alterations omitted)); *New Jersey v. T. L. O.*, 469 U.S. 325, 335 (1985) ("[the] basic purpose of this Amendment . . . is [still] to safeguard the privacy and security of individuals against *arbitrary* invasions by *governmental* officials" (emphasis added)). Plaintiffs here, however, are private citizens. Moreover, the governmental employer in *Quon* obtained the messages by simple request, not through a civil subpoena. Simply put, *Quon* has no relevance to this case on the Fourth Amendment issue.

Honigman Miller Schwartz and Cohn LLP
/s/Richard E. Zuckerman (P26521)
   Herschel P. Fink (P13427)
   Lara Fetsco Phillip (P67353)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7400
hfink@honigman.com
rzuckerman@honigman.com
lara.phillip@honigman.com

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 23, 2008, by electronic and/or ordinary mail.

Honigman Miller Schwartz and Cohn LLP
/s/Richard E. Zuckerman (P26521)
   Herschel P. Fink (P13427)
   Lara Fetsco Phillip (P67353)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7400
hfink@honigman.com
rzuckerman@honigman.com
lara.phillip@honigman.com

DETROIT.3213192.1