UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend
of JONATHON BOND,

     Plaintiff,

Case No. 05-CV-74253-DT
Hon. Gerald E. Rosen
Magistrate Judge Steven R. Whalen

CITY OF DETROIT, a Municipal
Corporation; CITY OF DETROIT
CHIEF OF POLICE ELLA BULLY-CUMMINGS;
DEPUTY CHIEF OF POLICE CARA BEST;
JOHN DOE OFFICERS 1-20; ASSISTANT
DEPUTY POLICE CHIEF HAROLD CURETON;
LIEUTENANT BILLY JACKSON; MAYOR
KWAME KILPATRICK; and CHRISTINE BEATTY,
jointly and severally,

     Defendants.

_____/

<table>
<tr><td>

NORMAN A. YATOOMA (P54746)
ROBERT S. ZAWIDEH (P43787)
NORMAN YATOOMA & ASSOCIATES, INC.
**Attorneys for Plaintiff**
219 Elm Street
Birmingham, MI 48009
(248) 642-3600

</td><td>

MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
MORGANROTH & MORGANROTH, PLLC
**Attorneys for Christine Beatty, Only**
3000 Town Center, Suite 1500
Southfield, MI 48075
(248) 355-3084

</td></tr>
<tr><td>

JOHN A. SCHAPKA (P36731)
CITY OF DETROIT LAW DEPARTMENT
**Co-Counsel for City of Detroit, Harold
Cureton, Craig Schwartz & Cara Best**
660 Woodward Avenue, Suite 1650
Detroit, MI 48225
(313) 224-4550

</td><td>

KRYSTAL A. CRITTENDON (P49981)
CITY OF DETROIT LAW DEPARTMENT
**Attorney for City of Detroit, Harold** Cureton,
Craig Schwartz & Cara Best
660 Woodward Avenue, Suite 1650
Detroit, MI 48226
(313) 237-3018

</td></tr>
<tr><td>

KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
RANDAL M. BROWN (P70031)
PLUNKETT COONEY
**Attorneys for Ella Bully-Cummings, Only**
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790

</td><td>

JAMES C. THOMAS (P23801)
JAMES C. THOMAS, P.C.
**Attorney for Defendant Kwame Kilpatrick**
535 Griswold St., Suite 2632
Detroit, MI 48226
(313) 965-2420

</td></tr>
</table>

**ANSWER OF MAYOR KWAME KILPATRICK TO
MOTION OF DETROIT FREE PRESS, INC. FOR LEAVE
TO FILE AMICUS CURIAE BRIEF IN OPPOSITION TO
DEFENDANT CHRISTINE BEATTY'S MOTION TO PRECLUDE
DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM
SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT**

NOW COMES Defendant Kwame Kilpatrick ("Kilpatrick") by and through his attorney, James C. Thomas, of counsel to Plunkett Cooney, and for his answer to the Motion of Detroit Free Press, Inc. for Leave to File Amicus Curiae Brief, states as follows:

Defendant Kilpatrick recognizes that "participation as an amicus to brief and argue as a friend of the court was, and continues to be, a privilege within 'the sound discretion of the courts' *See Northern Sec. Co. v United States*, 191 U.S. 555, 24 S. Ct. 119, 48 L. Ed. 299 (1903); 4 Am. Jur. 2d, Am. Cur. § 4 at 113 …." *United States v State of Michigan*, 940 F2d 143, 165 (6th Cir. 1991). Participation should not, however, be granted in these circumstances because the proffered brief is, in effect, an attempt by the Detroit Free Press, Inc. ("Free Press") to file a brief, by proxy, in a Michigan Freedom of Information Act ("FOIA") case brought by the Free Press in Wayne County Circuit Court. (Case No. 08-100214-CZ, *Detroit Free Press, Inc. v Detroit News, Inc. v City of Detroit.*) This is an improper use of the amicus procedure.

In its state court case, the Detroit Free Press has sued to obtain text messages and related materials under Michigan's FOIA. Defendant Kilpatrick is an intervening Defendant in that case, and is vigorously contesting the Free Press' right to those messages. Defendant Kilpatrick maintains that those messages are protected from disclosure under the Federal Stored Communications Act, 18 USC §§ 2701 *et seq.* and other legal privileges.

Defendant Christine Beatty is also an intervening Defendant in the state court FOIA litigation and is making similar arguments.

The Free Press' proposed amicus brief acknowledges at page two that its goal is to influence Judge Colombo in the state court case ("[A]s this Court is likely to rule on these issues first and Judge Colombo may well be persuaded by this Court's rulings, the Free Press has an interest in the issues raised by Ms. Beatty's Motion that currently [*sic*] before the Court.")

This type of gamesmanship is not a proper basis for filing an amicus brief. It has the appearance of a ploy that would circumvent Judge Colombo's inherent right to control his own docket and the cases before him.  The Free Press initiated the FOIA litigation in state court, and should make its arguments in the forum it chose.  *See Citizens' Utility Board v Public Service Commission of Wisconsin,* 671 N.W. 2d 11, 16-17 (Wis. App. 2003) (concluding that amicus briefs should not be used to accomplish indirectly what cannot be accomplished directly, and that time limits for commencement of an appeal therefore should not be circumvented through the grant of amicus status; *citing Weina v Atlantic Mutual Insurance Co.*, 501 N.W. 2d 465, 468 (Wis. App. 1993).)

If the Court grants the Free Press' Motion, Defendant Kilpatrick asks this Court to consider his accompanying brief, which he has prepared to rebut the arguments raised by the Free Press in its proposed amicus curiae brief.

WHEREFORE, for the reasons set forth above, Defendant Kilpatrick requests that this Court deny the Free Press' Motion for Leave to File Amicus Curiae Brief in Opposition to Defendant Christine Beatty's Motion to Preclude Discovery of Electronic Communications from SkyTel based upon the Stored Communications Act, and award Kilpatrick his attorney fees and costs so wrongfully incurred.

Respectfully submitted,

PLUNKETT COONEY

By:     /s/ James C. Thomas
        James C. Thomas (P23801)
        Attorney for Defendant Kilpatrick
        2632 Buhl Building, 535 Griswold St.
        Detroit, Michigan  48226
        (313) 963-2420
        jthomas@plunkettcooney.com

Dated:  August 4, 2008
Blmfield.P0202.P0202.1014054-1

3

ERNEST FLAGG, as Next Friend
of JONATHON BOND,

     Plaintiff,

                                    Case No. 05-CV-74253-DT
                                    Hon. Gerald E. Rosen

CITY OF DETROIT, a Municipal           Magistrate Judge Steven R. Whalen
Corporation; CITY OF DETROIT
CHIEF OF POLICE ELLA BULLY-CUMMINGS;
DEPUTY CHIEF OF POLICE CARA BEST;
JOHN DOE OFFICERS 1-20; ASSISTANT
DEPUTY POLICE CHIEF HAROLD CURETON;
LIEUTENANT BILLY JACKSON; MAYOR
KWAME KILPATRICK; and CHRISTINE BEATTY,
jointly and severally,

     Defendants.
_____/

NORMAN A. YATOOMA (P54746)
ROBERT S. ZAWIDEH (P43787)
NORMAN YATOOMA & ASSOCIATES, INC.
**Attorneys for Plaintiff**
219 Elm Street
Birmingham, MI 48009
(248) 642-3600

MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
MORGANROTH & MORGANROTH, PLLC
**Attorneys for Christine Beatty, Only**
3000 Town Center, Suite 1500
Southfield, MI 48075
(248) 355-3084

JOHN A. SCHAPKA (P36731)
CITY OF DETROIT LAW DEPARTMENT
**Co-Counsel for City of Detroit, Harold
Cureton, Craig Schwartz & Cara Best**
660 Woodward Avenue, Suite 1650
Detroit, MI 48225
(313) 224-4550

KRYSTAL A. CRITTENDON (P49981)
CITY OF DETROIT LAW DEPARTMENT
**Attorney for City of Detroit, Harold** Cureton,
Craig Schwartz & Cara Best
660 Woodward Avenue, Suite 1650
Detroit, MI 48226
(313) 237-3018

KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
RANDAL M. BROWN (P70031)
PLUNKETT COONEY
**Attorneys for Ella Bully-Cummings, Only**
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790

JAMES C. THOMAS (P23801)
JAMES C. THOMAS, P.C.
**Attorney for Defendant Kwame Kilpatrick**
535 Griswold St., Suite 2632
Detroit, MI 48226
(313) 965-2420

---

**BRIEF OF DEFENDANT KWAME KILPATRICK IN OPPOSITION TO
AMICUS CURIAE BRIEF OF THE DETROIT FREE PRESS, INC.
IN OPPOSITION TO BEATTY'S MOTION TO PRECLUDE
DISCOVERY OF ELECTRONIC COMMUNICATIONS FROM
SKYTEL BASED UPON THE FEDERAL STORED COMMUNICATIONS ACT**

# TABLE OF CONTENTS

**Page**

INDEX TO AUTHORITIES ........................................................................................ ii

CONCISE STATEMENT OF THE ISSUE PRESENTED.................................... iii

CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT ............................ iv

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 3

    I.   The Free Press mischaracterizes the state of the law...................... 4

    II.  The Free Press' approach to interpreting the SCA would throw the adjudication of important privacy rights into a state of confusion. ............................................................................. 7

    III. The Court may not order Defendants Beatty or Kilpatrick to "consent" to SkyTel's release of text messages in response to a subpoena................................................................. 9

CONCLUSION ..................................................................................................12

**INDEX TO AUTHORITIES**

**Page**

**Cases**

*Concrete Pipe and Products of California, Inc. v.
    Construction Laborers Pension Trust for Southern
    California*,
    508 U.S. 602, 629, 113 S.Ct. 2264, 2283, 124 L.Ed. 2d
    539 (1993) ..............................................................................................................9

*Garcia v. Allstate Insurance Co.*,
    327 So. 2d 784, 786 (Fla. App. 1976) ..................................................................9

*O'Grady v. The Superior Court of Santa Clara County*,
    139 Cal. App. 4th 1423 (2006)..........................................................................11

*Quon v. Arch Wireless Operating Company, Inc.,*
    529 F.3d 892 (9th Cir 2008) ......................................................iv, v, 1, 2, 3, 11, 12

*Theofel v. Farey Jones*,
    359 F.3d 1066 (9th Cir. 2004).............................................................................5

**Other Authorities**

"*A User's Guide To The Stored Communications Act, and A
    Legislator's Guide To Amending It*", Orin S. Kerr, 72
    George Washington Law Review 1208 (2004) ...................................................4

Black's Law Dictionary (7th Edition) .......................................................................11

Webster's Ninth New Collegiate Dictionary...........................................................10

**Rules**

Stored Communications Act,
    18 U.S.C. §§ 2701 .............................................................................................iii, iv

## CONCISE STATEMENT OF THE ISSUE PRESENTED

I.      Whether SkyTel is prohibited by the Federal Stored Communications Act, 18 U.S.C. §§ 2701 *et seq* from producing the text messages sought pursuant to the subpoenas that are the subject of Defendant Christine Beatty's Motion to Preclude Discovery of Electronic Communications from SkyTel Based Upon the Federal Stored Communications Act.

## CONTROLLING AUTHORITY FOR THE RELIEF SOUGHT

*Quon v. Arch Wireless Operating Company, Inc.,* 529 F.3d 892 (9th Cir 2008)

*Stored Communications Act,* 18 U.S.C. §§ 2701 *et seq.*

**<u>INTRODUCTION</u>**

On April 25, 2008, Defendant Christine Beatty filed in this Court a Motion to Preclude Discovery of Electronic Communications from SkyTel Based upon the Federal Stored Communications Act. On April 30, 2008, Defendant Kwame M. Kilpatrick ("Defendant Kilpatrick") filed with this Court his Joinder in that Motion.

This issue has been briefed extensively by the parties. The Detroit Free Press, Inc. ("Free Press") has now filed an amicus curiae Brief in opposition to Defendant Beatty's Motion. The Free Press' Brief advances some troubling arguments which call for a response.

In essence, the Free Press urges this Court to reject the clear holding of the United States Court of Appeals for the Ninth Circuit in *Quon v. Arch Wireless Operating Company, Inc.*, 529 F.3d 892 (9th Cir. 2008). This is not surprising because *Quon* is on all fours with the instant case and sets forth a clear, common sense interpretation of the Stored Communications Act that runs directly counter to the Free Press' position. The following brief will show that there is no good reason to reject the *Quon* analysis. The Ninth Circuit Court of Appeals includes the State of California, the home of countless internet service providers and other technology ventures. The Ninth Circuit

has considerable experience with these issues, and its clear holding in a case with a remarkably similar fact pattern should be followed.

Quon held that the provider of a text message service such as SkyTel is not a "remote computing service" ("RCS") under the Stored Communications Act ("SCA"). Quon held instead that the provider is an "electronic communication service" ("ECS") under the SCA.

The distinction is crucial. An ECS such as SkyTel under the SCA may divulge text messages that it holds **only** "with the lawful consent of the originator or an addressee or intended recipient of such communication…." 18 U.S.C. 2702(b)(3); Quon 529 F.3d at 901. By contrast, messages held by an RCS may be divulged with the lawful consent of the "originator or an addressee or intended recipient," or with the lawful consent of the "subscriber" - - in this case, the City of Detroit. It is uncontested that neither Defendant Beatty nor Defendant Kilpatrick has given consent to the release of these messages.

SkyTel's status as an ECS has rendered moot the argument advanced by Plaintiff that the City of Detroit has given its consent to the release of the subpoenaed communications. By the plain terms of the SCA, a subscriber such as the City of Detroit has no legal authority to "consent" to the release of messages by ECS's such as SkyTel. Whether or not the City has consented is legally irrelevant.

<u>**ARGUMENT**</u>

For several reasons, the Free Press' argument that *Quon* should be rejected is not persuasive.

The Free Press' core argument key is that *Quon* is "flawed" because it firmly rejected the hypothesis, now advanced by the Free Press, that an ECS provider such as SkyTel is somehow transformed into an RCS when text messages are archived on its server. *Quon* held that an ECS's act of storing messages on its server does **not** abruptly convert it into an RCS -- defined at 18 U.S.C. §2711 (2) as "the provision to the public of computer storage or processing services by means of an electronic communications system" -- but merely means that the ECS is providing "electronic storage" incidental to its ECS operations, as defined by 18 U.S.C. §2510 (17). *Quon,* 529 F.3d at 901.

The Free Press brief (page 4) cites what it misleadingly refers to as "traditional understanding" in support of its argument that an ECS becomes an RCS by archiving messages on its server. In fact, the "traditional understanding" invoked by the Free Press is a mirage. The Free Press distorts the SCA's legislative history, and the 2004 George Washington Law Review article relied on heavily by the Free Press ("*A User's Guide To The Stored Communications Act, and A Legislator's Guide To Amending It*", Orin

S. Kerr, 72 George Washington Law Review 1208 (2004) ("Kerr Article"))

interprets the ECS in a manner which, if followed, would require a chaotic,

almost incoherent resolution of crucial privacy issues in endless litigation.

## I.      The Free Press mischaracterizes the state of the law.

The Free Press mischaracterizes the law review article it relies on so

heavily, and mischaracterizes the legislative history of the SCA.

A. <u>Kerr Article</u>

In its Brief, the Free Press disingenuously quotes the Kerr Article for the

proposition that:  "The traditional understanding has been that a copy of

opened e-mail sitting on a server is protected by the RCS rules, not the ECS

rules." (Free Press Brief, page 6, citing Kerr Article at 1208, 1216.)  The Free

Press omitted from its quotation the contradicting sentence immediately

preceding the one quoted, which reads:  **"In particular, the proper treatment

of opened e-mail is currently unclear"** (Kerr Article, page 1216) (emphasis

added).  This omission belies the Free Press' point, obviously distorts the

meaning of the article and, more importantly, distorts the state of the law as it

existed in August 2004, when the article was published. The omission

underscores the deceptive nature of the Free Press' objections to the clear

mandate of the SCA.

It is more accurate to say that, as the Kerr Article reported, the state of the law was **not** settled in 2004 on the issue of messages stored on ECS servers. But of course the key point is that the Ninth Circuit's decision in *Quon* - - decided four years after the Kerr Article, in June 2008 - - as well as its previous decision in *Theofel v. Farey Jones*, 359 F.3d 1066 (9th Cir. 2004), **have** persuasively settled this question. Through selective quotation, The Free Press simply misstates the state of the law.

B. <u>Legislative History of the SCA</u>

The Free Press also makes a misleading argument through selective quotation of H.R. Rep. 99-647, part of the legislative history of the SCA.

The Free Press criticizes *Quon* for ignoring the House Report. Specifically, the Free Press contends that at pages 64-65 the House Report "makes clear that it was the intent of Congress in implementing the SCA that should a recipient choose to leave an e-mail or voice mail in storage for reaccess at a later time, then 'such communication should continue to be covered by Section 2702(a)(2),' which governs remote computing services." (Free Press Brief, p. 11).

This interpretation is flawed. The House Report does not offer the support claimed by the Free Press, because the paragraph of H.R. Rep. 99-647 from which the Free Press quotes does not relate to ECS's at all, and instead deals exclusively with RCS's. The quoted passage, therefore, has

nothing to do with the storage of messages on ECS's such as SkyTel, and does not support the Free Press' implication that such storage somehow converts an ECS into an RCS.

More specifically, the subject matter of the passage quoted by the Free Press is § 2702(a)(2)(A) and (B) of the SCA. As is clear from the statute's numbering, (A) and (B) are both subparagraphs of § 2702(a)(2), which deals **exclusively**, in its own words, with "a person or entity providing remote computing service [RCS] to the public…." It is against this against this backdrop - - i.e. only in the context of an RCS rather than an ECS - - that H.R. Rep. 99-647 states:

> Sometimes the addressee, having requested and received a message, chooses to leave it in storage on the service for re-access at a later time. The Committee intends that, in leaving the message in storage, the addressee should be considered the subscriber or user from whom the system received the communication for storage, and that **such communication should continue to be covered by section 2702(a)(2).**

H.R. Rep. 99-647, page 65 (emphasis added).

When the House Report states that the communication that has been put in storage "should continue to be covered by section 2702(a)(2)," the Report is stating that the communication "should continue" to be treated as part of an RCS -- because, as noted, § 2702(a)(2) deals solely with RCS's. The Report is, therefore, not stating that an ECS should become an RCS in

the situation described. It is merely stating that the RCS should remain an RCS.

In short, the section of H.R. Rep. 99-647 relied on by the Free Press says nothing at all about the status of messages archived on an ECS. It is completely inapposite to the core issue in *Quon* and does not support the idea that an ECS can be transformed into an RCS. This is another example of mischaracterizing the law through selective quotation.

## II.    The Free Press' approach to interpreting the SCA would throw the adjudication of important privacy rights into a state of confusion.

Relying on the Kerr Article, the Free Press Brief asserts "that a provider of electronic communications, such as a text message provider like SkyTel, can act as an ECS or an RCS depending upon what function it is performing at the time."  See Free Press brief, p. 5.   More specifically, the Kerr article states:

> The distinction between providers of ECS and RCS is made somewhat confusing by the fact that most network service providers are multifunctional.  They can act as providers of ECS in some contexts, providers of RCS in other contexts, and as neither in some contexts as well.  In light of this, it is essential to recognize the functional nature of the definitions of ECS and RCS.  The classifications of ECS and RCS are context sensitive:  the key is the provider's role with respect to a particular copy of a particular

communication, rather than the provider's status in
the abstract.

*Kerr* at 1215.

This approach to the definition of an ECS and an RCS - - which trigger

different consent obligations - - is a prescription for confusion.  It would mean

that the extent of the privacy rights of an originator, addressee or intended

recipient of a particular communication would vary with the precise nature and

stage of the process being performed by a particular provider.  The

communications systems at issue are very complex and, as we all know,

constantly evolving.  In these circumstances, it is vital for the courts to

interpret the governing statute in a fashion that brings clarity, rather than

additional layers of confusion.  In this regard, Professor Kerr's - -  and the

Free Press' - - approach is unworkable and almost incoherent.

It is recognized that:

> In the interpretation of statutes, a court should be
> astute in avoiding a construction which may be
> productive of much litigation and insecurity, or which
> would throw the meaning or administration of the law,
> or the forms of business, into hopeless confusion or
> uncertainty.  Thus, an interpretation should, if
> possible, be put upon the provisions of a law which
> will permit the officials having the responsibility for its
> administration to proceed in an orderly manner.

73 Am. Jur. 2d *Statutes* § 178.  In *Concrete Pipe and Products of California,*

*Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S.

602, 629, 113 S.Ct. 2264, 2283, 124 L.Ed. 2d 539 (1993), the United States Supreme Court stated that, when construing an ambiguous statute, the court has an "obligation … to resolve the uncertainty in favor of definite meaning …."  *See also Garcia v. Allstate Insurance Co.*, 327 So. 2d 784, 786 (Fla. App. 1976).

*Quon* has recognized a clear, coherent bright-line test for the classification of text message providers as ECS's.  The *Quon* test governs all federal courts in the Ninth Circuit which, as noted, encompasses a very large number of the Nation's internet service providers.  Replacing this test with a confusing standard that requires a fragmentation of the service provided by text message companies into discreet parts does not make sense and is highly impractical.  The SCA implicates strong privacy interests. It is not appropriate to create a regime in which these interests come and go depending upon the precise nature or phase of an ECS' operations. More clarity is needed.


**III.    The Court may not order Defendants Beatty or Kilpatrick to "consent" to SkyTel's release of text messages in response to a subpoena.**

Recognizing that the Court may well categorize SkyTel as an ECS, the Free Press argues, as a fallback position, that the "Court could still order the

Mayor and Ms. Beatty to consent to SkyTel's disclosures of their text messages …" (Free Press Brief, page 13).  This argument, if accepted, would eviscerate the SCA and users' strong privacy interest in electronic communications.  It would hand judges a tool to circumvent the SCA, and to accomplish indirectly that which clearly may not be accomplished directly.

The very language used by the Free Press to make this argument reveals these crucial weaknesses. The Free Press Brief at point heading I-E (p. 13) declares, in pertinent part, that the "Court could **order** Kilpatrick and Beatty as litigants **to consent to SkyTel's production** of text messages.…" (emphasis added).  Webster's Ninth New Collegiate Dictionary defines "oxymoron" as "a combination of contradictory or incongruous words (as *cruel kindness*)" (italics in original). A court's ordering of an act of "consent" by a party who does not freely give his or her consent is inherently self-contradictory.  In light of the strong privacy rights created by the SCA, any compliance with such a Court Order would not constitute a "consent" within the meaning of the SCA.

At § 2702(b)(3), the SCA declares that, in the case of an ECS such as SkyTel, a "provider described in subsection (a) may divulge the contents of a communication … (3) **with the lawful consent of the originator or an addressee or intended recipient of such communication**" (emphasis added).  The language and spirit of this provision is violated if a court is

permitted to order, under threat of contempt, an originator, addressee or intended recipient of a text message to furnish that "consent."

Black's Law Dictionary (7th Edition) defines "consent" as follows: "Agreement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person." There is nothing voluntary about compliance with a court order that compels a text message originator, addressee or intended recipient to relinquish, against his or her will, what *Quon* held to be their "reasonable expectation of privacy in their text messages stored on the service provider's network…." *Quon*, 529 F.3d at 904.

The Free Press relies on *dicta* in *O'Grady v. The Superior Court of Santa Clara County*, 139 Cal. App. 4th 1423 (2006). *O'Grady* ruled that certain subpoenas could not be enforced against two web site publishers because enforcement would compel a violation of the SCA. *O'Grady*, 139 Cal. App. 4th at 1451. In *dicta,* the Court gratuitously suggested that where a party to a SCA-covered communication is also a party to the litigation "it would seem within the power of a court" to compel consent to disclosure. *O'Grady*, 139 Cal. App. 4th at 1446.

This is an effort to circumvent the protections and policies underlying the SCA. The Court in *Quon* asked and answered the following question: "Do users of text messaging services such as those provided by *Arch Wireless*

have a reasonable expectation of privacy in their text messages stored on the service provider's network?  We hold that they do."  *Quon*, 529 F.3d at 904. Permitting a court to compel users, under the threat of contempt, to relinquish those privacy interests in the manner suggested would eviscerate those privacy interests and, in effect, permit a judge to override an act of Congress.

The originators, addresses and intended recipients of text messages and other electronic communications provided by an ECS will very often be parties in the litigation in which the SCA is invoked.  If courts accept the Free Press' argument that such parties in effect have no SCA rights then litigants will adjust their strategies accordingly and make every effort to add these ECS users as parties so as to circumvent the SCA's protections.  This would defeat the very purpose of the SCA and cripple the privacy rights that it seeks to protect.

**CONCLUSION**

For these reasons, Defendant Kilpatrick requests that this Court reject the arguments of the Amicus Curiae Brief on Behalf of the Detroit Free Press, Inc. in Opposition to Beatty's Motion to Preclude Discovery of Electronic Communications from SkyTel based upon the Federal Stored Communications Act.  Defendant Kilpatrick also reiterates its support for Defendant, Christine Beatty's Motion to Preclude Discovery of Electronic

Communications from SkyTel Based Upon the Federal Stored

Communications Act.

Respectfully submitted,

PLUNKETT COONEY


By: /s/ James C. Thomas
    James C. Thomas (P23801)
    Attorney for Def. Kilpatrick
    2632 Buhl Building
    535 Griswold Street
    Detroit, Michigan 48226
    (313) 963-2420
    jthomas@plunkettcooney.com

Dated: August 4, 2008
Blmfield.20099.81614.1016138-1

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 5, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such to all parties of record.


 /s/ James C. Thomas
James C. Thomas