ERNEST FLAGG, as Next Friend
of JONATHAN BOND,

      Plaintiff,

                                     Case No. 05-74253

v.                                     Hon. Gerald E. Rosen

CITY OF DETROIT, *et al.,*

      Defendants.

_____/

## OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS TO PRECLUDE DISCOVERY OF ELECTRONIC COMMUNICATIONS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     August 22, 2008    
PRESENT: Honorable Gerald E. Rosen
United States District Judge

## I. INTRODUCTION

In an opinion and related order issued on March 20, 2008, the Court (i) determined that the communications exchanged among certain officials and employees of the Defendant City of Detroit via city-issued text messaging devices were potentially discoverable under the standards of Fed. R. Civ. P. 26(b)(1), (*see* 3/20/2008 Op. at 10-11), and (ii) established a protocol under which two designated Magistrate Judges would review these communications and make the initial determination as to which of them are discoverable, (*see* 3/20/2008 Order at 3-8). Through the present motions, the Defendant

City and one of the individual Defendants, Christine Beatty, seek to prevent this discovery effort from going forward, arguing that the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.,*[1] wholly precludes the production in civil litigation of electronic communications stored by a non-party service provider.[2]

As discussed below, the Court rejects this proposed reading of the SCA as establishing a sweeping prohibition against civil discovery of electronic communications. Defendants' position, if accepted, would dramatically alter discovery practice, in a manner clearly not contemplated by the existing rules or law, by permitting a party to defeat the production of electronically stored information created by that party and still within its control — information that plainly is subject to civil discovery, *see* Fed. R. Civ. P. 34(a)(1) — through the simple expedient of storing it with a third party. Because nothing in the plain language of the SCA requires this extraordinary result, and because Defendants have not identified any other support for this proposition, the Court holds that the discovery effort contemplated in its March 20, 2008 opinion and related order may go forward, albeit through a means somewhat different from that employed by Plaintiff to date.

---

[1]This statute was enacted as Title II of the Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848, but will be referred to here by its more common name of the Stored Communications Act.

[2]Defendant Kwame Kilpatrick has since joined in Defendant Beatty's motion.

## II. **BACKGROUND**

During the time period of relevance to this case, the Defendant City of Detroit entered into a contract for text messaging services with non-party service provider SkyTel, Inc.[3]  Under this contract, SkyTel provided text messaging devices and corresponding services to various City officials and employees, including at least some of the individual Defendants in this case.  Although the City discontinued its contract with SkyTel in 2004, the company evidently continues to maintain copies of at least some of the text messages sent and received by City officials during the period when SkyTel provided this service to the City.[4]

Upon learning of SkyTel's apparent retention of such communications, Plaintiff issued two broad subpoenas to SkyTel in February of 2008, seeking the disclosure of (i) all text messages sent or received by 34 named individuals, including the individual Defendants, during a number of time periods spanning over 5 years, and (ii) all text messages sent or received by any City official or employee during a four-hour time period

---

[3]SkyTel recently was acquired by Velocita Wireless, but will be referred to by its former name throughout this opinion.

[4]On this point — as with so many others relating to the City's use of SkyTel as its text messaging service provider — the record is devoid of helpful information.  In particular, the City has not divulged, and the record does not otherwise reveal, the nature and extent of SkyTel's obligation under the parties' contract to maintain copies of communications sent or received via SkyTel text messaging devices during the period when the company provided these services to the City.  More generally, the record discloses virtually nothing about the precise services provided by SkyTel to the City or the underlying technological means by which these services were performed.  The Court revisits these evidentiary deficiencies below, as relevant to the issues presented in the motions now under consideration.

in the early morning hours of April 30, 2003, the date that Plaintiff's mother was killed. Defendants promptly moved to quash these subpoenas, arguing (among other things) that none of these communications, regardless of their content, satisfied the standard for discovery as set forth in Fed. R. Civ. P. 26(b)(1). In an opinion and related order issued on March 20, 2008, the Court rejected this contention — along with Plaintiff's contrary and equally sweeping assertion that all such communications were discoverable, without regard to their subject matter — and established a protocol under which two designated Magistrate Judges would conduct an initial review of certain subsets of the communications retained by SkyTel and determine, subject to Defendants' objections and this Court's review, which of these communications should be produced to Plaintiff.

As this court-ordered process was getting under way, the Defendant City and one of the individual Defendants, Christine Beatty, filed the present motions, arguing that the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701 *et seq.,* prevents Plaintiff from obtaining in civil discovery any text messages that remain in SkyTel's possession as a result of its role as the City's service provider. Apart from these motions, SkyTel has moved to quash Plaintiff's subpoenas or, alternatively, for entry of an order that would protect the company against liability under the SCA for its production of text messages in accordance with the protocol established in this Court's March 20, 2008 order. Finally, by motion filed on July 23, 2008, the Detroit Free Press seeks leave to file an *amicus* brief in opposition to the motion brought by Defendant Beatty, arguing that the Court's resolution of this motion is likely to have a bearing on a state-court suit in which the

newspaper seeks the production of certain text messages from SkyTel pursuant to the Michigan Freedom of Information Act.

## III. <u>ANALYSIS</u>

**A.      Defendants Have Not Forfeited Their Opportunity to Challenge Plaintiff's Discovery Effort as Precluded by the SCA.**

Before turning to the merits of Defendants' SCA-based challenge, the Court first addresses Plaintiff's contention that Defendants' motions should be denied as untimely requests for reconsideration of the Court's March 20, 2008 rulings.  As Plaintiff points out, under Local Rule 7.1(g)(1) of this District, such a request for rehearing or reconsideration must be filed within ten days after entry of the ruling at issue, but Defendants brought their present motions more than a month after the Court issued its March 20, 2008 opinion and related order.  It follows, in Plaintiff's view, that Defendants' SCA-based challenge is untimely.

Yet, regardless of whether Defendants' motions could be construed as requests for reconsideration, the Court agrees with Defendant Beatty's contention in her reply brief that Defendants filed these motions in accordance with the Court's express authorization. So far as the Court's review of the record has revealed, Defendants first alluded to the possible impact of the SCA in a March 17, 2008 reply brief in support of Defendants' initial round of motions to quash Plaintiff's SkyTel subpoenas.  As the Court observed at a subsequent April 14, 2008 hearing, however, Defendants' passing reference to the SCA was far too "elliptical" to elicit a ruling on the merits of this issue.  (*See* 4/14/2008

Hearing Tr. at 22.)  Nonetheless, the Court invited defense counsel to properly and squarely raise this challenge through a separate motion.  (*See id.* at 22, 34.)  Accordingly, because Defendants' present motions were expressly contemplated and permitted by the Court, Plaintiff's claim of forfeiture is not well-taken.

**B.      The SCA Does Not Preclude Civil Discovery of a Party's Electronically Stored Communications That Are Maintained by a Non-Party Service Provider But Remain Within the Party's Control.**

Turning to the merits, Defendants' motions rest upon a simple yet sweeping proposition:  namely, that the SCA "absolutely precludes the production of electronic communications in civil litigation."  (Defendant Beatty's Motion at ¶ 3; *see also* Defendant City of Detroit's Motion at ¶ 5.)[5]  In order to properly address this assertion, the Court finds it instructive to first (i) survey the SCA provisions that Defendants contend are pertinent here, (ii) describe the subset of communications that the Court envisioned as subject to production in its March 20, 2008 opinion and order, and (iii) review the terms and scope of the Federal Rules that ordinarily govern the discovery of a party's electronically stored information.  Against this backdrop, the Court finds that Defendants' motions are rather easily resolved, without the need for an overly detailed or exhaustive construction of the terms of the SCA.

**1.      The Potentially Relevant Provisions of the SCA**

---

[5]As discussed below, Defendants retreat somewhat from this broad proposition in the briefs in support of their motions, and instead argue that such communications cannot be obtained from an outside service provider in civil litigation.

As pertinent here, the SCA generally prohibits — subject to certain exceptions — a "person or entity providing an electronic communication service to the public" from "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1). It further prohibits — again, subject to certain exceptions — a "person or entity providing remote computing service to the public" from "knowingly divulg[ing] to any person or entity the contents of any communication which is carried or maintained on that service." 18 U.S.C. § 2702(a)(2).[6]

As is evident from these provisions, the prohibitions set forth in § 2702(a) govern service providers to the extent that they offer either of two types of services: an "electronic communications service" or a "remote computing service." An "electronic communications service" ("ECS") is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).[7] A "remote computing service" ("RCS"), in contrast, is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2).[8]

---

[6] The SCA also prohibits a service provider from divulging subscriber or customer information or records "to any governmental entity." 18 U.S.C. § 2702(a)(3). As discussed in the Court's prior May 6, 2008 order in this case, this provision is not applicable here, where any such subscriber or customer information is being sought by a private party, Plaintiff.

[7] The SCA incorporates by reference this definition (and others) found in the federal Wiretap Act. *See* 18 U.S.C. § 2711(1).

[8] An "electronic communications system," in turn, is defined as encompassing "any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the

The potential importance of distinguishing between an "ECS" and an "RCS" lies in the different criteria for establishing an exception to the general rule against disclosure. The provider of an RCS may divulge the contents of a communication with the "lawful consent" of the subscriber to the service, while the provider of an ECS may divulge such a communication only with the "lawful consent of the originator or an addressee or intended recipient of such communication." 18 U.S.C. § 2702(b)(3). Apart from this exception for disclosures made with the appropriate consent, the SCA authorizes the provider of either an ECS or an RCS to divulge the contents of a communication under several other specified circumstances — *e.g.,* disclosure is permitted "to a person employed or authorized or whose facilities are used to forward such communication to its destination," 18 U.S.C. § 2702(b)(4), or "as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service," 18 U.S.C. § 2702(b)(5).

Yet, as noted by the courts and commentators alike, § 2702 lacks any language that explicitly authorizes a service provider to divulge the contents of a communication pursuant to a subpoena or court order. *See, e.g., In re Subpoena Duces Tecum to AOL, LLC,* 550 F. Supp.2d 606, 611 (E.D. Va. 2008) (observing that "the statutory language of the [SCA] does not include an exception for the disclosure of electronic communications pursuant to civil discovery subpoenas"); *see also* U.S. Internet Service Provider Ass'n,

---

electronic storage of such communications." 18 U.S.C. § 2510(14).

*Electronic Evidence Compliance — A Guide for Internet Service Providers,* 18 Berkeley Tech. L.J. 945, 965 (2003) (noting that none of the exceptions set forth in § 2702(b) "expressly permits disclosure pursuant to a civil discovery order" obtained by a private party).[9]  Seizing upon this absence of express statutory authorization, Defendants contend in their present motions that neither Plaintiff (through a subpoena) nor this Court (through an order) may compel SkyTel to produce the contents of any communications it might still retain under its contract to provide text messaging services to the City of Detroit.[10]

> **2.     The Communications That Are Potentially Subject to Production Under the Rulings and Corresponding Protocol Set Forth in the Court's March 20, 2008 Opinion and Related Order**

Before returning to the terms of the SCA and their potential impact here, the Court first revisits its rulings in the March 20, 2008 opinion and related order.  As discussed earlier, the subpoenas that were addressed in the March 20 opinion sought the production of the contents of (i) all messages that originated from or were received by the SkyTel

---

[9]In contrast to § 2702, a separate SCA provision permits a "governmental entity" to compel the disclosure of the contents of an electronic communication through such means as a warrant or an administrative subpoena.  18 U.S.C. § 2703(a)-(b).  This provision does not apply here, however, where production of electronic communications is sought by a private party. Accordingly, this case presents no occasion to decide how a governmental entity could properly secure the disclosure of any text messages maintained by SkyTel.

[10]As SkyTel points out in its motion to quash, while § 2702 lacks any language explicitly authorizing the disclosure of the contents of an electronic communication pursuant to a court order, a service provider's "good faith reliance" on such an order operates as a "complete defense to any civil or criminal action brought under [the SCA] or any other law."  18 U.S.C. § 2707(e); *see also McCready v. eBay, Inc.,* 453 F.3d 882, 892 (7th Cir. 2006).  Not surprisingly, then, in the event that the Court permits the discovery of text messages maintained by SkyTel, the company requests that the Court issue an order compelling its participation in this effort.

text messaging devices issued to any of 34 named individuals — most (but not all) of whom were City of Detroit officials and employees[11] — during several specified time periods spanning over five years, and (ii) all messages sent or received by any City of Detroit official or employee during the hours surrounding the death of Plaintiff's mother, Tamara Greene.

In its March 20 opinion, the Court rejected the extreme positions of Plaintiff and Defendants alike as to the discoverability of these communications — *i.e.,* Plaintiff's contention that ***all*** of the text messages meeting these broad criteria were subject to production, without regard to their contents, and Defendants' equally sweeping assertion that ***none*** of these communications were relevant to Plaintiff's claims in this case, also without regard to their subject matter. Instead, the Court looked to the standards of Fed. R. Civ. P. 26(b)(1), concluding that Plaintiff was entitled to obtain copies of those communications which addressed "any nonprivileged matter that is relevant to any party's claim or defense." The Court then established, through its separate March 20 order, a protocol by which two designated Magistrate Judges would review successive subsets of text messages retained by SkyTel under its contract with the Defendant City and determine — subject to Defendants' objections and assertions of privilege and this Court's final review — which of them met the Rule 26(b)(1) criteria for discoverability.

---

[11]This list included, for example, Carlita Kilpatrick, the wife of Detroit mayor (and Defendant) Kwame Kilpatrick. The record does not disclose whether a SkyTel text messaging device was issued to Carlita Kilpatrick under the company's contract with the City of Detroit.

As a result of these rulings, the universe of text messages that will ultimately be produced to Plaintiff is narrowly confined to those that are found to be "relevant" and "nonprivileged" under Rule 26(b)(1). Moreover, and as the Rule itself makes clear, the requisite determination of relevance will be made by reference to the parties' claims and defenses. In this case, then, the Rule 26(b)(1) inquiry will turn upon the relevance of any particular text message to the theory of recovery advanced in Plaintiff's complaint — namely, that Defendants violated his constitutional right of access to the courts by deliberately delaying and obstructing the investigation into his mother's murder, and by ignoring and actively concealing material evidence bearing upon this investigation.

When Plaintiff's discovery effort is viewed in this light, the appeals of Defendant Beatty — as well as Defendant Kilpatrick, in his submissions stating his concurrence in his co-Defendants' motions — to notions of "privacy" appear wholly inapposite. As explained, a text message is discoverable in this case only if it is relevant to Plaintiff's allegations of deliberate delay, obstruction, and disregard or concealment of evidence in the investigation of his mother's murder. Surely, any text messages exchanged among City of Detroit officials or employees concerning the topic of the Tamara Greene murder investigation are properly characterized as governmental, and not private or personal, communications.[12] Thus, to the extent that Defendants rely on case law — principally,

---

[12]If, after the Magistrate Judges' threshold determination of relevance, any Defendant wishes to oppose the production of one or more text messages on the ground that they should be deemed "private" communications, the Court certainly would entertain such a challenge at that time. As indicated, however, such a claim of privacy seems unlikely to succeed under the circumstances presented here.

the Ninth Circuit's recent decision in *Quon v. Arch Wireless Operating Co.,* 529 F.3d

892, 903-09 (9th Cir. 2008) — that addresses a government employee's reasonable

expectation of privacy in his or her personal communications using employer-provided

equipment, such rulings provide no guidance here.[13]

For similar reasons, the Defendant City's attempts in its motion to interpose claims

of privilege are, at best, premature, and have no bearing on the present SCA-based

challenge.  Contrary to the City's contention, it simply is not possible to meaningfully

address such assertions of privilege generically, without first reviewing the text messages

sent and received by the pertinent City officials and employees and identifying those

which contain relevant subject matter.  Consider, for example, a hypothetical text

message in which two City officials are discussing the possibility of concealing evidence

that is material to the Tamara Greene murder investigation.  The City could not possibly

assert a legitimate claim of privilege as to such a communication — and, in any event,

any such claim would surely be overcome by Plaintiff's need for this information.  *See,*

---

[13]More generally, the Court notes that *Quon* addresses a government employee's
reasonable expectation of privacy in the context of a Fourth Amendment claim asserted by the
plaintiff employees in that case against their municipal employer.  *See Quon,* 529 F.3d at 903.
Here, in contrast, the discovery efforts of the private Plaintiff do not implicate the Fourth
Amendment protection against unreasonable searches and seizures.  *See United States v.
Jacobsen,* 466 U.S. 109, 113, 104 S. Ct. 1652, 1656 (1984) (confirming that the Fourth
Amendment "proscrib[es] only governmental action," and does not apply to searches conducted
by private individuals); *see also United States v. International Business Machines Corp.,* 83
F.R.D. 97, 102 (S.D.N.Y. 1979) ("It strains common sense and constitutional analysis to
conclude that the fourth amendment was meant to protect against unreasonable discovery
demands made by a private litigant in the course of civil litigation.").  As to the possible
relevance of other aspects of the *Quon* decision, the Court addresses this subject below.

*e.g., Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D. Pa. 1973) (citing as two factors in a privilege inquiry (i) "whether the information sought is available through other discovery or from other sources," and (ii) "the importance of the information sought to the plaintiff's case").  As this example illustrates, the City's appeal to various possible privileges, like Defendant Beatty's appeal to notions of privacy, does not obviate the need for an initial review of the available communications of the pertinent City officials and employees to identify those which are relevant to Plaintiff's claims in this case.  Only then can any meaningful determination of privilege be made.

To be sure, some of the text messages reviewed by the Magistrate Judges in this process might include personal or private information, and some might be the subject of legitimate claims of privilege.  Yet, this was the very purpose of the protocol established in the Court's March 20, 2008 order — to review these communications *in camera*, and then to afford Defendants an opportunity to raise objections, as a means of protecting against disclosure to Plaintiff of irrelevant, privileged, or otherwise non-discoverable materials.  In agreeing to this protocol, Defendants presumably recognized that it was meant to safeguard their interests in preventing such disclosures, and they have not suggested how it might be inadequate to achieve this objective.[14]

---

[14]Notably, in finding that the review of text messages by the defendant city officials in *Quon* violated the plaintiff employees' Fourth Amendment rights, the Ninth Circuit cited various ways that this review could have been conducted differently in order to minimize the intrusion upon the plaintiffs' privacy interests.  *See Quon,* 529 F.3d at 908-09.  In this respect, *Quon* seems to support, rather than call into question, this Court's efforts to implement a protocol that protects against overbroad disclosure of communications to Plaintiff.

Under these circumstances, Defendants' appeals to notions of privacy and privilege are simply beside the point. What they necessarily must show is far broader — namely, that the SCA prohibits either (i) the submission of SkyTel text messages to the Court for an *in camera* review, or (ii) the production to Plaintiff of the subset of these communications that are determined by the Court to be discoverable under the standards of Rule 26(b)(1). If the SCA dictates such a result, it must do so despite the absence in this case of any real threat that personal or privileged communications might be disclosed to Plaintiff. This bears emphasis as the Court resolves Defendants' motions.

### 3. The Federal Rules Governing the Discovery of a Party's Electronically Stored Information

One final subject warrants consideration before addressing the merits of Defendants' SCA-based challenge. Although Plaintiff chose third-party subpoenas as the vehicle for seeking the production of SkyTel text messages, the Court finds it instructive to consider whether Plaintiff could have achieved the same objective through an ordinary Fed. R. Civ. P. 34 request for production directed at the Defendant City. As discussed below, the Court answers this question in the affirmative.

Under Rule 34(a), a party may request the production of documents and various other categories of items that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The items that may be sought under the Rule include "electronically stored information," Fed. R. Civ. P. 34(a)(1), which plainly encompasses both electronic communications and archived copies of such communications that are

preserved in electronic form, *see* Fed. R. Civ. P. 34, Advisory Committee Note to 2006 Amendments; *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 317 & nn. 36-38 (S.D.N.Y. 2003).[15] Thus, the archived text messages under consideration here fit comfortably within the scope of the materials that a party may request under Rule 34.

As the language of the Rule makes clear, and as the courts have confirmed, a request for production need not be confined to documents or other items in a party's possession, but instead may properly extend to items that are in that party's "control." Fed. R. Civ. P. 34(a)(1); *see also Cooper Industries, Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918, 919 (S.D.N.Y. 1984) ("Documents need not be in the possession of a party to be discoverable, they need only be in its custody or control.").  The Sixth Circuit and other courts have held that documents are deemed to be within the "control" of a party if it "has the legal right to obtain the documents on demand."  *In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir. 1995); *see also Mercy Catholic Medical Center v. Thompson,* 380 F.3d 142, 160 (3d Cir. 2004); *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir. 1984).[16] In light of the Rule's language, "[a] party responding to a Rule 34 production request cannot furnish only that information within his immediate knowledge or possession; he is

---

[15]Indeed, one of the principal objectives of the 2006 amendments to the Rule was to explicitly extend the Rule's coverage to electronically stored information.  *See* Fed. R. Civ. P. 34, Advisory Committee Note to 2006 Amendments.

[16]Some courts have adopted a more expansive notion of "control," finding that it extends to circumstances where a party has the "practical ability to obtain the documents from a non-party to the action."  *Bank of New York v. Meridien Biao Bank Tanzania Ltd.,* 171 F.R.D. 135, 146 (S.D.N.Y. 1997).

under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Gray v. Faulkner,* 148 F.R.D. 220, 223 (N.D. Ind. 1992) (internal quotation marks and citation omitted).

The case law illustrates the variety of circumstances under which a party may be deemed to have "control" over materials not in its possession. First, the requisite "legal right to obtain" documents has been found in contractual provisions that confer a right of access to the requested materials. *See, e.g., Anderson v. Cryovac, Inc.,* 862 F.2d 910, 928-29 (1st Cir. 1988); *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 (S.D.N.Y. 1992). The courts also have held that documents in the possession of a party's agent — for example, an attorney — are considered to be within the party's control. *See, e.g., Commercial Credit Corp. v. Repper (In re Ruppert),* 309 F.2d 97, 98 (6th Cir. 1962); *American Society for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus,* 233 F.R.D. 209, 212 (D.D.C. 2006); *Gray,* 148 F.R.D. at 223. As the Sixth Circuit observed, "[i]f this were not so, then the client could always evade his duty to produce by placing the documents with his attorney." *In re Ruppert,* 309 F.2d at 98; *see also Cooper Industries,* 102 F.R.D. at 920 (ordering the production of documents in the possession of the defendant corporation's overseas affiliate, and reasoning that if this party "could so easily evade discovery" by "destroying its own copies and relying on . . . copies maintained by its affiliate abroad," then "every United States company would have a foreign affiliate for storing sensitive documents").

Next, the courts have found that a corporate party may be deemed to have control

over documents in the possession of one of its officers or employees.  In *Riddell Sports Inc. v. Brooks,* 158 F.R.D. 555, 558 (S.D.N.Y. 1994), for example, the defendant sought to compel the production of tape recordings of his telephone conversations with an officer of the plaintiff corporation, Mr. Wingo, who had not been named a party to the suit.  The plaintiff argued that these tapes belonged to Wingo, and not the corporation, "and therefore should have been sought by subpoena served on him personally."  *Riddell Sports,* 158 F.R.D. at 558.  The court disagreed, explaining that when materials are "created in connection with the officer's functions as a corporate employee, the corporation has a proprietary interest in them and the officer has a fiduciary duty to turn them over on demand."  158 F.R.D. at 559.  Accordingly, because Wingo made the recordings at issue "in furtherance of his functions" as an officer of the plaintiff corporation, the court found that the tapes were within the control of this party, and thus "must be disclosed in response to a proper notice for production."  158 F.R.D. at 559.

Indeed, this principle extends not just to documents in the actual possession of a non-party officer or employee of a corporate party, but also to materials that the officer or employee has a legal right to obtain.  In *Herbst v. Able,* 63 F.R.D. 135, 136 (S.D.N.Y. 1972), for instance, the plaintiffs sought the production of transcripts of testimony given by non-party employees of the defendant corporation, Douglas Aircraft Company, at a private hearing before the Securities and Exchange Commission ("SEC").  Douglas Aircraft objected to this request, stating that it did not have copies of these transcripts in its possession, and citing an SEC policy not to make such transcripts available to private

litigants. Under another SEC rule, however, each witness was entitled to a transcript of

his or her own testimony. In light of this rule, the court held that the plaintiffs were

entitled to the requested transcripts, which Douglas Aircraft could obtain through its

employees:

> Rule 34(a) plainly provides that a party may request another party to
> produce any designated document which is within the possession, custody
> or control of the party of whom the request is made. Plaintiffs,
> consequently, may request Douglas to have its non-defendant employees
> procure copies of their private testimony before the SEC so that Douglas
> may give same to plaintiffs. Plainly Douglas' employees are persons within
> its control. The testimony of these employees relates to Douglas' affairs.

*Herbst,* 63 F.R.D. at 138; *see also In re Domestic Air Transportation Antitrust Litigation,*

142 F.R.D. 354, 356 (N.D. Ga. 1992) (ordering the defendant corporations to secure the

consent of their employees in order to obtain and produce transcripts of deposition

testimony given by these employees in a Department of Justice investigation).

Finally, in a relatively recent decision, a district court found that defendant El Paso

Corporation had "control," within the meaning of Rule 34(a)(1), of electronic records

maintained by a third party on the company's behalf. *See Tomlinson v. El Paso Corp.,*

245 F.R.D. 474, 477 (D. Colo. 2007). In that case, defendant El Paso had a duty under

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et*

*seq.*, and its implementing regulations to ensure that its employee benefit records were

"maintained in reasonable order and in a safe and accessible place, and in such manner as

they may be readily inspected or examined." *Tomlinson,* 245 F.R.D. at 477 (quoting 29

C.F.R. § 2520.107-1(b)). Although El Paso employed a third party, Mercer Human

Resource Consulting, to administer its employee pension plan and maintain the electronic records associated with this plan, the court held that El Paso could not delegate its recordkeeping duties under ERISA to this third party. 245 F.R.D. at 477. Rather, the court held that El Paso retained control over the pension plan data held by Mercer, and thus had the "authority and ability to obtain" and produce the data requested by the plaintiff plan participants. 245 F.R.D. at 477.

Applying Rule 34(a)(1) and its attendant case law here, the Court readily concludes that the Defendant City of Detroit has "control" over the text messages preserved by third party SkyTel pursuant to its contractual relationship with the City. To be sure, and as noted earlier, the Court's inquiry on this point is significantly hindered by the City's failure to produce any meaningful documentation that might reveal the terms of its agreements with SkyTel. In response to the Court's May 6, 2008 order directing it to produce copies of "any and all contracts" pursuant to which SkyTel provided text messaging services to the City and its employees, the City furnished a handful of one-page purchase orders, partial and unsigned SkyTel "Corporate Account Agreement" forms, and the like, none of which discloses the specific nature and extent of the services provided by SkyTel to the City during the course of their contractual relationship. Under this record, it is impossible to make any definitive pronouncements about the degree of control granted to the City under its agreements with SkyTel.

Nonetheless, the record includes several other indicia of the City's control over the text messages maintained by SkyTel. First and foremost, the City's present motion is

*premised* upon such control, first asserting that the City has the ***ability*** to consent to SkyTel's production of the text messages at issue, but then stating that it is ***unwilling*** to do so. Specifically, in its motion and brief in support, the City affirmatively states that "[p]ursuant to [its] contract" with SkyTel, it was the "customer or subscriber" of the text messaging service provided by SkyTel. (Defendant City's Motion at ¶ 3; Br. in Support at 1.) Quoting the SCA provision permitting the disclosure of the contents of a communication "with the lawful consent of . . . the subscriber," the City then states that "as subscriber to the subject SkyTel text messages," it "does not consent to the disclosure of these communications, as required by the SCA before such communications are divulged." (Defendant City's Motion, Br. in Support at 3 (citing 18 U.S.C. § 2702(b)(3)).)

Yet, if the City can ***block*** the disclosure of SkyTel messages by ***withholding*** its consent, it surely follows that it can ***permit*** the disclosure of these communications by ***granting*** its consent. This acknowledged power readily qualifies as a "legal right to obtain" the messages held by SkyTel, and hence constitutes "control" within the meaning of Rule 34(a)(1). *See In re Bankers Trust Co.,* 61 F.3d at 469. Indeed, the courts recognized precisely this point in *Herbst, supra,* 63 F.R.D. at 138, and *In re Domestic Air Transportation Antitrust Litigation,* 142 F.R.D. at 356, determining in each case that a party had control over materials in the possession of a third party by virtue of its ability to

secure the consent that was necessary to obtain a copy of these materials.[17]  Moreover, the

above-cited case law confirm the obvious point that it is immaterial whether a party, such

as the City here, might prefer not to give the necessary consent — if a party has the

requisite control over a requested document,  it must exercise this control in order to

comply with the mandate of Rule 34.  *See, e.g., Gray, supra,* 148 F.R.D. at 223.[18]

The City's control over the SkyTel text messages is further confirmed by the

Michigan law governing the maintenance and disclosure of public records.  In particular,

Michigan's Freedom of Information Act ("FOIA") mandates that, subject to various

exceptions, a "public body shall furnish a requesting person a reasonable opportunity for

inspection and examination of its public records."  Mich. Comp. Laws § 15.233(3).

There is no question that the Defendant City is a "public body" under the FOIA, *see*

Mich. Comp. Laws § 15.232(d)(iii), and that at least some of the SkyTel text messages

satisfy the statutory definition of "public records," insofar as they capture

communications among City officials or employees "in the performance of an official

function," *see* Mich. Comp. Laws § 15.232(e); *see also City of Warren v. City of Detroit,*

261 Mich. App. 165, 680 N.W.2d 57, 62 (2004) (confirming that the statutory definition

---

[17]These cases go farther, in fact, holding that a corporate party has the obligation to
secure any necessary consent from its non-party employees.  The Court returns below to this
aspect of the case law.

[18]The discovery process would undoubtedly be more streamlined if a party's duty of
disclosure were limited solely to the information it was willing to part with voluntarily.  It is well
established, however, that the Federal Rules governing discovery "often allow extensive
intrusion into the affairs of both litigants and third parties."  *Seattle Times Co. v. Rhinehart,* 467
U.S. 20, 30, 104 S. Ct. 2199, 2206 (1984) (footnote omitted).

of a "public record" includes information captured in electronic form); *Farrell v. City of Detroit,* 209 Mich. App. 7, 530 N.W.2d 105, 109 (1995) (same).[19]  Indeed, the City has acknowledged that at least some of these communications are "public records," both through a policy directive promulgated to its employees — a directive which, among other things, cautions "users of the City's electronic communications system" to "bear in mind that, whenever creating and sending an electronic communication, they are almost always creating a public record which is subject to disclosure," (*see* Plaintiff's Response, Ex. 9, Directive for the Use of the City of Detroit's Electronic Communications System at 2)[20] — and through its appeal in its present motion to the deliberative process privilege —

---

[19]The Court is aware, of course, of a suit pending in the Michigan courts in which two Detroit newspapers are pursuing disclosure under the FOIA of a different subset of text messages maintained by SkyTel under its contract with the City of Detroit.  In its limited discussion here of the terms of the FOIA, the Court does not seek or intend to express any view as to whether any of the SkyTel text messages might be subject to disclosure under this Michigan statute, or whether any of the statutory exceptions to disclosure might apply.  Rather, it is enough, for present purposes, to confirm that at least some of the text messages maintained by SkyTel surely qualify as "public records" within the meaning of Michigan's FOIA.

[20]In her reply brief in support of her motion, Defendant Beatty challenges the authenticity of this directive submitted by Plaintiff, observing that it is signed by Defendant Kilpatrick, and yet bears a date (June 26, 2000) prior to the date that he took office as the mayor of Detroit.  Yet, this is surely a mere typographical error, as evidenced by the absence of any claim by either Defendant Kilpatrick or the City that this directive does not accurately reflect the City's policy regarding electronic communications.  Plainly, these parties are in the best position to address this question, and yet neither has done so, despite ample opportunity.  In any event, it appears that Defendant Kilpatrick recently issued a revised directive with similar language, stating that "electronic communications may be deemed under the law to be public records," and that "users of the City's electronic communications system must bear in mind that, whenever creating and sending an electronic communication, the information may be subject to court-ordered disclosure."  (4/15/2008 Directive for the Use of the City of Detroit's Electronic Communications System at 2, *available at* http://info.detnews.com/pix/2008/pdf/citydirective.pdf.)

a privilege which, as the City recognizes, encompasses only communications among City officials and employees pursuant to "their official positions within the City of Detroit government," (Defendant City's Motion at ¶ 7).

Because at least some of the text messages maintained by SkyTel are "public records" within the meaning of Michigan's FOIA, it would be problematic, to say the least, to conclude that the City lacks a legal right to obtain these records as necessary to discharge its statutory duty of disclosure. Such a conclusion also would be contrary to the pertinent Michigan case law. First, the Michigan courts have held that the FOIA duty of disclosure, like the Rule 34 duty of production, extends to public records within the possession *or control* of a public body. *See MacKenzie v. Wales Township,* 247 Mich. App. 124, 635 N.W.2d 335, 339 (2001); *Easley v. University of Michigan,* 178 Mich. App. 723, 444 N.W.2d 820, 822 (1989). Next, while there is no obligation under the Michigan FOIA to create public records, the statute does impose a "duty to provide access" to those public records that have been created and are the subject of a proper FOIA request, and this obligation "inherently includes the duty to preserve and maintain such records until access has been provided or a court executes an order finding the record to be exempt from disclosure." *Walloon Lake Water System, Inc. v. Melrose Township,* 163 Mich. App. 726, 415 N.W.2d 292, 295 (1987) (footnote omitted); *see also* Mich. Comp. Laws § 15.233(3) ("A public body shall protect public records from loss, unauthorized alteration, mutilation, or destruction."). In this respect, then, the City here stands on a similar footing to the defendant corporation in *Tomlinson, supra,* 245 F.R.D.

at 477, which was found to have control over electronic records in the possession of a third party by virtue of its statutory obligation to maintain these records and make them available for examination or inspection.

Indeed, the decision of the Michigan Court of Appeals in *MacKenzie, supra,* is particularly instructive here. In that case, the defendant townships contracted with a third party, the City of Port Huron, to prepare property tax notices to be issued to township property owners. Under this contract, the townships supplied paper documents to Port Huron, which then "created magnetic computer tapes containing the pertinent tax information on each property owner." *MacKenzie,* 635 N.W.2d at 336. At the conclusion of this process, Port Huron returned the paper documents but retained the computer tapes. The plaintiff real estate broker submitted a FOIA request to the defendant townships seeking a copy of the computer tapes, but the townships resisted this request, contending that the tapes were not in their possession and that they were under no obligation to obtain them from Port Huron.

The Michigan Court of Appeals rejected the townships' arguments and ordered them to disclose the computer tapes to the plaintiffs. In so ruling, the court first found it immaterial that a third party, and not the townships, had created and retained possession of the tapes. Citing the FOIA's definition of a "public record" as including documents "used" by a public body in the performance of an official function, the court concluded that the townships had "used" the computer tapes, "albeit indirectly," by delegating to a third party, Port Huron, the "clerical task" of "prepar[ing] tax notices for mailing" and

providing the information needed to perform this function. *MacKenzie,* 635 N.W.2d at 338. The court reasoned that this delegation did not defeat the townships' duty of disclosure, as public bodies "may not avoid their obligations under the FOIA by contracting for a clerical service that allows them to more efficiently perform an official function." 635 N.W.2d at 338.

Of particular significance here, the court next found that the defendant townships "maintained a measure of control over the tapes," by virtue of having provided the data used to created the tapes, and as evidenced by a letter from one of the townships to the plaintiff stating that Port Huron would not release the tapes without permission and that the township did not intend to give any such permission. 635 N.W.2d at 339. In light of this retained control, the court deemed it legally insignificant that the tapes were not in the townships' possession. 635 N.W.2d at 339 (citing Mich. Comp. Laws § 15.240(4), which authorizes the courts to order the production of "all or a portion of a public record wrongfully withheld, regardless of the location of the public record"). Rather, the court held that the townships were obligated to secure the production of the computer tapes, "whether by signing the release provided by Port Huron or [by] obtaining copies of the tapes and forwarding them to plaintiff." 635 N.W.2d at 339. This decision in *MacKenzie* provides a compelling basis for concluding that the Defendant City has control, within the meaning of Rule 34(a)(1), over any "public records" that might be retained by third party SkyTel under its contract with the City.

Finally, while the record does not disclose the terms of the City's contracts with

25

SkyTel, it simply defies belief that SkyTel would maintain an archive of communications — many of which, as discussed, presumably qualify as public records and concern official City business — without providing any sort of contractual mechanism for the City to retrieve these messages. Presumably, a profit-seeking business such as SkyTel would not maintain such an archive unless it was compensated for this service, and the City, in turn, would not pay for this service unless it could gain access to the archive when desired.[21] In the absence of any evidence to the contrary, then, the Court assumes that the City has at least some sort of contractual right of access to the text messages preserved by SkyTel in the course of its contractual relationship with the City.

Given all these indicia of control, the Court finds that the text messages maintained by SkyTel would be an appropriate subject of a Rule 34 request for production directed at the Defendant City of Detroit. Pursuant to such a request, Plaintiff would be entitled to review any and all nonprivileged communications that are relevant to his claims, *see* Fed.

---

[21]The only evidence in the record that has any bearing upon this question is a printout of a SkyTel web page attached as an exhibit to Plaintiff's response to the City's motion. This web page describes a "Message Archiving" service that SkyTel apparently offers to its customers, under which a customer may retrieve messages stored by SkyTel by faxing a request to the company. (*See* Plaintiff's Response, Ex. 8.) Unfortunately, the record does not indicate whether SkyTel provided this or some comparable service under its contracts with the City.

Nonetheless, SkyTel seemingly has confirmed, albeit only in a general way, that it provided some sort of archiving service to the City. In its brief in support of its motion to quash, SkyTel quotes a passage from the district court's decision in *Quon* characterizing the service provider in that case as having "archived" the defendant municipality's text messages as "a permanent record-keeping mechanism." (SkyTel's Motion, Br. in Support at 7 (quoting *Quon v. Arch Wireless Operating Co.,* 445 F. Supp.2d 1116, 1136 (C.D. Cal. 2006)).) SkyTel then states that "[t]his description applies squarely to" the service it provided to the City of Detroit. (*Id.*)

R. Civ. P. 26(b)(1), absent some basis for concluding that these communications are beyond the reach of civil discovery. This, of course, leads the Court back to the proposition advanced in Defendants' motions — namely, that the SCA erects just such a bar to the production of any text messages preserved by SkyTel. Accordingly, the Court turns to this question.

### 4. The SCA Does Not Override Defendants' Obligation to Produce Relevant, Nonprivileged Electronic Communications Within Their Possession, Custody, or Control.

As noted earlier, Defendants' challenge to Plaintiff's request for disclosure of the SkyTel text messages rests upon what they view as a straightforward reading of the terms of the SCA. In particular, they first point to the SCA provision that generally prohibits a service provider such as SkyTel from (i) "knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by" an electronic communication service ("ECS"), 18 U.S.C. § 2702(a)(1), or (ii) "knowingly divulg[ing] to any person or entity the contents of any communication which is carried or maintained on" a remote computing service ("RCS"), 18 U.S.C. § 2702(a)(2). Next, while the SCA recognizes various exceptions to this general rule of non-disclosure, Defendants submit that the only relevant exception is disclosure "with the lawful consent of" the originator or intended recipient of a communication or (in the case of an RCS) the subscriber to the service, 18 U.S.C. § 2702(b)(3), and they state their unwillingness to give the requisite consent. It follows, in Defendants' view, that SkyTel may not produce any text messages in this case, whether pursuant to the subpoenas issued by Plaintiff or in accordance with

the protocol established in this Court's March 20, 2008 opinion and related order.

In analyzing this contention, the Court initially proceeds under the premise that Plaintiff has sought the production of SkyTel text messages under a Rule 34 document request directed at the Defendant City, rather than a third-party subpoena directed at SkyTel.[22]  Under this scenario, SkyTel would not be called upon to produce any text messages directly to Plaintiff.  Rather, any such production would pass through an intermediary, the Defendant City, which would be obligated under Rule 34 and the above-cited case law to obtain the text messages from SkyTel and make them available to Plaintiff as materials within its "control."

There is reason to believe that the SCA might apply differently to (i) direct production to an outside party such as Plaintiff and (ii) production to a customer such as the City.  First, the Court notes that the provisions upon which Defendants rely here prohibit a service provider from "divulg[ing]" the contents of a communication.  18 U.S.C. § 2702(a)(1)-(2).  Although disclosure to an outside party plainly would qualify as "divulg[ing]" the contents of a communication, it is not self-evident that a service provider "divulge[s]" the contents of a communication merely by retrieving the communication from an archive and forwarding it to a customer pursuant to a contractual obligation.  To "divulge" information ordinarily entails "mak[ing] known" or revealing something which is "private or secret."  Webster's Ninth New Collegiate Dictionary at

_____

[22]The Court recognizes, of course, that this premise is inaccurate, and will return below to the legal significance of Plaintiff's election to proceed via subpoena.

370 (1986); *see also* Merriam-Webster Online Dictionary, *available at*

http://www.merriam-webster.com/dictionary/divulge.  By fulfilling a request from its

customer, the City, to retrieve and forward communications from an archive that has been

created and maintained at the customer's request, SkyTel cannot necessarily be

characterized as having "divulged" any information to anyone outside the scope of the

confidential relationship that exists between SkyTel and its customer.

   If the archive and retrieval service provided by SkyTel qualifies as an RCS,[23] it is

still more doubtful that this sort of retrieval would run afoul of § 2702(a).  Under the

pertinent subsection of § 2702(a), a service provider that provides an RCS is prohibited

from "divulg[ing]" the "contents of any communication which is carried or maintained on

that service . . . on behalf of . . . a subscriber or customer" only *if* the service provider "is

not authorized to access the contents of any such communications for purposes of

providing any services other than storage or computer processing."  18 U.S.C. §

2702(a)(2).  Yet, to the extent that the contracts between the City and SkyTel provide a

mechanism for the City to request the retrieval of text messages from the archive

maintained by SkyTel, such a request presumably would supply the necessary

"authoriz[ation]" for SkyTel to "access" the communications in this archive "for purposes

of providing a[] service[] other than storage or computer processing" — namely, the

service of retrieval.  It is not a foregone conclusion, then, that SkyTel necessarily would

---

[23]The Court addresses this question in greater detail below.

engage in any activity prohibited under § 2702(a) by fulfilling the City's demand to retrieve text messages from an archive maintained at the behest of this customer.[24]

Next, even assuming that SkyTel were deemed to engage in activity within the scope of § 2702(a) by retrieving text messages from an archive and forwarding them to the City, the Court would not so readily conclude, as Defendants do, that only the "lawful consent" exception is potentially applicable here. Another exception permits the contents of a communication to be divulged "as may be necessarily incident to the rendition of the service" being provided. 18 U.S.C. § 2702(b)(5). As discussed earlier, it is difficult to see how an archive of text messages would be of any use or value to a customer if the service provider did not also offer a mechanism for retrieving messages from this archive. Seemingly, then, SkyTel's retrieval of messages from the archive it has maintained on the City's behalf is "necessarily incident to" its ability to carry out the text message transmission and storage services it has agreed to provide to the City.[25]

In any event, even if Defendants are correct in their contention that SkyTel cannot

---

[24]The Court recognizes that the defendant service provider in *Quon* engaged in similar activity, and that the Ninth Circuit held in its recent decision that the service provider had violated § 2702(a) as a matter of law. *See Quon,* 529 F.3d at 903. It does not appear from the published decisions in that case, however, that any party raised the question whether the service provider "divulge[d]" any communications within the meaning of § 2702(a), nor whether such "divulg[ing]" might be permissible if done in the course of providing an authorized service other than storage or computer processing. In addition, the Ninth Circuit's ruling in *Quon* rested in large part upon the court's determination that the service provider in that case was providing an ECS, and not an RCS. *See Quon,* 529 F.3d at 903. Again, the Court addresses this question below.

[25]Again, it does not appear that the parties in *Quon* raised this issue, and the published decisions in that case do not address it.

produce any communications in this case without the "lawful consent" called for under § 2702(b)(3), the Court finds that the Defendant City has both the ability and the obligation to secure any such consent that the SCA may require. As observed earlier, the consent that is needed to satisfy § 2702(b)(3) depends upon the sort of service being provided. If this service is deemed to be an RCS, then the consent of the "subscriber" is sufficient to permit the service provider to divulge the contents of a communication maintained on this service. 18 U.S.C. § 2702(b)(3).[26] In contrast, if a service is determined to be an ECS, then only the "lawful consent of the originator or an addressee or intended recipient" of a communication will suffice to overcome the prohibition against divulging this communication. 18 U.S.C. § 2702(b)(3).

This distinction between an ECS and an RCS was central to the rulings of the district and appellate courts in *Quon,* with the district court initially determining that the service at issue in that case was an RCS. *See Quon,* 445 F. Supp.2d at 1137. In that case, the defendant municipality, the City of Ontario, California, entered into a contract with a service provider, Arch Wireless, that called for alphanumeric text-messaging devices and related wireless communication services to be provided to various city employees. In an effort to determine whether and to what extent these devices were being used for personal rather than work-related purposes, the city's chief of police ordered an audit of the text

---

[26]The parties agree that the City is the "subscriber" of SkyTel's text messaging services within the meaning of § 2702. Thus, if the relevant service provided by SkyTel to the City is properly characterized as an RCS, SkyTel need only secure the City's consent in order to divulge the contents of any communications it has archived under its contracts with the City.

messages sent and received by two police officers over a two-month period.  When this audit triggered an internal affairs investigation and other adverse consequences for the subjects of the audit and others whose communications were encompassed by the review, one of the police officers and several other city employees brought suit against Arch Wireless, the City of Ontario, and various city officials, asserting federal claims under the SCA and 42 U.S.C. § 1983 as well as claims under California law.

Arch Wireless moved for summary judgment in its favor on the plaintiffs' SCA claim, arguing that the service it provided was an RCS and that the city, by requesting the disclosure of text messages maintained on this service, had provided the subscriber consent necessary to permit these disclosures without violating the prohibitions set forth in § 2702(a).  In addressing this question, the district court initially observed that Arch Wireless appeared to have provided a "computer storage" service that was characteristic of an RCS, as the messages it had provided to the city were retrieved from long-term storage after already having been delivered and read by their recipients.  *See Quon,* 445 F. Supp.2d at 1130-31.  Nonetheless, the court acknowledged that the maintenance of the text message in storage was not enough, standing alone, to distinguish an RCS from an ECS, because the SCA expressly contemplates that an ECS also entails the "electronic storage" of communications.  *See Quon,* 445 F. Supp.2d at 1134-36; *see also* 18 U.S.C. § 2702(a)(1) (prohibiting a provider of an ECS from divulging "the contents of a

communication while in electronic storage by that service").[27]  Moreover, while it was clear that Arch Wireless provided an ECS to the city by supplying text messaging devices and associated services that enabled city employees to send and receive electronic communications, *see* 18 U.S.C. § 2510(15), the district court construed the SCA and its legislative history as eschewing an "all or nothing" approach to characterizing a service provider's activities, and as instead recognizing that a service provider such as Arch Wireless could provide ***both*** RCSs and ECSs to a single customer.  *Quon,* 445 F. Supp.2d at 1136-37; *see also* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It,* 72 Geo. Wash. L. Rev. 1208, 1215-16 (2004) (noting the "functional nature of the definitions of ECS and RCS," with the result that a "provider can act as an RCS with respect to some communications [and] an ECS with respect to other communications").[28]

---

[27]As the district court pointed out, this common feature of "storage" shared by both an ECS and an RCS serves to distinguish the types of activities covered by the SCA from the types of activities covered by the federal Wiretap Act.  *See Quon,* 445 F. Supp.2d at 1134-35 (citing *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 876-79 (9th Cir. 2002)).

[28]The Kerr article, the legislative history of the SCA, and other relevant authorities are discussed extensively in an *amicus* brief that the Detroit Free Press seeks to file in this case. Prior to this submission, neither Plaintiff nor Defendants had provided much discussion or analysis of the terms of the SCA, and they had cited very little case law or other pertinent authorities, apart from the *Quon* decisions, that might assist the Court in interpreting this statute. Spurred by the Free Press's submission, however, Defendants Beatty and Kilpatrick have filed briefs that give more extensive treatment to this subject.

Under these circumstances, the Court finds that leave should be granted for the Detroit Free Press to file its proposed *amicus* brief in this suit.  First, the Free Press points out that this Court's interpretation of the SCA — to the extent that this is necessary to resolve Defendants' motions — is likely to have at least some impact upon the interests that the newspaper seeks to vindicate in its pending state court FOIA suit against the City of Detroit.  There is undeniably

Thus, the key question before the district court was whether the specific service that gave rise to the plaintiffs' SCA claims — *i.e.,* Arch Wireless's retrieval of text messages from storage after they had been transmitted and read by their recipients — should be deemed to be an RCS or an ECS. This, in turn, required the court to distinguish between the "electronic storage" utilized by an ECS and the "computer storage" provided by an RCS. As to the former, the statute defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof," or "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17). Because the text messages that Arch Wireless had retrieved from storage and forwarded to the city had already been transmitted and read in the past, their continued storage could not be construed as "temporary" or "incidental to" their transmission. Rather, the district court reasoned that the characterization of Arch Wireless's service as an ECS or an RCS turned upon whether the text messages had been stored "for purposes of backup protection." *See Quon,* 445 F. Supp.2d at 1136.

The court concluded that this was not the purpose for which Arch Wireless had

some overlap in the legal issues raised in that case and in Defendants' motions, where the Free Press is seeking disclosure of a different subset of the text messages maintained by SkyTel on behalf of the City of Detroit, and where the newspaper faces an SCA-based challenge to this effort that is quite similar to the SCA-based challenge advanced in Defendants' present motions. Moreover, and as noted above, the *amicus* brief submitted by the Free Press offers a unique perspective and analysis of the terms of the SCA which the parties' submissions did not supply, at least prior to the Free Press's filing. The Court welcomes this assistance in resolving the issues before it, and thus has considered the Free Press's *amicus* brief in preparing this opinion.

stored the text messages that it subsequently provided to the city. In so ruling, the court relied principally on the Ninth Circuit's observation in an earlier case that a service does not store messages "for backup purposes" if it is "the only place a user stores his messages." *Quon,* 445 F. Supp.2d at 1136 (quoting *Theofel v. Farey-Jones,* 359 F.3d 1066, 1077 (9th Cir. 2004)). The district court reasoned that "Arch Wireless' service would meet this definition," where the storage it provided was "long-term" and was "apparently . . . the single place where text messages, after they have been read, are archived for a permanent record-keeping mechanism." *Quon,* 445 F. Supp.2d at 1136; *see also Theofel,* 359 F.3d at 1076 (reasoning that an internet service provider "that kept permanent copies of temporary messages could not fairly be described as 'backing up' those messages"). Consequently, the court held that the service provided by Arch Wireless was an RCS, and that any disclosures of communications maintained on this service were permissibly made with the consent of the subscriber City of Ontario. *See Quon,* 445 F. Supp.2d at 1137.

In its recent decision, however, the Ninth Circuit reversed this aspect of the district court's ruling, and held that "Arch Wireless provided an 'electronic communication service' to the City." *Quon,* 529 F.3d at 903. This decision appears to rest on the "all-or-nothing" approach rejected by the district court, with the Ninth Circuit broadly "categoriz[ing] Arch Wireless" as providing a service for sending and receiving electronic communications, as opposed to a "computer storage" service. 529 F.3d at 901. While the court recognized that Arch Wireless did "archiv[e] . . . text messages on its

server," it noted that both ECSs and RCSs entail some form of "storage," and it found that Arch Wireless did not provide the "virtual filing cabinet" function that was cited in the legislative history of the SCA as characteristic of an RCS. 529 F.3d at 901-02.

The Ninth Circuit then explained that the district court's reliance on its *Theofel* decision was misplaced, and that this prior ruling, properly understood, actually led to the opposite conclusion. As observed in *Quon,* the court in *Theofel* held that an internet service provider ("ISP") had stored e-mail messages on its server "for purposes of backup protection," since "[a]n obvious purpose for storing a message on an ISP's server after delivery is to provide a second copy of the message in the event that the user needs to download it again — if, for example, the message is accidentally erased from the user's own computer." *Theofel,* 359 F.3d at 1075. The court in *Quon* found that this ruling governed the case before it, where "[t]he service provided by [the ISP in *Theofel*] is closely analogous to Arch Wireless's storage of [the plaintiffs'] messages," and where it was "clear that the messages were archived for 'backup protection,' just as they were in *Theofel.*" *Quon,* 359 F.3d at 902.

Finally, the Ninth Circuit addressed certain language in *Theofel* that Arch Wireless (and the district court) viewed as supporting the conclusion that its storage of messages was ***not*** for "backup protection":

> Arch Wireless contends that our analysis in *Theofel* of the definition of "backup protection" supports its position. There, we noted that "[w]here the underlying message has expired in the normal course, any copy is no longer performing any backup function. An ISP that kept permanent copies of temporary messages could not fairly be described as 'backing up' those

36

messages." [*Theofel,* 359 F.3d] at 1070. Thus, the argument goes, Arch Wireless's permanent retention of the [plaintiffs'] text messages could not have been for backup purposes; instead, it must have been for storage purposes, which would require us to classify Arch Wireless as an RCS. This reading is not persuasive. First, there is no indication in the record that Arch Wireless retained a permanent copy of the text messages or stored them for the benefit of the City; instead, the [declaration of an Arch Wireless employee] simply states that copies of the messages are "archived" on Arch Wireless's server. More importantly, *Theofel*'s holding — that the e-mail messages stored on [the ISP's] server after delivery were for "backup protection," and that [the ISP] was undisputedly an ECS — forecloses Arch Wireless's position.

*Quon,* 529 F.3d at 902-03. Thus, the court held that Arch Wireless provided an ECS to the city, and that it violated the SCA by disclosing transcripts of text messages to the city without first securing the consent of the originator, addressee, or intended recipient of each such communication. 529 F.3d at 903.

Upon carefully reviewing the district and appellate court rulings in *Quon,* this Court finds the lower court's reasoning more persuasive, on a number of grounds. First, the Court reads the Ninth Circuit's decision in that case — and, to some extent, the court's prior ruling in *Theofel* — as resting on a unitary approach, under which service providers contract with their customers to provide either an ECS or an RCS, but not both. Yet, the prohibitions against disclosure set forth in § 2702(a) focus on the specific type of service being provided (an ECS or an RCS) with regard to a particular communication, and do not turn upon the classification of the service provider or on broad notions of the service that this entity generally or predominantly provides. Thus, the Court is inclined to agree with the view of the district court in *Quon* that "Congress took a middle course" in

enacting the SCA, under which a service provider such as SkyTel may be deemed to provide both an ECS and an RCS to the same customer. *Quon,* 445 F. Supp.2d at 1137; *see also* Kerr, *supra,* at 1215-16.

In light of the SCA's functional, context-specific definitions of an ECS and an RCS, it is not dispositive that SkyTel indisputably did provide an ECS to the City of Detroit in the past, or that it presumably kept text messages in "electronic storage" at times in connection with the ECS that it provided. Rather, the ECS/RCS inquiry in this case turns upon the characterization of the service that SkyTel ***presently*** provides to the City, pursuant to which the company is being called upon to retrieve text messages from an archive of communications sent and received by City employees in years past using SkyTel text messaging devices. The resolution of this issue, in turn, depends upon whether SkyTel has maintained this archive "for purposes of backup protection," 18 U.S.C. § 2510(17)(B), so that its contents may be deemed to be held in "electronic storage" by an ECS, 18 U.S.C. § 2702(a)(1), or whether this archive is more properly viewed as "computer storage" offered by an RCS, 18 U.S.C. § 2711(2).

Whatever might be said about the reasoning through which the district and appellate courts in *Quon* determined that the archive of text messages in that case did or did not serve the purpose of "backup protection,"[29] the circumstances of this case are far

---

[29]The Court confesses that it is puzzled by the Ninth Circuit's observation that there was "no indication in the record" in that case that "Arch Wireless retained a permanent copy of the text messages or stored them for the benefit of the City," and that the evidence "instead" showed "that copies of the messages are 'archived' on Arch Wireless's server." *Quon,* 529 F.3d at 902-03. In this Court's view, an "archive" is commonly understood as a permanent record, and the

clearer.  SkyTel is no longer providing, and has long since ceased to provide, a text messaging service to the City of Detroit — the City, by its own admission, discontinued this service in 2004, and the text messaging devices issued by SkyTel are no longer in use.  Consequently, any archive of text messages that SkyTel continues to maintain on the City's behalf constitutes the **only** available record of these communications, and cannot possibly serve as a "backup" copy of communications stored elsewhere.  In this respect, this Court is in complete agreement with the Ninth Circuit's observations in *Theofel,* 359 F.3d at 1076-77, that a service provider "that kept permanent copies of temporary messages could not fairly be described as 'backing up' those messages," and that "messages are not stored for backup purposes" if a computer repository is "the only place" where they are stored.  Regardless of whether these observations applied to the services at issue in *Theofel* and *Quon*, the Court concludes that they apply with full force here — the service provided by SkyTel may properly be characterized as a "virtual filing cabinet" of communications sent and received by City employees.  *See Quon,* 529 F.3d at 902.  The Court finds, therefore, that the archive maintained by SkyTel constitutes "computer storage," and that the company's maintenance of this archive on behalf of the City is a "remote computing service" as defined under the SCA.

---

district court in *Quon* characterized Arch Wireless's repository in that case as "the single place where text messages, after they have been read, are archived for a permanent record-keeping mechanism."  *Quon,* 445 F. Supp.2d at 1136.  Moreover, once a service provider has successfully delivered a given text message to its intended recipient and the message has been opened and read, it would appear that any retention of a copy of this message in an "archive" could only be intended "for the benefit of" the customer, because this practice would serve no apparent purpose, whether backup or otherwise, for the service provider in its role as ECS.

It is only a short step from this finding to the conclusion that the Defendant City is both able and obligated to give its consent, as subscriber, to SkyTel's retrieval of text messages so that the City may comply with a Rule 34 request for their production. As previously discussed, a party has an obligation under Rule 34 to produce materials within its control, and this obligation carries with it the attendant duty to take the steps necessary to exercise this control and retrieve the requested documents. Moreover, the Court already has explained that a party's disinclination to exercise this control is immaterial, just as it is immaterial whether a party might prefer not to produce documents in its possession or custody. Because the SkyTel archive includes communications that are potentially relevant and otherwise discoverable under the standards of Rule 26(b)(1), and because the City has "control" over this archive within the meaning of Rule 34(a)(1) and the case law construing this term, the City must give any consent that might be required under the SCA in order to permit SkyTel to retrieve communications from this archive and forward them to the Magistrate Judges in accordance with the protocol established in this Court's March 20, 2008 order.

Contrary to Defendant Kilpatrick's contention in his response to the Detroit Free Press's *amicus* brief, it is not an "oxymoron" to conclude, under the particular circumstances presented here, that a party may be compelled to give its consent. It is a necessary and routine incident of the rules of discovery that a court may order disclosures that a party would prefer not to make. As illustrated by the survey of Rule 34 case law earlier in this opinion, this power of compulsion encompasses such measures as are

necessary to secure a party's compliance with its discovery obligations. In this case, the particular device that the SCA calls for is "consent," and Defendant Kilpatrick has not cited any authority for the proposition that a court lacks the power to ensure that this necessary authorization is forthcoming from a party with the means to provide it. Were it otherwise, a party could readily avoid its discovery obligations by warehousing its documents with a third party under strict instructions to release them only with the party's "consent."

Alternatively, even if the Court is mistaken in its conclusion that the service provided by SkyTel is an RCS, there is ample basis to conclude that the City nonetheless has an obligation to secure the requisite consent from its employees that would permit SkyTel to proceed with its retrieval of communications. This, after all, is precisely what the courts have held in the Rule 34 case law discussed earlier, including *Riddell Sports,* 158 F.R.D. at 559, *Herbst*, 63 F.R.D. at 138, and *In re Domestic Air Transportation Antitrust Litigation,* 142 F.R.D. at 356. In particular, *Riddell Sports,* 158 F.R.D. at 559, holds that a corporate party has control over, and thus may be compelled to produce, documents in the possession of one of its officers or employees, and that the officer or employee has a fiduciary duty to turn such materials over to the corporation on demand. Next, *Herbst,* 63 F.R.D. at 138, and *In re Domestic Air Transportation Antitrust Litigation,* 142 F.R.D. at 356, illustrate the principle that the Rule 34(a) concept of "control" extends to a company's control over its employees, such that a corporate party may be compelled to secure an employee's consent as necessary to gain access to

materials that the employee has the right to obtain.  In accordance with these authorities, the Court finds that the City of Detroit is both able and obligated to obtain any consent from its employees that would be necessary to permit SkyTel to retrieve the communications of City employees from its archive and forward them to the Magistrate Judges for review.

This conclusion is confirmed by the case law construing the same or similar "consent" provisions found in the SCA's close cousin, the federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*  Under one such provision, the interception of a "wire, oral, or electronic communication" is permissible "where one of the parties to the communication has given prior consent to such interception."  18 U.S.C. § 2511(2)(d).  Another provision, like its counterpart at § 2702(b)(3) of the SCA, permits a "person or entity providing electronic communication service" to "divulge the contents of" a communication "with the lawful consent of the originator or any addressee or intended recipient of such communication."  18 U.S.C. § 2511(3)(b)(ii).

The courts have held that the requisite consent to interception or disclosure may be implied under circumstances analogous to those presented here.  In *Griffin v. City of Milwaukee,* 74 F.3d 824 (7th Cir. 1996), for example, the plaintiff was employed as a telephone operator for the Milwaukee police department, and she alleged that her employer had illegally monitored and intercepted her personal telephone calls.  In affirming the district court's award of summary judgment in the employer's favor, the court noted that the plaintiff had been informed that "workstation telephone calls might

be monitored for training, evaluation, and supervision purposes," and that the plaintiff herself had testified that "she knew that her telephone conversations at her workstation could be monitored by supervisors." *Griffin,* 74 F.3d at 827. Moreover, employees were told "that incoming emergency calls would be recorded," and the equipment to do so was "located conspicuously in a glass case in the middle of [the plaintiff's] work area." 74 F.3d at 827. Under this record, the court concluded that the defendant employer's "systematic monitoring of workstation telephones occurred with [the plaintiff's] consent." 74 F.3d at 827; *see also United States v. Rittweger,* 258 F. Supp.2d 345, 354 (S.D.N.Y. 2003) (finding that an employee had given his implied consent to his employer's interception of his phone calls where the employer had disseminated a memo and handbooks advising employees that their calls were being recorded and were subject to review); *George v. Carusone,* 849 F. Supp. 159, 164 (D. Conn. 1994) (finding implied consent in light of the memoranda circulated to employees informing them that their calls would be recorded and the warning labels to this effect that were affixed to many phones around the workplace).

In this case, City of Detroit employees were similarly advised, under the above-cited electronic communications policy directive signed by Defendant Kilpatrick, that they should "assume [as] a 'rule of thumb' that any electronic communication created, received, transmitted, or stored on the City's electronic communication system is public information, and may be read by anyone." (Plaintiff's Response, Ex. 9, Directive for the Use of the City of Detroit's Electronic Communications System at 4.) In addition, this

directive states that all such communications are "the property of the City," that they should not be "considered, in whole or in part, as private in nature regardless of the level of security on the communication," and that, "in accordance with the applicable law governing access or disclosure, the City reserves the right to access electronic communications under certain circumstances and/or to disclose the contents of the communication without the consent of" its originator or recipient. (*Id.* at 1-2.) Finally, and as noted earlier, the directive cautions employees to "bear in mind that, whenever creating and sending an electronic communication, they are almost always creating a public record which is subject to disclosure" under the Michigan FOIA, regardless of "whether the communication is routine or intended to be confidential."

In light of this directive, a strong case can be made that City employees have given their implied consent to SkyTel's production of text messages to the City, at least under the circumstances presented here. First, SkyTel's disclosure here is for the limited purpose of enabling the City to fulfill its discovery obligations, which comports with the statements in the directive that employee communications are the property of the City and that, as such, the City reserves the right to access or disclose the contents of these communications in accordance with applicable law. Next, the Court already has explained that the text messages that are discoverable here can by no means be characterized as private or personal, but instead are confined to communications concerning official City business. Again, the directive emphasizes precisely this point, advising employees that their communications often will be deemed public records which

are subject to disclosure.

To be sure, the courts have cautioned that consent under the federal Wiretap Act "is not to be cavalierly implied," *Watkins v. L.M. Berry & Co.,* 704 F.2d 577, 581 (11th Cir. 1983), and the case law illustrates that consent may not be implied where, for example, the employer's stated policy of monitoring does not encompass the particular sort of communication at issue, *see Watkins,* 704 F.2d at 581-82, or where the employer's actual practices deviate from its written policies, *see Quon,* 529 F.3d at 906-07. Yet, in this case, it is important to recall exactly ***who*** is challenging the efficacy of the City's policy directive as proof of the City's and its employees' consent to the disclosure of electronic communications. Out of the several current and former City of Detroit officials and employees who are named as Defendants in this case, only two have challenged SkyTel's retrieval and production of text messages as prohibited under the SCA: Defendant Kwame Kilpatrick, the mayor of Detroit, who signed the City's policy directive, and Defendant Christine Beatty, the mayor's chief of staff at all times relevant to this case. The remaining Defendants have not joined in the SCA-based challenge being pursued by the City and Defendants Kilpatrick and Beatty.

Whatever any given City of Detroit employee might be able to say about his or her awareness of the City's electronic communications policy or any lack of rigor or consistency in its enforcement, such arguments are singularly ineffective — and, indeed, give cause for concern — when raised by two of the City's highest-ranking officials, at least one of whom unquestionably has policymaking authority for the City and ***authorized***

***the policy in question.*** It is problematic, to say the least, for someone in Defendant Kilpatrick's position to attempt to deny or diminish the import of the City's electronic communications policy as it applies to him, when an important purpose of this policy is to provide notice to rank-and-file employees that their communications are subject to access and disclosure as public records and as property of the City. As *Quon* well illustrates, a municipal policy governing city employees may be undermined by a policymaker's or supervisor's inconsistent or contrary practice, *see Quon,* 529 F.3d at 906-07, thereby impairing the city's ability to investigate employee wrongdoing.[30] Perhaps this is why the remaining individual Defendants in this case — including the City's chief of police, Ella Bully-Cummings — have elected not to join in the SCA-based challenge mounted by the Defendant City and Defendants Beatty and Kilpatrick, where a "victory" on this issue threatens to eliminate an important tool for uncovering government corruption.

Finally, the Court returns to the premise under which it has conducted its SCA analysis — namely, that Plaintiff has sought the disclosure of SkyTel text messages via a Rule 34 request for production, as opposed to a third-party subpoena. As this premise is incorrect, the Court necessarily must address the legal significance of Plaintiff's election to proceed via the latter means of discovery. The question, in particular, is whether the Court's analysis and conclusions continue to hold true where production is sought directly

---

[30]Notably, while the defendant City of Ontario's review of text messages in *Quon* was primarily intended to ascertain the extent to which employees were using city-issued pagers for personal communications, these text messages also were reviewed in connection with an internal affairs investigation into police dispatchers who had tipped off Hell's Angels motorcycle gang members about an ongoing sting operation. *See Quon,* 445 F. Supp.2d at 1121-22.

from a non-party, rather than from a party that retains control over materials in the non-party's possession.

The Court finds it best to avoid this question, and to instead insist that Plaintiff reformulate his third-party subpoena as a Rule 34 request for production directed at the Defendant City. If Plaintiff were to continue to proceed via a third-party subpoena, it seems apparent that SkyTel's compliance would qualify as "divulg[ing]" the contents of communications within the meaning of § 2702(a), and that, as Defendants have argued, this disclosure could only be made with the "lawful consent" referred to in § 2702(b)(3). Moreover, while Rule 34 and its attendant case law provide clear authority for insisting that a party consent to the disclosure of materials within its control, there is very little case law that confirms the power of a court to compel a party's consent to the disclosure of materials pursuant to a third-party subpoena.[31]

In an effort to avoid such potentially difficult questions where a more straightforward path is readily available, the Court instructs Plaintiff to prepare and serve a Rule 34 request for production of the relevant text messages maintained by SkyTel on behalf of the Defendant City. The City shall then forward this discovery request to SkyTel, and SkyTel, in turn, shall proceed in accordance with the protocol set forth in the Court's March 20, 2008 order. By directing the parties to proceed in this manner, the

---

[31]While there are cases in which, for example, a party is ordered to execute a release authorizing the production of medical records from a non-party physician, these cases tend to rest upon notions of waiver rather than control over non-party materials. *See, e.g., Vartinelli v. Caruso,* No. 07-12388, 2008 WL 2397666, at *2-*3 (E.D. Mich. June 10, 2008).

Court obviates the need to determine what powers it might possess to compel a service provider such as SkyTel to comply with a third-party subpoena, and the Court leaves this question for another day. Rather, because production will be sought under Rule 34, the Court may resort to the usual mechanisms for ensuring the parties' compliance. *See, e.g.,* Fed. R. Civ. P. 37.[32]

## IV. <u>CONCLUSION</u>

---

[32]In light of the Court's rulings, it would appear that the issues raised in SkyTel's May 13, 2008 motion to quash have now been resolved. In particular, the Court has elected to proceed in accordance with one of the alternatives suggested in SkyTel's motion — namely, that the City be ordered to request and obtain the relevant text messages from SkyTel, thereby supplying the requisite "consent" for SkyTel's disclosure of these messages. (*See* SkyTel's Motion to Quash, Br. in Support at 7-8.) The Court trusts, then, that SkyTel no longer has any objection to the procedure established by the Court.

The Court remains extremely troubled, however, by a letter attached as an exhibit to SkyTel's motion. In this letter, dated March 12, 2008, an attorney who represents Defendant Kilpatrick in other matters (but not this case), Dan Webb, requests SkyTel's "immediate assurance that going forward it will not produce records regarding the contents of any text messages sent by or to [Defendant Kilpatrick] in response to civil discovery." (SkyTel's Motion, Ex. A, 3/12/2008 Letter at 2.) Yet, at the very time this letter was sent, Defendants (including Defendant Kilpatrick) had a motion pending before this Court seeking to quash subpoenas Plaintiff had served on SkyTel.

This apparent extra-judicial attempt to circumvent the usual (and obviously available) procedures for challenging a third-party subpoena is wholly inappropriate and will not be tolerated. Defendant Kilpatrick is a party to this case, and is represented by counsel who have proven fully capable of challenging discovery efforts that are believed to be inconsistent with or contrary to the applicable rules and law. Once this Court rules on such a challenge, it expects Defendant Kilpatrick (like any other party) to abide by this ruling. It is simply unacceptable that another attorney for Defendant Kilpatrick, who has not appeared in this case, would send a letter demanding SkyTel's "assurance" that it will not comply with a discovery request made and presently under challenge in this case, without any apparent regard for how this Court might rule on this pending challenge. The Court trusts and expects that no further such communications will come to light in this case, whether from Defendant Kilpatrick's attorneys or the representatives of any other party.

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Christine Beatty's April 25, 2008 motion to preclude discovery of electronic communications from SkyTel is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order. Similarly, IT IS HEREBY ORDERED that the Defendant City of Detroit's May 2, 2008 motion to preclude discovery of electronic communications from SkyTel also is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order. In light of these rulings, Plaintiff is directed to promptly prepare and serve an appropriate Rule 34 request for production directed at the City of Detroit, and the parties are then directed to proceed in accordance with the rulings in this opinion and the protocol established in the Court's March 20, 2008 order.

Next, IT IS HEREBY ORDERED that non-party SkyTel's May 13, 2008 motion to quash is GRANTED IN PART and DENIED IN PART, in accordance with the rulings in this opinion and order. Finally, IT IS HEREBY ORDERED that the July 23, 2008 motion of the Detroit Free Press for leave to file an *amicus* brief is GRANTED.

SO ORDERED.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated: August 22, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 22, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager