UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of JONATHAN
BOND, a minor; TARIS JACKSON, as Next Friend
of ASHLEY JACKSON, a minor; and DR. BRIAN
GREENE, as Next Friend of INDIA BOND, a minor,

      Plaintiffs,

-VS-

CITY OF DETROIT, a Municipal Corporation,
DETROIT CHIEF OF POLICE, ELLA BULLY-
CUMMINGS, DEPUTY DETROIT POLICE CHIEF,
CARA BEST, JOHN DOE OFFICERS 1-20, ASST.
DEPUTY POLICE CHIEF HAROLD CURETON,
COMMANDER CRAIG SCHWARTZ, MAYOR
KWAME KILPATRICK, CHRISTINE BEATTY,
Jointly and severally,

      Defendants.

CASE. NO.: 05-CV-74253
HON.: GERALD E. ROSEN
MAG. R. STEVEN WHALEN

---

**DEFENDANT, ELLA BULLY-
CUMMINGS', ANSWER TO
THIRD AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

---

NORMAN A. YATOOMA (P54746)
ROBERT S. ZAWIDEH (P43787)
NORMAN YATOOMA & ASSOCIATES, P.C.
Attorneys for Plaintiff
219 Elm Street
Birmingham, MI 48009
(248) 642-3600
nya@normanyatooma.com

MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendant Christine Beatty
3000 Town Center, Suite 1500
Southfield, MI 48075
(248) 355-3084
Fax (248) 355-3107
jmorganroth@morganrothlaw.com
mmorganroth@morganrothlaw.com

JAMES C. THOMAS (P23801)
Attorney for Defendant Mayor Kwame Kilpatrick
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 963-2420
jthomas@plunkettcooney.com

KRYSTAL A. CRITTENDON (P49981)
CITY OF DETROIT LAW DEPT.
Attorneys for Defendants City of Detroit, Harold
Cureton, Craig Schwartz & Cara Best
660 Woodward Ave., Suite 1650
Detroit, MI 48226-3491
(313) 237-3018
critk@law.ci.detroit.mi.us

JOHN A. SCHAPKA (P36731)
CITY OF DETROIT LAW DEPARTMENT
Co-Counsel for Defendants City of Detroit and
Commander Craig Schwartz
1650 First National Bldg.
Detroit, Michigan 48226
(313) 224-4550
E-mail: schaj@law.ci.detroit.mi.us

DAVID MOSS (P36757)
VINCE COLELLA (P49747)
MOSS & COLELLA, P.C.
Co-Counsel for Plaintiffs Ashley Jackson and
India Bond Only
29100 Northwestern Highway, Ste. 310
Southfield, MI 48034
(248) 945-0100
(248) 945-1801
E-mail: dmoss@mosscolella.com
vcolella@mosscolella.com

KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
RANDAL M. BROWN (P70031)
PLUNKETT COONEY
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790
Fax: (313) 983-4350
E-mail: klewis@plunkettcooney.com
E-mail: staleb@plunkettcooney.com
E-mail: rbrown@plunkettcooney.com

## **DEFENDANT, ELLA BULLY-CUMMINGS', ANSWER TO THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

GENERAL ALLEGATIONS ................................................................................................................6

COUNT I - VIOLATION OF THE 1st AND 14th AMENDMENTS (RIGHT OF ACCESS TO COURTS) PURSUANT TO TITLE 42 U.S.C. § 1983............................................................. 22

COUNT II- CONSPIRACY TO VIOLATE PLAINTIFFS' CONSTITUTIONALLY GURANTEED RIGHT OF ACCESS TO COURTS ..................................................................... 26

NOW COMES the Defendant, Ella Bully-Cummings, by and through her attorneys, Plunkett Cooney, and for her Answer to Plaintiffs' Third Amended Complaint and Demand for Jury Trial, states as follows:

1. Plaintiff JONATHAN BOND is a resident of the State of Michigan, County of Oakland and Township of West Bloomfield, and resides there with his father and Next Friend, ERNEST FLAGG.

*1. Answering paragraph 1, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

2. Plaintiff ASHLY JACKSON is a resident of the State of Michigan, County of Wayne and City of Dearborn, and resides there with her father and Next Friend, TARIS JACKSON.

*2. Answering paragraph 2, Defendant, Ella Bully-Cummings, Defendant neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

3. Plaintiff INDIA BOND is a resident of the State of Michigan, County of Kalamazoo and City of Kalamazoo, and resides there with her guardian and Next Friend, DR. BRIAN GREENE.

*3. Answering paragraph 3, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

4. Jurisdiction is conferred on this Court pursuant to Title 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

*4. Answering paragraph 4, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

5. Defendant CITY OF DETROIT is a municipal corporation organized under the laws of the State of Michigan.

5.      *Answering paragraph 5, Defendant, Ella Bully-Cummings, admits the allegations contained*
*therein.*

6.      On information and belief, Defendant ELLA BULLY-CUMMINGS is a resident of
the City of Detroit, County of Wayne, State of Michigan.

6.      *Answering paragraph 6, Defendant, Ella Bully-Cummings, admits the allegations contained*
*therein.*

7.      On information and belief, Defendant CARA BEST is a resident of the City of
Detroit, County of Wayne, State of Michigan.

7.      *Answering paragraph 7, Defendant, Ella Bully-Cummings, neither admits nor denies the*
*allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

8.      On information and belief, Defendant HAROLD CURETON is a resident of the
City of Detroit, County of Wayne, State of Michigan.

8.      *Answering paragraph 8, Defendant, Ella Bully-Cummings, neither admits nor denies the*
*allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

9.      On information and belief, Defendant CRAIG SCHWARTZ is a resident of the City
of Detroit, County of Wayne, State of Michigan.

9.      *Answering paragraph 9, Defendant, Ella Bully-Cummings, neither admits nor denies the*
*allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

10.     On information and belief, Defendant KWAME M. KILPATRICK, current Mayor
of the City of Detroit, is a resident of the City of Detroit, County of Wayne, State of Michigan.

10.     *Answering paragraph 10, Defendant, Ella Bully-Cummings, neither admits nor denies the*
*allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

11.     On information and belief, Defendant CHRISTINE BEATTY, the former Chief of
Staff for Defendant Kwame M. Kilpatrick, is a resident of the City of Detroit, County of Wayne,

State of Michigan.

11.    *Answering paragraph 11, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

## GENERAL ALLEGATIONS

12.    Tamara Greene was the mother of Plaintiff JONATHAN BOND, a 15 year-old minor child, Plaintiff ASHLY JACKSON, a 12 year-old minor child, and Plaintiff INDIA BOND, a 6 year-old minor child.

12.    *Answering paragraph 12, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

13.    Tamara Greene was a licensed exotic dancer and employed in various clubs in the City of Detroit and by private parties.  Ms. Greene, also known as Tamara Bond Greene, performed under the stage name of "Strawberry".

13.    *Answering paragraph 13, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

14.    Sometime in the fall of 2002, a wild party occurred at the Manoogian Mansion.[1]  It was rumored that Defendant Kilpatrick attended this party,[2] as well as several of his close friends, certain Detroit Police Officers, and nude exotic dancers, including Tamara Greene. According to various accounts, it is alleged that Defendant Kilpatrick's wife, Carlita Kilpatrick, arrived at the party unexpectedly, and assaulted Tamara Greene, and possibly one other dancer. **See Affidavit of Joyce Rogers, attached hereto as Exhibit 1; see also Michigan State Police Supplemental Report dated August 6, 2003, attached hereto as Exhibit 2.**

---

[1]    The Manoogian Mansion is the traditional residence of the Mayor of the City of Detroit and his or her family.

[2]    On information and belief, Defendant Kilpatrick and his family had not as yet moved into the Manoogian Mansion, as it was undergoing renovations at the time.

6

14. *Answering paragraph 14, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

15. On information and belief, that night, following the alleged attack by Mrs. Kilpatrick, Defendant Kwame Kilpatrick's security detail, known as the Executive Protection Unit, or "EPU," escorted, transported, or otherwise accompanied the injured dancer to the emergency room of a local hospital.

15. *Answering paragraph 15, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

16. On information and belief, at least one Emergency Medical Technician ("EMT") reported to the media that, on or about the time of the alleged Manoogian party, individuals who appeared to be members of the EPU brought in an injured woman for treatment and arranged for all EMTs to be removed from the emergency room. **See Michigan State Police Supplemental Report Dated April 12, 2005, attached hereto as Exhibit 3**.

16. *Answering paragraph 16, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

17. On or about the time of the alleged party, and at all relevant times thereafter, Harold Nelthrope ("Nelthrope") was a detective in the EPU before he was transferred.

17. *Answering paragraph 17, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

18. Beginning in March of 2003, Nelthrope reported allegations of illegal conduct and misconduct by fellow EPU officers and by Detroit Mayor Kwame Kilpatrick and his wife to the Detroit Police Department's Professional Accountability Bureau. These allegations included claims that close friends of Defendant Kwame Kilpatrick on EPU were claiming overtime pay to which they were not entitled, and were drinking on the job.

18. *Answering paragraph 18, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

19. Specifically, the close friends referred to by Nelthrope, are former EPU Police Officers Loronzo ("Greg") Jones and Mike Martin.

19. *Answering paragraph 19, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

20. On information and belief, Jones was a high school football buddy of Mayor Kilpatrick. **See Affidavit of Lt. Alvin Bowman, attached hereto as Exhibit 4.**

20. *Answering paragraph 20, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

21. On information and belief, Officer Martin was a close friend of Jones. Both EPU Officers came out of the 2nd Precinct, which was widely viewed by those in the Detroit Police Department as the "Wild Wild West" *Id.*

21. *Answering paragraph 21, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

22. It was widely believed by those in the Detroit Police Department that both Jones and Martin had great influence over Mayor Kilpatrick, that they essentially had authority to do virtually anything they chose without fear of repercussions, and that where they were concerned, there was no chain of command. For example, even though he never exceeded the rank of Police Officer, Officer Jones had *de facto* control over the EPU, despite the fact that at all relevant times, Lieutenants and Sergeants were also assigned to the Executive Protection Unit. *Id.*

22. *Answering paragraph 22, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

23. Further evidence of Jones' close ties to Defendant Kilpatrick is that his climb to the

top of the EPU occurred despite his tarnished record. On information and belief,

 a. A misdemeanor gun charge from 1992 has been expunged from Jones' criminal record;

 b. In 1995, while off duty, Jones and several on-duty officers he called for help were sued for firing their guns during a car chase in which a man was shot to death. Jones was accused of shooting into a man's car but was dropped from a civil lawsuit because another officer fired the fatal shots; and

 c. In 1996, while off duty, Jones fought with Police Officer Eugene Brown after he pulled over Jones' car. Jones was unsuccessfully prosecuted for resisting arrest and later sued Brown.

 *23.  Answering paragraph 23, Defendant, Ella Bully-Cummings, neither admits nor denies the*

*allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

 24. On information and belief, on or about April 26, 2003, Nelthrope was interviewed

by an Officer from the Public Corruption Unit. In addition to discussing the above allegations,

Nelthrope - **for the first time -** discussed the allegations that Carlita Kilpatrick assaulted one or

more of the dancers at a party at the Manoogian Mansion in the fall of 2002. Nelthrope went on

to discuss the efforts to cover up these crimes. **See the April 30, 2003 Memorandum, attached**

**hereto as Exhibit 5, hereafter the April 30th Memo.**

 *24.  Answering paragraph 24, Defendant, Ella Bully-Cummings, neither admits nor denies the*

*allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

 25. This interview with Nelthrope was summarized in a 5-page memorandum

inaccurately dated April 24 and April 30, 2003.[3] Gary Brown, then Deputy Chief of the

Professional Accountability Bureau, authorized a preliminary investigation into these allegations.

**Exhibit 5.**

---

[3] See April 30th Memo, attached hereto as Exhibit 5. On information and belief, a problem with the word processing software used to prepare the memorandum is responsible for the appearance of the date "April 24, 2003." It is believed that the April 30th Memo was actually completed on April 30, 2003.

25.     *Answering paragraph 25, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

26.     According to the April 30th Memo, "[t]he most serious allegation made by Officer Nelthrope is that Mrs. Carlita Kilpatrick was involved in a physical altercation with a female dancer, causing bodily injury requiring medical attention. If this allegation is proven to be fact, the potential for assault charges to be filed against Mrs. Carlita Kilpatrick, as well as potential obstruction of justice charges and or misconduct in office charges against anyone found to have collected and destroyed activity logs, will warrant national headlines and severely damage the political future of Mayor Kilpatrick." **Exhibit 5**.

26.     *Answering paragraph 26, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

27.     On the morning of April 30, 2003, at approximately 3:40 in the morning, Tamara Greene was shot dead while sitting in her car with a friend in the driveway of her home. Ms. Greene was shot with a .40 caliber weapon, the kind of weapon that is issued to members of the Detroit Police Department. **Exhibit 4**. Her friend survived the shooting.

27.     *Answering paragraph 27, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

28.     On information and belief, two days after Nelthrope discussed the Manoogian Mansion party with Internal Affairs, and hours after Ms. Greene was shot dead, Jones sent the following text message to Defendant Christine Beatty: "When you get a chance, could you give me a call," to which Defendant Beatty answered "Yes." **See Page 4 of Attorney Michael Stefani's Supplemental Motion for Attorney Fees, attached hereto as Exhibit 6**.

28.     *Answering paragraph 28, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

29. At the request of then Chief of Police, Jerry Oliver, Brown prepared another memorandum regarding Nelthrope's allegations. **See Memorandum dated May 6, 2003, attached hereto as Exhibit 7 (hereafter, the May 6th Memo). At Chief Oliver's direction, the conclusion of the May 6th Memo was rewritten to recommend that no further investigation be conducted**.

*29. Answering paragraph 29, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

30. In the May 6, 2003 Memo, it was reported that Nelthrope made a point of saying that he was wearing a bulletproof vest because "he didn't trust many police officers."

*30. Answering paragraph 30, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

31. The May 6, 2003 Memo was given to Chief Oliver, and then passed along to Defendant Christine Beatty who, at the time, was Defendant Kilpatrick's Chief of Staff and paramour, and possibly to others in Defendant Kilpatrick's office.

*31. Answering paragraph 31, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

32. At all relevant times, Defendant Kilpatrick, Defendant Beatty, Defendant Ella Bully-Cummings, and others within the Detroit Police Department and Defendant Kilpatrick's administration, conspired to terminate Brown, a decorated, well-respected twenty-year member of the Detroit Police Department.

*32. Answering paragraph 32, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

33. In furtherance of that conspiracy, on May 9, 2003, Defendant Mayor Kwame Kilpatrick fired Deputy Police Chief Gary Brown. **See Defendant Kilpatrick's May 9, 2003,**

**letter to Brown, attached hereto as Exhibit 8**.

        *33.     Answering paragraph 33, to the extent the allegations contained in paragraph 33 rely upon the allegations of paragraph 32, Defendant, Ella Bully-Cummings, denies the allegations contained therein. As to any remaining allegations, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

        34.     Brown was fired to avoid further investigation into the allegations of the "wild party," or that Defendant Kilpatrick's wife, Carlita Kilpatrick, assaulted Tamara Greene at that party.

        *34.     Answering paragraph 34, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

        35.     Further, members of Defendant Kwame Kilpatrick's office then identified Nelthrope as being the source of the allegations of misconduct to the media, and the mayor publicly called Nelthrope a liar. **See June 26, 2004, Deposition Transcript of Defendant Kwame Kilpatrick, pp. 60-62, attached hereto in its entirety as Exhibit 9**.

        *35.     Answering paragraph 35, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

        36.     Twelve .40 caliber shell casings were found at Ms. Greene's murder scene. Witnesses reported that the shooter left the scene in a "white Trailblazer." **Exhibit 4**.

        *36.     Answering paragraph 36, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

        37.     The .40 caliber Glock, Model 22, is the standard issue weapon for members of the Detroit Police Department. **Exhibit 4**.

        *37.     Answering paragraph 37, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof. By way of*

12

*further answer, Defendant, Ella Bully-Cummings, acknowledges that most Detroit Police Department officers are issued Glock model 22 weapons.*

38.     The Detroit Police Department, Homicide Section, Squad 8, was assigned to investigate the murder of Tamara Greene. **Exhibit 4**.

*38.     Answering paragraph 38, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

39.     Lt. Al Bowman was the head of Squad 8, and participated in the investigation of the Greene homicide.

*39.     Answering paragraph 39, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

40.     Sgt. Marian Stevenson, a former homicide investigator who worked under Lt. Bowman, was also assigned to the Tamara Greene murder investigation. Sgt. Stevenson concluded that someone ordered Greene's murder. The basis for her belief was that (1) Greene was shot first, and (2) that Greene's passenger was able to exit the vehicle, and (3) an eyewitness reported that the shooter's vehicle turned around after shooting Greene and had the opportunity to shoot the passenger as well, but did not.

*40.     Answering paragraph 40, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

41.     Every witness contacted by Squad 8 investigators in connection with the Greene murder investigation felt threatened and intimidated against coming forward on this case and testifying. Specifically, they feared retaliation by those close to the Mayor, individuals such as EPU Police Officers Loronzo Jones and Mike Martin. **Exhibit 4**.

*41.     Answering paragraph 41, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

13

42.     From the start, the Greene homicide investigation was treated differently than any other homicide investigated by the department. First of all, the file commanded an unexplainable amount of attention from then Chief of Police Jerry Oliver, and later from his successor, Defendant Ella Bully-Cummings. Both of these individuals answered to Defendants Kilpatrick and Beatty. **Exhibit 4.**

*42.     Answering paragraph 42, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof. By way of further answer, to the extent the allegations contained in paragraph 42 imply any wrongdoing as to Defendant, Ella Bully-Cummings, said allegations are denied as untrue.*

43.     Regarding Chief Oliver, on numerous occasions, he requested the file be sent to his office for his review. **Exhibit 4.**

*43.     Answering paragraph 43, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

44.     On each occasion, the file was returned to Squad 8 with reports missing from the file. **Exhibit 4.**

*44.     Answering paragraph 44, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

45.     After she replaced Chief Oliver, Defendant Ella Bully-Cummings called Lt. Bowman into her office, along with Defendants Cureton and Schwartz, and Lt. Billy Jackson.

*45.     Answering paragraph 45, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof. By way of*

*further answer, Defendant, Ella Bully-Cummings admits to meeting with the persons listed in paragraph 45 to discuss Lt. Bowman's handling homocide investigative documents outside of his chain of command.*

46. At this meeting, which occurred on or about March 10, 2004, Defendant Ella Bully-Cummings indicated that she was aware of the connection between the Tamara Greene investigation and the Mayor. She also stated, due to the nature and sensitivity of this ease, that this case was not to be discussed outside of her office. In fact, she required the file to be placed away in safekeeping and not to be discussed openly with anybody. **Exhibit 4.**

*46. Answering paragraph 46, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

47. At that point Defendant Cureton, who at the time held the number two position in the Detroit Police Department asked: "Why can't this shit just go away?" **Exhibit 4.**

*47. Answering paragraph 47, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

48. Lt. Bowman explained to them that while he was not there to investigate any rumors of a wild party involving Defendant Kilpatrick; that he had a duty, a responsibility and an obligation to bring closure to Ms. Greene's death and to investigate it properly and thoroughly, even if that meant chasing rumors to the Manoogian Mansion, Mayor Kilpatrick and those close to him.
**Exhibit 4.**

*48. Answering paragraph 48, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

49. Nonetheless, Lt. Billy Jackson took the file and put it in a combination locked safe. Lt. Bowman did not have the combination to that safe. **Exhibit 4.**

*49. Answering paragraph 49, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

15

50.     Sgt. Marion Stevenson told Lt. Bowman that her case notes on the Tamara Greene murder investigation were erased from her computer hard drive. Further, she stated that her 'zip' storage files disappeared from a locked cabinet inside the police department. She further informed Lt. Bowman that she learned this was the work of City IT personnel. **Exhibit 4**.

*50.     Answering paragraph 50, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

51.     All Squad 8 members feared that they may lose their jobs and even feared for their physical safety if they continued to investigate Ms. Greene's murder. **Exhibit 4.**

*51.     Answering paragraph 51, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

52.     Lt. Bowman's meeting with Defendant Bully-Cummings occurred on a Wednesday during his vacation, so when he left Chief Bully-Cummings' office, he did not return until the following Monday, approximately March 15, 2004. **Exhibit 4; see also Lt. Bowman's April 21,2004, Whistleblower Complaint attached hereto as Exhibit 10.**

*52.     Answering paragraph 52, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

53.     When Lt. Bowman returned, Lt. Billy Jackson told him that the Tamara Greene investigation had been transferred to Cold Case. When Lt. Bowman asked him why, Lt. Jackson said that he [Bowman] had been asking too many questions about the Strawberry case. **Exhibit 4.**

*53.     Answering paragraph 53, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

54.     At the time, the Tamara Greene murder investigation did not meet the criteria for transfer to the Cold Case Squad because it was less than a year old and was being actively investigated. Pursuant to the policies and practices that were in place at the Detroit Police

16

Department at that time, an investigation must be at least two years old to be designated as a "cold case." **Exhibit 4.**

54.    *Answering paragraph 54, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof. By way of further answer, Defendant, Ella Bully-Cummings admits to after consulting with the members of the investigative portfolio leadership agreed to the reassignment of the Greene homicide investigation to the cold case squad so that it could receive greater attention.*

55.    Defendants Bully-Cummings, Cureton and Schwartz ordered that the file be transferred to Cold Case in order to prevent anyone from investigating anything that may relate to the Manoogian Mansion party. **Exhibit 4.**

55.    *Answering paragraph 55, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue. Also, see answer to number 54.*

56.    Sgt. Odell Godbold, head of the Cold Case Squad responsible for investigating Ms. Greene's murder, told Bowman that Greene's murder investigation is a "hot potato" and that he was "not going to investigate this case." He then explained that he feared retribution because of Ms. Greene's connection with the Manoogian Mansion. Godbold also informed Lt. Bowman that his nephew had a sexual relationship with Tamara Greene. **Exhibit 4.**

56.    *Answering paragraph 56, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

57.    On or about April 6, 2004, Bowman was transferred out of the homicide division to the 2nd Precinct, working the desk midnights in a uniform. According to Lt. Billy Jackson, Lt. Bowman was transferred because he asked too many questions about the Tamara Greene Case. **Exhibit 4.** Defendant Best attempted to cover-up the true reason for the transfer, however, by explaining to Lt. Bowman, a decorated 31-year veteran of the Detroit Police Department, that he

17

was being transferred because in a report, he allegedly misspelled the word "homicide." **Exhibit 4.**

57. *Answering paragraph 57, Defendant, Ella Bully-Cummings, admits that Lt. Bowman was transferred from the homicide section. As to the allegations of a cover up, those allegations are denied as untrue. Defendant, Ella Bully-Cummings neither admits nor denies the remainder of the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

58. The officers on Squad 8 would have vigorously investigated the case if it had no ties or connections or rumors or allegations of a nexus to the party, to Defendant Kilpatrick, or his acquaintances. **Exhibit 4.**

58. *Answering paragraph 58, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue. By way of further answer, the squad 8 officers would have vigorously investigated the case regardless of the alleged ties alluded to in the allegations contained herein.*

59. Squad 8 would have solved Ms. Greene's murder but for the interference by Defendants Kilpatrick, Christine Beatty, Chief Ella Bully-Cummings, Former Chief Jerry Oliver, Cara Best, Commander Schwartz and Harold Cureton. **Exhibit 4.**

59. *Answering paragraph 59, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

60. The officers on Squad 8 were aware or otherwise believed that Gary Brown was fired because Mayor Kilpatrick and his Chief of Staff Christine Beatty did not want there to be an investigation of the Manoogian Mansion party. **Exhibit 4.**

60. *Answering paragraph 60, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

61. The officers of Squad 8 were aware or otherwise believed that the file was given to Cold Case and that Bowman was transferred because neither Defendant Kilpatrick nor his Chief of Staff and paramour Christine Beatty wanted there to be an investigation of the Manoogian

18

Mansion party. **Exhibit 4.**

61.    *Answering paragraph 61, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained for lack of information and Plaintiffs are left to their strict proofs thereof.*

62.    The officers of Squad 8 also believed that Defendants Ella Bully-Cummings and Harold Cureton reported directly to Kilpatrick and/or Beatty about the Greene homicide investigation and that they believed that the Tamara Greene homicide investigation would have overlapped with an investigation of tile Manoogian Mansion party. **Exhibit 4.**

62.    *Answering paragraph 62, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

63.    As of May 19,2005, Defendants, acting in conspiracy or concert both with each other and with others not parties to this action, made it impossible to investigate, let alone solve the murder of Tamara Greene. They disposed of repol1s that were contained in the homicide file, concealed or destroyed evidence and retaliated against anyone that dared investigate the Manoogian Mansion party, even if it involved the death of Tamara Greene. **Exhibit 4.**

63.    *Answering paragraph 63, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

64.    Defendants Kilpatrick, Bully-Cummings, and Beatty, together with former Chief Jerry Oliver and others under the control of Defendants, created a culture of fear and intimidation that not only scared off investigators and made them fear for the jobs and safety, but also scared off witnesses; witnesses who heard the rumors of Ms. Greene dancing at the party, saw what happened to Ms. Greene, learned of the retaliation against police officers who tried to investigate; these witnesses believed that if the good cops could not protect themselves or Ms. Greene, that they certainly could not protect the witnesses. **Exhibit 4.**

64. *Answering paragraph 64, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

65. Lt. Alvin Bowman, and more recently former Detective Harold Nelthrope and former Deputy Chief Gary Brown of the Detroit Police Department were successful in convincing two different Wayne County juries that several of these defendants retaliated against them for investigations that involved or were related to Ms. Greene's death.

65. *Answering paragraph 65, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained, for lack of information and Plaintiffs are left to their strict proofs thereof.*

66. These Defendants, acting either individually or in concert with each other or with third parties not named herein, have actively, intentionally and deliberately worked to terminate or otherwise hinder the Greene homicide investigation, and to deter qualified homicide detectives from investigating Tamara Greene's murder.

66. *Answering paragraph 66, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

67. Defendants' conduct as described herein was motivated by an evil motive or intent; namely a desire to protect the mayoral administration of Kwame Kilpatrick from embarrassing allegations regarding himself or his family and to protect his political future.

67. *Answering paragraph 67, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

68. Defendants' conduct as described herein involves reckless or callous indifference to the federally-protected rights of others, particularly these Plaintiffs' right to meaningful access to the Courts.

68. *Answering paragraph 68, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

69.    On information and belief, as a direct and proximate result of Defendants' actions, the investigation into the murder of Tamara Greene has been effectively terminated.

*69.    Answering paragraph 69, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

70.    As a direct and proximate result of Defendants' actions, acting either individually or in concert with one another, the pertinent three-year statute of limitations has expired, thus barring a wrongful death action that may have been brought against the murderer of Tamara Greene.

*70.    Answering paragraph 70, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

71.    As a direct and proximate result of Defendants' actions, acting either individually or in concert with one another, key evidence or witness testimony has been irretrievably lost, and others have expressed fear for their careers and their very safety should they offer assistance of any kind in investigating the murder of Tamara Greene.

*71.    Answering paragraph 71, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

72.    As a direct and proximate result of Defendants' actions, acting either individually or in concert with one another, Plaintiffs are foreclosed from bringing a state-court wrongful death action against "John Doe" defendants, which in turn would have provided a vehicle for discovery concerning any alleged concealment of evidence or any promising leads that were abandoned in the local and state investigations of Tamara Greene's death.

*72.    Answering paragraph 72, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

73.    As a direct and proximate result of Defendants' actions, acting either individually or

in concert with one another, Plaintiffs have been denied the opportunity to learn the identity of their mother's killer.

73.     *Answering paragraph 73, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

74.     As a direct and proximate result of Defendants' actions, acting either individually or in concert with one another, Plaintiffs have been denied the opportunity to see their mother's killer brought to justice.

74.     *Answering paragraph 74, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

75.     As a direct and proximate result of Defendants' actions, acting either individually or in concert with one another, Plaintiffs have been denied the opportunity to recover damages as a state court or jury would have considered fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses; reasonable compensation for the pain and suffering, while conscious, undergone by Tamara Greene during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of their mother.

75.     *Answering paragraph 75, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

## COUNT I - VIOLATION OF THE 1ˢᵗ AND 14ᵗʰ AMENDMENTS (RIGHT OF ACCESS TO COURTS) PURSUANT TO TITLE 42 U.S.C. § 1983

76.     That Plaintiffs repeat, reallege and incorporate by reference the allegations in paragraphs 1 through 75 above with the same force and effect as if herein set forth.

76.     *Answering paragraph 76, Defendant, Ella Bully-Cummings, incorporates by reference her answers to paragraphs 1 through 75 above, as though fully set forth herein.*

77.     Defendants, acting individually, in their official capacities, or in concert with one

22

another and/or with third parties not named herein, deliberately and continuously delayed and

obstructed the Greene murder investigation, and deliberately ignored and actively concealed material

evidence in the investigation of Greene's death, and threatened and retaliated against anyone who

investigated or otherwise pursued any aspect of the investigation

77.    *Answering paragraph 77, Defendant, Ella Bully-Cummings, denies the allegations contained*
*therein for the reason that the said allegations are untrue.*

78.    Defendants' acts described herein deprived Plaintiffs of their right of access to the

Courts by denying them of the ability to receive the proceeds of a wrongful death action in state

court.

78.    *Answering paragraph 78, Defendant, Ella Bully-Cummings, denies the allegations contained*
*therein for the reason that the said allegations are untrue.*

79.    As a proximate result of Defendants' actions, the filing of a state court action would

be futile and meaningless because:

> a.    Under the law of the State of Michigan there is no civil cause of action for
> "spoliation of evidence" that could be brought against the City of Detroit
> Police Department.
>
> b.    The Plaintiffs cannot bring an action against the City of Detroit for
> negligence in the investigation of the homicide of Greene because under
> Michigan law, police owe no duty to any one particular individual in
> performing their duties, and, therefore, it would be a frivolous lawsuit that
> would subject plaintiffs to sanctions by the Court.
>
> c.    The Plaintiffs do not have a sufficient factual basis to file a "John Doe" suit
> in state court due to the fact that the investigation has been terminated and
> otherwise tampered with by these Defendants to the point that Defendants
> have rendered Ms. Greene's homicide unsolvable.
>
> d.    Further, the filing of a "John Doe" lawsuit does not toll the running of the
> statute of limitations applicable to an action under Michigan law. Defendants
> not specifically named in a "John Doe" complaint are not yet parties to the
> suit, and if added later are considered new parties to the litigation.
> Accordingly, amendments to a complaint that add new defendants do not
> relate back to the original complaint.

e.   The Plaintiffs are precluded by the applicable statute of limitations from bringing any action in state court for the wrongful death of Tamara Greene. This preclusion is not circumvented by MCL § 600.5855 (Fraudulent concealment of claim or identity of person liable) because concealment of the identity of parties liable, or concealment of the parties, has been held not to constitute concealment of the cause of action, and not to be available to avoid the running of the statute of limitations.

f.   Michigan does not have tolling provision, either common law or statutory, that will operate to save Plaintiffs' wrongful death action if the identity of the killer is discovered beyond the three-year statute of limitations period. *Trentadue v. Buckler Lawn Sprinkler,* 479 Mich. 378, 738 N.W.2d 664 (2007).

g.   Further, the act of a third person in concealing a cause of action against the Defendant does not constitute a concealment so as to prevent the running of the statute of limitations in favor of the Defendant.

h.   All applicable statutes of limitations have expired, barring Plaintilffs' state law claims.

i.   Given the above enumerated facts of the case, there is no state court remedy available to Plaintiffs for damages.

j.   The actions of Defendants resulted in the termination of Tamara Greene's murder investigation. Not only have Defendants' actions caused evidence to grow stale and cause the fading of material facts in the minds of witnesses and potential witnesses such that testimony and evidence have been irretrievably lost, but Defendants have also frightened and intimidated witnesses from coming forward, and have deterred officers from vigorously investigating Tamara Greene's murder.

79.   *Answering paragraph 80, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

80.   Defendants' actions were performed under color of state law, and violated Plaintiffs' due process rights unde the Fourteenth Amendment to the United States Constitution, as well as their right to petition the government for a redress of grievances guaranteed unde the First Amendment to the United States Constitution.

80.   *Answering paragraph 80, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

24

81.     As a proximate result of Defendants' actions as described herein, Plaintiffs, or anyone acting on Plaintiffs' behalf, have been foreclosed from filing suit in state court and seeking a meaningful state court remedy. It would be completely futile for the Plaintiffs to attempt to access the state court system given (1) the missing evidence, (2) the expired statute of limitations, (3) the prior retaliation against Bowman, Brown and Nelthrope in their investigation of the murder and related misconduct, (4) the spoliation of evidence, (5) destroyed information, (6) the intimidation of witnesses, (7) the intimidation of investigators, (8) the total lack of any viable suspects, and other pre-filing abuses by Defendants.

*81.     Answering paragraph 81, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

82.     Defendants' conduct was willful and exhibited a flagrant disregard for Plaintiffs' federally secured rights. Accordingly, the Defendants are liable to Plaintiffs under 42 U.S.C. § 1983.

*82.     Answering paragraph 82, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

83.     The Plaintiffs have suffered damages as a proximate result of the acts of Defendants, including but not limited to compensatory and punitive damages under 42 U.S.C. § 1983.

*83.     Answering paragraph 83, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

84.     The damages set forth in this complaint, otherwise provided for in the Michigan Wrongful Death Act, MCL § 600.2922, may only be awarded to Plaintiffs under 42 U.S.C. § 1983 as a proximate result of the acts of Defendants as described throughout this Complaint that caused the deprivation of their federally guaranteed rights.

84.    *Answering paragraph 84, Defendant, Ella Bully-Cummings, denies the allegations contained*

*therein for the reason that the said allegations are untrue.*

## COUNT II- CONSPIRACY TO VIOLATE PLAINTIFFS' CONSTITUTIONALLY GUARANTEED RIGHT OF ACCESS TO COURTS

85.    Plaintiffs repeat, reallege and incorporate by reference the allegations in paragraphs 1

through 84 above with the same force and effect as if herein set forth.

85.    *Answering paragraph 85, Defendant, Ella Bully-Cummings, incorporates by reference her answers*

*to paragraphs 1 through 84 above, as though fully set forth herein.*

86.    Defendants Police Chief Ella Bully-Cummings, Deputy Police Chief Cara Best, Asst.

Deputy Police Chief Harold Cureton, Commander Craig Schwartz, Mayor Kwame Kilpatrick,

Defendant Christine Beatty, and JOHN DOE POLICE OFFICERS entered into an agreement

with malicious intention to deprive the Plaintiffs of their constitutional due process right of

access to the Courts, as evidenced, without limitation by the following:

a.    Defendant Mayor Kilpatrick, Defendant Beatty and other City officials fired former Deputy Chief Gary Brown from his position as head of the Professional Accountability Bureau based on his investigation of the Manoogian Mansion party and the alleged crimes that were rumored to have occurred there;

b.    Former Police Chief Oliver, together with Defendant Harold Cureton instructed Commander Parshall and Inspector Dolunt to stop investigating Defendant Kilpatrick;

c.    Defendants Beatty and Kilpatrick, in coordination with others directed the release of the confidential May 6th Memo to the media to frighten and intimidate Nelthrope; Defendant Kilpatrick furthered this objective by publicly calling Nelthrope a liar;

d.    Lt. Al Bowman attended a meeting with Police Chief Ella Bully-Cummings, Assistant Chief of Police Harold Cureton, Commander Craig Schwartz, and Lt. Billy Jackson, where he was directed by them to cease investigating Greene's homicide and to put the Tamara Greene homicide file away; and

e.    Systematic and administration-wide retaliation against Brown, Nelthrope and Bowman by several of these Defendants for their investigation of the alleged Manoogian Mansion party, the death of Tamara Greene and other alleged

misconduct by members of Defendant Kilpatrick's security detail.

*86.      Answering paragraph 86, Defendant, Ella Bully-Cummings, denies the allegations contained therein regarding an agreement as untrue. In addition, Defendant, Ella Bully-Cummings neither admits nor denies the allegations contained in subparagraphs (a-c) for lack of information and Plaintiffs are left to their strict proofs thereof. As it relates to the allegations contained in subparagraph (d), Defendant, Ella Bully-Cummings denies the allegations contained therein as untrue and refers Plaintiffs to her answers to paragraphs 45 and 46. By way of further answer, Defendant, Ella Bully-Cummings denies the allegations contained in subparagraph (e) as untrue.*

87.      Defendants' actions resulted in the termination of Tamara Greene's murder investigation. Not only have Defendants' actions caused evidence to grow stale, and caused the fading of material facts in the minds of witnesses and potential witnesses such that testimony and evidence have been irretrievably lost, but Defendants have also frightened and intimidated witnesses from coming forward, as well as deterred homicide investigators from vigorously investigating Tamara Greene's murder.

*87.      Answering paragraph 87, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

88.      Defendants' conduct as described herein coupled with the retaliation actions taken against Bowman, Brown and Nelthrope was part of an on-going conspiracy to obstruct justice by covering up Greene's murder in order to avoid any embarrassment to Defendant Kilpatrick and his family.

*88.      Answering paragraph 88, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

89.      As a proximate result of Defendants' actions as described herein, Plaintiffs, or anyone acting on Plaintiffs' behalf, have been foreclosed from filing suit in state court and seeking a meaningful state court remedy. It would be completely futile for the Plaintiffs to attempt to

access the state court system given (1) the missing evidence, (2) the expired statute of limitations, (3) the prior retaliation against Bowman, Brown and Nelthrope in their investigation of the murder and related misconduct, (4) the spoliation of evidence, (5) destroyed information, (6) the intimidation of witnesses, (7) the intimidation of investigators, (8) the total lack of any viable suspects and other pre-filing abuses by Defendants.

89. *Answering paragraph 89, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

90. The Plaintiffs have suffered damages as a result of this conspiracy.

90. *Answering paragraph 90, Defendant, Ella Bully-Cummings, denies the allegations contained therein for the reason that the said allegations are untrue.*

91. That at all times relevant herein, the Defendants were state actors and their conduct was subject to and governed by 42 U.S.C. §§ 1983, 1985 and 1988.

91. *Answering paragraph 91, Defendant, Ella Bully-Cummings, neither admits nor denies the allegations therein contained for lack of information, and leaves Plaintiffs to their strict proofs.*

WHEREFORE, Plaintiffs respectfully requests this Honorable Court to enter a Judgment in their favor and against Defendants, jointly and severally, for the violation of their civil rights for all actual, general, special and compensatory damages in the amount of Fifty Million ($50,000,000.00) Dollars, and punitive damages in the amount of One Hundred Million ($100,000,000.00) Dollars, in addition to costs, interest and attorney fees, and such other relief as this Court deems Plaintiffs to be entitled.

*WHEREFORE, this Defendant respectfully requests that this Court enter a judgment of no cause of action and dismiss Plaintiffs' Complaint in its entirety and award Defendant costs, interest, and reasonable attorney fees*

*incurred in responding to Plaintiffs' Complaint.*

PLUNKETT COONEY

By:        s/Said A. Taleb
           KENNETH L. LEWIS (P26071)
           SAID A. TALEB (P66030)
           Attorneys for Defendant Ella Bully-
           Cummings
           535 Griswold, Ste. 2400
           Detroit, MI 48226
           (313) 983-4790
           (313) 983-4350 - Fax
           E-mail: klewis@plunkettcooney.com
           staleb@plunkettcooney.com

Dated: September 24, 2008

Index

40 caliber Glock, Model 22...............................12
40 caliber shell casings......................................12
**Alvin Bowman** ........................................... 8, 19
ASHLY JACKSON ...................................... 4, 6
Best........................................1, 17, 18, 26, 30, 32
Billy Jackson ............................ 14, 15, 16, 17, 26
Beatty, Christine ..... 1, 5, 10, 11, 18, 26, 30, 32
Best, Cara.............................................................5
Bond, India ..................................... 1, 4, 6, 30, 32
Bond, Jonathan      4, 6, 30, 32
Bowman      13, 14, 15, 16, 17, 18, 24, 26, 27
Brown, Gary    9, 11, 18, 19, 26
Bully-Cummings, Ella   2, 4, 5, 6, 7, 8,9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 10, 20, 21, 22, 23, 24, 25, 26, 27, 28, 31, 33, 34
City IT personnel      15
Cold Case      16, 17, 18
Cureton, Harold..1, 5, 7, 14, 15, 17, 18, 19, 26, 30, 32
Futility Arguments     25
Godbold, Sgt. Odell    17

Greene homiicide      12, 13, 14, 16, 18, 20
Greene, Tamara      6, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 27
Homicide Section.............................................. 13
Jones, Loronzo ("Greg")      8, 9, 10, 13
Kilpatrick, Carlita ............................. 6, 9, 10, 12
Kilpatrick, Kwame     1, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 18, 20, 26, 27, 30, 32
Manoogian Mansion    6, 9, 15, 17, 18, 19, 26
Martin, Mike  .................................................8, 13
Nelthrope     7, 8, 9, 10, 11, 12, 19, 24, 26, 27
Oliver, Jerry ............................ 11, 14, 18, 19, 26
Schwartz .......1, 2, 14, 17, 18, 26, 30, 31, 32, 33
Spoliation of evidence........................ 23, 24, 27
Squad 8 ..................................... 13, 14, 16, 17, 18
Stevenson, Marian ......................................13, 15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND, a minor;
TARIS JACKSON, as Next Friend of
ASHLEY JACKSON, a minor; and
DR. BRIAN GREENE, as Next Friend of
INDIA BOND, a minor,

      Plaintiffs,

-VS-

CASE. NO.: 05-CV-74253
HON.: GERALD E. ROSEN
MAG. R. STEVEN WHALEN

CITY OF DETROIT, a Municipal Corporation,
DETROIT CHIEF OF POLICE, ELLA BULLY-
CUMMINGS, DEPUTY DETROIT POLICE CHIEF,
CARA BEST, JOHN DOE OFFICERS 1-20, ASST.
DEPUTY POLICE CHIEF HAROLD CURETON,
COMMANDER CRAIG SCHWARTZ, MAYOR
KWAME KILPATRICK, CHRISTINE BEATTY,
Jointly and severally,

      Defendants.

> **RELIANCE UPON
> DEMAND FOR JURY
> TRIAL**

---

NORMAN A. YATOOMA (P54746)
ROBERT S. ZAWIDEH (P43787)
NORMAN YATOOMA & ASSOCIATES, P.C.
Attorneys for Plaintiff
219 Elm Street
Birmingham, MI 48009
(248) 642-3600
nya@normanyatooma.com

MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendant Christine Beatty
3000 Town Center, Suite 1500
Southfield, MI 48075
(248) 355-3084
Fax (248) 355-3107
jmorganroth@morganrothlaw.com
mmorganroth@morganrothlaw.com

JAMES C. THOMAS (P23801)
Attorney for Defendant Mayor Kwame
Kilpatrick
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 963-2420
jthomas@plunkettcooney.com

KRYSTAL A. CRITTENDON (P49981)
CITY OF DETROIT LAW DEPT.
Attorneys for Defendants City of Detroit,
Harold Cureton, Craig Schwartz & Cara Best
660 Woodward Ave., Suite 1650
Detroit, MI 48226-3491
(313) 237-3018
critk@law.ci.detroit.mi.us

---

JOHN A. SCHAPKA (P36731)
CITY OF DETROIT LAW DEPARTMENT
Co-Counsel for Defendants City of Detroit and
Commander Craig Schwartz
1650 First National Bldg.
Detroit, Michigan 48226
(313) 224-4550
E-mail: schaj@law.ci.detroit.mi.us

DAVID MOSS (P36757)
VINCE COLELLA (P49747)
MOSS & COLELLA, P.C.
Co-Counsel for Plaintiffs Ashley Jackson and
India Bond Only
29100 Northwestern Highway, Ste. 310
Southfield, MI 48034
(248) 945-0100
(248) 945-1801
E-mail: dmoss@mosscolella.com
vcolella@mosscolella.com

KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
RANDAL M. BROWN (P70031)
PLUNKETT COONEY
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790
Fax: (313) 983-4350
E-mail: klewis@plunkettcooney.com
E-mail: staleb@plunkettcooney.com
E-mail: rbrown@plunkettcooney.com

## RELIANCE UPON DEMAND FOR JURY TRIAL

NOW COMES the Defendant, Ella Bully-Cummings, by and through her attorneys,

Plunkett Cooney, and hereby relies upon the Jury Demand previously filed by Plaintiffs in this

matter.

PLUNKETT COONEY

By: _____ s/Said A. Taleb _____
KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
Attorneys for Defendant Ella Bully-
Cummings
535 Griswold, Ste. 2400
Detroit, MI 48226
(313) 983-4790
(313) 983-4350 - Fax
E-mail: klewis@plunkettcooney.com
staleb@plunkettcooney.com

Dated: September 24, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND, a minor;
TARIS JACKSON, as Next Friend of
ASHLEY JACKSON, a minor; and
DR. BRIAN GREENE, as Next Friend of
INDIA BOND, a minor,

      Plaintiffs,

-VS-

CITY OF DETROIT, a Municipal Corporation,
DETROIT CHIEF OF POLICE, ELLA BULLY-
CUMMINGS, DEPUTY DETROIT POLICE CHIEF,
CARA BEST, JOHN DOE OFFICERS 1-20, ASST.
DEPUTY POLICE CHIEF HAROLD CURETON,
COMMANDER CRAIG SCHWARTZ, MAYOR
KWAME KILPATRICK, CHRISTINE BEATTY,
Jointly and severally,

      Defendants.

CASE. NO.:   05-CV-74253
HON.: GERALD E. ROSEN
MAG. R. STEVEN WHALEN

---

**SPECIAL AND/OR AFFIRMATIVE
DEFENSES**

---

(attorney block)

NORMAN A. YATOOMA (P54746)
ROBERT S. ZAWIDEH (P43787)
NORMAN YATOOMA & ASSOCIATES, P.C.
Attorneys for Plaintiff
219 Elm Street
Birmingham, MI 48009
(248) 642-3600
nya@normanyatooma.com

MAYER MORGANROTH (P17966)
JEFFREY B. MORGANROTH (P41670)
MORGANROTH & MORGANROTH, PLLC
Attorneys for Defendant Christine Beatty
3000 Town Center, Suite 1500
Southfield, MI 48075
(248) 355-3084
Fax (248) 355-3107
jmorganroth@morganrothlaw.com
mmorganroth@morganrothlaw.com

JAMES C. THOMAS (P23801)
Attorney for Defendant Mayor Kwame Kilpatrick
535 Griswold Street, Suite 2632
Detroit, Michigan 48226
(313) 963-2420
jthomas@plunkettcooney.com

KRYSTAL A. CRITTENDON (P49981)
CITY OF DETROIT LAW DEPT.
Attorneys for Defendants City of Detroit, Harold
Cureton, Craig Schwartz & Cara Best
660 Woodward Ave., Suite 1650
Detroit, MI 48226-3491
(313) 237-3018
critk@law.ci.detroit.mi.us

JOHN A. SCHAPKA (P36731)
CITY OF DETROIT LAW DEPARTMENT
Co-Counsel for Defendants City of Detroit and
Commander Craig Schwartz
1650 First National Bldg.
Detroit, Michigan 48226
(313) 224-4550
E-mail: schaj@law.ci.detroit.mi.us

DAVID MOSS (P36757)
VINCE COLELLA (P49747)
MOSS & COLELLA, P.C.
Co-Counsel for Plaintiffs Ashley Jackson and
India Bond Only
29100 Northwestern Highway, Ste. 310
Southfield, MI 48034
(248) 945-0100
(248) 945-1801
E-mail: dmoss@mosscolella.com
vcolella@mosscolella.com

KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
RANDAL M. BROWN (P70031)
PLUNKETT COONEY
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Suite 2400
Detroit, MI 48226
(313) 983-4790
Fax: (313) 983-4350
E-mail: klewis@plunkettcooney.com
E-mail: staleb@plunkettcooney.com
E-mail: rbrown@plunkettcooney.com

## SPECIAL AND/OR AFFIRMATIVE DEFENSES

NOW COMES the Defendant, Ella Bully-Cummings, by and through her attorneys,

Plunkett Cooney, and for her special and/or affirmative defenses, states as follows:

1.      Plaintiffs fail to state a claim against this Defendant upon which relief may be

granted.

2.      To the extent it predicates City liability upon vicariously asserted theories of

recovery, Plaintiffs' Third Amended Complaint fails to state a claim against this Defendant upon

which relief may be granted.

3.      To the extent it predicates City liability upon grossly negligent conduct, Plaintiffs'

Third Amended Complaint fails to state a claim against this Defendant upon which relief may be

granted.

4.      To the extent it alleges a violation arising under the Constitution of the United

States, Plaintiffs' Third Amended Complaint fails to state a claim against this Defendant upon which

relief may be granted.

5. To the extent it alleges a violation of 42 USC 1983, Plaintiffs' Third Amended Complaint fails to state a claim against this Defendant upon which relief may be granted.

6. To the extent it alleges, in substance or in form, a failure to investigate, conduct an adequate investigation, or conduct a complete investigation, Plaintiffs' Third Amended Complaint fails to state a claim against this Defendant upon which relief may be granted.

7. At all relevant times Defendant Ella Bully-Cummings acted with good faith and is therefore immune to liability regarding Plaintiffs' federal claims under the Qualified Immunity Doctrine. To the extent Plaintiffs' allegations form a state claim, Defendant is entitled to governmental immunity.

8. To the extent Defendant Ella Bully-Cummings did not violate any recognized constitutionally protected rights inuring to Plaintiffs, Plaintiffs' Third Amended Complaint fails to state a claim against this Defendant upon which relief may be granted.

9. To the extent Defendant Ella Bully-Cummings acted in a reasonably objective manner, Plaintiffs' Third Amended Complaint fails to state a claim against this Defendant upon which relief may be granted.

10. To the extent it reflects a claim arising under the 1st Amendment to the Constitution of the United States, Plaintiff's Third Amended Complaint fails to state a claim against this Defendant upon which relief may be granted.

11. To the extent it reflects a claim arising under the Equal Protection clause of the 14th Amendment to the Constitution of the United States, Plaintiffs' Third Amended Complaint fails to state a claim against this Defendant upon which relief may be granted.

12. To the extend Plaintiffs have failed to prosecute this matter within the applicable period of limitations, Plaintiffs' claims are time barred.

13. Plaintiffs have failed to mitigate his/her damages.

14.     Plaintiffs have failed to join every legal or equitable claim arising from the incident central to this suit.

15.     Plaintiffs do not have standing to bring the instant claims.

16.     Plaintiffs are precluded from asserting the instant Federal claims inasmuch as an effective and meaningful State Court remedy is available to Plaintiffs.

17.     This Defendant reserves the right to assert and file any affirmative and special defense which may become known by discovery proceedings in accordance with the rules and practices of this Court.  Further, this Defendant does not waive any deficiency or omission in any pleadings filed by any other party to this suit regardless of when filed.

PLUNKETT COONEY

By:     s/Said A. Taleb
KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Ste. 2400
Detroit, MI  48226
(313)  983-4790
(313)  983-4350 - Fax
E-mail: klewis@plunkettcooney.com
staleb@plunkettcooney.com

Dated: September 24, 2008

## CERTIFICATE OF SERVICE

Kenneth L Lewis, attorney with the law firm of PLUNKETT COONEY, being first duly sworn, deposes and says that on the 14th day of September, 2008, he caused a copy of this document to be served upon all parties of record, and that such service was made electronically upon each counsel of record so registered with the United States District Court and via U.S. Mail to any counsel not registered to receive electronic copies from the court, by enclosing same in a sealed envelope with first class postage fully prepaid, addressed to the above, and depositing said envelope and its contents in a receptacle for the US Mail.

PLUNKETT COONEY

By: _____ s/Said A. Taleb _____
KENNETH L. LEWIS (P26071)
SAID A. TALEB (P66030)
Attorneys for Defendant Ella Bully-Cummings
535 Griswold, Ste. 2400
Detroit, MI 48226
(313) 983-4790
(313) 983-4350 Fax
E-mail: klewis@plunkettcooney.com
staleb@plunkettcooney.com

Dated: September 24, 2008

Detroit.00396.81396.1333414-1