UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend
of JONATHAN BOND,   No. 05-74253

      Plaintiff,   District Judge Gerald E. Rosen

v.   Magistrate Judge R. Steven Whalen

CITY OF DETROIT, et.al.,

      Defendants.
_____/

**SECOND OPINION AND ORDER
REGARDING DISCOVERY OF TEXT MESSAGES**

**I.   PROCEDURAL BACKGROUND**

On March 20, 2008, the Honorable Gerald E. Rosen entered an Opinion and Order Regarding Defendants' Motions to Quash Subpoenas and Other Discovery-Related Matters [Docket #68], and an Order Establishing Protocol for Review and Production of Text Messages [Docket #69]. On March 21, 2008, Judge Rosen referred the matter to the undersigned Magistrate Judges for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A). The specific tasks assigned to us included:

> "(i) overseeing and controlling the process of obtaining text messages from SkyTel, [and] (ii) making the initial determination whether each such communication is discoverable under the standard of Fed. R. Civ. P. 26(b)(1)." *Order Establishing Protocol*, p.4.

On August 22, 2008, Judge Rosen filed an Opinion and Order regarding Defendant

-1-

City of Detroit's motion to quash the subpoena based on the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.* That Order modified the procedure for obtaining the text messages from SkyTel, the non-party provider of text messaging services to the City of Detroit. Whereas the Plaintiff originally served a non-party subpoena on SkyTel, the August 22nd Order provided for the Plaintiff to serve a Rule 34 request for production of documents on the Defendant City of Detroit, who would forward the request to SkyTel. SkyTel would then proceed in accordance with the March 20, 2008 protocol.

On September 5, 2008, following a status conference with the parties, we established a schedule for the production of the text messages to the Court for *in camera* review, under the terms of Judge Rosen's orders of March 20 and August 22, 2008. The first group to be produced were "all incoming or outgoing text messages or other communications that originated from or were received by the text messaging devices of ***any*** City of Detroit official or employee between 1:30 a.m. and 5:30 a.m. on the morning of April 30, 2003, the date that Plaintiff Jonathan Bond's mother, Tamara Greene, was killed." *Order Establishing Protocol*, p.2. On September 18, 2008, we entered a stipulated Order modifying the request to encompass the entire 24-hour period on April 30, 2003. Those texts were reviewed, and were the subject of a previous Opinion and Order filed on October 14, 2008.

The second group of text messages, which is the subject of the present Opinion and Order, was produced on November 18, 2008. These texts, produced on a CD in Excel Spreadsheet form, contain 184 Excel files, comprising the texts from 62 "holders"

of texting devices issued to the City of Detroit during the almost two-year period from August 1, 2002 to April 17, 2004.[1] The sheer volume of this material was staggering, consisting of 626,638 individual text messages, and it took much more time than we anticipated to review this material with the close attention required for a careful analysis. However, we have now completed our review of these texts.

## II. GENERAL PRINCIPLES OF DISCOVERY

The scope and limits of discovery are set forth in Fed.R.Civ.P. 26(b). Rule 26(b)(1) states, in pertinent part:

> "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action...All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)."

Under Rule 26(b), the scope of discovery is broad. *Lewis v. ABC Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). "The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of

---

[1] According to a spreadsheet provided by SkyTel, the "holder" is the individual to whom the device was issued for a given time period, and is generally identified by name and PIN (the PIN corresponding to the telephone number). For example, Defendants Kwame Kilpatrick and Christine Beatty were assigned specific devices during this time. Some of the "holders" are not identified by name, but by City Department, for example "City of Detroit Mayor's Office."

The document request sought text messages from three discrete time periods. *See* Order Establishing Protocol for Review and Production of Text Messages, fn.1 [Doc. #69, 3/20/08]. However, the overlap between those periods resulted in the single time period of August 1, 2002 through April 17, 2004. Indeed, the texts that were produced extended to May of 2004.

interrogation is reasonably calculated to lead to the discovery of admissible evidence."
*Id.*, quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970). It is well established that "the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981).

### III. DISCUSSION

Each of the 184 individual Excel files is identified by a personal identification number (PIN), which corresponds to the telephone number assigned to the texting device on a particular date. Each file contains text messages that were either sent or received by that device within the relevant time periods.[2]

Because of the difficulty in reading these texts in the wrap-around format provided by SkyTel, we re-formatted them in a more easily readable and printable form. Review of the texts was also made difficult by the fact that although they are arranged chronologically by date, the texts within each 24-hour period are not chronological. In other words, the reply to a text might precede the original text, with many other texts in between. However, each text is accompanied by a specific time, in hour/minute/second form, so it was possible for us to impart order to an otherwise random array of texts.

We have painstakingly reviewed 626,638 text messages, and even under the broad standard of Rule 26, only 36 are arguably relevant to the claims, defenses or subject

---

[2] There are more files (184) than requested users (62) because some users were assigned more than one texting device during the almost two-year period.

matter of this case, or could be considered as "reasonably calculated to lead to the discovery of admissible evidence." *Lewis v. ABC Business Services, Inc., supra* at 402.

As might be expected, many of these texts were sent between City of Detroit employees and officials regarding legitimate municipal business. A number originate from the City's Law Department, and discuss pending cases unrelated to this case. There are also texts between City of Detroit officials, including then-Mayor Kilpatrick and mayoral appointees, involving purely political discussions having no bearing on this case.

A significant number of the texts center around the romantic adventures and misadventures of City employees and others. None of these has any relevance to the issues in this case.

Many of the texts also involve what might be called "idle chatter," involving discussions of sporting events, vacations, lunch plans, humor, workplace complaints, and general chit-chat unrelated to this case.

Proving that sometimes a few needles can be found in large haystacks, that leaves 36 texts that are at least calculated to lead to the discovery of relevant evidence, and thus discoverable under Rule 26(b).

## IV. CONCLUSION

We therefore conclude that only 36 text messages shall be provided to Plaintiff's counsel pursuant to his Rule 34 document request, and under the terms of the March 20, 2008 Protocol.

Pursuant to the March 20th protocol, Defendants' counsel will be given an opportunity to review these 36 texts and raise objections where appropriate. Because the number of discoverable texts is relatively small, they will be printed out and forwarded to Judge Rosen in a sealed envelope. They will be identified by file number (1 to 184), the name of the user of the particular device, and text line number within the file. The content of the texts themselves includes the date and time.

Defendants' counsel are directed to contact Judge Rosen's chambers to arrange for the review, which will take place in a designated location at the courthouse. Any objections will be filed within 10 days of that review, and will be framed in a way that does not disclose the contents of the communications that are the subject of the objections. *Order Establishing Protocol*, p.7, fn.7. Within 10 days of service of any objections, Plaintiff's counsel shall file a response.

Any communications that the Court determines are subject to disclosure shall be produced and maintained solely in accordance with the stipulated protective order entered on June 8, 2009 [Doc. #201].

IT IS SO ORDERED.

    s/R. Steven Whalen
    R. STEVEN WHALEN
    UNITED STATES MAGISTRATE JUDGE

                s/Michael Hluchaniuk
                MICHAEL HLUCHANIUK
                UNITED STATES MAGISTRATE JUDGE

Date: October 19, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 19, 2009.

                s/Susan Jefferson
                Case Manager