**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERNEST FLAGG, as Next Friend
of JONATHAN BOND; TARIS JACKSON,
as Next Friend of ASHLY JACKSON; and
BRIAN GREENE, as Next Friend of
INDIA BOND,

       Plaintiffs,

                                          Case No. 05-74253
v.                                          Hon. Gerald E. Rosen

CITY OF DETROIT and KWAME M. KILPATRICK,

       Defendants.
_____/

**ORDER DENYING PLAINTIFFS' MOTION TO**
**DECLARE EVIDENCE ADMISSIBLE UNDER FED. R. EVID. 804(b)(6)**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       October 28, 2010

PRESENT: Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

By sealed motion filed on July 29, 2010, Plaintiffs seek an order declaring that the affidavit of non-party witness Wilson Kay, Jr. may be offered against Defendants and admitted for the truth of the matters asserted in this affidavit, where Defendants purportedly procured the non-appearance of Mr. Kay at his scheduled deposition by allegedly disclosing his identity to the media and thereby raising "'security concern[s]' for [Mr. Kay] and one of his family members." (Plaintiffs' Motion, Br. in Support at 3.) As discussed below, Plaintiffs have manifestly failed to establish the prerequisites for

application of the doctrine of "forfeiture by wrongdoing" as codified in Fed. R. Evid. 804(b)(6), and it readily follows that their motion must be denied.

At some point near the end of the discovery period in this case, Plaintiffs determined that Mr. Kay had relevant testimony to offer concerning a rumored party at the Manoogian Mansion in Detroit. Accordingly, at a July 12, 2010 conference convened pursuant to this Court's July 7, 2010 order, Plaintiffs' counsel informed defense counsel that Plaintiffs wished to depose Mr. Kay (along with other newly-disclosed witnesses),[1] and this deposition was scheduled for July 21, 2010. In addition, Mr. Kay executed a one-page affidavit on July 13, 2010, in which he outlined his personal knowledge about a party he claimed to have attended at the Manoogian Mansion in 2002 and the events he had witnessed at this party.[2] Unfortunately, Mr. Kay failed to appear for his scheduled deposition. Through the present motion, Plaintiffs suggest that this failure to appear should be laid at the feet of Defendants and their counsel, and that Defendants' alleged "procurement" of Mr. Kay's unavailability should result in the admissibility of his affidavit under Fed. R. Evid. 804(b)(6).

---

[1] In the City of Detroit's response to Plaintiffs' present motion, counsel for the City states that Plaintiffs' counsel initially was unwilling to identify Mr. Kay during the July 12 conference, but ultimately relented when defense counsel insisted that they needed to know the identity of this mystery witness (as well as the other newly-disclosed witnesses) in order to properly prepare for his forthcoming deposition. The parties agreed, however, that the schedule they negotiated for the depositions of Mr. Kay and other witnesses should be filed under seal.

[2] Specifically, Mr. Kay asserts in his affidavit that at this 2002 party at the Manoogian Mansion, he witnessed (i) female exotic dancers performing for the attendees, including then-Mayor Kwame Kilpatrick, and (ii) the Mayor's wife, Carlita Kilpatrick, punch one of the dancers, Tamara Greene, and strike her with a table leg.

The Court's analysis of Plaintiffs' appeal to Rule 804(b)(6) necessarily begins with the language of the Rule itself, which provides that an out-of-court statement is "not excluded by the hearsay rule" despite the declarant's unavailability as a witness if the statement is "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Fed. R. Evid. 804(b)(6). This Rule "codified the waiver-by-misconduct doctrine as an exception to the hearsay rules," dictating that "a party forfeits the right to object on hearsay grounds to the admission of a declarant's prior statement when the party's deliberate wrongdoing or acquiescence therein procured the unavailability of the declarant as a witness." *United States v. Dhinsa,* 243 F.3d 635, 652 (2d Cir. 2001) (internal quotation marks and citations omitted); *see also Steele v. Taylor,* 684 F.2d 1193, 1201-02 (6th Cir. 1982) (discussing the common-law counterpart to Rule 804(b)(6)). Thus, to trigger the application of this Rule here, Plaintiffs must establish (i) that Mr. Kay is unavailable to testify as a witness, and (ii) that Defendants engaged or acquiesced in wrongdoing that was intended to (and did) procure his unavailability.

Plaintiffs have shown neither. First, to establish Mr. Kay's unavailability as a witness, Plaintiffs must show that they were "unable to procure [his] attendance" at his deposition "by process or other reasonable means." Fed. R. Evid. 804(a)(5). Although Plaintiffs assert in their motion that "the witness had been subpoenaed," (Plaintiffs'

Motion, Br. in Support at 3), they have offered no evidentiary support for this claim.[3]
Absent proof of a good faith effort to secure Mr. Kay's attendance, he cannot be deemed "unavailable" under Rule 804, *see, e.g., Elnashar v. Speedway SuperAmerica, LLC,* 484 F.3d 1046, 1057 (8th Cir. 2007); *United States v. Gabriel,* 715 F.2d 1447, 1451 (10th Cir. 1983), and his mere failure to appear for his deposition, standing alone, does not establish his unavailability, *see Williams v. United Dairy Farmers,* 188 F.R.D. 266, 272 (S.D. Ohio 1999). Even assuming Mr. Kay was served with a subpoena, Plaintiffs notably failed to return to the Court and seek an order compelling his compliance with this subpoena, as they have done with other non-appearing witnesses. (*See, e.g.,* Docket Entry 440, 9/8/2010 Sealed Order.) Finally, and most importantly, Mr. Kay's failure to appear for his deposition does not necessarily mean that he will remain unavailable at the future date when his appearance will truly matter — namely, when Plaintiffs seek to introduce his testimony (or, failing that, his affidavit) at any eventual trial. "The Court is not willing to adopt a 'once unavailable, always unavailable' approach under Rule 804(a)(5)." *Williams,* 188 F.R.D. at 273. Thus, Plaintiffs' claim of unavailability is unsupported at present, and is premature as to any evidentiary ruling the Court might be called upon to make at trial.

Turning next to the requirement under Rule 804(b)(6) that Defendants must have

---

[3]Indeed, in its response to Plaintiffs' motion, the Defendant City points out that the copy of the subpoena it received from Plaintiffs lists no address for Mr. Kay, nor does it otherwise indicate that this subpoena was served on Mr. Kay. (*See* Defendant City's Response, Ex. 2, Kay Subpoena.)

"engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness," Plaintiffs offer only rank speculation that not only lacks evidentiary support but, in fact, is largely refuted by the available record. As an initial matter, while Plaintiffs state in their motion that Mr. Kay "was unable to appear and to testify as scheduled due to what the witness described as a 'security concern' for himself and one of his family members," (Plaintiffs' Motion, Br. in Support at 3), they cite ***no evidentiary support whatsoever*** for this assertion. It is difficult, to say the least, to establish that some action by Defendants caused Mr. Kay to miss his scheduled deposition, where the record is utterly silent as to ***why he failed to appear***.

The evidentiary record is similarly lacking as to any action taken by either Defendant that "was intended to, and did, procure" Mr. Kay's non-appearance at his deposition. Continuing their string of idle (and irresponsible) musings, Plaintiffs suggest that Mr. Kay's failure to appear was attributable to the public disclosure of his identity as a witness with personal knowledge of the rumored Manoogian Mansion party, and that "the only possible source" of this public disclosure "was Defendants' counsel, or those they represent." (Plaintiffs' Motion, Br. in Support at 4.) Once again, however, Plaintiffs have failed to identify any evidentiary support for these propositions — to the contrary, the available record tends to disprove them. First and foremost, the initial media reports in which Mr. Kay's identity was revealed were published on July 27, 2010, six days ***after*** this witness failed to appear for his deposition. Plainly, even assuming (without any evidentiary basis whatsoever) that Defendants were the source of the information

5

disclosed in these reports, any such disclosure could not have procured or caused Mr. Kay's *earlier* non-appearance.

Moreover, Defendants observe — and, tellingly, Plaintiffs do not dispute — that the initial July 26, 2010 media accounts of Mr. Kay's affidavit and anticipated testimony[4] followed on the heels of Plaintiffs' investigator lodging a complaint with the Dearborn Police Department on Mr. Kay's behalf reporting concerns for the safety of this witness. Defendants further assert — once again, without contradiction — that a copy of Mr. Kay's affidavit accompanied this complaint. Even assuming, then, that there was any causal link between the media reports disclosing Mr. Kay's identity and the substance of his affidavit and his failure (several days earlier) to appear for his deposition, it appears far more likely that ***Plaintiffs*** or their agents, rather than Defendants, were the source of the information divulged in these stories.[5] Certainly, nothing in the evidence (or lack

---

[4]These initial July 26 stories did not disclose Mr. Kay's identity. Rather, so far as the Court can tell, the first accounts that revealed Mr. Kay's identity were published the following morning, July 27.

[5]Indeed, in the story that aired on WDIV-TV on the evening of July 26, 2010 — apparently the first story disclosing the substance of Mr. Kay's affidavit — reporter Kevin Dietz expressly stated that the affidavit was part of a report filed with the Dearborn Police that sought police protection for this unnamed witness. This certainly suggests that the affidavit was obtained through Dearborn Police sources, after having been provided to the Dearborn Police by Plaintiffs' investigator. It seems far less likely that this WDIV report was based on information provided by defense counsel, where Plaintiffs' counsel first gave them a copy of Mr. Kay's affidavit just a couple of hours before the report aired on the July 26 evening news. It also is not clear what possible motive Defendants or their counsel might have had to disclose Mr. Kay's affidavit to the media, where the information in this affidavit plainly favors Plaintiffs' (and not Defendants') theory of the case.

To be sure, Plaintiffs note that the initial WDIV report did not identify Mr. Kay by name, and that the affidavit shown during this report was redacted to conceal the witness's identity.

thereof) provided by Plaintiffs supports their contention that Defendants or their counsel were the "only possible source" of the public disclosure of Mr. Kay's identity and anticipated testimony. Since this disclosure is the principal (if not the only) action identified by Plaintiffs as having supposedly "procured" Mr. Kay's alleged unavailability, and since there is no evidence that Defendants took any such action, Plaintiffs' appeal to Rule 804(b)(6) must fail.[6]

---

Yet, it is just as likely that this was due to a journalistic judgment that Mr. Kay's name should not be disclosed, as opposed to the WDIV reporter's lack of knowledge of the identity of this witness. All of this, of course, is mere guesswork, but this is all that the Court is left with, in light of Plaintiffs' utter failure to provide evidentiary support for the accusations they have made against Defendants and their counsel.

[6]Beyond their (wholly unsupported and highly implausible) contention that Defendants were "the only possible source" of the public disclosure of Mr. Kay's identity and the substance of his affidavit, Plaintiffs also appear to suggest that Defendants and their counsel further increased Mr. Kay's reluctance to appear and give testimony by divulging information that tended to discredit his account and his overall veracity as a witness. Again, however, there is no evidence that Defendants or their counsel were the source of the information disclosed in the media reports that raised questions about Mr. Kay's credibility.

Even if they were, it is far from clear that this would qualify as "wrongdoing" under Rule 804(b)(6). Once Mr. Kay's identity and affidavit were publicly disclosed, Defendants and their counsel presumably were not compelled to stand idly by and allow Mr. Kay's account to go unchallenged, but seemingly were entitled to disclose any information they had lawfully obtained that might cast doubt on this account. Certainly, if Mr. Kay were to appear for his deposition or as a witness at trial, it is highly unlikely that he would be permitted to do so anonymously, and Defendants would be entitled to vigorously cross-examine him and raise challenges to his credibility.

That all of this has played out in the media, rather than in formal proceedings over which this Court exercises a degree of control, hardly qualifies as a novel occurrence in this high-visibility litigation. Indeed, Plaintiffs' counsel is in an especially poor position to complain about the media's heightened attention in this instance, having actively sought media coverage of other developments in this case. Plaintiffs' counsel surely should be aware by now that this media attention is a double-edged sword, and this is one of the (many) reasons why this Court has repeatedly urged counsel not to litigate this case in the media.

7

For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' July 29, 2010 motion to declare evidence admissible pursuant to Fed. R. Evid. 804(b)(6) is DENIED.

s/Gerald E. Rosen  
Chief Judge, United States District Court

Dated: October 28, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 28, 2010, by electronic and/or ordinary mail.

s/Ruth A. Gunther  
Case Manager
