# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of
JONATHAN BOND; TARIS JACKSON,
as Next Friend of ASHLY JACKSON;
and BRIAN GREENE, as Next Friend               Case No. 05-74253
of INDIA BOND,                                 Hon. Gerald E. Rosen
                                               Magistrate Judge R. Steven Whalen

          Plaintiffs,

v.

CITY OF DETROIT and KWAME M. KILPATRICK,

          Defendants.

_____/

## OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING PLAINTIFFS' REQUEST FOR ENTRY OF DEFAULT BASED UPON SPOLIATION OF EVIDENCE

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ October 5, 2011 _____

PRESENT:  Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I.  INTRODUCTION

In a report and recommendation ("R & R") dated August 3, 2011, Magistrate Judge R. Steven Whalen recommends that the Court give a permissive adverse inference instruction at any eventual trial arising from the Defendant City of Detroit's destruction of evidence — specifically, incoming and outgoing e-mails sent and received by four former high-ranking Detroit officials, including former mayor (and Defendant) Kwame

Kilpatrick, his chief of staff Christine Beatty, former corporation counsel Ruth Carter, and former chief of police Ella Bully-Cummings, for the period from August 1, 2002 through June 30, 2003 — after the City and its counsel were under an obligation to preserve this evidence.[1]  The Magistrate Judge further recommends that Plaintiffs be awarded their attorney fees and costs incurred in addressing the City's destruction of evidence, and that the obligation for paying these fees and costs should be borne equally by the City and its former corporation counsel, John Johnson.

Both the Defendant City and Defendant Kilpatrick have filed objections to the R & R.  In its objections, the City contends principally that there is an insufficient basis for concluding that any relevant evidence has been lost.  For his part, Defendant Kilpatrick asserts that any adverse inference against the City will unfairly prejudice him as a co-defendant at a joint trial.  Plaintiffs likewise have filed objections to the R & R, arguing (i) that the Court should impose the more drastic sanction of a default judgment or a mandatory adverse inference, rather than merely a permissive adverse inference instruction, (ii) that both the City and Defendant Kilpatrick should be sanctioned for the destruction of evidence, (iii) that the award of Plaintiffs' fees and costs should encompass a larger period dating back to a request for documents made by Plaintiffs back in

---

[1]The limited time period of August 2002 through June 2003 addressed in the R & R is attributable to an underlying request for documents served by Plaintiffs on July 30, 2010, which sought the production of e-mails sent and received during this several-month period.  Under the record developed before the Magistrate Judge, however, it certainly cannot be said with any degree of confidence that the City's destruction of evidence was limited to e-mails originating during this period.

2

November of 2009, and (iv) that the award of fees and costs should be payable jointly by the City and three of its current or former attorneys, including former corporation counsel Johnson, current corporation counsel Krystal Crittendon, and the City's current counsel of record, John Schapka.

Having reviewed the parties' written submissions in support of their objections, as well as the underlying record developed before the Magistrate Judge, the Court now is prepared to rule on the parties' objections. For the reasons stated below, the Court finds no basis for disturbing the Magistrate Judge's findings and recommendations in the R & R, and therefore adopts the R & R in its entirety.

## II. ANALYSIS

### A. Standard of Review

Under 28 U.S.C. § 636(b)(1), this Court must "make a *de novo* determination of those portions of the [Magistrate Judge's R & R] to which objection is made." In making this determination, the Court need not rehear any contested testimony or conduct its own evidentiary hearing, but may instead exercise its "sound judicial discretion" in choosing how much reliance to place on the Magistrate Judge's "proposed findings and recommendations." *United States v. Raddatz,* 447 U.S. 667, 673-76, 100 S. Ct. 2406, 2411-13 (1980). Finally, and as observed in the R & R, a party's failure to file specific objections to the R & R operates as a waiver of the party's right to pursue an appeal of the Magistrate Judge's findings and recommendations, *see Howard v. Secretary of HHS,* 932 F.2d 505, 508-09 (6th Cir. 1991), and objections not raised with specificity are not

3

preserved, *see Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991).

**B.      The Defendant City's Objections**

Although its objections are somewhat lacking in the required specificity, it appears that the Defendant City of Detroit means to advance four challenges to the R & R.  First, the City suggests that the Magistrate Judge has recommended the imposition of sanctions for spoliation of evidence without first establishing that any relevant evidence has been destroyed.  Next, the City argues that the Magistrate Judge erred in determining that it and its counsel failed to disseminate this Court's March 5, 2008 order to preserve evidence.  The City further contends that the Magistrate Judge erred in finding that it and its counsel acted with the requisite degree of culpability to warrant the imposition of spoliation sanctions.  Finally, the City suggests there are inherent problems with the adverse inference remedy recommended in the R & R.  As aptly observed in Plaintiffs' response to the City's objections, however, each of these challenges rests upon a misstatement of the facts or the law (or both) as ably set forth in the R & R, and the Court therefore overrules the City's objections as utterly without merit.

**1.      The Relevance of the Destroyed E-Mails**

The City's first (and principal) objection warrants little discussion.  As acknowledged by the City and stated in the R & R, one of the elements that must be shown to warrant an adverse inference instruction arising from the destruction of evidence is that "the destroyed evidence was relevant to a party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense."  (R &

4

R at 20 (internal quotation marks and citations omitted).)  Yet, all four of the individuals whose e-mails were destroyed — *i.e.,* Defendant Kilpatrick, Christine Beatty, Ruth Carter, and Ella Bully-Cummings — testified before the Magistrate Judge that "they neither sent nor received emails concerning the Tamara Greene homicide investigation." (R & R at 33.)  In light of this testimony, the City expresses its confusion as to how the Magistrate Judge could nonetheless conclude that these lost e-mails "are presumed to be relevant for purposes of a permissive adverse inference instruction."  (R & R at 25.)  In the City's view, the R & R is "silent" as to the basis for this presumption.  (Defendant City's Objections at 7.)

Even a cursory review of the R & R would have allayed the City's professed confusion on this point.  As fully and carefully explained by the Magistrate Judge, the law expressly dictates a finding of relevance where, as here, it is determined that evidence has been "destroyed in bad faith (i.e. intentionally or willfully)."  (R & R at 30 (internal quotation marks and citations omitted).)  Indeed, in stark contrast to the City's claim that the R & R is "silent" on this point, the Magistrate Judge devoted three pages of the R & R to a discussion of the pertinent law giving rise to this finding of relevance.  (*See id.* at 30-33.)  The City does not even attempt to challenge the Magistrate Judge's statement of the law on this point.  Accordingly, much as the City might wish this Court to undertake an independent review of the record, reassess the credibility of the witnesses, and weigh the various evidence bearing upon the possible relevance of the lost e-mails, the governing

law as ably stated by the Magistrate Judge does not demand any such inquiry.[2]

### 2. The Purported Dissemination of the Court's March 5, 2008 Order to Preserve Evidence

Next, the Defendant City contends that contrary to the Magistrate Judge's finding that neither the City nor its in-house counsel took "any action whatsoever to ensure that any City Departments . . . were aware of" the Court's March 5, 2008 order to preserve evidence, (R & R at 22), the record purportedly shows that "the order was, in fact, disseminated," (Defendant City's Objections at 10).  Yet, to the extent that the City relies on Christine Beatty's arguable awareness of this order, it acknowledges that she had left the City's employ in late January of 2008, before the March 5, 2008 order was entered or Plaintiffs' motion seeking this order was filed, and there is no reason to believe that Beatty's purported awareness of the order was based on any action taken by the City or its in-house counsel.  More to the point, even if Beatty was aware of the order, this would have been of no assistance in ensuring that any e-mails she left behind on a City of Detroit computer server were properly preserved in accordance with the order.

Next, to the extent that the City points to the testimony of former police chief Ella Bully-Cummings that she was advised of the order and prepared a memo advising Detroit Police Department ("DPD") personnel of its entry, Bully-Cummings could not recall the

---

[2]For what it is worth, there is reason to be somewhat skeptical about the confident assurances of witnesses that none of the e-mails they sent or received roughly eight years earlier would have any possible relevance to Plaintiffs' claim or would lead to the discovery of admissible evidence in support of those claims. Absent a photographic memory, it is doubtful whether a witness could provide such an assurance.

date of this memo, whether it was predicated on the Court's March 5, 2008 order, or what was the purpose of its issuance.  (*See* 3/9/2011 Hearing Tr. at 22-27.)  Moreover, Bully-Cummings referred to her outside counsel, Kenneth Lewis, as having been involved in the preparation of this memo, and Mr. Lewis did not enter an appearance on Bully-Cummings' behalf until April 7, 2008.  Once again, then, her purported awareness of the March 5, 2008 order cannot be attributed to any action taken by the in-house City attorneys referenced in the R & R.[3]

Nonetheless, the City remarkably asserts (without citation to the record) that the March 5, 2008 order was disseminated through the action of its then-corporation counsel, John Johnson, who was "acting in concert" with the outside Morganroth law firm that was serving as co-counsel for the City and several other defendants at the time. (Defendant City's Objections at 12.)  In fact, the evidence as summarized in the R & R shows that the Morganroth firm discussed and reviewed both the March 5, 2008 order and Plaintiffs' February 1, 2008 motion seeking this order with in-house counsel Johnson and Sharon McPhail, who served at the time as general counsel to then-Mayor Kilpatrick.

---

[3]In any event, Plaintiffs state without contradiction that none of Bully-Cummings' e-mails from the pertinent 2002-2003 period have been produced.  Given the unchallenged testimony of the City's information technology ("IT") personnel that "if a user does not delete an email or move it into [the] trash, it remains on the server indefinitely," (R & R at 5), and given Bully-Cummings' testimony — like the testimony of virtually every other witness — that she "never deleted emails from her sent-box," (R & R at 8), one would expect that Bully-Cummings' sent e-mails would remain on the City's computer server.  Yet, no such sent e-mails from the relevant period have been produced.  Finally, even if Bully-Cummings was made aware — evidently by outside counsel — of the March 5, 2008 order, this obviously would have been of no assistance in ensuring that the e-mails of the other relevant individuals (Defendant Kilpatrick, Beatty, and Ruth Carter) were preserved.

(*See* R & R at 17-18.)  But Mr. Johnson, in turn, testified (i) that he did not discuss the March 5, 2008 order with Defendant Kilpatrick, (ii) that he did not communicate with outside counsel regarding Plaintiffs' motion to preserve evidence or the resulting order, (iii) that the Morganroth firm was handling the litigation at the time, so that any discussions with City officials (including Defendant Kilpatrick) regarding the requirement to preserve evidence would have been conducted by the Morganroth firm, (iv) that while he may have seen the March 5, 2008 order "somewhere along the way," his directive would have been for his subordinates, Mr. Schapka or Ms. Crittendon, to handle this matter,[4] (v) that, in his view, the City's law department assumed no responsibility for ensuring that Defendant Kilpatrick complied with the March 5, 2008 order, and (vi) that he did not know what the City might have done in response to the order.  (*Id.* at 7-8.)  Mr. Johnson's own testimony, therefore, does not show that he "acted in concert" with the Morganroth firm in ensuring that the March 5, 2008 order was disseminated — to the contrary, it expressly ***disproves*** this proposition.[5]

---

[4]For their part, Ms. Crittendon testified that "she did absolutely nothing to disseminate the March [5], 2008 preservation order, . . . claiming that it was the responsibility of Mr. Schapka and the Morganroths," (R & R at 11), and Mr. Schapka stated that he did not disseminate this order based on Mr. Johnson's January 2008 directive that had relieved him from any responsibilities in the case at the time the order was entered, (*id.* at 14-16).

[5]In light of Mr. Johnson's testimony, as well as Ms. Crittendon's testimony and Mr. Schapka's statement, the City cannot truly be serious in its assertion in its present submission that "the record offers no proofs regarding whether the court's preservation order was disseminated to the remaining thirty City departments" other than the mayor's office (through apparent notice to Sharon McPhail).  (Defendant City's Objections at 14.)  Unless the City means to suggest that some sort of "invisible hand" was at work, the record conclusively establishes that the March 5, 2008 order certainly was ***not*** disseminated to ***any*** City department

At best, then, the record shows that somebody — evidently, the Morganroth firm — advised Sharon McPhail in the mayor's office of the existence of the March 5, 2008 order. The City does not explain in its present submission how this communication could be expected to result in the preservation of evidence across all City departments, nor how this somehow discharged any and all responsibility the City's in-house counsel might have borne to ensure the City's compliance with the Court's March 5, 2008 order. Certainly, this did not discharge the responsibility testified to by the City's current corporation counsel, Ms. Crittendon — namely, that "if there were an order to preserve evidence, the City attorney assigned to the case was to advise the client department of that order and what was required." (R & R at 10-11.) As the Magistrate Judge aptly inquired, "[w]ere private attorneys to walk into the IT Department, or other City Departments, and give instruction to City employees" as to the need to preserve evidence in accordance with the Court's order? (*Id.* at 24.) The City does not deign to answer (or even address) this question in its present objections.

Finally, and most disingenuously, the City purports to establish the appropriate dissemination of the March 5, 2008 order by pointing to some e-mails that it has managed to produce — *e.g.,* a computer disk purportedly containing some of former police chief Bully-Cummings' e-mails, as well as some e-mails sent or received by DPD officers Mike Martin and Loronzo Jones. Yet, the e-mails of the latter two individuals are

by Mr. Johnson, Ms. Crittendon, or Mr. Schapka. This, of course, is precisely what the Magistrate Judge found in the R & R. (*See* R & R at 22.)

9

irrelevant to the City's challenge to the R & R, since the Magistrate Judge did not find that these e-mails were destroyed or recommend any adverse inference with respect to e-mails sent or received by these two officers.  More to the point, it hardly refutes the uniform record of in-house counsel's inaction with respect to the March 5, 2008 order to show that some e-mails were recovered ***despite*** this inaction.[6]  To put the point more bluntly, if the City's in-house attorneys stood idly by as e-mails were deliberately destroyed in contravention of this Court's express order — to say nothing of the more general duty of all parties to preserve evidence that is relevant to pending litigation, (*see* 2/7/2008 Order at 2) —  they should hardly pat themselves on the back for any e-mails that were overlooked or otherwise survived this effort.  Under these circumstances, the City's claim of actual and effective dissemination of the March 5, 2008 order is patently absurd.

### 3.     The Culpability of the City and Its In-House Counsel

As its next objection to the R & R, the City argues that the spoliation sanction recommended by the Magistrate Judge is not appropriately tailored to the level of culpability of the City and its in-house counsel.[7]  To the extent that the City's attempt to

_____

[6]And, as Plaintiffs observe, of the e-mails that have been  recovered, none were sent or received by any of the four pertinent City officials during the time period identified in Plaintiffs' document request.

[7]As a preface to this objection, the City contends that the Supreme Court's decision in *Monell v. Department of Social Services,* 436 U.S. 658, 691, 694, 98 S. Ct. 2018, 2036-37 (1978), does not permit the imposition of discovery sanctions against the City based on the "conduct of its agents or employees."  (Defendant City's Objections at 15.)  Not surprisingly, the City does not cite any authority for the dubious proposition that *Monell* permits a municipality to

disclaim any "culpability" is based on the premise that no relevant evidence was lost or destroyed, the Court has already rejected this premise, and need not address it any further. As succinctly observed in the R & R, to demand that the requesting party prove the relevance of destroyed evidence would "allow parties who have . . . destroyed evidence to profit from that destruction." (R & R at 30 (internal quotation marks and citations omitted).) Likewise, to the extent that the City seeks to minimize its culpability by pointing to some e-mails that it managed to produce — albeit none sent by the pertinent City officials during the time frame identified in Plaintiffs' document request — the Court has already explained that this happenstance has no bearing on the action (or lack thereof) taken by the City and its in-house counsel to ensure that all relevant evidence was preserved.

Beyond these logically and factually flawed arguments, the City's principal contention in support of this objection is that blame cannot fairly be placed because the underlying cause of the lost e-mails is unknown. The short answer to this, as Plaintiffs recognize, is that the City, through its attorney Mr. Schapka, filed papers in this case affirmatively stating that "upon their resignations during February of 2008, Beatty and Kilpatrick's email accounts and collected emails, whether in-coming or out going, were deleted and purged from the electronic storage system." (Defendant City's 10/8/2010

---

avoid the ordinary obligations imposed on civil litigants, such as the duty to preserve relevant evidence. The Court is confident of its authority to sanction a municipal party for even a one-time, case-specific failure to satisfy its discovery obligations, without the need to identify a municipal "policy" or "custom" of the sort required to impose liability under § 1983.

Response to Plaintiffs' Motion to Compel at 6.)[8]  While the City may now wish to retreat from this admission, it cannot be said that the Magistrate Judge's assessment of the City's culpability lacks an evidentiary basis.  Certainly, the ongoing efforts by the City and its counsel to inject all manner of metaphysical doubt into the "mystery" of the City's failure to preserve potentially relevant evidence, and to speculate about other possible causes of this failure, provide no basis whatsoever for discounting the straightforward assertion by the City's counsel of record that e-mails were deliberately deleted and purged.

Indeed, it is difficult to read the City's present objections as anything other than a continuation of the persistent effort by the City and its in-house counsel to avoid taking responsibility for egregious conduct that has seriously undermined the truth-seeking mission of civil litigation.  Even to this day, the City and its counsel continue to offer idle speculation and hopelessly contradictory factual assertions in place of thorough investigation, full disclosure, and candor in their communications to the Court and opposing counsel.  Worse, they seek to casually dismiss extremely serious violations of fundamental discovery principles with throwaway, patently unsupported or immaterial claims that nothing "relevant" was lost or that at least some e-mails were spared from destruction.  In the face of the Magistrate Judge's yeoman effort to determine precisely what happened to the e-mails requested by Plaintiffs, and in the face of a record revealing

---

[8]Mr. Schapka then reiterated at an October 26, 2010 hearing before the Magistrate Judge that Defendant Kilpatrick's and Beatty's computers were "purged" in February of 2008. (10/26/2010 Hearing Tr. at 17.)

that the City and its counsel hindered rather than aided this effort at every turn, it is utterly irresponsible for the City and its counsel to seek to minimize their culpability, shift the blame, and throw up their hands and profess their bewilderment at what they possibly could have done wrong or done differently.  It is long overdue that the City and its counsel take responsibility for their conduct and engage in a serious inquiry into what went wrong and how the violations in this case may be avoided in the future.

To be clear, the obligations of the City and its counsel do not arise merely from an order issued in a given case.  As this Court has previously reminded the City in this very case, parties "have an obligation to preserve evidence within their custody or control upon 'notice that the evidence is relevant to litigation.'"  (2/7/2008 Order at 2 (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998)).)  Counsel are the guardians of this obligation, with the professional responsibility to ensure that their clients understand their duties and take the necessary steps to carry them out.  In today's world of litigation, any major municipality that fails in these basic obligations owed as a litigant, and that fails to establish a legal department capable of guiding municipal employees in understanding and fulfilling these obligations, can expect to confront major difficulties in the litigation process — to say nothing of a very unhappy citizenry that must ultimately foot the bill.

Finally — and in keeping with the theme of shifting the blame and shirking responsibility — the City suggests that the Magistrate Judge unfairly blames in-house counsel — and, most notably, the City's corporation counsel at the time, Mr. Johnson —

rather than the Morganroth firm. Yet, as noted in the R & R, the Morganroth firm discharged its responsibility to notify its client of the Court's orders, in accordance with the client's own instruction that such notice was to be given through Mr. Johnson and Sharon McPhail. (*See* R & R at 17.) As discussed earlier, it was then the obligation of Mr. Johnson and his subordinates in the City's law department to ensure that the appropriate City officials and employees were informed of the Court's orders and any resulting obligations. In assessing Mr. Johnson's culpability, the Magistrate Judge noted that he largely denied owing any such obligations, alternately blaming the Morganroth firm and his subordinates, Mr. Schapka and Ms. Crittendon, for any shortfalls in the City's obligation to preserve evidence. (*See* R & R at 23.) The Magistrate Judge further observed that Mr. Johnson "neglected to mention" certain key facts in his testimony, and that his testimony on other points was flatly contradicted by other testimony and evidence that the Magistrate Judge found more credible. (*Id.* at 23-24.) This record provides ample support for the Magistrate Judge's finding that "the City clearly acted culpably and in bad faith," (*id.* at 25), thereby warranting spoliation sanctions.

### 4.    The Scope of the Adverse Inference Recommended by the Magistrate Judge

As its final objection to the R & R, the City argues that the adverse inference recommended by the Magistrate Judge is "problematic" in two respects. First, the City contends that any such adverse inference runs contrary to the purported evidence that "no such email traffic ever existed." (Defendant City's Objections at 18.) The Court already

has addressed the City's assertion that nothing of relevance was lost, and has concluded

that it lacks both factual and legal support.  As explained, the very purpose of the

inference is to provide a remedy for Plaintiffs' inability to determine whether the deleted

e-mails would have assisted them in proving their case, and to ensure that the City does

not profit from this destruction.  That the inference might serve these purposes does not

render it "problematic," but rather appropriate.

Next, the City complains that an adverse inference instruction will permit a trier of

fact to engage in "speculation and conjecture."  The Court certainly agrees that it is

preferable for the trier of fact to decide the case based on the record, but the City's

destruction of evidence has thwarted this goal.  At any eventual trial, the City remains

free to argue that the inferences proposed by Plaintiffs are implausible and should be

rejected.  In the end, however, it will be left to the trier of fact to decide which inferences

may reasonably be drawn from the evidentiary record, viewed in light of the City's

destruction of e-mails that could have shed additional light on this record.[9]

## C.    Defendant Kilpatrick's Objection

Defendant Kilpatrick's sole objection to the R & R is that the adverse inference

instruction recommended by the Magistrate Judge will "inferentially" affect him as well,

despite the Magistrate Judge's recommendation that only the "Defendant City of Detroit,

---

[9]Prior to any eventual trial, the Court will have to address with counsel the precise form and content of the permissive adverse inference instruction to be given to the jury.  At present, it is enough to conclude that such an instruction is an appropriate remedy for the City's destruction of evidence.

15

[and] not Mr. Kilpatrick, should be sanctioned." (R & R at 21.) The Magistrate Judge drew this distinction based on the lack of evidence "showing that Mr. Kilpatrick himself destroyed any emails or that he ordered their destruction." (*Id.*) Under this record, Defendant Kilpatrick suggests that it would be unfairly prejudicial if the trier of fact were permitted to draw inferences against him based on the absence of e-mails from the relevant period identified in Plaintiffs' document request.

While this argument has some force, it does not provide a basis for declining to adopt the Magistrate Judge's recommendation as to a proper sanction to impose on the Defendant City. Surely, the Court is not powerless to sanction a defendant for its destruction of evidence, just because this sanction might have a prejudicial "spillover" effect upon a co-defendant. There are all manner of mechanisms, running the gamut from limiting instructions to separate trials, that are available to alleviate this possible prejudice. The Court need not decide at the present juncture which of these mechanisms to employ, but instead leaves this matter to be addressed prior to any eventual trial.

### D.    Plaintiffs' Objections

Turning finally to Plaintiffs' objections, Plaintiffs challenge four aspects of the Magistrate Judge's R & R. First, they contend that the appropriate sanction for the Defendant City's destruction of evidence would be a default judgment or mandatory adverse inferences, rather than a permissive adverse inference instruction. Next, they argue that both the City and Defendant Kilpatrick should have been found to have engaged in destruction of evidence. Plaintiffs further assert that the award of fees and

16

expenses recommended by the Magistrate Judge should extend beyond the filing and resolution of Plaintiffs' September 9, 2010 motion to compel, and should also encompass an earlier document request served in November of 2009. Finally, they contend that this award of fees and costs should be paid jointly by the City, Mr. Johnson, Mr. Schapka, and Ms. Crittendon, rather than only by the City and Mr. Johnson. As discussed below, the Court finds no basis to reject the R & R on any of these grounds.

### 1.      The Adequacy of a Permissive Adverse Inference Instruction

Plaintiffs first contend that the permissive adverse inference instruction recommended by the Magistrate Judge is an inadequate remedy for the Defendant City's destruction of evidence, and that the Court should instead enter a default judgment or direct the trier of fact to draw a number of mandatory adverse inferences. The Magistrate Judge addressed at length this question of the appropriate sanction, ultimately concluding that neither a default judgment nor a mandatory adverse inference was warranted. (*See* R & R at 21-27, 33-34.) The Court fully concurs in the Magistrate Judge's analysis, and finds no basis to disturb it.

Most significantly, the Court agrees with the Magistrate Judge that a default judgment or mandatory adverse inference would "give the Plaintiffs an undeserved evidentiary windfall." (R & R at 33.) Plaintiffs have been given a lengthy discovery period, and the Court has afforded them considerable latitude in exploring avenues of discovery that held only modest prospects of producing relevant evidence. The resulting voluminous record produced by the parties in connection with their summary judgment

17

briefing attests to this ample opportunity for discovery.  In addition, two Magistrate Judges laboriously reviewed over 626,000 text messages in an effort to identify communications that were arguably relevant to Plaintiffs' claims.  Against this backdrop, it cannot be said that the e-mails sent and received by four City of Detroit officials during a several-month period between August 2002 and June 2003 were likely to serve as an especially fertile ground of relevant evidence in support of Plaintiffs' claims,[10] and that other avenues of discovery could not overcome or mitigate the loss of this source of potentially relevant evidence.

Given these other avenues that Plaintiffs were free to explore in lieu of the one path of inquiry they were denied, the Court agrees with the Magistrate Judge that a default judgment would be an excessive remedy for the City's destruction of e-mails. Likewise, the mandatory adverse inferences proposed by Plaintiffs — *e.g.,* that City of Detroit employees, at the direction of Defendant Kilpatrick or other high-ranking City officials with policymaking authority, "intentionally, willfully and in bad faith destroyed evidence relating to, or otherwise obstructed, Tamara Greene's murder investigation," (Plaintiffs' Objections at 19) — would be tantamount to the entry of judgment in Plaintiffs' favor and against the Defendant City.  Accordingly, the Court concurs in the Magistrate Judge's recommendation that a permissive adverse inference instruction is an appropriate sanction for the City's destruction of evidence.

---

[10]Notably, given that Tamara Greene was killed on April 30, 2003, only the last two months of this period overlapped the Detroit Police Department investigation into her murder.

## 2.     Defendant Kilpatrick's Role in the Destruction of Evidence

Plaintiffs next take issue with the Magistrate Judge's finding that there was no evidence "showing that Mr. Kilpatrick himself destroyed any emails or that he ordered their destruction."  (R & R at 21.)  While Plaintiffs point to no evidence to the contrary in the record before the Magistrate Judge, they suggest that Defendant Kilpatrick was engaged in a wide-ranging effort to conceal evidence at the very time his e-mails were deleted.  Specifically, they note that the notorious "text message scandal" became public in late January of 2008, and that Mr. Johnson has faced discipline for his evident contribution to Defendant Kilpatrick's apparent effort to shield his text message exchanges with Christine Beatty from public view.  Plaintiffs further observe that Defendant Kilpatrick has pled guilty to obstruction of justice.  Against this backdrop, Plaintiffs suggest that it would have been part of a "pattern of manipulation" for Defendant Kilpatrick to participate in the destruction of his e-mails.

All of this is mere speculation.  In all the testimony heard by the Magistrate Judge and all the documents put into the record, nothing suggests that Defendant Kilpatrick participated in any way in the destruction of his (or anyone else's) e-mails from the relevant period.  Accordingly, there is no basis to disturb the Magistrate Judge's conclusion that only the Defendant City, and not Defendant Kilpatrick, is subject to sanctions for the destruction of evidence sought by Plaintiffs in discovery.

## 3.     The Extent of the Award of Fees and Costs

In the R & R, the Magistrate Judge recommends that Plaintiffs should be awarded

19

the attorney fees and costs incurred in bringing their September 9, 2010 motion to compel, the motion through which it was discovered that the City had destroyed evidence sought in Plaintiffs' underlying July 30, 2010 document request. Plaintiffs now challenge this recommendation, contending that the award of fees and costs should also encompass an earlier November 18, 2009 document request in which they sought a broader but somewhat overlapping set of e-mails.

The short answer to this objection is that Plaintiffs' earlier document request did not trigger the discovery that e-mails had been destroyed, nor any apparent effort to locate these e-mails. Rather, the Defendant City objected to this earlier document request as overly broad and excessively burdensome, and the Magistrate Judge sustained this objection in a January 28, 2010 order. Plaintiffs fail to explain how they incurred any additional fees or expenses as a result of the City's actions with respect to this earlier document request, nor how this earlier request triggered any obligation for the City to locate the subject e-mails or ascertain whether they had been preserved. Rather, any modest duplication of effort and additional expense seemingly were attributable to Plaintiffs' initial formulation and service of an overbroad discovery request. Accordingly, the Court finds that the award of fees and costs recommended by the Magistrate Judge is sufficient and appropriate to compensate Plaintiffs for the expenses they have incurred as a result of the City's destruction of evidence.

### 4.    The Expansion of the Imposition of Sanctions to Include Attorneys Schapka and Crittendon

20

As their final objection to the R & R, Plaintiffs contend that the Magistrate Judge erred in determining that only the Defendant City and its former corporation counsel, Mr. Johnson, should be sanctioned and ordered to pay the fees and costs incurred by Plaintiffs.  In Plaintiffs' view, two other in-house attorneys who have represented the City during the pertinent time period, Mr. Schapka and Ms. Crittendon, should also be subject to sanctions for their actions (or inaction) leading to the destruction of evidence, and for their lack of candor to the Court and opposing counsel in identifying and explaining their actions (or inaction).

As should be evident from this opinion, the Court is highly dismayed with the conduct of the City's in-house counsel.  Moreover, Mr. Schapka and Ms. Crittendon certainly played significant roles in the City's discovery violations, as well as its persistent failure to ensure that relevant materials were preserved and to determine precisely what happened to the specific materials requested by Plaintiffs.  Nonetheless, the Magistrate Judge identified a wholly appropriate basis for singling out the conduct of Mr. Johnson as worthy of sanctions.  As explained in the R & R, Mr. Johnson offered testimony that was "dishonest and misleading," and his conduct in ensuring compliance with the Court's preservation order was "utterly delinquent."  (R & R at 23-24.)  More importantly, as the City's corporate counsel at the time, he was the individual "in charge" of ensuring that the City met its discovery obligations and evidence was "destroyed under his watch," making it all the more troubling that he "attempt[ed] to point fingers and shift blame to others."  (*Id.* at 24-25.)  All of this provides an ample basis for distinguishing

21

between the conduct of Mr. Johnson and the conduct of his subordinates at the time, Mr. Schapka and Ms. Crittendon.

In addition, the Court believes that there is an important purpose to be achieved by imposing sanctions on the City rather than rank-and-file members of its law department. As the Supreme Court has emphasized, "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 396, 113 S. Ct. 1489, 1499 (1993).  Although the specific in-house attorneys who have represented the City in this litigation have certainly been derelict in their duties, the record developed by the Magistrate Judge reflects a more systemic failure by the City and its law department to put policies and procedures into place that ensure the City's compliance with its obligations as a party to civil litigation. By imposing sanctions directly on the City, rather than any particular in-house attorney who has represented the City in this case, the Court hopes to more fully impress upon the City the seriousness of the violations it has committed, and the necessity that senior City and law department officials must determine the cause of these violations and implement measures to ensure that they do not recur in future litigation.

### III. <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the objections filed by the Defendant City of Detroit (docket #596), Defendant Kwame Kilpatrick (docket #597), and Plaintiffs (docket #600) to the Magistrate Judge's August 3, 2011 report and

recommendation are OVERRULED.  In light of this ruling, IT IS FURTHER ORDERED that the Magistrate Judge's August 3, 2011 report and recommendation is ADOPTED as the opinion of this Court.

In accordance with the report and recommendation, Plaintiffs shall submit the required statement of their attorney fees and costs within *fourteen (14) days* of the date of this opinion and order.  The Defendant City and former corporation counsel John Johnson

may then file any desired objections to this statement within ***ten (10) days*** after Plaintiffs'

service of their statement, and the Court will then rule on any objections and determine

the amount of an award of reasonable attorney fees and costs.

        SO ORDERED.


                s/Gerald E. Rosen
                Chief Judge, United States District Court

Dated:  October 5, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 5, 2011, by electronic and/or ordinary mail.

                s/Johnetta Curry Williams
                for Ruth A. Gunther
                Case Manager