UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST FLAGG, as Next Friend of J. B.,
a minor; TARIS JACKSON, as Next Friend
of A. J., a minor; and BRIAN GREENE, as
Next Friend of I. B., a minor,                                Case No. 05-74253
                                                               Hon. Gerald E. Rosen
       Plaintiffs,

v.

CITY OF DETROIT and KWAME M. KILPATRICK,

       Defendants.
_____/

**OPINION AND ORDER
AWARDING ATTORNEY FEES AND COSTS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____December 9, 2011_____

PRESENT: Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

In an opinion and order dated October 5, 2011, the Court adopted the Magistrate Judge's August 3, 2011 report and recommendation ("R & R"), including the Magistrate Judge's recommendation that the Defendant City of Detroit and its former corporation counsel, John Johnson, be ordered to pay the attorney fees and costs reasonably incurred by Plaintiffs in addressing the Defendant City's destruction of evidence. In accordance with the Court's October 5 ruling, Plaintiffs have submitted a statement of their attorney

fees and costs, and the Defendant City has filed objections to this statement.[1]  For the reasons stated below, the Court finds that Plaintiffs' request for $715,342.50 in fees and $20,279.63 in costs and expenses is excessive, both as to the hourly rates sought and the amounts of hours and resources expended, and that an award of **$150,000.00** in fees and **$17,000.00** in costs is sufficient to compensate Plaintiffs for the expenses they reasonably incurred in addressing the parties' underlying discovery dispute.

In support of their request for over $700,000 in attorney fees, Plaintiffs have produced a 30-page statement of their counsel's billing entries for work attributable to the Defendant City's destruction of evidence.  This statement, in turn, reveals that six attorneys and one legal assistant devoted just over 2,000 hours to this effort, at hourly rates ranging from $195 to $550 for the attorneys (as well as an hourly rate of $75 for the legal assistant).  In objecting to this statement of fees, the Defendant City contends that the hourly rates claimed by Plaintiffs' counsel are out of step with the local market, and that many of the billing entries in counsel's statement appear to reflect work unrelated to or beyond the scope of the specific discovery dispute at issue.  As discussed below, the

---

[1] By motion filed on November 4, 2011, Plaintiffs request that the Defendant City's response to their statement of attorney fees and costs be stricken from the docket, based in part on Plaintiffs' contention that the City's submission was not timely filed.  As observed in the City's response to this motion, however, a proper reading of Fed. R. Civ. P. 6(a)(1) and 6(d) establishes that the City's objections were, in fact, timely filed within ten days after Plaintiffs' service of their statement of fees and costs.  In addition, to the extent that Plaintiffs' motion challenges the relevance of certain arguments advanced in the City's objections and certain exhibits accompanying those objections, the Court finds it unnecessary to strike these arguments and exhibits from the docket, but instead will simply disregard any irrelevant contentions and materials in determining the appropriate amount of an award of fees and costs.  Accordingly, Plaintiffs' November 4, 2011 motion is denied.

Court finds some merit in each of these objections.

First, with regard to the hourly rates charged by the six attorneys who participated in Plaintiffs' effort to address the Defendant City's destruction of evidence, the City points to a State Bar of Michigan report as revealing that these hourly rates generally are well above the average hourly rates charged by Michigan attorneys with comparable experience or standing at their firms, and that these rates are, in some cases, at or above the 95th percentile of rates charged by attorneys with comparable experience or standing.[2] Yet, to some extent, the City must take the attorneys for the opposing party as it finds them, and it cannot be said that the rates claimed here are so far out of line with the prevailing market as to cast doubt on counsel's assertions as to the rates they ordinarily charge their clients.[3] Nonetheless, the Court is mindful that the present fee award arises from a discovery dispute. Notwithstanding the City's considerable efforts to complicate the tasks faced by Plaintiffs' counsel, the fact remains that these tasks did not demand an especially high degree of legal skill or sophistication, but could generally be handled by a less experienced attorney. Accordingly, while the hourly rates sought by the least experienced attorney ($195) and by the legal assistant ($75) will be allowed as claimed,

---

[2]The Court notes that the City seemingly has mischaracterized the standing of several of the attorneys at the Yatooma firm, treating them as senior associates or associates despite 15 to 30 years of legal practice.

[3]It is worth noting, however, that the $550 hourly rate charged by Plaintiffs' lead attorney, Norman Yatooma, is comparable to the rates charged by the most experienced and accomplished attorneys in the Detroit metropolitan area. Suffice it to say that, from the Court's observations in the course of this litigation, Mr. Yatooma has not yet achieved this lofty rank.

the Court will use an hourly rate of $300, rather than the claimed rates of $325 to $550, in evaluating the work performed by the more senior attorneys.[4]

Next, the Defendant City has challenged a number of counsel's billing entries as reflecting work that is unrelated to or outside the scope of the specific transgression giving rise to the Court's fee award — namely, the City's destruction of e-mails sent or received by four former City officials between August of 2002 and June of 2003. In particular, out of the 2000 hours of attorney time identified by Plaintiffs as expended as a result of the City's destruction of evidence, the City asserts that over 80 of counsel's billing entries, totaling just over 200 hours, address tasks that are not compensable under the rulings of the Court and the Magistrate Judge. The City contends, for example, that Plaintiffs cannot recover their fees for efforts devoted to alleged spoliation of evidence by Defendant Kilpatrick, as opposed to the Defendant City, in light of the Magistrate Judge's determination that only the City, and not Kilpatrick, destroyed evidence sought by Plaintiffs in discovery. The City further argues that Plaintiffs should not be awarded any fees incurred in their review of materials and electronically stored information that was actually produced by the City. In addition, the City maintains that Plaintiffs are improperly seeking reimbursement for efforts and issues that the Magistrate Judge did not permit them to pursue.

Most of these objections are well taken, with the exception of one of the City's

---

[4]This hourly rate reduction, standing alone, results in an adjusted fee amount of $527,842.50, a decrease of nearly $200,000 from the amount sought by Plaintiffs.

challenges. In particular, the City suggests that Plaintiffs cannot seek compensation for the time spent reviewing materials that the City actually *produced*, given that the Court's award of fees is premised on the City's *destruction* of materials. Yet, Plaintiffs' review of the City's document production was a valid and necessary part of their overall effort to identify precisely what had been produced and what had not. Given the City's consistent failure to provide a straightforward account of which materials it was able to locate and which were lost, and given its ever-changing stories about when and how e-mails had been destroyed and whether they might yet be recovered, it was appropriate for Plaintiffs to sift through the City's document production in an effort to find answers that the City was unable or unwilling to provide. Accordingly, the fees for this review are recoverable, but the Court otherwise agrees with the City that roughly 150 of the 2000 hours reflected in counsel's billing entries involve tasks that cannot be viewed as attributable to the City's destruction of evidence.[5]

Finally, and more generally, the Defendant City challenges a number of counsel's billing entries as evidencing unnecessary duplication of effort by multiple attorneys, or as otherwise reflecting the devotion of time and resources that were wholly out of proportion to the purportedly narrow scope and relatively straightforward nature of the parties' underlying discovery dispute. The City points, for example, to an instance in which two attorneys each logged 21 hours in a single day preparing for an upcoming evidentiary

---

[5] This reduction in hours, combined with the decreased hourly rate addressed earlier, would result in an adjusted fee amount of roughly $480,000.

hearing, and a third attorney logged 16.25 hours that same day. (*See* Plaintiffs' Statement of Fees, Ex. A, Billing Entries for 3/5/2011.) As another example, counsel's billing entries indicate that nearly 300 hours were devoted to reviewing the Magistrate Judge's August 3, 2011 R & R, preparing objections to the R & R, and responding to Defendants' objections.[6] These and other billing entries surely lend some force to the City's complaint of "over-reaching by Plaintiff's counsel." (City's Objections at 13.)

Nonetheless, to the extent that the City characterizes the parties' underlying discovery dispute as involving "a single, relatively simple issue," (*id.* at 15), the Court feels compelled to observe that it was the actions of the City and its counsel that transformed this "simple" dispute into a matter that necessitated *five days of evidentiary hearings* before the Magistrate Judge, as well as multiple rounds of briefing, a lengthy 37-page R & R, and objections and responses totaling 75 pages that the Court addressed in a 24-page opinion and order. It surely should have been a "simple" matter for the City and its counsel to investigate the availability and whereabouts of the e-mails sought by Plaintiffs and the City's retention practices with respect to these e-mails, and to give a straightforward report to the Magistrate Judge of the results of this investigation. Likewise, it should have been a "simple" matter for the City and its counsel to comply with the Court's order to preserve evidence, and to give a straightforward report of the

---

[6]Given that the Court overruled Plaintiffs' objections to the R & R, there seemingly is no basis for Plaintiffs to recover the fees incurred in preparing these objections. Likewise, because Plaintiffs' recovery of fees is limited to those incurred as a result of the Defendant City's destruction of evidence, Plaintiffs are not entitled to the fees they incurred in responding to Defendant Kilpatrick's objections to the R & R.

City's compliance efforts. As painstakingly detailed in the R & R, what the City and its counsel instead provided was ever-changing explanations, "utterly delinquent" efforts to comply with the Court's orders, attempts to shift the blame, and "dishonest and misleading" testimony, (8/3/2011 R & R at 23-24) — not to mention the destruction of potentially relevant evidence that the City was under a duty (and a court order) to preserve. Against this backdrop, it can only be willful ignorance or considerable hubris that leads the City to suggest that the issues underlying the parties' discovery dispute were "neither complex, nor novel, nor difficult," and that an award of $25,000 in fees and costs would "constitute[] a reasonable rate of compensation commensurate to the issues and tasks involved." (City's Objections at 17-18.)

Accordingly, in arriving at an appropriate award of reasonable fees and costs, the Court must strike a balance between the two considerations outlined above: namely, (i) the extent to which Plaintiffs and their counsel devoted excessive time and resources to the discovery effort at issue, and (ii) the extent to which the conduct of the City and its counsel thwarted Plaintiffs' reasonable attempts to secure the e-mails sought in their discovery request or, failing that, to obtain relief from the City's destruction of these e-mails. As to the first of these considerations, the Court finds it appropriate to significantly discount Plaintiffs' fee request, in light of the somewhat limited prospect that the discovery effort in question would assist Plaintiffs in securing evidentiary support for their claims or otherwise lead to a more favorable resolution of this litigation. Shortly after Plaintiffs filed their underlying motion to compel production of the e-mails, the

7

Defendant City expressly acknowledged that the e-mails of Defendant Kilpatrick and Christine Beatty had been deleted and purged.  In the wake of this admission, the focus of the parties (and the Magistrate Judge) quickly shifted to questions concerning the "when" and "why" of this deletion, as well as the proper remedy for the City's destruction of evidence.  The Court recognizes the legitimate and understandable desire of Plaintiffs and their counsel to learn precisely what led to the deletion of e-mails and who was responsible, and it shares their frustration that the City and its counsel impeded rather than aided this inquiry.  At the end of the day, however, such questions were peripheral to the substantive issues in the case, and Plaintiffs' counsel should have quickly realized that it would not be a wise or productive use of attorney time and resources to undertake a lengthy inquiry into the City's troubling and often bewildering record retention practices, where this effort was likely to produce only further examples of the "systemic failure[s]" of the City of Detroit law department to ensure that potentially relevant materials were preserved.  (*See* 10/5/2011 Op. at 22.)

Moreover, the underlying discovery request itself was unlikely to produce much in the way of substantive support for Plaintiffs' claims.  The crux of these claims was that Defendants obstructed the Tamara Greene murder investigation, thereby thwarting Plaintiffs' opportunity to bring a wrongful death action against their mother's killer.  Yet, the discovery request at issue sought e-mails sent and received between August 1, 2002 and June 30, 2003, a period that extended only two months past the death of Ms. Greene on April 30, 2003.  As the Court explained in its recent November 1, 2011 opinion

granting Defendants' summary judgment motions, none of the instances of alleged interference with the Greene homicide investigation occurred within this initial two-month period following Ms. Greene's death, leading the Court to conclude that "the deleted e-mails could not possibly have assisted Plaintiffs" in withstanding Defendants' summary judgment motions. (*See* 11/1/2011 Op. at 99-100.) Even without the benefit of the hindsight afforded by a review of the complete discovery record produced in connection with these motions, it is fair to say that Plaintiffs and their counsel should have anticipated only a modest benefit, at best, if the City had preserved and produced the e-mails sought in Plaintiffs' discovery request.

Under these circumstances, it simply was not reasonable to devote six attorneys and over 2,000 hours to this discovery request and the disputes and motion practice that ensued. Plaintiffs' billing statement reveals that multiple attorneys appeared at each of the five days of evidentiary hearings before the Magistrate Judge; indeed, three of these sessions were attended by *four* attorneys. In addition, multiple attorneys participated in the drafting of court papers, and in office conferences and strategy sessions devoted to the parties' discovery dispute. Surely, each of these tasks could have been handled by a single attorney, with perhaps some occasional assistance from other attorneys and support staff. Accordingly, while counsel's billing statement discloses just over 1,800 hours of time spent on tasks arising from or reasonably related to the City's destruction of

9

evidence,[7] the Court finds that 600 hours is a reasonable amount of time within which a single attorney, with some assistance, could have completed these tasks. If roughly 300 of these hours are allocated to a senior attorney billing at a $300 hourly rate, and the remaining hours are allocated to an associate-level attorney billing at $195 per hour, the Court arrives at a reasonable attorney fee award of $150,000.00.

The Court fully recognizes that this is a substantial award of fees for a discovery dispute, and that the amount of the award here is similar to, or even larger than, a typical fee award given to a prevailing party for legal services provided over the course of an entire lawsuit. The City and its law department, however, have only themselves to blame for this self-inflicted wound. As observed earlier, and as thoroughly recounted in the Magistrate Judge's R & R, the conduct of the City and its counsel transformed what should have been a straightforward request — *i.e.,* for the e-mails sent or received by a few City of Detroit officials over a fairly limited time period — into what Plaintiffs have aptly characterized as a "journey down the rabbit hole." (Plaintiffs' 9/6/2011 Response to Defendant City's Objections at 2.) The Magistrate Judge surely had no desire to conduct five days of evidentiary hearings, or to inquire into each of the City's ever-shifting explanations of the steps it took to preserve evidence, the efforts it made to produce the e-mails sought by Plaintiffs, and the reasons why these materials could not be provided. That this lengthy inquiry proved necessary must be attributed to the City alone, which

---

[7]As observed earlier, roughly 150 of the 2,000 hours recounted in counsel's billing statement involved tasks that were not related to the City's destruction of evidence.

could have avoided all of these proceedings simply by conducting a rigorous internal investigation into the handling and whereabouts of the requested e-mails — or, better still, by implementing appropriate policies and procedures for the maintenance of records that are potentially relevant to pending litigation.  Instead, the City and its counsel offered idle speculation, casual assertions of information purportedly relayed by unidentified voices over the phone, testimony by the former head of the law department that the Magistrate Judge deemed "dishonest and misleading," (R & R at 23), and the like.

To be sure, Plaintiffs' counsel could have performed their role in this inquiry more efficiently, with the same tasks accomplished in considerably less time and using fewer attorneys and resources.  Indeed, the Court has significantly reduced its fee award to account for this inefficiency.  In the end, however, the degree of misfeasance and lack of candor exhibited by the City and its counsel in the course of this discovery dispute were simply unprecedented, at least in this Court's experience, and this fully justifies a sizable fee award that is likewise unprecedented in this Court's experience.  It bears emphasis that this award is not intended to be punitive, but rather to compensate Plaintiffs for the fees and costs they incurred as a result of the City's destruction of evidence.  Nonetheless, the size of this award amply illustrates the degree to which the City and its counsel exacerbated, rather than addressed and alleviated, the initial harm caused by the City's failure to properly preserve relevant evidence.

Finally, the Court turns to Plaintiffs' request for an award of $20,279.63 in costs.  The Defendant City has not separately objected to this component of counsel's statement

of fees and costs. Nonetheless, the Court finds that some of the items included in counsel's statement of costs are excessive or otherwise unreasonable, and thus should be deducted from an award of costs. First and foremost, the Court has already observed that it was not necessary for multiple attorneys to attend each of the hearings and conferences held by the Magistrate Judge, and the duplicate expenses sought by Plaintiffs for this attendance will be deducted from Plaintiffs' request for costs. Next, Plaintiffs' counsel employed an investigative service to assist with technical issues that arose in the course of the parties' discovery dispute, and the Court finds that the fees paid to this service were somewhat excessive in light of the nature and scope of this dispute. Upon reducing Plaintiffs' request on these two grounds, the Court finds that Plaintiffs should be awarded $17,000.00 in costs.

      For these reasons,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' November 4, 2011 motion to strike (docket #621) is DENIED. IT IS FURTHER ORDERED that, within ***thirty (30) days*** of the date of this opinion and order, the Defendant City of Detroit and its former corporation counsel, John Johnson, shall pay to Plaintiffs the amount of **$150,000.00** in attorney fees and **$17,000.00** in costs, for a total award of **$167,000.00** in fees and costs.

        s/Gerald E. Rosen
        Chief Judge, United States District Court

Dated: December 9, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 9, 2011, by electronic and/or ordinary mail.

        s/Ruth A. Gunther
        Case Manager